**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GIGACLOUD TECHNOLOGY INC SECURITIES LITIGATION | **Case No. 1:23-cv-10645-JMF** |
| | <u>**CLASS ACTION**</u> |
| THIS DOCUMENT RELATES TO: | **ALL ACTIONS** |
| ALL ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**GIGACLOUD TECHNOLOGY INC, LARRY LEI WU,**
**IMAN SCHROCK, XIN WAN, AND AEGIS CAPITAL CORP.'S**
<u>**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**</u>

LATHAM & WATKINS LLP
Jeff G. Hammel
Jason C. Hegt
Hanyu (Iris) Xie
Chengliang (Larry) Hong
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

*Attorneys for GigaCloud Technology Inc,*
*Larry Lei Wu, Iman Schrock, and Xin Wan*

SICHENZIA ROSS FERENCE CARMEL
LLP
Sameer Rastogi
John J. Elliott
1185 Avenue of the Americas, 31st Floor
New York, New York 10036
(212) 930-9700

*Attorneys for Aegis Capital Corp.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND .........................................................................................................................3

      A.     GigaCloud, the Individual Moving Defendants, and Aegis.....................................3

      B.     The August 2022 IPO and the Offering Materials....................................................4

      C.     Post-IPO Disclosures ...............................................................................................5

      D.     Short-Seller Report and the Company's Response....................................................5

      E.     This Lawsuit and the Recovery In GigaCloud's Stock Price ..................................6

ARGUMENT................................................................................................................................7

I.       LEGAL STANDARD.........................................................................................................7

II.      PLAINTIFFS FAIL TO ALLEGE ANY MISSTATEMENT OR OMISSION ..................8

      A.     Plaintiffs Misrepresent GigaCloud's Disclosures.....................................................9

      B.     Plaintiffs Plead No Facts to Suggest that GigaCloud Did Not Use AI ..................10

      C.     Plaintiffs Plead No Facts Showing that GigaCloud Misrepresented the Sophistication of Its Technology ............................................................................14

III.     THE ABSENCE OF LOSS CAUSATION REQUIRES DISMISSAL.............................18

IV.     PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER .................21

      A.     Plaintiffs Fail to Plead A Cognizable Motive........................................................21

      B.     Plaintiffs Do Not Plead Conscious Misbehavior or Recklessness.........................22

      C.     Plaintiffs Fail to Allege Scienter as to GigaCloud.................................................24

V.      THE AC FAILS TO PLEAD CONTROL PERSON LIABILITY ...................................25

CONCLUSION...........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs. LLP*,
2019 WL 1436993 (S.D.N.Y. Mar. 30, 2019) ...........................................................................20

*Amorosa v. AOL Time Warner Inc.*,
409 F. App'x 412 (2d Cir. 2011) ..............................................................................................18

*Applestein v. Medivation, Inc.*,
861 F. Supp. 2d 1030 (N.D. Cal. 2012), *aff'd,* 561 F. App'x 598 (9th Cir. 2014) ..................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................................................7

*Bd. Of Trs. Of Ft. Lauderdale Gen. Emps.' Ret. Sys. V. Mechel OAO*,
811 F. Supp. 2d 853 (S.D.N.Y. 2011), *aff'd*, 475 F. App'x 353 (2d Cir. 2012)......................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................................................7

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
506 F. App'x 32 (2d Cir. 2012) ...................................................................................................8

*Boluka Garment Co., Ltd. v. Canaan Inc.*,
547 F. Supp. 3d 439 (S.D.N.Y. 2021).......................................................................................18

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
543 F. App'x 72 (2d Cir. 2013) .................................................................................................19

*Colbert v. Rio Tinto PLC*,
392 F. Supp. 3d 329 (S.D.N.Y. 2019), *aff'd*, 824 F. App'x 5 (2d Cir. 2020).........................24

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009).......................................................................................................21

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024) ......................................................................................................19

*Fila v. Pingtan Marine Enterprises Ltd.*,
195 F. Supp.3d 489 (S.D.N.Y. 2016).........................................................................................19

*Frankfurt-Trust Inv. Luxemburg AG v. United Techs. Corp.*,
336 F. Supp. 3d 196 (S.D.N.Y. 2018), *aff'd sub nom. Kapitalforeningen Lægernes Inv. v.
United Techs. Corp.*, 779 F. App'x 69 (2d Cir. 2019)...........................................................12, 24

*Grigsby v. BofI Holding, Inc.*,
   979 F.3d 1198 (9th Cir. 2020) ........................................................................................20

*Harris v. AmTrust Fin. Servs., Inc.*,
   135 F. Supp. 3d 155 (S.D.N.Y. 2015)..........................................................................19, 24

*In re AT&T/DirecTV Now Sec. Litig.*,
   480 F. Supp. 3d 507 (S.D.N.Y. 2020)................................................................................16

*In re Bristol-Myers Squibb Co. CVR Sec. Litig.*,
   658 F. Supp. 3d 220 (S.D.N.Y. 2023) (Furman, J.) ......................................................... *passim*

*In re China Mobile Games & Ent. Grp., Ltd Sec. Litig.*,
   2016 WL 922711 (S.D.N.Y. Mar. 7, 2016) .......................................................................13

*In re Cloudera, Inc.*,
   2021 WL 2115303 (N.D. Cal. May 25, 2021) .........................................................10, 15, 17

*In re Doral Fin. Corp. Sec. Litig.*,
   563 F. Supp. 2d 461 (S.D.N.Y. 2008)................................................................................23

*In re DraftKings Inc. Sec. Litig.*,
   650 F. Supp. 3d 120 (S.D.N.Y. 2023)..........................................................................11, 13

*In re Farfetch Ltd. Sec. Litig.*,
   2021 WL 4461264 (S.D.N.Y. Sept. 29, 2021), *aff'd sub nom. IAM Nat'l Pension Fund v.
   Farfetch Ltd.*, 2023 WL 2879304 (2d Cir. Apr. 11, 2023) ..........................................8, 10, 16

*In re Francesca's Holdings Corp. Secs. Litig.*,
   2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015) ....................................................................13

*In re Gildan Activewear, Inc. Sec. Litig.*,
   636 F. Supp. 2d 261 (S.D.N.Y. 2009)................................................................................21

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
   650 F.3d 167 (2d Cir. 2011)..............................................................................................17

*In re Lehman Bros. Sec. & Erisa Litig.*,
   2013 WL 3989066 (S.D.N.Y. July 31, 2013) ....................................................................12

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)....................12, 13

*In re MINISO Grp. Holding Ltd. Sec. Litig.*,
   2024 WL 759246 (S.D.N.Y. Feb. 23, 2024)..............................................................8, 18, 19

*In re Omnicom Grp., Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010)..........................................................................................19, 20

iii

*In re Qudian Inc. Sec. Litig.*,
   2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019) (Furman, J.) ................................................... 12

*In re Sanofi Sec. Litig.*,
   87 F. Supp. 3d 510 ................................................................................................................ 3

*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*,
   774 F. Supp. 2d 584 (S.D.N.Y. 2011) ................................................................................. 18

*In re Supercom Inc. Sec. Litig.*,
   2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018) ................................................................ 15, 16

*In re Weight Watchers Int'l, Inc. Sec. Litig.*,
   2016 WL 2757760 (S.D.N.Y. May 11, 2016) ..................................................................... 24

*Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*,
   445 F. App'x 368 (2d Cir. 2011) ....................................................................................... 23

*Jackson v. Abernathy*,
   960 F.3d 94 (2d Cir. 2020) ................................................................................................. 24

*Jiajia Luo v. Sogou, Inc.*,
   465 F. Supp. 3d 393 (S.D.N.Y. 2020) ........................................................................... 11, 17

*Kusnier v. Virgin Galactic Holdings, Inc.*,
   639 F. Supp. 3d 350 (E.D.N.Y. 2022) ................................................................................ 16

*Lau v. Opera Ltd.*,
   527 F. Supp. 3d 537 (S.D.N.Y. 2021) ........................................................................... 18, 19

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005) ............................................................................................... 18

*LifeMD, Inc. v. Lamarco*,
   607 F. Supp. 3d 576 (W.D. Pa. 2022) .................................................................................. 5

*Long Miao v. Fanhua, Inc.*,
   442 F. Supp. 3d 774 (S.D.N.Y. 2020) ................................................................................ 23

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
   518 F. Supp. 3d 772 (S.D.N.Y. 2021) ................................................................................ 23

*Marcu v. Cheetah Mobile Inc.*,
   2020 WL 4016645 (S.D.N.Y. July 16, 2020) (Furman, J.) .................................................. 22

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
   2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ..................................................................... 12

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
  300 F. Supp. 3d 551 (S.D.N.Y. 2018), *aff'd sub nom. Ark. Pub. Emps. Ret. Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir. 2019) .....................................................................................16

*Olkey v. Hyperion 1999 Term Tr., Inc.*,
  98 F.3d 2 (2d Cir. 1996)...........................................................................................................9

*Pirnik v. Fiat Chrysler Autos., N.V.*,
  2017 WL 3278928 (S.D.N.Y. Aug. 1, 2017) (Furman, J.) ......................................................22

*Plumbers, Pipefitters & MES Loc. Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*,
  886 F. Supp. 2d 328 (S.D.N.Y. 2012).....................................................................................21

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)...........................................................................................8, 15, 22

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009).....................................................................................................21

*Saraf v. Ebix, Inc.*,
  2023 WL 4561655 (S.D.N.Y. July 17, 2023) (Furman, J.), *aff'd sub nom. Saraf v. Ebix, Inc.*, 2024 WL 1298246 (2d Cir. Mar. 27, 2024) ...............................................................................3

*Saraf v. Ebix, Inc.*,
  632 F. Supp. 3d 389 (S.D.N.Y. 2022) (Furman, J.) ...............................................................22

*Schaffer v. Horizon Pharma PLC*,
  2018 WL 481883 (S.D.N.Y. 2018) (Furman, J.) ....................................................................16

*Schiro v. Cemez, S.A.B. de. C.V.*,
  396 F. Supp. 3d 283 (S.D.N.Y. 2019).....................................................................................14

*Scott v. Gen. Motors Co.*,
  46 F. Supp. 3d 387 (S.D.N.Y. 2014), *aff'd*, 605 F. App'x 52 (2d Cir. 2015)...........................15

*Shemian v. Rsch. In Motion Ltd.*,
  2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013), *aff'd*, 570 F. App'x 32 (2d Cir. 2014) ...........23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).................................................................................................................21

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016)..................................................................................................3, 16

*Wilson v. Merrill Lynch & Co.*,
  671 F.3d 120 (2d Cir. 2011).....................................................................................................17

v

*Woolgar v. Kingstone Cos., Inc.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020)........................................................................12, 14, 23

*Wyche v. Advanced Drainage Sys., Inc.*,
    2017 WL 971805 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x 471 (2d Cir. 2017) ...........24

## STATUTES

15 U.S.C. § 78u-4(b)(2) ...........................................................................................................21

## RULES

Fed. R. Civ. P. 9(b) ...................................................................................................................8

Fed. R. Civ. P. 12(b)(6)..............................................................................................................7

Defendants GigaCloud Technology Inc ("GigaCloud" or the "Company"), Larry Lei Wu, Iman Schrock, and Xin Wan, and Aegis Capital Corp. ("Aegis") (collectively, "Moving Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Amended Class Action Complaint ("AC," cited as ¶___) (ECF No. 59) (Ex. 1).[1]

## PRELIMINARY STATEMENT

In September 2023, GigaCloud and its shareholders were the victims of a market manipulation attack by a short-seller with a history of being sued for making false statements about other public companies. This short-seller published a series of lies and unsupported innuendo about GigaCloud in an attempt to drive down the GigaCloud stock price and profit from a decline. As usual, multiple law firms rushed to the courthouse to parrot these allegations, but investors quickly realized that the short-seller report was nonsense. Within days, GigaCloud's stock price recovered to roughly where it was before the report, and the Company's performance in the months since has confirmed that its business is solid. As of today, the Company's stock price is up more than 300% since its IPO and more than 500% since the short-seller report. Against this backdrop, even Plaintiffs bound by the confines of Rule 11 could not maintain a claim based on the short-seller's allegations, so the AC pivots to an entirely new theory about the Company's use of artificial intelligence ("AI") and machine learning ("ML"). But this latest attempt is equally meritless and the AC should be dismissed with prejudice for the following reasons:

**First**, Plaintiffs have not alleged that any of GigaCloud's statements were false or misleading. In extensive disclosures about its multi-faceted business, GigaCloud told investors that it used a range of technology infrastructure, including AI and ML technology for certain

---

[1] Unless otherwise indicated herein, all internal citations and quotation marks are omitted, emphasis is added, and citations to "Ex." refer to exhibits attached to the Declaration of Hanyu (Iris) Xie, submitted herewith.

functions.  Plaintiffs' only challenge to these statements comes from four former employees who either did not work at the Company during the relevant period or did not have roles where they would be expected to know how the Company used AI and ML.  Their musings say nothing about the truth or falsity of GigaCloud's statements, and Plaintiffs' inability to plead a false statement is fatal to all of their claims.  *See* Section II.

*Second*, all of Plaintiffs' claims also fail because the at-issue statements did not cause their alleged loss.  Plaintiffs are attempting to recover for the temporary stock price decline that followed the publication of the short-seller report.  However, the problem for Plaintiffs is that the short-seller report did not reveal anything about the Company's use of AI.  Indeed, the passing 38-word commentary on AI in a 27-page report makes clear by its own terms that the short-seller was merely characterizing information that was already in the public domain.  A long line of Second Circuit decisions confirms that this is insufficient to plead loss causation as a matter of law.  *See* Section III.

*Third*, Plaintiffs' Exchange Act claims fail for the additional reason that the AC does not plead the requisite "strong inference" of scienter.  GigaCloud's executives did not sell any shares during the class period, which this Court has previously held undermines any inference of scienter as a matter of law.  And absent motive, Plaintiffs' remaining allegations that these insiders were "hands-on" managers comes nowhere close to pleading scienter.  *See* Section IV.

2

**BACKGROUND**[2]

**A.      GigaCloud, the Individual Moving Defendants, and Aegis**

Founded in 2006, GigaCloud is a leading business-to-business marketplace provider for furniture and other large parcel merchandise.  ¶¶ 9, 36; *see* Ex. 2, Prospectus at 1.  Its ecommerce platform, known as the "GigaCloud Marketplace," integrates merchandise display, payments, and logistics tools into one user-friendly platform, and connects manufacturers, primarily in Asia, with resellers, primarily in the U.S., Asia, and Europe.  ¶ 9; Ex. 2, Prospectus at 1.

GigaCloud's business has dramatically expanded its in recent years.  As of December 2021, GigaCloud had hundreds of active third-party sellers and thousands of active buyers in its Marketplace and had more than $400 million of goods sold in the Marketplace, representing approximately 100% year-over-year growth.  Ex. 2, Prospectus at 2.  GigaCloud earns revenue both from commissions on these sales and fees charged for logistics and delivery services.  *Id.* at 119, 145-46, 153.  The Company also earns revenue from selling its own inventory on the Marketplace and other platforms.  *Id.* at 120, 146, 153-54.  GigaCloud completed an IPO in August 2022 and its stock began trading on Nasdaq Stock Market.  ¶¶ 13, 39.

The individual Moving Defendants are officers and directors of GigaCloud.  ¶¶ 14-21. Larry Lei Wu is GigaCloud's founder and has served as its chief executive officer and chairman of its board of directors since the Company's inception.  ¶ 14.  Iman Schrock has served as the

---

[2] This background is drawn from (i) the well pleaded factual allegations in the FAC and documents referenced therein, (ii) GigaCloud's SEC filings, and (iii) "information already in the public domain and facts known or reasonably available to the shareholders."  *See Saraf v. Ebix, Inc.,* 2023 WL 4561655, at *1 (S.D.N.Y. July 17, 2023) (Furman, J.), *aff'd sub nom. Saraf v. Ebix, Inc.*, 2024 WL 1298246 (2d Cir. Mar. 27, 2024); *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 517 n.1, 539 n.13 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016).

Company's president since August 2022.  ¶ 122.  Xin Wan has served as the Company's chief technology officer since 2014 and as a director between November 2020 and August 2023.  ¶ 16.

Defendant Aegis was the sole underwriter of GigaCloud's IPO.  ¶ 23.

**B.**     **The August 2022 IPO and the Offering Materials**

As part of the IPO, GigaCloud filed the operative Registration Statement with the SEC on August 1, 2022, which became effective on August 17, 2022.  ¶ 2.  GigaCloud also filed a Prospectus on Form 424B dated August 17, 2022, and an Issuer Free Writing Prospectus dated August 2, 2022, both of which formed part of the Registration Statement (collectively, "Offering Materials" or "OM").  *Id.*  The Offering Materials, totaling 342 pages, contained complete and accurate disclosures regarding GigaCloud's business model and technology systems.  *See generally* Ex. 2, Prospectus; Ex. 3, Issuer Free Writing Prospectus.

Across dozens of pages, GigaCloud explained that it offered customers a wide variety of services depending on their particular sales volume and needs.  Ex. 2, Prospectus at 117-66; *see also id.* at 161 ("We have built a cross-border ecommerce trading platform upon three layers—(i) our foundation la[y]er, which consists of basic services . . . , (ii) a service layer, which includes our stock management system, warehouse management system and bulk merchandise transportation system, and (iii) our application layer which consists of a variety of customer-facing value-added features.").  As the descriptions make clear, many of these systems were driven by "multiple technology capabilities," which included "cloud computing, big data analytics, and artificial intelligence."  *Id.* at 164.  The Company did not state, much less advertise, that it made particularly extensive use of AI.  Rather, it disclosed that the Company used AI algorithms to help run its data analytics tools.  *Id.* at 2, 125, 150, 157-58, 161.

The Offering Materials also disclosed that GigaCloud had approximately 700 employees worldwide, approximately 25% of whom were software engineers who developed and maintained

4

the Company's various technology systems.  ¶ 142; Ex. 2, Prospectus at 157, 165.  GigaCloud further disclosed that both its senior management team and its IT team were based in Suzhou, China.  *See* ¶ 55 ("Suzhou, China [was] where its IT development and management is based."); Ex. 2, Prospectus at 165 ("Our corporate headquarters is in Suzhou, China.").

### C.    Post-IPO Disclosures

Plaintiffs also challenge several statements that GigaCloud and/or its executives made after the IPO regarding the Company's use of AI technology.  Some of these statements are identical to the statements in the Offering Materials.[3]  Others use slightly different wording to explain that the Company used AI to support its data intelligence functions, *see* App. A, Statement No. 22, or that the Company had a "algorithm enabled technology stack [] that involves AI and machine learning," *see* App. A, Statement No. 23.

### D.    Short-Seller Report and the Company's Response

After the market opened on September 28, 2023, a one-man outfit named Shadyside Partners, LLC—which goes by the *nom de plume* "Culper Research"—issued a 27-page report criticizing GigaCloud's business.  ¶ 191; *LifeMD, Inc. v. Lamarco*, 607 F. Supp. 3d 576, 584-85 (W.D. Pa. 2022) (describing Shadyside Partners a/k/a Culper Research).  Culper Research has previously been sued for making false and defamatory statements about other public companies,[4]

---

[3] *Compare, e.g.*, App. A, Statement No. 1 ("***[O]ur AI optimizes routing by organizing incoming orders and rebalancing inventory levels within our warehousing network***."), *with* App. A, Statement No. 13 (same).  For the Court's convenience, the table at **Appendix A** lists all of the challenged statements in the Amended Complaint and summarizes the reasons why they are not actionable.

[4] *See LifeMD*, 607 F. Supp. 3d at 595-99 (denying motion by "Culper Research" and its sole employee to dismiss claims for defamation, trade libel, false light, deceptive trade practices, and unfair competition).

and this report was no different.  The report was long on innuendo and short on facts,[5] but it focused primarily on the scope of the Company's operations and certain related party transactions.  *See generally* Ex. 4, Culper Rsch. Report.  On the first page of the report, Culper Research disclaimed any representation "as to the accuracy, timeliness, or completeness of any such information or with regard to the results to be obtained from its use."  *Id.* at 1.

The following day, GigaCloud issued a press release denying the allegations.  *See* Ex. 5, Sept. 29, 2023 Press Release.  On October 9, 2023, the Company released a detailed refutation of the key claims in the report, and announced that its board of directors had authorized an independent investigation of the claims made by Culper Research.  *See* Ex. 6, Oct. 9, 2023 Press Release.  On November 13, 2023, GigaCloud announced the conclusion of the independent investigation led by international law firm White & Case LLP and forensic accounting firm FTI Consulting:  the Company's audit committee determined there was no merit to the key allegations in the short-seller report.  *See* Ex. 7, Nov. 13, 2023 Press Release.

### E.    This Lawsuit and the Recovery In GigaCloud's Stock Price

With the ink barely dry on the Culper Research hit-piece, two shareholder plaintiffs filed nearly identical complaints against GigaCloud, certain of the Company's directors and officers, and Aegis in October 2023.  The complaints relied almost entirely on the short-seller report and alleged that the Company purportedly failed to disclose certain business operations.  *See* ECF Nos. 21, 37, 54.  However, in the amended complaint filed March 18, 2024, Plaintiffs changed course—

---

[5] For example, the report repeatedly calls GigaCloud a "China Hustle" company and suggests that its financial statements must be suspect because the Company's unnamed auditor was "based in China."  Ex. 4 at 2-3.  For the record, the Company's auditor during the period was KPMG Huazhen LLP, the local affiliate of one of the world's largest accounting firms.  Ex. 2, Prospectus at 239.

and asserted an entirely new theory based on purportedly misleading statements about GigaCloud's use of AI and/or ML. *See* ¶¶ 9-11.

The AC asserts (i) under the Securities Exchange Act of 1934, a Sections 10(b) claim against GigaCloud and Messrs. Wu, Wan, and Schrock as well as a Section 20(a) claim for control person liability against Messrs. Wu, Wan, and Schrock, ¶¶ 207-24; and (ii) under the Securities Act of 1933, a Section 11 claim against GigaCloud, Aegis, and Messrs. Wu and Wan as well as a Section 15 claim for control person liability against Messrs. Wu and Wan, ¶¶ 90-106.

Predictably, the market quickly saw the Culper Research report for the nonsense that it was. Just 13 days after the report's release, GigaCloud's stock price was higher than that ***before*** the report's publication. Ex. 8, Stock Price Chart (*compare* Oct. 9, 2023 Price ($9.96) *with* Sept. 27, 2023 Price ($9.47)). And on March 18, 2024—the day Plaintiffs filed the AC—GigaCloud's stock price traded at $34.21, nearly five times the stock price on the day of the short-seller report ($7.69) and triple the Company's IPO price ($12.25). Ex. 8, Stock Price Chart.

## ARGUMENT

### I.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

To state a claim under Section 10(b) of the Exchange Act, Plaintiffs must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission with the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re Bristol-Myers*

7

*Squibb Co. CVR Sec. Litig.*, 658 F. Supp. 3d 220, 229-30 (S.D.N.Y. 2023) (Furman, J.).   In pleading these elements, Plaintiffs must satisfy both the heightened pleading requirements of Rule 9(b), which requires that they "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), **and** the PSLRA, which requires that they "specify each misleading statement" and "set forth the facts on which [a] belief that a statement is misleading was formed." *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 36 (2d Cir. 2012).

To state a claim under Section 11 of the Securities Act, Plaintiffs must allege facts demonstrating plausibly that "the registration [statement] contained an untrue statement of material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." *Bristol-Myers*, 658 F. Supp. 3d. at 235.   Because Plaintiffs' Securities Act claims "sound[] in fraud," they are also subject to the heightened pleading standard of Rule 9(b). *Rombach v. Chang*, 355 F.3d 164, 170-72 (2d Cir. 2004).[6]

## II.    PLAINTIFFS FAIL TO ALLEGE ANY MISSTATEMENT OR OMISSION

Plaintiffs assert claims under both the Securities Act and the Exchange Act based on statements in the Offering Materials.  ¶¶ 2-3.  Plaintiffs also assert additional Exchange Act claims

---

[6] There can be little debate that Plaintiffs' Securities Act claims sound in fraud because (i) Plaintiffs challenge the very same statements under both the Securities Act and the Exchange Act and (ii) both sets of claims rests on the same theory of alleged fraud. *See, e.g.*, ¶ 107 (allegations relating to Securities Act claims are "applicable to Plaintiffs' claims under Section 10(b) and 20(a) of the Exchange Act"); ¶ 148 (same); *compare* ¶ 75, *with* ¶ 159 (alleging that an identical statement in the OM and the 20-F for fiscal year 2022 was false and misleading for the same reasons).  As many courts in this District have held, Plaintiffs' boilerplate disclaimer of fraud (*see* ¶ 91) is not enough to avoid the application of Rule 9(b). *See In re MINISO Grp. Holding Ltd. Sec. Litig.*, 2024 WL 759246, at *11 (S.D.N.Y. Feb. 23, 2024) (applying particularity standards to Securities Act claims despite plaintiffs' disclaimers of fraud); *Rombach*, 355 F.3d at 172 ("Plaintiffs assert that their Section 11 claims 'do[] not sound in fraud'" but allege "that the Registration statement was 'inaccurate and misleading' . . . . [T]hese nominal efforts are unconvincing where the gravamen of the complaint is plainly fraud."); *In re Farfetch Ltd. Sec. Litig.*, 2021 WL 4461264, at *8 n.3 (S.D.N.Y. Sept. 29, 2021) (similar), *aff'd sub nom. IAM Nat'l Pension Fund v. Farfetch Ltd.*, 2023 WL 2879304 (2d Cir. Apr. 11, 2023).

challenging various post-IPO disclosures, including GigaCloud's Annual Report on Form 20-F filed April 24, 2023, and certain of GigaCloud's website pages, statements during GigaCloud's earnings calls, and statements during the LD Micro Invitational XIII 2023 event. *See* ¶¶ 149-190. Plaintiffs quote virtually every one of the Company's disclosures regarding its AI capabilities and make the blanket statement that they were all false and misleading for the same two reasons: (i) "GigaCloud's logistics operation did not use AI" and (ii) "the technology GigaCloud did use was not state-of-the-art or sophisticated and would have been found in most warehouse operations." *See, e.g.*, ¶¶ 69, 71, 75, 79, 81, 152, 154. Plaintiffs' allegations of falsity fall short under any pleading standard, which requires dismissal of all Securities Act and Exchange Act claims against all Moving Defendants.

### A.    Plaintiffs Misrepresent GigaCloud's Disclosures

The crux of Plaintiffs' claim is that GigaCloud's disclosures about its technology were false because the Company did not use AI whatsoever. *E.g.*, ¶¶ 69, 71. Plaintiffs allege that "the Company's purported advanced AI and ML capabilities were, according to the Registration Statement, the foundation of the Company's operations, financial performance, and growth prospects." ¶ 53. However, even a cursory review of the full disclosure shows that the Company said nothing of the sort. *Olkey v. Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2, 5 (2d Cir. 1996) ("It is undisputed that the prospectuses must be read 'as a whole.'"). Rather, GigaCloud described its varied marketplace, logistics, sales, and other business operations across dozens of pages and noted that these operations were supported by "multiple" technology systems, of which AI and ML were only but one part. *See, e.g.*, Ex. 2, Prospectus at 117-66.

Next, Plaintiffs attempt to collapse the Company's statements about various technology systems into one suggesting that any time the Company spoke about technology, it was actually referring to AI or ML. For example, Plaintiffs challenge the statement that "the Company began

'leverag[ing] [its] data analytics in order to provide supply chain finance solutions to select quality suppliers based on [its] extensive data on their performance and quality,'" ¶ 52, as false and misleading because they allege the Company was not using AI.  But this statement, by its terms, says nothing about the use of AI, [7] and ignores that the Company's disclosures expressly distinguish between the general field of data analytics and the specific concept of AI/ML technology.  *See* Ex. 2, Prospectus at 164 ("multiple technology capabilities" include "big data analytics [] and artificial intelligence").  Plaintiffs cannot re-write GigaCloud's disclosures in order to allege they were false,[8] and they cannot offer their own subjective, after-the-fact definition of these concepts to allege that GigaCloud did not use the "AI" technology.  *See In re Cloudera, Inc.,* 2021 WL 2115303, at \*13 (N.D. Cal. May 25, 2021) ("If cloud native had no set meaning when Cloudera Defendants made their challenged statements, then the Court cannot find that Plaintiffs have adequately pled that Cloudera Defendants' statements were false when made.").[9]

## B.    Plaintiffs Plead No Facts to Suggest that GigaCloud Did Not Use AI

But even accepting Plaintiffs' misreading of the Company's disclosures and Plaintiffs' amorphous definition of AI technology, Plaintiffs still do not offer any factual allegations to show that GigaCloud's statements were false or misleading.  Rather, the AC relies exclusively on conclusory allegations from four anonymous former employees (the "FEs"), who alleged that "no

---

[7] Data analytics is a broad term used to describe "the process of systematically collecting, cleaning, transforming, modeling, and interpreting data" using "statistical techniques."  *See* BRITANNICA, "Data Analysis," https://www.britannica.com/science/data-analysis (last accessed May 17, 2024).

[8] *Farfetch*, 2021 WL 4461264, at \*9 (finding no falsity where company "expressly disclosed precisely what Plaintiffs[] claim it was trying to hide").

[9] Plaintiffs' definition of AI is based on a *draft* plan from the National Institute of Standards and Technology ("NIST").  ¶ 40 (citing Ex. 9, NIST Plan at 7).  Plaintiffs do not—and cannot—explain why one definition by another entity should control Defendants' statements, particularly when NIST itself explained that "definitions of AI vary" and supplied only a working definition "for purposes of this plan."  Ex. 9, NIST Plan at 7-8.

10

AI technology was involved in GigaCloud's logistics." ¶¶ 55-66. These allegations barely describe the Company's technology, much less support the claim that the Company's statements about any aspect of its technology were false. *See In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 153 (S.D.N.Y. 2023) ("The SAC's threadbare sourcing and the conclusory quality of ['unsourced or anonymously sourced'] factual allegations and attributions are ultimately fatal to all of its § 10(b) or § 20(a) claims."); *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 414 (S.D.N.Y. 2020) (dismissing Section 11 claim based on the Company's transition to AI-enabled hardware where "Plaintiffs fail to identify any statement about hardware in the Offering Documents that was false or misleading when it was made").

**None of the FEs Were In A Position to Know.** Given AI's supportive role for the Company's back-end processes, it is not surprising that many (or even most) GigaCloud employees would not come across the Company's AI technology in the course of their employment. And the AC's barebones description of the four FEs do not so much as suggest why these four persons would be expected to have credible knowledge about the Company's use of AI:

- FE-1 was "a member of the Java development team" base in Suzhou, China. ¶ 26. The team "was overseen by" the director of GigaCloud's IT department. *Id.*

- FE-2 was "a Supply Chain Manager" based in Suzhou, China. ¶ 27.

- FE-3 was "GigaCloud's President of U.S. Operations" from September 2021 to May 2022. ¶ 28. During his eight-month tenure, FE-3 allegedly reported to Mr. Wu. *Id.* He allegedly worked out of a warehouse facility based in California. *Id.*

- FE-4 was "GigaCloud's Business Development Director" from December 2021 to September 2022." ¶ 29. During their ten-month tenure, FE-4 was based in New York State and reported either to FE-3 or another mid-level executive not named as defendants here. *Id.*

*First*, FE-1, FE-2, and FE-4 are junior employees working in a field distinct and disconnected from the Company's data analytics—*the one aspect of GigaCloud's operations where it disclosed that AI technology was deployed. See, e.g.*, ¶¶ 26-27, 29. As such, it is not

11

surprising that these FEs would have no insight into the Company's AI use in the first place.  *See Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 219 (S.D.N.Y. 2020) (disregarding CW allegations that "relate largely to the Company's property liability lines, not its commercial liability lines").  Plaintiffs do not explain why the assertion that AI was not used in the Company's Java development or other supply chain support software (*see* ¶¶ 57, 59) means the Company did not use AI *anywhere*.[10]  *See In re Lehman Bros. Sec. & Erisa Litig.*, 2013 WL 3989066, at *4 (S.D.N.Y. July 31, 2013) (disregarding statements of CWs who were "loan level underwriters, not managers or corporate officers who could have spoken to the company's practices broadly"); *Frankfurt-Trust Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 223 (S.D.N.Y. 2018), *aff'd sub nom. Kapitalforeningen Lægernes Inv. v. United Techs. Corp.*, 779 F. App'x 69 (2d Cir. 2019) (disregarding allegations from employees who worked within one unit and "had no insight" into other corporate units).

*Second*, FE-3 left in May 2022, three months **before** the start of the class period, and FE-4 left the Company barely one month into the class period.  ¶¶ 3, 28-29.  Thus, these witnesses "lacked firsthand knowledge" about GigaCloud's operations (much less anything specific to AI) during all or most of the relevant period.  *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *11 (S.D.N.Y. Mar. 30, 2021); *see also In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 580–81 (S.D.N.Y. 2014) (rejecting confidential witness allegations because the witness said "nothing" about the company's conduct during the class period), *aff'd*, 604 F. App'x 62 (2d Cir. 2015); *In re Qudian Inc. Sec. Litig.*, 2019 WL 4735376, at *6 (S.D.N.Y. Sept. 27, 2019) (Furman, J.) (rejecting CW allegations that "provided information concerning an

---

[10] Java is a computer programing code that companies use "to build the applications and websites they offer to their customers."  *See* COURSERA.ORG, "What is Java Used For?," https://www.coursera.org/articles/what-is-java-used-for (last accessed May 17, 2024).

earlier period"); *In re Francesca's Holdings Corp. Secs. Litig.*, 2015 WL 1600464, at \*14 (S.D.N.Y. Mar. 31, 2015) (rejecting CW allegations because CW left firm "near the very beginning of the Class Period" and could not "speak to" events occurring two years later).

*Finally,* during their respective short tenures at the Company, both FE-3 and FE-4 were based in the United States, ¶¶ 28-29, but by Plaintiffs' own admission, China was "where [GigaCloud's] IT development and management is based." ¶ 55. This further undermines any inference that FE-3 and FE-4 would have knowledge about the Company's use of AI technology during the relevant period. *See In re China Mobile Games & Ent. Grp., Ltd Sec. Litig.,* 2016 WL 922711, at \*4 (S.D.N.Y. Mar. 7, 2016) (disregarding statement of a CW who worked at subsidiary remote from where relevant events occurred).

**FEs' Allegations Are Insufficient to Support Falsity.** Even if the FEs' allegations were to be considered, the AC still fails to plead facts—as opposed to mere conclusions—to support its claim that GigaCloud did not use AI technology whatsoever.

*First*, while FE-3 parrots the short-seller report's conclusory allegation that GigaCloud used "AI" and "Machine Learning" as "buzzwords," *compare* ¶ 61, *with* Ex. 4, Culper Rsch. Report at 3, he makes no allegations that GigaCloud did not actually use AI. *See* ¶¶ 61-62.

*Second*, FE-1 and FE-4 respectively assert—without any factual support—that "no AI technology was involved" in Java development, ¶ 57, and that AI was not "part of [the Company's] sales pitches," ¶ 64. But neither of these employees provide any "details lending themselves to corroboration." *DraftKings*, 650 F. Supp. 3d at 155. Indeed, they do not even specify what was actually used in GigaCloud's Java development or sales pitches or offer any factual detail to explain why anyone should expect AI to have been used in these particular aspects of the Company's business. *See Lululemon*, 14 F. Supp. 3d at 580 (dismissing complaint that did "not

13

contain the kind of required specific factual allegations (by CWs or otherwise)" supporting falsity); *Schiro v. Cemez, S.A.B. de. C.V.*, 396 F. Supp. 3d 283, 305 (S.D.N.Y. 2019) (finding confidential witnesses' allegations "too vague, speculative, and conclusory" to be credited). Moreover, even if FE-1 and FE-4 were right, that does not support Plaintiffs' apparent inferential leap that "GigaCloud's logistics operation did not use AI" (¶ 66)—due to AI's inherently supportive, back-end role, it is unremarkable that AI is not part of GigaCloud's every business process or sales proposition. *See Woolgar*, 477 F. Supp. 3d at 221 (rejecting allegations from confidential witnesses because "Plaintiff [did] not establish how any of the CWs' allegations are inconsistent with the challenged statements").

*Finally*, FE-2 alleges that GigaCloud did not use AI in its logistics but rather used "just an [Enterprise Resource Planning] system." ¶ 59. This bare assertion ignores the disclosed fact that GigaCloud's ERP system—along with a suite of other "key support systems"—already incorporates AI technology. Ex. 2, Prospectus at 162. As GigaCloud explained to investors, the Company's ERP system is "capable of gathering and processing orders and procurement and delivery management data to allow for real-time, dynamic stock management as well as technical support for the business development of ecommerce companies." *Id.* In other words, AI is built into the system. *See id.* at 161 ("We use AI and data science to help with inventory management, including deciding when to place orders and in what quantities."); *id.* at 158 (similar). FE-2's claim that the Company used an ERP system is therefore not at all inconsistent with the Company's use of AI technology. *See Woolgar*, 477 F. Supp. 3d at 221.

### C. Plaintiffs Plead No Facts Showing that GigaCloud Misrepresented the Sophistication of Its Technology

Plaintiffs also contend that GigaCloud's statements about its technology were false because the technology it used "was not state-of-the-art" and "would have been found in most warehouse

operations." *E.g.*, ¶¶ 69, 71. But all of the challenged statements are either not false and misleading, or puffery or opinion statements that are inactionable as a matter of law.

In the vast majority of the challenged statements, GigaCloud made no representation in one way or another as to the sophistication of its technology or how it measured up to its peers. *See, e.g.*, App. A, Statement No. 13 ("We have AI software that generates seller ratings and credit profiles"); Statement Nos. 7, 17 ("Our in-house reinforcement learning algorithms are built to optimize our inventory management across our multiple warehouses around the world"); Statement No. 23 ("the engine of the business is the algorithm enabled technology stack, that involves AI and machine learning"). Plaintiffs fail to provide any explanations why these statements are false and misleading. *See Scott v. Gen. Motors Co.*, 46 F. Supp. 3d 387, 395 (S.D.N.Y. 2014) (finding no falsity because "[t]he simple allegation that GM failed to keep inventory levels at industry standard levels is not sufficient to render the statement that GM sought to improve inventory management inaccurate at the time of the effective date"), *aff'd*, 605 F. App'x 52 (2d Cir. 2015); *Cloudera,* 2021 WL 2115303, at \*16 (discrediting Plaintiffs' allegation that challenged statement was false "because Cloudera's customer base was not expanding" where "nothing in the challenged statement claims that Cloudera's customer base was expanding").

To the extent Defendants made any statements about the sophistication of GigaCloud's technology, these statements are general expressions of corporate optimism, or "puffery," which are inactionable as a matter of law because they are "too general to cause a reasonable investor to rely upon them." *In re Supercom Inc. Sec. Litig.*, 2018 WL 4926442, at \*22 (S.D.N.Y. Oct. 10, 2018); *Rombach*, 355 F.3d at 174. Statements such as "we continued to ***revolutionize the industry with our innovative business model and state-of-the-art technology***" (App. A, Statement No. 20), and "machine learning and the algorithms ***are a huge, huge part of what we do***" (Statement No.

21), are classic puffery. *See also* Statement Nos. 5, 9, 23-27, 29. None of these statements was "worded as [a] guarantee." *Supercom*, 2018 WL 4926442, at \*22. Indeed, Plaintiffs freely admit that they were "boastful" statements. *See, e.g.*, ¶¶ 111, 113 (Mr. Schrock "made grandiose boasts"); ¶ 127 ("lofty" statements about the Company's technology). Courts routinely hold similar statements to be inactionable. *See Farfetch*, 2021 WL 4461264, at \*10 ("The claim that Farfetch is 'a technology company at its core,' for example, is the kind of vague 'corporate-speak' that no reasonable investor would rely on in any significant way.").[11]

Further, some of the challenged statements are inactionable under the bedrock legal doctrine immunizing opinions. Statements such that "[w]e believe that the following components contribute to our success . . . " (App. A, Statement No. 2; *see also* Statement Nos. 16, 27) are classic opinions, and Plaintiffs fail to adequately allege that any Defendant did not hold the "belief[s] professed," "suppl[ied] an untrue supporting fact," or "omit[ted] information whose omission makes the statement misleading to a reasonable investor."[12]

In an effort to manufacture a misstatement, Plaintiffs again rely on the FE allegations. Revealingly, FE-1 only corroborated the challenged statements by stating—correctly—that GigaCloud had "intricate management systems" that were "tasked with handling complex business process." ¶ 57. In other words, FE-1's allegations only contradict, and thus undermine the

---

[11] *See also Kusnier v. Virgin Galactic Holdings, Inc.*, 639 F. Supp. 3d 350, 374 (E.D.N.Y. 2022) (statements where defendant "hailed" company as "light years ahead of the competition" and "boasted" of its "customer satisfaction" were pure puffery); *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.,* 300 F. Supp. 3d 551, 569-570 (S.D.N.Y. 2018) (statements touting "competitive advantage," "great technology," and "expectations of business success" were "mere puffery"), *aff'd sub nom. Ark. Pub. Emps. Ret. Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir. 2019); *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 524, 541 (S.D.N.Y. 2020) (statement that company provided "best entertainment experience in the world" was puffery).

[12] *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016); *Schaffer v. Horizon Pharma PLC*, 2018 WL 481883, at \*10 (S.D.N.Y. 2018) (Furman, J.); *see generally* AC.

16

reliability of, the remaining FE allegations. *See Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1038 (N.D. Cal. 2012), *aff'd,* 561 F. App'x 598 (9th Cir. 2014) ("[T]he confidential witness statements in the TAC are unreliable because they contradict statements made by the same group of witnesses in the SAC."); *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 133 (2d Cir. 2011) ("The inconsistencies in the complaint as to this critical allegation undermine the force of [plaintiff]'s contention that the corresponding disclosures were misleading.").

Moreover, allegations from two other FEs who spoke on this issue, even if taken at face value, do not show any falsity. Specifically, FE-3 asserts that GigaCloud's technology was "less sophisticated than what Amazon and Walmart are doing," and FE-2 and FE-3 both allege that GigaCloud operates in a way similar to "most warehouse operations." ¶¶ 59, 61. But a reasonable investor would expect a company that was founded in 2006 and went public in August 2022 to have less sophisticated technology than the world's two largest retailers, and GigaCloud has never claimed otherwise.[13] *See Sogou*, 465 F. Supp. 3d at 415 (dismissing claims where plaintiffs did not state "concrete facts" showing that statements regarding AI capabilities were false).[14]

---

[13] Mr. Schrock did not purport to compare GigaCloud with Amazon and Walmart when he stated that GigaCloud was "the only company *in this space* that load balances using AI." ¶¶ 180-81. Instead, Mr. Schrock was comparing GigaCloud to similar marketplace providers for furniture and other large parcel merchandise. Thus, even if this puffery statement was treated as an actionable statement of fact—which it should not, *see Cloudera*, 2021 WL 2115303, at *17 (statements that "we are better than Amazon on Amazon" and "our functionality is best-in-class" were "vague remarks of corporate optimism")—Plaintiffs fail to allege that it was false.

[14] The AC also appears to challenge Aegis's post-IPO analyst report about GigaCloud dated October 3, 2022, which "echoed the Registration Statement's portrayal of AI and Machine Learnings." ¶ 54. Plaintiffs, though, only brought a Section 11 claim against Aegis, which is limited to alleged misstatements in registration statements; the analyst report is irrelevant to that claim. *See In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 175 (2d Cir. 2011) ("Section 11 provides the purchasers of registered securities with strict liability protection for material misstatements or omissions in *registration statements* filed with the SEC."). In any event, Aegis's report, which mentions the Company's use of AI in two short paragraphs, "echoed" the disclosures in the Offering Materials and does not show falsity for the same reasons. Ex. 10, Aegis Analyst Report at 5; ¶ 54.

17

## III.    THE ABSENCE OF LOSS CAUSATION REQUIRES DISMISSAL

Plaintiffs' claims also fail because their alleged losses could not have been caused by the alleged misstatements.  Under the Exchange Act, Plaintiffs must allege that a "misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).  Similarly, Securities Act claims should be dismissed where "it is apparent on the face of the complaint that the alleged loss is not causally connected to the misrepresentations at issue."  *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011).  Because the analysis is functionally the same, courts in this District routinely dismiss Securities Act claims when dismissing overlapping Exchange Act claims for failure to plead loss causation.[15]

Plaintiffs' only attempt to plead loss causation is their reference to 38 words in the 27-page short-seller report.  ¶¶ 191-93; Ex. 4, Culper Rsch. Report at 3 ("GCT itself doesn't even disclose software development expenses or capitalized software costs in its financial statements, and we couldn't find a single GCT employee on LinkedIn or otherwise who claimed to have developed any AI for the Company.").  But this purported corrective disclosure corrects nothing and is insufficient to show loss causation for the following reasons.

*First*, as discussed *supra* in Section II, GigaCloud's statements were neither false nor misleading, so there was nothing to "correct."  Culper Research's musings about the Company's prior disclosures and its claim that it could not find information on LinkedIn (*see* ¶ 192) do not "reveal" any new information at all, much less anything that "corrects" the earlier statements.[16]

---

[15] *See, e.g.*, *Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416 (2d Cir. 2011); *MINISO*, 2024 WL 759246, at *19-20; *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 559–60 (S.D.N.Y. 2021); *Boluka Garment Co., Ltd. v. Canaan Inc.*, 547 F. Supp. 3d 439, 447 (S.D.N.Y. 2021).

[16] Indeed, the claim that Culper Research "couldn't find" information on LinkedIn is itself misleading because it omits to state that LinkedIn has not operated in China for several years.  *See*

*See Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 173 n.30 (S.D.N.Y. 2015) ("[A] particular disclosure constitutes a sufficient foundation for loss causation allegations only if it somehow reveals to the market that a defendant's prior statements were not entirely true or accurate.").

*Second*, the Second Circuit has long held that negative "characterization of previously disclosed facts does not constitute a corrective disclosure." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010); *accord Espy v. J2 Glob., Inc.*, 99 F.4th 527, 542 (9th Cir. 2024) (finding short-seller report not a corrective disclosure when the report's "analysis was based only on a careful reading of public documents"). Here, the short-seller report makes clear that it merely reviewed "information that was already publicly available" (*i.e.*, the Company's financial statements and LinkedIn) and then "expressed negative opinions about [the Company]" based on such information. *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (affirming dismissal for lack of loss causation). This is insufficient as a matter of law. *See, e.g.*, *Opera Ltd.*, 527 F. Supp. 3d at 559–61 (no loss causation for Section 10(b) and Section 11 claims where short-seller report "merely analyzed the public data"); *MINISO*, 2024 WL 759246, at *20 (dismissing Section 10(b) and Section 11 claims where short-seller report "did not disclose any new facts"); *Fila v. Pingtan Marine Enterprises Ltd.*, 195

---

"LinkedIn to cut 716 jobs and shut its China App amid 'challenging' economic climate," CNN (May 9, 2023), cnn.com/2023/05/09/tech/linkedin-layoffs-exit-china-app-intl-hnk/index.html. LinkedIn suspended new signups in 2021 and ended operations entirely more than a year ago. *Id.* In other words, it is hardly remarkable that Culper Research could not find information about any China-based employees using this application.

19

F. Supp.3d 489, 396-97 (S.D.N.Y. 2016) ("Plaintiffs cannot use the [analyst] article to plausibly allege loss causation because it is based solely on public information.").

*Third*, reasonable investors will not plausibly view the short-seller report as revealing the falsity of the challenged statements, because the report was published by someone who had a disclosed financial interest in driving down GigaCloud's stock price and who expressly disclaimed any representation "as to the accuracy, timeliness, or completeness of any such information or with regard to the results to be obtained from its use." ¶ 191 ("We are short" GigaCloud stock); Ex. 4, Culper Rsch. Report at 1; *see Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1208-09 (9th Cir. 2020) (article written by anonymous short-seller based on public information, which required no "specialized skills" and included similar disclaimers, did not constitute corrective disclosure).

*Fourth*, there is no basis to infer that 38 words in a 27-page report challenging various Company practices was "a but-for cause or cause-in-fact of the losses suffered." *Omnicom*, 597 F.3d at 510. Unsurprisingly, investors and analysts who commented on the short-seller report focused on the report's other unsubstantiated and now-disproven claims—allegations so frivolous that even Plaintiffs could not repeat them here—rather than the report's few passing words about AI.[17] This severs any causal link between the alleged misstatements and the drop in stock prices at which Plaintiffs traded and requires dismissal as a matter of law. *See Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, 2019 WL 1436993, at *11 (S.D.N.Y. Mar. 30, 2019) ("[M]ultiple salient factors that clearly contributed to the Company's failure . . . bar the conclusion

---

[17] *See, e.g.*, "GigaCloud Technology: My Take On Short Report," SEEKING ALPHA (Nov. 6, 2023), https://seekingalpha.com/article/4648068-gigacloud-technology-my-take-on-short-report; "GigaCloud's E-Commerce Success Story Is Fact or Fiction? Culper Research's Short Report Raises Doubts," BENZINGA (Sept. 28, 2023), https://www.benzinga.com/news/23/09/34978162/gigaclouds-e-commerce-success-story-is-fact-or-fiction-culper-researchs-short-report-raises-doubts.

that the alleged misrepresentations caused Plaintiffs' losses."); *Plumbers, Pipefitters & MES Loc. Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 338 (S.D.N.Y. 2012) (dismissing plaintiff's claim for lack of "logical connection between [alleged disclosure] and [p]laintiff's vague allegations").

Accordingly, Plaintiffs have failed adequately to plead loss causation, and all of their claims must be dismissed.

## IV.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER

Finally, Plaintiffs' claims under Section 10(b) of the Exchange Act also fail because the AC does not come close to pleading the required "strong inference" of scienter—*i.e.*, an "intent to deceive, manipulate, or defraud." 15 U.S.C. § 78u-4(b)(2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). "[I]t is not sufficient to set out facts from which, if true, a reasonable person *could* infer that the defendant acted with the required intent." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110-11 (2d Cir. 2009). Rather, the requisite "strong" inference must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. The Second Circuit has long held that this required Plaintiffs to allege particularized facts showing (i) defendants had the "motive and opportunity to commit fraud" or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). The AC does neither.

### A.    Plaintiffs Fail to Plead A Cognizable Motive

To adequately plead motive, Plaintiffs must allege facts establishing "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 270 (S.D.N.Y. 2009); *ECA*, 553 F.3d at 198 (plaintiffs must plead facts showing that defendants "benefitted in some concrete and

21

personal way from the purported fraud"). "General allegations that [] defendants acted in their economic self-interest are not enough." *Bd. Of Trs. Of Ft. Lauderdale Gen. Emps.' Ret. Sys. V. Mechel OAO*, 811 F. Supp. 2d 853, 866 (S.D.N.Y. 2011), *aff'd*, 475 F. App'x 353 (2d Cir. 2012). Here, Plaintiffs do not even attempt to plead any motive on behalf of any officers or directors of the Company. *See generally* ¶¶ 130-47. Nor could they, where none of the individuals transacted any Company shares during the class period. *Compare* Ex. 2, Prospectus at 195, *with* Ex. 11, 2022 20-F at 138; *Bristol-Myers*, 658 F. Supp. 3d at 231 ("the absence of any allegation that the Executive Defendants purchased additional shares of [issuer shares] undermines Plaintiffs' [scienter] allegations"); *Saraf v. Ebix, Inc.*, 632 F. Supp. 3d 389, 396 (S.D.N.Y. 2022) (Furman, J.) (finding "motive and opportunity arguments fail" where plaintiff "does not allege that [defendant] sold shares during the class period") (citing *Rombach*, 355 F.3d at 177).

### B.    Plaintiffs Do Not Plead Conscious Misbehavior or Recklessness

To survive dismissal, "Plaintiffs must allege either actual intent or conscious recklessness—i.e., a state of mind approximating actual intent, and not merely a heightened form of negligence." *Pirnik v. Fiat Chrysler Autos., N.V.*, 2017 WL 3278928, at *2 (S.D.N.Y. Aug. 1, 2017) (Furman, J.). Specifically, Plaintiffs' allegations "must show that individual defendants actually possessed the knowledge highlighting the falsity of public statements; conclusory statements that defendants 'were aware' of certain information, and mere allegations that defendants 'would have' or 'should have' had such knowledge is insufficient." *Id.* at 3. And because Plaintiffs plead no motive, they bear an even heavier burden to establish a "strong inference" of scienter. *See Marcu v. Cheetah Mobile Inc.*, 2020 WL 4016645, at *7 (S.D.N.Y. July 16, 2020) (Furman, J.) (without motive, allegations of scienter must be "correspondingly greater"). Here, Plaintiffs' only alleged basis—allegations from the anonymous FEs—"do[es] not get them across the goal line." *Pirnik*, 2017 WL 3278928, at *3.

22

To begin, FE-1 and FE-2 were not even alleged to have "any contact with the [Speaker] Defendants" and thus do not "have knowledge of what they knew or should have known during the Class Period." *See generally* ¶¶ 130-47; *Woolgar*, 477 F. Supp. 3d at 238; *see also Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 799 n.19 (S.D.N.Y. 2020) (plaintiff must describe "CW's contact with the individual defendants that would be probative of defendants' mental state").

Next, FE-4 allegedly joined "Zoom calls with Wu regarding how to conduct the business, which occurred every few months." ¶ 64. But this "vague" allegation that executives attended meetings is "meaningless," as there is no allegation about when the meetings occurred or what was actually discussed or really anything that would allow the Court to infer what Mr. Wu knew about GigaCloud's use of AI and other technology based on those calls. *See In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (finding that an allegation from a confidential witness was "so vague as to be meaningless" because it contained no time frame and no indication regarding "how extensively or in what matter" the matters at issue were discussed); *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021) (scienter not pled where plaintiffs "fail[] to specify exactly what information was contained in the report or how said information contradicted Defendants' public statements"); *Shemian v. Rsch. In Motion Ltd.*, 2013 WL 1285779, at *16 (S.D.N.Y. Mar. 29, 2013) (same), *aff'd*, 570 F. App'x 32 (2d Cir. 2014).

FE-3, who left the Company three months before the Class Period, similarly claimed that he "spoke with Wu almost every day," ¶¶ 28, 131, which does not give rise to scienter. FE-3's allegation that Mr. Wu "was a 'hands-on' micromanager" (¶ 131) and Mr. Schrock had "broad access" to Company information (¶ 137) could describe nearly any executive and these conclusory allegations are insufficient, as a matter of law, to plead scienter about any particular statement. *See Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*, 445 F. App'x 368, 370 (2d Cir. 2011)

(finding "vague and general averments" that executives had access to "real-time customer and sales information" insufficient to demonstrate scienter).  Finally, FE-3's personal views that GigaCloud used AI as "buzzwords" (¶ 112) says nothing about any *individual Moving Defendant's* belief at the time they made the relevant statements.  *See Wyche v. Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *15 (S.D.N.Y. Mar. 10, 2017) ("differences of opinion, even stark differences . . . do not reveal scienter"), *aff'd*, 710 F. App'x 471 (2d Cir. 2017); *Harris*, 135 F. Supp. 3d at 171 ("disagreement with management's choices among alternative estimates" did not support fraud); *In re Weight Watchers Int'l, Inc. Sec. Litig.*, 2016 WL 2757760, at *7 (S.D.N.Y. May 11, 2016) (rejecting "grandiose and hyperbolic assertion [because it was] a characterization or opinion of the witness, not an objectively testable statement of fact").

### C.    Plaintiffs Fail to Allege Scienter as to GigaCloud

Because Plaintiffs fail to plead scienter on the part of any individual, they also fail to allege corporate scienter.  *See Colbert v. Rio Tinto PLC*, 392 F. Supp. 3d 329, 338 (S.D.N.Y. 2019), *aff'd*, 824 F. App'x 5 (2d Cir. 2020).  Plaintiffs resort to the familiar fallback of the "core operations" doctrine, *see* ¶ 140, but this is (at most) a "supplementary" but not "independently sufficient means to plead scienter."  *Bristol-Myers*, 658 F. Supp. 3d at 234 ("[I]t is far from clear that the core operations doctrine remains valid in light of the PSLRA"); *see also Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020).  And, in any event, the doctrine is not applicable here where the allegations concern use of one particular form of technology to support one aspect of GigaCloud's operations.  *See Frankfurt-Trust*, 336 F. Supp. 3d at 225 ("[C]ourts have required that the operation

in question constitute nearly all of a company's business before finding scienter [based on the 'core operations doctrine'].").

## V.      THE AC FAILS TO PLEAD CONTROL PERSON LIABILITY

Because Plaintiffs fail to plead the requisite primary violations of the Exchange Act and Securities Act, their "control person" claims under Section 20(a) of the Exchange Act and Section 15 of the Securities Act must also be dismissed.  *Bristol-Myers*, 658 F. Supp. 3d at 238.

## CONCLUSION

For the foregoing reasons, Moving Defendants respectfully request that the AC be dismissed with prejudice.

Dated:  May 17, 2024
        New York, New York

Respectfully submitted,

**LATHAM & WATKINS LLP**

/s/ Jason C. Hegt
Jeff G. Hammel
Jason C. Hegt
Hanyu (Iris) Xie
Chengliang (Larry) Hong
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  jeff.hammel@lw.com
Email:  jason.hegt@lw.com
Email:  iris.xie@lw.com
Email:  larry.hong@lw.com

*Attorneys for GigaCloud Technology Inc,*
*Larry Lei Wu, Iman Schrock, Xin Wan*

**SICHENZIA ROSS FERENCE**
**CARMEL LLP**

/s/ John J. Elliott
Sameer Rastogi, Esq.
John J. Elliott, Esq.

25

1185 Avenue of the Americas, 31st Floor
New York, New York 10036
Telephone: (212) 930-9700
Facsimile: (212) 930-9725
Email: srastogi@srfc.law
Email: jelliott@srfc.law

*Attorneys for Aegis Capital Corp.*