**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>IN RE GIGACLOUD TECHNOLOGY<br>INC SECURITIES LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS</td><td>**Case No. 1:23-cv-10645-JMF**<br><br><u>**CLASS ACTION**</u><br><br>**ALL ACTIONS**</td></tr>
</table>

**MEMORANDUM OF LAW IN SUPPORT OF GIGACLOUD TECHNOLOGY INC,**
**LARRY LEI WU, XIN WAN, KWOK HEI DAVID LAU,**
**AND AEGIS CAPITAL CORP.'S MOTION TO DISMISS**
<u>**THE SECOND AMENDED CLASS ACTION COMPLAINT**</u>

LATHAM & WATKINS LLP
Jeff G. Hammel
Jason C. Hegt
Hanyu (Iris) Xie
Chengliang (Larry) Hong
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

*Attorneys for GigaCloud Technology Inc,*
*Larry Lei Wu, Xin Wan, and Kwok Hei David*
*Lau*

SICHENZIA ROSS FERENCE CARMEL
LLP
Sameer Rastogi
John J. Elliott
1185 Avenue of the Americas, 31st Floor
New York, New York 10036
(212) 930-9700

*Attorneys for Aegis Capital Corp.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .......................................................................................................................2

      A.     GigaCloud, the Individual Moving Defendants, and Aegis.....................................2

      B.     The August 2022 IPO and Subsequent Disclosures ................................................2

      C.     Short Seller Reports, the Company's Responses, and Recovery in Stock Price ......................................................................................................................4

      D.     This Lawsuit..........................................................................................................6

ARGUMENT .............................................................................................................................7

I.       LEGAL STANDARD......................................................................................................7

II.      PLAINTIFFS FAIL TO ALLEGE ANY MISSTATEMENT OR OMISSION .................8

      A.     GigaCloud Did Not Misrepresent Its Use of AI .....................................................8

             1.     Plaintiffs Plead No Facts to Suggest That GigaCloud Did Not Use AI .................................................................................................................8

             2.     Plaintiffs Plead No Facts Showing That GigaCloud Misrepresented the Sophistication of Its Technology ...........................................................11

      B.     GigaCloud Did Not Misrepresent Transactions in Its Marketplace........................12

             1.     Plaintiffs Fail to Adequately Allege Any Undisclosed Related Parties...............................................................................................................12

             2.     GigaCloud Accurately Disclosed the Transactions in Its Marketplace..................................................................................................14

             3.     Plaintiffs Fail to Allege That the Transactions Were Material ..................16

III.     PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER .................16

      A.     Plaintiffs Fail to Plead A Cognizable Motive .......................................................17

      B.     Plaintiffs Do Not Plead Conscious Misbehavior or Recklessness.........................19

      C.     The Non-Fraudulent Inference Is More Compelling .............................................21

IV.    THE ABSENCE OF LOSS CAUSATION REQUIRES DISMISSAL............................22

V.     PLAINTIFFS FAIL TO ALLEGE A FRAUDULENT SCHEME....................................24

VI.    PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY .............................25

CONCLUSION.........................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Afr. v. Jianpu Tech. Inc.*,
  2022 WL 4537973 (S.D.N.Y. Sept. 28, 2022)..........................................................................16

*Altimeo Asset Mgmt. v. WuXi PharmaTech (Cayman) Inc.*,
  2020 WL 6063539 (S.D.N.Y. Oct. 14, 2020)............................................................................15

*Amorosa v. AOL Time Warner Inc.*,
  409 F. App'x 412 (2d Cir. 2011) ..............................................................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................................7

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
  506 F. App'x 32 (2d Cir. 2012) ..................................................................................................8

*Boluka Garment Co., Ltd. v. Canaan Inc.*,
  547 F. Supp. 3d 439 (S.D.N.Y. 2021)................................................................................16, 22

*Buhrke Fam. Revocable Tr. v. U.S. Bancorp*,
  2024 WL 1330047 (S.D.N.Y. Mar. 28, 2024) ..........................................................................24

*Canez v. Intelligent Sys. Corp.*,
  2021 WL 3667012 (E.D.N.Y. Aug. 18, 2021)..........................................................................23

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
  543 F. App'x 72 (2d Cir. 2013) ..........................................................................................22, 23

*City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*,
  412 F. Supp. 3d 206 (E.D.N.Y. 2019) ......................................................................................19

*Colbert v. Rio Tinto PLC*,
  392 F. Supp. 3d 329 (S.D.N.Y. 2019), *aff'd*, 824 F. App'x 5 (2d Cir. 2020)..........................22

*Cortina v. Anavex Life Scis. Corp.*,
  2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016) ..........................................................................21

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)......................................................................................................17

*Espy v. J2 Glob., Inc.*,
  99 F.4th 527 (9th Cir. 2024) ..................................................................................24

*Fila v. Pingtan Marine Enterprises Ltd.*,
  195 F. Supp. 3d 489 (S.D.N.Y. 2016)......................................................................23

*Francisco v. Abengoa, S.A.*,
  481 F. Supp. 3d 179 (S.D.N.Y. 2020)......................................................................14

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,
  336 F. Supp. 3d 196 (S.D.N.Y. 2018), *aff'd sub nom. Kapitalforeningen
  Lægernes Inv. v. United Techs. Corp.*, 779 F. App'x 69 (2d Cir. 2019) ...................9

*Friedman v. Endo Int'l PLC*,
  2018 WL 446189 (S.D.N.Y. Jan. 16, 2018) ...........................................................25

*Harris v. AmTrust Fin. Servs., Inc.*,
  135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016).........15

*In re AT&T/DirecTV Now Sec. Litig.*,
  480 F. Supp. 3d 507 (S.D.N.Y. 2020)......................................................................12

*In re Audible Inc. Sec. Litig.*,
  2007 WL 1062986 (D.N.J. Apr. 3, 2007) ................................................................19

*In re Bristol-Myers Squibb Co. CVR Sec. Litig.*,
  658 F. Supp. 3d 220 (S.D.N.Y. 2023).....................................................7, 8, 16, 25

*In re Canopy Growth Sec. Litig.*,
  2024 WL 3445436 (S.D.N.Y. July 17, 2024) .........................................................14

*In re China Mobile Games & Ent. Grp., Ltd Sec. Litig.*,
  2016 WL 922711 (S.D.N.Y. Mar. 7, 2016) .......................................................10, 14

*In re China Organic Sec. Litig.*,
  2013 WL 5434637 (S.D.N.Y. Sept. 30, 2013) ........................................................24

*In re Cloudera, Inc.*,
  2021 WL 2115303 (N.D. Cal. May 25, 2021) ...........................................................9

*In re Doral Fin. Corp. Sec. Litig.*,
  563 F. Supp. 2d 461 (S.D.N.Y. 2008)......................................................................20

*In re DraftKings Inc. Sec. Litig.*,
  650 F. Supp. 3d 120 (S.D.N.Y. 2023)..........................................................14, 18, 21

*In re Farfetch Ltd. Sec. Litig.*,
2021 WL 4461264 (S.D.N.Y. Sept. 29, 2021), *aff'd sub nom. IAM Nat'l
Pension Fund v. Farfetch Ltd.*, 2023 WL 2879304 (2d Cir. Apr. 11, 2023) ...................8, 9, 11

*In re Francesca's Holdings Corp. Secs. Litig.*,
2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015) ........................................................................10

*In re Gildan Activewear, Inc. Sec. Litig.*,
636 F. Supp. 2d 261 (S.D.N.Y. 2009).............................................................................17, 18

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
2021 WL 4341500 (S.D.N.Y. Sept. 22, 2021)..................................................................13, 14

*In re Iconix Brand Grp., Inc.*,
2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017)..........................................................................18

*In re Ideanomics, Inc., Sec. Litig.*,
2022 WL 784812 (S.D.N.Y. Mar. 15, 2022) ..........................................................................24

*In re Keryx Biopharmaceuticals, Inc., Sec. Litig.*,
2014 WL 585658 (S.D.N.Y. Feb. 14, 2014)............................................................................19

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
650 F.3d 167 (2d Cir. 2011)...................................................................................................17

*In re Lehman Bros. Sec. & Erisa Litig.*,
2013 WL 3989066 (S.D.N.Y. July 31, 2013) ...........................................................................9

*In re LexinFintech Holdings Ltd. Sec. Litig.*
2021 WL 5530949 (D. Or. Nov. 24, 2021)..............................................................................24

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)....................18, 19

*In re MINISO Grp. Holding Ltd. Sec. Litig.*,
2024 WL 759246 (S.D.N.Y. Feb. 23, 2024)..............................................................8, 22, 23

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010)...................................................................................................23

*In re Rockwell Med., Inc. Sec. Litig.*,
2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ........................................................................13

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816
F.3d 199 (2d Cir. 2016)............................................................................................................2

v

*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*,
  774 F. Supp. 2d 584 (S.D.N.Y. 2011)......................................................................22

*Jackson v. Abernathy*,
  960 F.3d 94 (2d Cir. 2020)....................................................................................21

*Janbay v. Canadian Solar, Inc.*,
  2013 WL 1287326 (S.D.N.Y. Mar. 28, 2013), *aff'd* (Dec. 20, 2013) .....................20

*Jiajia Luo v. Sogou, Inc.*,
  465 F. Supp. 3d 393 (S.D.N.Y. 2020)....................................................................10

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
  897 F. Supp. 2d 168 (S.D.N.Y. 2012), *aff'd sub nom. Cent. States, Se. & Sw.
  Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72 (2d
  Cir. 2013) ............................................................................................................15

*Lau v. Opera Ltd.*,
  527 F. Supp. 3d 537 (S.D.N.Y. 2021)...............................................................22, 23

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)..................................................................................22

*LifeMD, Inc. v. Lamarco*,
  607 F. Supp. 3d 576 (W.D. Pa. 2022).......................................................................4

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
  518 F. Supp. 3d 772 (S.D.N.Y. 2021)....................................................................20

*Marcu v. Cheetah Mobile Inc.*,
  2020 WL 4016645 (S.D.N.Y. July 16, 2020) ....................................................19, 20

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
  300 F. Supp. 3d 551 (S.D.N.Y. 2018), *aff'd sub nom. Ark. Pub. Emps. Ret.
  Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir. 2019) ............................................12

*Olkey v. Hyperion 1999 Term Tr., Inc.*,
  98 F.3d 2 (2d Cir. 1996).........................................................................................9

*Pirnik v. Fiat Chrysler Autos., N.V.*,
  2017 WL 3278928 (S.D.N.Y. Aug. 1, 2017) ..........................................................19

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
  11 F.4th 90 (2d Cir. 2021) ...............................................................................24, 25

*Reilly v. U.S. Physical Therapy, Inc.*,
  2018 WL 3559089 (S.D.N.Y. July 23, 2018)..........................................................18

*Ret. Sys. v. Mechel OAO*,
   811 F. Supp. 2d 853 (S.D.N.Y. 2011), *aff'd*, 475 F. App'x 353 (2d Cir. 2012).....................17

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)..................................................................................................8

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
   573 F.3d 98 (2d Cir. 2009)..................................................................................................17

*S.E.C. v. Kelly*,
   817 F. Supp. 2d 340 (S.D.N.Y. 2011)..................................................................................25

*Saraf v. Ebix, Inc.*,
   2023 WL 4561655 (S.D.N.Y. July 17, 2023), *aff'd*, 2024 WL 1298246 (2d
   Cir. Mar. 27, 2024) ..............................................................................................................2

*Saskatchewan Healthcare Emp's. Pension Plan v. KE Holdings Inc.*,
   2024 WL 775195 (S.D.N.Y. Feb. 26, 2024)........................................................................21

*Schaffer v. Horizon Pharma PLC*,
   2018 WL 481883 (S.D.N.Y. 2018) ......................................................................................16

*Schiro v. Cemez, S.A.B. de. C.V.*,
   396 F. Supp. 3d 283 (S.D.N.Y. 2019)..................................................................................10

*Scott v. Gen. Motors Co.*,
   46 F. Supp. 3d 387 (S.D.N.Y. 2014), *aff'd*, 605 F. App'x 52 (2d Cir. 2015)........................11

*Tabor v. Bodisen Biotech, Inc.*,
   579 F. Supp. 2d 438 (S.D.N.Y. 2008)..................................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)......................................................................................................17, 21

*Tyler v. Liz Claiborne, Inc.*,
   814 F. Supp. 2d 323 (S.D.N.Y. 2011)..................................................................................25

*Villare v. Abiomed, Inc.*,
   2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021)......................................................................18

**STATUTES**

15 U.S.C. § 78u-4(b)(2) ............................................................................................................17

**RULES**

Fed. R. Civ. P. 9(b) ...............................................................................................................7, 8

## GLOSSARY OF TERMS USED

The following terms are used in this memorandum:

| | |
|---|---|
| AC | Amended Complaint (ECF No. 59) |
| Aegis | Aegis Capital Corp. |
| AI | Artificial Intelligence |
| B2B | Business to Business |
| Board | GigaCloud's Board of Directors |
| Culper or Shadyside | Shadyside Partners, LLC, aka "Culper Research" |
| Culper Report | Culper's September 28, 2023 report titled "GigaCloud Technology Inc (NASDAQ:GCT): If It's Too Good To Be True..." |
| CW | Confidential Witness |
| DOJ | U.S. Department of Justice |
| Exchange Act | Securities Exchange Act of 1934 |
| FE | Former Employee |
| GigaCloud or the Company | GigaCloud Technology Inc |
| GigaCloud 1P | GigaCloud's revenue stream that generates product revenues through the sale of GigaCloud's inventory in GigaCloud Marketplace |
| GigaCloud 3P | GigaCloud's revenue stream that generates service revenues by facilitating transactions between sellers and buyers in GigaCloud Marketplace |
| GigaCloud Marketplace | GigaCloud's e-commerce platform |
| GigaCloud Marketplace GMV | The total gross merchandise value of transactions ordered through GigaCloud Marketplace, including GigaCloud 3P and GigaCloud 1P, before any deductions of value |

iii

| | added tax, goods and services tax, shipping charges paid by buyers to sellers, and refunds |
|---|---|
| GMV | Total gross merchandise value |
| Grizzly | Grizzly Research LLC |
| Grizzly Report | Grizzly's May 22, 2024 report titled "GigaCloud Technology Inc – Another China Hustle Inflating Key Metrics Using Undisclosed Related Party Shell Companies" (ECF No. 88-1) |
| IPO | Initial Public Offering |
| ML | Machine Learning |
| Moving Defendants | GigaCloud, Larry Lei Wu, Xin Wan, Kwok Hei David Lau, and Aegis |
| Nasdaq | Nasdaq Stock Exchange |
| Off-Platform E-commerce | GigaCloud's revenue stream that generates product revenues through the sale of GigaCloud's own inventory to and through third-party e-commerce platforms |
| Offering Materials or OM | GigaCloud's Registration Statement on Form 1, effective August 17, 2022, including Prospectus on Form 424B, dated August 19, 2022, and Issuer Free Writing Prospectus, dated August 2, 2022 |
| Plaintiffs | Co-Lead Plaintiffs Sashi Rajan and Meir Spear |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| SAC | Second Amended Complaint (ECF No. 88), cited as ¶__ and attached as Exhibit 1 |
| SEC | U.S. Securities and Exchange Commission |
| Securities Act | Securities Act of 1933 |

iv

Defendants GigaCloud Technology Inc ("GigaCloud" or the "Company"), Larry Lei Wu, Xin Wan, Kwok Hei David Lau, and Aegis Capital Corp. ("Aegis") (collectively, "Moving Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Second Amended Complaint ("SAC," cited as ¶__) (ECF No. 88) (Ex. 1).[1]

## PRELIMINARY STATEMENT

In August 2022, GigaCloud conducted one of the most successful IPOs in recent years.  In the two years since its IPO, GigaCloud has grown substantially, regularly exceeded earnings expectations, and doubled its IPO stock price.  GigaCloud's strong performance is good news for everyone *except* the short-sellers who bet against its stock and hoped to profit from a decline.  For that reason, in the last few months, two short-sellers published false and misleading reports about GigaCloud to try to drive down its stock price.  Although the reports were frivolous on their face and the Company's stock price rapidly recovered, Plaintiffs now attempt to profit from these temporary declines.  Their claims have absolutely no merit and should be dismissed with prejudice.

*First*, Plaintiffs do not plead any misstatement.  Although Plaintiffs' theory has been a shifting target, the SAC now challenges statements about GigaCloud's use of AI and certain of its financial metrics.  However, the AI claims are based on speculation by FEs whose positions were far removed from the limited ways that the Company disclosed that it used AI, and the financial metric claims are based on the novel theory that defendants should have disclosed data based on a standard that Plaintiffs invented for this lawsuit.  *See* Section II.

*Second*, Plaintiffs do not plead scienter.  The SAC's allegations about modest stock sales run directly counter to a long line of caselaw in this District holding that such allegations do not

---

[1] Unless otherwise indicated herein, all internal citations and quotation marks are omitted, emphasis is added, and citations to "Ex." refer to exhibits attached to the Declaration of Hanyu (Iris) Xie, submitted herewith.

1

show scienter as a matter of law, and the SAC's familiar fallback on the so-called "core operations" theory has already been rejected by this Court. *See* Section III.

*Third*, Plaintiffs cannot show loss causation because—by their own admission—the short-seller reports merely offered negative commentary on publicly available information, which the Second Circuit has held is insufficient to plead loss causation. *See* Section IV.

## BACKGROUND[2]

### A.    GigaCloud, the Individual Moving Defendants, and Aegis

Founded in 2006, GigaCloud is a leading B2B marketplace provider for furniture and other large parcel merchandise. ¶ 9; *see* Ex. 2, Prospectus at 1. Its e-commerce platform, known as "GigaCloud Marketplace," was launched in January 2019 and integrates merchandise display, payments, and logistics tools into one user-friendly platform, and connects manufacturers, primarily in Asia, with resellers, primarily in the U.S., Asia, and Europe. ¶ 9; Ex. 2, Prospectus at 1. GigaCloud completed an IPO and its stock began trading on Nasdaq in August 2022. ¶¶ 20, 52. The individual Moving Defendants are former and current officers and directors of GigaCloud. ¶¶ 21-23. Defendant Aegis was the sole underwriter of GigaCloud's IPO. ¶ 30.

### B.    The August 2022 IPO and Subsequent Disclosures

As part of the IPO, GigaCloud filed with the SEC a Registration Statement and certain prospectuses, which formed part of the Registration Statement (collectively, the "Offering

---

[2] This background is drawn from (i) the well-pleaded factual allegations in the SAC and documents referenced therein, (ii) GigaCloud's SEC filings, and (iii) "information already in the public domain and facts known or reasonably available to the shareholders." *See In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 517 n.1, 539 n.13 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016); *Saraf v. Ebix, Inc.,* 2023 WL 4561655, at *1 (S.D.N.Y. July 17, 2023) (Furman, J.), *aff'd*, 2024 WL 1298246 (2d Cir. Mar. 27, 2024).

Materials"). ¶ 2. The 342-page set of Offering Materials contained extensive disclosures, detailing GigaCloud's business model and technology systems. *See generally* Exs. 2-3.

The Offering Materials disclosed that GigaCloud has three primary revenue streams:

- GigaCloud 3P, which "generates service revenues by facilitating transactions between sellers and buyers in [the] GigaCloud Marketplace";
- GigaCloud 1P, which "generates product revenues through the sale of [GigaCloud's own] inventory in [the] GigaCloud Marketplace"; and
- Off-Platform E-commerce, which "generates product revenues through the sale of [GigaCloud's] inventory to and through third-party ecommerce websites."

Ex. 2, Prospectus at 117. Specifically, GigaCloud 3P involves GigaCloud earning money by taking commission and/or providing logistics services (*e.g.*, shipping, warehousing, or delivering the goods to the end consumer) to the buyer when ***third parties*** sell a product in the Marketplace. *Id.* at 119. For GigaCloud 1P, GigaCloud earns money by selling its ***own inventory*** in the Marketplace and/or providing logistics services to the buyer.[3] *Id.* at 120. And for Off-Platform E-Commerce, GigaCloud sells its own inventory either to third-party e-commerce websites, or directly to consumers through third-party websites. *Id.* The Offering Materials also explained that GigaCloud's operations were supported by "multiple technology capabilities," including "cloud computing, big data analytics, and artificial intelligence." *Id.* at 164.

Following the IPO, the Company issued periodic reports about its business, including various descriptions of the GigaCloud Marketplace. Many of these statements are nearly identical to those in the Offering Materials. *Compare* App. A, Statement No. 12, *with* Nos. 52, 79-80. Others provide updated sales or revenue data. *See, e.g.*, Statement Nos. 53, 66.

---

[3] Other marketplaces, like Amazon, have similar offerings in which a business's inventory sits with Amazon, the business sells to end-consumers, and Amazon handles delivery to the consumer on behalf of the seller-business. *See* AMAZON.COM, What is Fulfillment By Amazon, https://sell.amazon.com/fulfillment-by-amazon (last accessed August 9, 2024).

C.  **Short-Seller Reports, the Company's Responses, and Recovery in Stock Price**

Since its IPO, GigaCloud has regularly met, and exceeded, its own earnings forecasts and market expectations, *see* Ex. 4, May 9, 2024 Yahoo Article, and its stock price has more than doubled from $12.25 at the time of IPO to $30.42 per share as of June 28, 2024 when the SAC was filed.  Ex. 5, Stock Price Chart.  This strong performance was a problem for short-sellers who often bet on price declines following IPOs.  GigaCloud has twice been the victim of short-seller attacks by investors attempting to drive down the Company's stock price.

**Culper Report**.  After the market opened on September 28, 2023, Shadyside Partners, LLC—a one-man outfit doing business under the *nom de plume* "Culper Research" and which has previously been sued for making false and defamatory statements about other public companies[4]— issued a 27-page report criticizing GigaCloud's business.  ¶ 210.  The Culper Report was long on innuendo and short on facts,[5] and it used various publicly available data to speculate that certain entities were "related parties" to the Company and, therefore, the Company failed to disclose certain purported related party transactions.  *See* Ex. 6, Culper Report at 20-26.  Knowing that its allegations were nonsense, Culper disclaimed on the first page of the report any representation "as to the accuracy, timeliness, or completeness of any such information."  *Id.* at 1.

On the day after the Culper Report, GigaCloud issued a press release denying its allegations.  *See* Ex. 7, Sept. 29, 2023 Press Release.  A few days later, the Company released a

---

[4] *See LifeMD, Inc. v. Lamarco*, 607 F. Supp. 3d 576, 584-85 (W.D. Pa. 2022) (denying motion by "Culper Research" and its sole employee to dismiss defamation and similar claims).

[5] For example, the report suggests that the Company's financial statements must be suspect because its unnamed auditor was "based in China."  Ex. 6 at 2-3.  For the record, the Company's auditor during the period was KPMG Huazhen LLP, the local affiliate of one of the world's largest accounting firms.  Ex. 2, Prospectus at 239.  The report also questions the scale of the Company's operations, but an independent investigation by Seeking Alpha revealed "high-quality warehouse, well-run operations, and high space utilization" based on a "site visit to a 300,000-square-foot GCT facility in New Jersey."  Ex. 19, May 31, 2024 *Seeking Alpha* Article.

more detailed refutation and authorized an independent investigation. *See* Ex. 8, Oct. 9, 2023 Press Release. On November 13, 2023, GigaCloud announced that its audit committee concluded based on the independent investigation—led by international law firm White & Case LLP and forensic accounting firm FTI Consulting—that there was no merit to the central allegations in the Culper Report. *See* Ex. 9, Nov. 13, 2023 Press Release.

**Grizzly Report**. On May 22, 2024, a different short-seller called "Grizzly Research LLC" issued a separate report about GigaCloud. ¶ 91. Like Shadyside, Grizzly has a history of being sued for making false statements and now prominently displays a disclaimer on its website, before any report can be accessed, that its reports are mere opinions, "not statements of fact," and that Grizzly makes "no representation, express or implied as to the accuracy, timeliness, or completeness of any such information."[6] Grizzly relied on the same public sources as Shadyside to identify purportedly undisclosed "related parties," including an entity previously identified by the Culper Report (Orien Life Corp.). ¶¶ 98-99, 405. And like the Culper Report, the Grizzly Report is riddled with xenophobic stereotypes (including the reference to "China Hustle") and glaring errors.[7] ECF No. 88-1 at 2. As a bonus, Grizzly attempts to buttress its allegations by comparing its work to "research" by Citron Research about an unrelated company, *id.* at 82, although since the SAC was filed, Citron and its founder were indicted by the DOJ and sued by

---

[6] *See* GRIZZLY REPORTS, "GigaCloud Technology Inc – Another China Hustle Inflating Key Metrics Using Undisclosed Related Party Shell Companies," https://grizzlyreports.com/gigacloud-technology-inc-another-china-hustle-inflating-key-metrics-using-undisclosed-related-party-shell-companies/ (last accessed August 9, 2024); Ex. 10, Grizzly Disclaimer.

[7] For example, the Grizzly Report misleadingly cited *search traffic* data on a third-party website as evidence for limited visitor traffic to GigaCloud's website, but the same third party website shows significant traffic measured by *visits* to the Company's website. *Compare* ECF No. 88-1 at 8-11, *with* Ex. 11, May 23, 2024 Press Release. This lie is among the many aspects of the Grizzly Report so facially misleading that even Plaintiffs elected not to parrot it in this lawsuit.

the SEC for securities fraud and attempted market manipulation.[8]  Following the Grizzly Report, GigaCloud issued a press release saying the report "lacks merit" and "demonstrates a fundamental lack of understanding of the Company's business."  Ex. 11, May 23, 2024 Press Release.

Although GigaCloud's stock price fell on the day of both short seller reports, ¶¶ 409, 411, the market quickly saw through these vapid hit pieces.  Just 13 days after the Culper Report's release, GigaCloud's stock price was higher than that ***before*** the report's publication.  Ex. 5, Stock Price Chart (*compare* Oct. 9, 2023 Price ($9.96), *with* Sept. 27, 2023 Price ($9.47)).  And just one day after the Grizzly Report, GigaCloud's stock price closed higher than before the report.  *Id.* (*compare* May 23, 2024 Price ($32.55), *with* May 21, 2024 Price ($31.45)).

### D.    This Lawsuit

Plaintiffs' theory has been a moving target.  In October 2023, two shareholders filed nearly identical complaints against GigaCloud, certain of its directors and officers, and Aegis, relying almost entirely on the Culper Report and alleging that defendants failed to disclose certain purported related party transactions.  *See* ECF Nos. 1, 21, 37, 54.  In their AC, Plaintiffs changed course, dropping all theories based on the related party allegations, and inventing a new theory based on allegedly misleading statements about GigaCloud's use of AI.  *See* ECF No. 59.

Following defendants' motion to dismiss the AC, the Court issued an order on May 20, 2024 inviting Plaintiffs to file an SAC.  ECF No. 85.  Plaintiffs then filed the SAC—and revived their previously abandoned related party allegations, now relying substantially on the Grizzly Report.  *See* ¶¶ 91-126.  Plaintiffs also reduced their AI-related allegations to one Securities Act claim predicated on the Offering Materials.  *See* ¶¶ 195-396.[9]  In summary, the SAC asserts five

---

[8] Ex. 12 (DOJ indictment); Ex. 13 (SEC complaint).

[9] Plaintiffs also dropped all claims against GigaCloud's President Iman Schrock and terminated Schrock as a defendant.

counts against Moving Defendants.  Under the Securities Act, Plaintiffs assert (i) a Section 11 claim against GigaCloud, Aegis, and Messrs. Wu, Wan, and Lau, based on allegedly false statements in the Offering Materials concerning AI and GigaCloud Marketplace; as well as (ii) a Section 15 control person claim against Messrs. Wu, Wan, and Lau.  *See* ¶¶ 127-77, 186-202. Under the Exchange Act, Plaintiffs assert (i) a Sections 10(b) and Rule 10b-5(b) claim against GigaCloud and Messrs. Wu, Wan, and Lau for allegedly false statements concerning GigaCloud Marketplace; (ii) a Section 10(b) and Rule 10b-5(a) and 10b-5(c) claim against GigaCloud and Messrs. Wu, Wan, and Lau based on an allegedly fraudulent scheme; and (iii) a Section 20(a) control person claim against Messrs. Wu, Wan, and Lau.  *See* ¶¶ 219-356, 425-51.

## **ARGUMENT**

### I.    **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

To state a claim under Section 10(b) of the Exchange Act, Plaintiffs must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission with the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *In re Bristol-Myers Squibb Co. CVR Sec. Litig.*, 658 F. Supp. 3d 220, 229-30 (S.D.N.Y. 2023) (Furman, J.).  In pleading these elements, Plaintiffs must satisfy both the heightened pleading requirements of Rule 9(b), which requires that they "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), *and* the PSLRA, which requires that they "specify each misleading statement" and

7

"set forth the facts on which [a] belief that a statement is misleading was formed." *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 36 (2d Cir. 2012).

To state a claim under Section 11 of the Securities Act, Plaintiffs must allege facts demonstrating plausibly that "the registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *Bristol-Myers*, 658 F. Supp. 3d. at 235. Because Plaintiffs' Securities Act claims "sound[] in fraud," they are also subject to the heightened pleading standard of Rule 9(b). *Rombach v. Chang*, 355 F.3d 164, 170-72 (2d Cir. 2004).[10]

## II.    PLAINTIFFS FAIL TO ALLEGE ANY MISSTATEMENT OR OMISSION

### A.    GigaCloud Did Not Misrepresent Its Use of AI

The SAC's first claim is that the Offering Materials were misleading regarding GigaCloud's (i) AI capabilities and (ii) technology capabilities more generally. *See* ¶¶ 130, 132.[11]

#### 1.    Plaintiffs Plead No Facts to Suggest That GigaCloud Did Not Use AI

As an initial matter, Plaintiffs mischaracterize GigaCloud's disclosures, dramatically overstating the presence of GigaCloud's AI capabilities in the Offering Materials and alleging that AI was held out as "the foundation of the Company's operations, financial performance, and growth prospects." ¶ 65. Of course, the Offering Materials say no such thing. Rather, GigaCloud

---

[10] Plaintiffs' Securities Act claims sound in fraud because (i) Plaintiffs challenge many of the same statements under both the Securities Act and the Exchange Act and (ii) both sets of claims rest on the same theory of alleged fraud. *See, e.g.*, ¶ 203 (allegations relating to Securities Act claims are "applicable to Lead Plaintiffs' claims under . . . the Exchange Act"); *compare* ¶¶ 144-45, *with* ¶¶ 255-56 (alleging that an identical statement in the OM and the 20-F for fiscal year 2022 was false for the same reasons). Plaintiffs' boilerplate disclaimer of fraud (*see* ¶¶ 187, 196) is insufficient to overcome the application of Rule 9(b). *See Rombach*, 355 F.3d at 172; *In re MINISO Grp. Holding Ltd. Sec. Litig.*, 2024 WL 759246, at *11 (S.D.N.Y. Feb. 23, 2024); *In re Farfetch Ltd. Sec. Litig.*, 2021 WL 4461264, at *8 n.3 (S.D.N.Y. Sept. 29, 2021), *aff'd sub nom. IAM Nat'l Pension Fund v. Farfetch Ltd.*, 2023 WL 2879304 (2d Cir. Apr. 11, 2023).

[11] Plaintiffs have abandoned their Exchange Act claims on similar statements made after the IPO.

noted that its various business operations were supported by "multiple" technology systems, of which AI and ML were only but one part.  Ex. 2, Prospectus at 117-66.  The Offering Materials "must be read 'as a whole'" and Plaintiffs must challenge what GigaCloud actually said.  *Olkey v. Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2, 5 (2d Cir. 1996).[12]  In any event, Plaintiffs still do not coherently allege that GigaCloud's statements about its use of AI were false or misleading.  The SAC's only support for this claim is conclusory allegations from FEs 1-6 that "no AI technology was involved in GigaCloud's logistics."  ¶¶ 67-82.  These allegations are insufficient.

*First*, Plaintiffs again fail to explain why most of these FEs—junior employees in sales, logistics, or general technology support roles, ¶¶ 33-35, 37-38—would have credible knowledge about the Company's use of AI.  Put another way, the Company disclosed that it used AI as part of its larger data analytics operation and Plaintiffs offer no explanation why someone trying to recruit buyers and sellers to the platform (FEs 2-3, 5-6) would have any insight into the technological underpinnings of the tools the Company used to analyze data.  *See, e.g.*, *In re Lehman Bros. Sec. & Erisa Litig.*, 2013 WL 3989066, at *4 (S.D.N.Y. July 31, 2013) (disregarding statements of CWs who were "not managers or corporate officers who could have spoken to the company's practices broadly"); *Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F.

---

[12] Similarly, Plaintiffs attempt to blur together any statement the Company made about any technology system as one relating to AI or ML.  For example, Plaintiffs claim that the statement that "[w]e also leverage our data analytics in order to provide supply chain finance solutions," ¶ 135, was false because the Company was not using AI.  But this statement does not say anything about the use of AI.  To the contrary, the Company expressly distinguishes between the general field of data analytics and the specific concept of AI/ML technology.  *See* Ex. 2, Prospectus at 164 ("multiple technology capabilities" include "big data analytics [] and artificial intelligence").  Plaintiffs cannot rewrite GigaCloud's disclosures and then attempt to render false the things GigaCloud never said in the first place.  *See Farfetch*, 2021 WL 4461264, at *9; *In re Cloudera, Inc.*, 2021 WL 2115303, at *13 (N.D. Cal. May 25, 2021) ("If cloud native had no set meaning when Cloudera Defendants made their challenged statements, then the Court cannot find that Plaintiffs have adequately pled that Cloudera Defendants' statements were false when made.").

Supp. 3d 196, 223 (S.D.N.Y. 2018) (disregarding allegations from employees who "had no insight" into other corporate units), *aff'd sub nom. Kapitalforeningen Lægernes Inv. v. United Techs. Corp.*, 779 F. App'x 69 (2d Cir. 2019). Likewise, during their short tenures at the Company, FE-4 (who left before the class period), FE-5 (who left barely one month into the class period), and FE-6 were all based in the United States, ¶¶ 36-38, but by Plaintiffs' own admission, China was "where [GigaCloud's] IT development and management is based." ¶ 67. Thus, it is unsurprising that these FEs have no relevant insight into the Company's AI use. *See In re China Mobile Games & Ent. Grp., Ltd Sec. Litig.,* 2016 WL 922711, at \*4 (S.D.N.Y. Mar. 7, 2016) (disregarding CW who worked at subsidiary remote from relevant events); *In re Francesca's Holdings Corp. Secs. Litig.*, 2015 WL 1600464, at \*14 (S.D.N.Y. Mar. 31, 2015) (disregarding CW who left "near the very beginning of the Class Period").

*Second*, because the FEs were so far removed from the relevant data analytics operations, their generic allegations barely even describe the Company's technology, much less support the claim that the Company's statements about a particular aspect of its technology were false. *See Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 414 (S.D.N.Y. 2020) (dismissing Section 11 claim based on the Company's transition to AI-enabled hardware where "Plaintiffs fail to identify any statement about hardware in the Offering Documents that was false or misleading when it was made"). For example, FE-1 and FE-5 assert that "no AI technology was involved" in Java development, ¶ 69, and that AI was not used "as part of [the Company's] sales pitches," ¶ 79. But these are two areas for which the Company never said it used AI in the first place, and these "vague, speculative, and conclusory" statements do not plead any claim in any event. *Schiro v. Cemez, S.A.B. de. C.V.*, 396 F. Supp. 3d 283, 305 (S.D.N.Y. 2019). FE-2, a supply chain manager, alleges that GigaCloud did not use AI in its logistics and instead used "just an [Enterprise Resource

10

Planning] system." ¶ 71.  In attempting to make this an either/or proposition, Plaintiffs ignore that the very first system GigaCloud listed after describing its use of AI and data analytics was this ERP system.  *See* Ex. 2, Prospectus at 161-62.  Even commercially available ERP systems make use of AI,[13] and the SAC does not allege that FE-2 ever used GigaCloud's ERP system, much less that they are in a position to comment on the system's AI capabilities.[14]

### 2. Plaintiffs Plead No Facts Showing That GigaCloud Misrepresented the Sophistication of Its Technology

Plaintiffs' claim about the general sophistication of GigaCloud's technology fails because all of the challenged statements are either not misleading or inactionable puffery.  Plaintiffs base this claim on the vague allegations that GigaCloud's technology "was not state-of-the-art," "would have been found in most warehouse operations," and was "less sophisticated than Amazon or Walmart."  ¶¶ 76, 82, 130.  For starters, GigaCloud made no representation about how it compared to two of the world's largest retailers, and provided no detail about how sophisticated its technology was.  *See, e.g.*, App. A, Statement Nos. 4, 6-7.  Plaintiffs cannot render a statement false by claiming it fails to meet a standard that no one ever mentioned.  *See Scott v. Gen. Motors Co.*, 46 F. Supp. 3d 387, 395 (S.D.N.Y. 2014), *aff'd*, 605 F. App'x 52 (2d Cir. 2015).  Moreover, to the extent Defendants made any statements about the strengths of GigaCloud's technology, long-standing precedent treats these statements as inactionable puffery.[15]  Indeed, FE-1's

---

[13] *See, e.g.*, ORACLE/NETSUITE, AI in ERP:   Benefits, Examples, & Challenges, https://www.netsuite.com/portal/resource/articles/erp/ai-erp.shtml (last accessed August 9, 2024).

[14] FE-6 does not say that GigaCloud did not use AI.  Instead, FE-6 "saw no evidence that the Company used AI technology" and "strongly doubted that GigaCloud used AI."  ¶ 81.

[15] *Compare, e.g.*, App. A, Statement No. 4, 7 ("Data Intelligence Powered by AI" was a "Competitive Strength"); Statement No. 10 ("highly enviable . . . resource with regards to customer data"); ¶¶ 61, 63, 141 (noting GigaCloud "boasted" about AI capabilities), *with Farfetch*, 2021 WL 4461264, at *10 ("The claim that Farfetch is 'a technology company at its core,' for example, is the kind of vague 'corporate-speak' that no reasonable investor would rely on in any significant

admission that GigaCloud had "intricate management systems" that were "tasked with handling complex business process," ¶ 69, only corroborates GigaCloud's statements and underscores their puffery nature because even Plaintiffs are unable to offer an objective measure for evaluating the "sophistication" of GigaCloud's technology.

**B.      GigaCloud Did Not Misrepresent Transactions in Its Marketplace**

The SAC also challenges statements relating to GigaCloud Marketplace on the alleged basis that "a significant amount of" GigaCloud 1P sales were "to companies closely connected to" GigaCloud. ¶ 18. According to Plaintiffs, these sales (i) should have been classified as Off-Platform E-Commerce rather than GigaCloud 1P, and (ii) therefore, should not have been included in the metric that measures total Marketplace sales (*i.e.*, GigaCloud Marketplace GMV) because that includes only GigaCloud 3P and GigaCloud 1P transactions. *See* ¶¶ 83-88. In other words, Plaintiffs (rightfully) do not dispute that these were legitimate sales that can be independently verified through records of delivery to third party end-consumers (*see* ¶¶ 125-26), but premise their entire claim on a disagreement about how these sales should be classified.

**1.      Plaintiffs Fail to Adequately Allege Any Undisclosed Related Party**

Plaintiffs' claims fail for the threshold reason that they do not allege any "related party" transactions that require disclosure or a different classification. Although the SAC uses the phrase "closely connected" more than 148 times to describe the relationship between GigaCloud and various entities, that phrase exists nowhere in the relevant accounting or financial disclosures rules. Plaintiffs cannot invent a new financial reporting standard and sue Defendants for failing to

---

way."); *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.,* 300 F. Supp. 3d 551, 569 (S.D.N.Y. 2018) (statements touting "competitive advantage," "great technology," and "expectations of business success" were "mere puffery"), *aff'd sub nom. Ark. Pub. Emps. Ret. Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir. 2019); *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 541 (S.D.N.Y. 2020) (statement that company provided "best entertainment experience in the world" was puffery).

comply with it. *See In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *15 (S.D.N.Y. Mar. 30, 2018) (disregarding "misstatements of the law" regarding "nonexistent" standard). Under existing law, the relevant framework focuses on transactions with "related parties," and to adequately plead the existence of a "related party," Plaintiffs must show "control or significant influence by one party over the other or that the two are under common control." *In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2021 WL 4341500, at *20 (S.D.N.Y. Sept. 22, 2021). Mere allegations of "cooperative and close relationship between companies" are not enough. *Id.*

Here, Plaintiffs conclusorily allege that seven entities were "closely connected to GigaCloud." *See, e.g.*, ¶¶ 90, 106, 123. This is insufficient as a matter of law. *Hebron*, 2021 WL 4341500, at *20. Indeed, there is not even a single allegation that connects these entities, during the putative class period, with any GigaCloud executive. *See* ¶¶ 115-24. Instead, Plaintiffs' entire set of factual allegations amount to the following:

- Current GigaCloud officers held leadership positions **more than two years before** the start of the putative class period. *See, e.g.*, ¶¶ 102, 108, 112.
- ***Former*** low-level GigaCloud employees currently hold leadership positions there. *See, e.g.*, ¶¶ 103, 108, 112-13.
- These entities sold certain products on Amazon with pictures or trademarks similar to those of GigaCloud products. *See, e.g.*, ¶¶ 107, 114.[16]

Notably absent are any claims that GigaCloud or any of its current officers "was an owner or manager of" these entities or "controlled or significantly influenced the[ir] management or operating procedures" during the class period. *Tabor v. Bodisen Biotech, Inc.*, 579 F. Supp. 2d 438, 450–51 (S.D.N.Y. 2008). As such, Plaintiffs cannot label them as "related parties."

---

[16] This allegation is particularly unremarkable because, as disclosed, GigaCloud's business model involves selling its products to other businesses, who in turn sell those products to consumers. Ex. 2, Prospectus at 123 ("Buyers in our marketplace are typically resellers based in the U.S. and Europe who procure large parcel merchandise to resell to end customers.").

13

The allegations from the FEs who speak on this topic (FEs 4 and 6-9) add nothing beyond the SAC's otherwise deficient factual allegations. *See* ¶¶ 95-97, 104, 106, 109-11. *First*, four of the five (FEs 6-9) are junior employees with no alleged connection to any individual defendant. *See* ¶¶ 38-41. And two of them left GigaCloud before the putative class period. *See* ¶ 36 (FE-4 left in May 2022); ¶ 40 (FE-8 left in February 2022). As a matter of logic or law, these employees have no knowledge about sales on GigaCloud Marketplace during the relevant period. *See Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 208 (S.D.N.Y. 2020) (disregarding CWs who "left the company before the class period"); *In re Canopy Growth Sec. Litig.*, 2024 WL 3445436, at *13 (S.D.N.Y. July 17, 2024) (disregarding CWs who were "not executives or managers with direct knowledge"). *Second*, the statements attributed to the FEs plead mere conclusions devoid of the facts necessary to support a claim. For example, "FE-6 told Lead Plaintiffs' investigator that Orien Life is so closely connected to GigaCloud that he thought it was one of GigaCloud's brands," ¶ 106, and "FE-8 believed that GigaCloud Venture was a subsidiary of GigaCloud," ¶ 104. Patently missing from these allegations are any "details lending themselves to corroboration." *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 155 (S.D.N.Y. 2023); *see also Abengoa*, 481 F. Supp. 3d at 208 ("general beliefs" not sufficient). Simply put, the vague allusion to historic ties does not even attempt to allege, as required, that GigaCloud "continued to hold decision-making power" over any of these entities. *China Mobile,* 2016 WL 922711, at *5; *Hebron*, 2021 WL 4341500, at *15 ("association" with another company does not equal control).

### 2.    GigaCloud Accurately Disclosed the Transactions in Its Marketplace

Next, Plaintiffs argue that GigaCloud's disclosure of "GigaCloud Marketplace GMV" and GigaCloud 1P revenue was misleading because it included sales to "closely connected" companies. *See* ¶ 145. This claim is also meritless. GigaCloud defines "GigaCloud Marketplace GMV" as "the total gross merchandise value of transactions *ordered through* our GigaCloud Marketplace

14

including GigaCloud 3P and GigaCloud 1P." Ex. 2, Prospectus at 20. Plaintiffs do not (and cannot) allege that the sales to "closely connected" companies occurred somewhere other than the Marketplace. In fact, they concede as such. *See, e.g.*, ¶ 143. Likewise, "GigaCloud 1P" revenue is defined as revenue earned from "the *sale* of our inventory in our GigaCloud Marketplace." *Id.* at 117. Thus, both metrics are measured by who makes the sale or where it occurs—not who the buyer is. Plaintiffs cannot create falsity by re-interpreting clear disclosures. *See Altimeo Asset Mgmt. v. WuXi PharmaTech (Cayman) Inc.*, 2020 WL 6063539, at \*6 (S.D.N.Y. Oct. 14, 2020) (description of general business plan was accurate and, therefore, not actionable).

Moreover, Plaintiffs' theory of liability that sales to "closely connected" companies must be reported differently—as Off-Platform E-Commerce rather than GigaCloud 1P, ¶ 88—is deeply flawed. Plaintiffs invented the "closely connected" standard for this lawsuit but the SAC does not even attempt to define its scope, much less explain why any public company must now filter its financial reporting through this newly created lens. To the contrary, GigaCloud explained that its financial reporting was prepared "in conformity with U.S. GAAP, which requires [it] to make judgments, estimates and assumptions." Ex. 2, Prospectus at 144. Courts have repeatedly observed that in order to challenge these types of classification judgments, plaintiffs must allege much more than a mere difference of opinion to plead even a violation of accounting standards, let alone fraud. *See Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 171-72 (S.D.N.Y. 2015) (dismissing claims where plaintiffs failed to show defendant "exercised its judgment in a way that violated GAAP beyond its disagreement with management's choices"), *aff'd*, 649 F. App'x 7 (2d Cir. 2016); *Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 181

(S.D.N.Y. 2012) (same), *aff'd sub nom. Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72 (2d Cir. 2013).[17]

### 3. Plaintiffs Fail to Allege That the Transactions Were Material

Finally, Plaintiffs also fail to adequately allege that any purportedly undisclosed transactions were material. Plaintiffs put forth FE-4's bald assertion that "more than 50% of GigaCloud 1P revenue" came from the challenged transactions. ¶ 97. But even setting aside FE-4's questionable basis of knowledge, they fail to allege with particularity "individuals or entities . . . involved in the . . . transactions, when they occurred, or how much money the transactions entailed." *Afr. v. Jianpu Tech. Inc.*, 2022 WL 4537973, at *8 (S.D.N.Y. Sept. 28, 2022) (Furman, J.). With respect to the seven "closely related" entities named in the SAC, Plaintiffs only allege that the storefront of these companies lists hundreds of products, "many of them costing hundreds of dollars." ¶¶ 114, 117, 120, 123. That falls far short of alleging materiality. *See Boluka Garment Co., Ltd. v. Canaan Inc.*, 547 F. Supp. 3d 439, 449 (S.D.N.Y. 2021) (dismissing Sections 10(b) and 11 claims when "the anticipated magnitude of the deal was . . . ambiguous" and "the probability of any specific impact on [Defendant's] financials at the time of the Registration Statement's filing was so low or uncertain that it rendered the transaction[s] immaterial").[18]

## III.   PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER

Plaintiffs' claims under Section 10(b) of the Exchange Act also fail because the SAC does not come close to pleading the requisite "strong inference" of scienter—*i.e.*, an "intent to deceive,

---

[17] Many of the challenged statements relating to GigaCloud Marketplace are also inactionable because they are (i) quintessential puffery, *see supra* note 15 and surrounding text; Statement Nos. 11, 43, 67, 71, 86; (ii) inactionable opinions, *see Schaffer v. Horizon Pharma PLC*, 2018 WL 481883, at *10 (S.D.N.Y. 2018) (Furman, J.); Statement Nos. 4, 38; and/or (iii) forward-looking statements, *see Bristol-Myers*, 658 F. Supp. 3d at 236-38; Statement Nos. 19, 60.

[18] The SAC also appears to challenge Aegis's post-IPO analyst report about GigaCloud dated October 3, 2022, alleging that the report confirmed that GigaCloud's statements about its AI and

manipulate, or defraud." 15 U.S.C. § 78u-4(b)(2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).  To plead scienter, "it is not sufficient to set out 'facts from which, if true, a reasonable person ***could*** infer that the defendant acted with the required intent.'" *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110-11 (2d Cir. 2009).  Rather, the requisite "strong" inference must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 309.  The Second Circuit has long held that this requires plaintiffs to allege particularized facts showing (i) defendants had the "motive and opportunity to commit fraud" or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).  The SAC alleges neither.

## A.    Plaintiffs Fail to Plead A Cognizable Motive

To adequately plead motive, Plaintiffs must allege facts establishing "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 270 (S.D.N.Y. 2009); *ECA*, 553 F.3d at 198 (plaintiffs must plead facts showing that defendants "benefitted in some concrete and personal way from the purported fraud").  "General allegations that [] defendants acted in their economic self-interest are not enough." *Bd. Of Trs. Of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 866 (S.D.N.Y. 2011), *aff'd*, 475 F. App'x 353 (2d Cir. 2012).  Here, Plaintiffs' primary theory of scienter rests on stock sales by Defendants Wu, Wan, and Lau during March to May 2024.  ¶¶ 361-64.  To establish scienter based on these sales, Plaintiffs must

---

GigaCloud Marketplace were "highly material to investors." ¶¶ 66, 89.  The high-level report does not remedy Plaintiffs' failure to properly allege materiality. *See* Ex. 18, Aegis Report.  Moreover, this report is irrelevant to the only claim brought against Aegis, which is limited to the registration statements. *See In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 175 (2d Cir. 2011) ("Section 11 provides the purchasers of registered securities with strict liability protection for material misstatements or omissions in *registration statements* filed with the SEC.").

17

establish they are "unusual or suspicious." *Villare v. Abiomed, Inc.*, 2021 WL 4311749, at *21 (S.D.N.Y. Sept. 21, 2021). Plaintiffs come nowhere close to making such a showing.

*First*, as Plaintiffs concede, all of Mr. Wu's stock sales were made pursuant to pre-established Rule 10b5-1 plans, *see* ¶ 362; Ex. 14, Wu Forms 4, which, under settled law, "do not give rise to a strong inference of scienter." *DraftKings*, 650 F. Supp. 3d at 176. This remains true where, as here, the trading plans were entered during the purported class period, but Plaintiffs plead no facts suggesting that these plans were entered into "'strategically' so as to capitalize on insider knowledge." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 585 (S.D.N.Y. 2014) , *aff'd*, 604 F. App'x 62 (2d Cir. 2015).

*Second*, the relatively modest sales are insufficient as a matter of law to support scienter. Plaintiffs allege that Messrs. Wu, Wan, and Lau respectively sold 12.45%, 13%, and 8% of their holdings, ¶¶ 362-64, but courts in the Second Circuit have found that sales of similar, or even larger, percentages were not unusual. *See, e.g.*, *Gildan.*, 636 F. Supp. 2d at 271 (stock sales not unusual where defendant sold 22.5% of stock); *Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *8-9, *15 (S.D.N.Y. July 23, 2018) (no motive where one defendant sold "all or nearly all of his non restricted shares," while others sold 42% and 44% of holdings). With respect to Mr. Lau, Plaintiffs ignore that his shares increased by 28,000 shares on April 10, 2024, more than offsetting his sale of 2,619 shares on March 19, 2024. *See* Ex. 15, Lau Forms 4. Such increase in stockholdings during the purported class period is "wholly inconsistent with fraudulent intent." *In re Iconix Brand Grp., Inc.*, 2017 WL 4898228, at *16 (S.D.N.Y. Oct. 25, 2017).

*Third*, Plaintiffs challenge Mr. Wan's March 28, 2024 and Mr. Lau's March 19, 2024 stock sales, ¶ 364, but both sales were of stock granted as employee compensation. *See* Ex. 17, Wan Forms 4 at 2 (showing shares sold by trust established to hold shares from Share Incentive Plans);

18

Ex. 16, Lau Form 144 at 3 (showing Lau contemplated selling stock he acquired in March 2023 as part of "compensation"). As courts have recognized, "a large number of today's corporate executives are compensated in terms of stock and stock options and that these individuals will trade those securities in the normal course of events." *In re Audible Inc. Sec. Litig.*, 2007 WL 1062986, at \*3 n.9 (D.N.J. Apr. 3, 2007). "[I]f scienter could be pleaded on [the] basis [of stock-based compensation and stock sales] alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *In re Keryx Biopharmaceuticals, Inc., Sec. Litig.*, 2014 WL 585658, at \*13 (S.D.N.Y. Feb. 14, 2014)).

*Fourth*, the timing surrounding Messrs. Wu, Wan, and Lau's stock sales is not remotely suspicious. All of these sales occurred months after most of the alleged misstatements were made, *see* App. A, Statement Nos. 11-75, and allegedly "corrected" by the Culper Report, *see* ¶¶ 402-409. This timing is inconsistent with a desire to profit from the alleged misstatements. *See, e.g.*, *Lululemon*, 14 F. Supp. 3d at 586 (no scienter where "the dates of [] stock sales fail to match up closely with [] allegedly false and misleading statements"); *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 412 F. Supp. 3d 206, 227 (E.D.N.Y. 2019) (no scienter when sales occurred after corrective disclosures).

### B.    Plaintiffs Do Not Plead Conscious Misbehavior or Recklessness

To plead circumstantial evidence of scienter, "Plaintiffs must allege either actual intent or conscious recklessness—i.e., a state of mind approximating actual intent, and not merely a heightened form of negligence." *Pirnik v. Fiat Chrysler Autos., N.V.*, 2017 WL 3278928, at \*2 (S.D.N.Y. Aug. 1, 2017) (Furman, J.). Because Plaintiffs plead no motive, they bear a "correspondingly greater" burden to establish "strong circumstantial evidence" allegations. *Marcu v. Cheetah Mobile Inc.*, 2020 WL 4016645, at \*7 (S.D.N.Y. July 16, 2020) (Furman, J.).

19

Specifically, Plaintiffs must "show that individual defendants *actually possessed* the knowledge highlighting the falsity of public statements." *Id*.  Plaintiffs do not nearly make such showing.

*First*, Plaintiffs repeat their claims about Messrs. Wu, Lau, and Wan's "personal involvement" in "closely connected" entities and/or "[t]he service of other senior GigaCloud executives as corporate officers and directors" in those entities.  ¶¶ 365-375, 379-81, 382-383. Plaintiffs do not plead that any of these GigaCloud executives had any roles with the "closely connected" companies during the putative class period.  But even if they did, "allegations that the Defendants must have known of fraud because of their positions in the company are insufficient as a matter of law" to establish scienter.  *Janbay v. Canadian Solar, Inc.*, 2013 WL 1287326, at *11 (S.D.N.Y. Mar. 28, 2013), *aff'd* (Dec. 20, 2013).

*Second*, Plaintiffs attempt to rely on FE-4's allegations that he "spoke to [Wu] by telephone almost every day," ¶ 36, and that "both FE-4 and [] Wu participated in weekly calls with buyers on GigaCloud Marketplace," ¶ 376.  But this "vague" allegation that executives attended meetings is "meaningless," as there is no allegation about when the meetings occurred or what was actually discussed, much less how those discussions contradicted Defendants' public statements.  *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008); *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021) (same).  FE-4's conclusory allegation that "the Company is 'centralized' around [Wu] as the 'ultimate decision-maker," ¶ 377, is equally insufficient as a matter of law.  *See Ollie's*, 518 F. Supp. 3d at 781.

*Third*, Plaintiffs argue that GigaCloud's response to the short-seller reports—stating that the reports "lack[] merit" and "demonstrate[] a fundamental lack of understanding of the Company's business and financial condition," *see* Ex. 11, May 23, 2024 Press Release—was apparently not a strong enough denial and, therefore, suggests scienter.  ¶¶ 386-90.  Even if this

20

peculiar characterization of GigaCloud's response to the short-seller reports was accurate, "[t]he Lead Plaintiff's subjective characterization of the response as lacking 'candor' does not suffice to allege scienter." *Saskatchewan Healthcare Emp's. Pension Plan v. KE Holdings Inc.*, 2024 WL 775195, at *29 (S.D.N.Y. Feb. 26, 2024). Similarly, Plaintiffs point to the "abrupt deregistration of GigaCloud Venture after the Culper Report." ¶ 384. But the Culper Report says nothing about GigaCloud Venture, much less that it "connected" Orien Life to GigaCloud. ¶ 385; *see generally* Ex. 6, Culper Report. Moreover, both of these events took place "long after Defendants' alleged misrepresentations and thus [do] not support a strong inference of scienter at the time that [Defendants] made [their] statements." *KE Holdings*, 2024 WL 775195, at *29; *DraftKings*, 650 F. Supp. 3d at 179.

*Finally*, in a familiar last-ditch refrain for plaintiffs unable to show scienter, Plaintiffs invoke iterations of the "core operations" doctrine. ¶ 391; *see also* ¶ 358 ("key metrics"); ¶ 359 (Marketplace was "central"). But courts in this Circuit have made clear that this doctrine is—at best—a "supplementary" but not "independently sufficient means to plead scienter." *Cortina v. Anavex Life Scis. Corp.*, 2016 WL 7480415, at *7 (S.D.N.Y. Dec. 29, 2016) (Furman, J.) ("[T]here is considerable doubt whether the core operations doctrine survived enactment of the PSLRA, and many courts have held that it is no longer valid."); *see also Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020) ("naked assertion" of "key product" is insufficient to plead scienter).

### C.    The Non-Fraudulent Inference Is More Compelling

When "determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs*, 551 U.S. at 323. Here, Plaintiffs' theory posits that (i) the Culper Report revealed much of the "truth" but (ii) all of GigaCloud's officers held stock through the Culper Report and (iii) a few of them then decided six months later to sell a small portion of their holdings out of a sudden concern that another short-

seller might opine again on the same subject matter.  The far more compelling inference is that Defendants have always believed in the accuracy of their statements and remained heavily invested in the Company even as short-sellers—motivated by a desire to bring down the Company's stock price—continued to spread false information.[19]

## IV.    THE ABSENCE OF LOSS CAUSATION REQUIRES DISMISSAL

All of Plaintiffs' claims also fail because their alleged losses could not have been caused by the alleged misstatements.  Under the Exchange Act, Plaintiffs must allege that a "misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).  Similarly, Securities Act claims should be dismissed where "it is apparent on the face of the complaint that the alleged loss is not causally connected to the misrepresentations at issue."  *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011).  Because the analysis is functionally the same, courts in this District routinely dismiss Securities Act claims when concluding that overlapping Exchange Act claims fail to plead loss causation.[20]  Here, Plaintiffs' loss causation argument rests entirely on the two short-seller reports.

*First*, neither short-seller revealed anything new about either "related parties" or AI.  In fact, both short-sellers make clear that they only reviewed public sources and then "expressed negative opinions about [the Company]" based on public information.  *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013); *see* ¶ 99;

---

[19] Because Plaintiffs fail to plead scienter on the part of any individual, they also fail to allege scienter on behalf of GigaCloud.  *See Colbert v. Rio Tinto PLC*, 392 F. Supp. 3d 329, 338 (S.D.N.Y. 2019), *aff'd*, 824 F. App'x 5 (2d Cir. 2020).

[20] *See, e.g.*, *Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416 (2d Cir. 2011); *MINISO*, 2024 WL 759246, at *19-20; *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 559–60 (S.D.N.Y. 2021); *Canaan*, 547 F. Supp. 3d at 447.

Ex. 6, Culper Report at 6-27; ECF No. 88-1 at 11-68; Ex. 10, Grizzly Disclaimer ("We conducted research and analysis based on public information in a manner that any person could have done if they had been interested in doing so."). The Second Circuit has repeatedly held that "express[ing] negative opinions . . . based on information that was already publicly available" is not "corrective" and does not plead loss causation. *Fed. Home*, 543 F. App'x at 75; *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010) (similar).[21] Indeed, with regard to AI, the short-sellers did not disclose anything; Plaintiffs do not even attempt to allege that either short-seller's one-sentence musing "reveals" any new information about the Company's use of AI, much less anything that "corrects" any earlier statements. *See* ¶¶ 402-11; Ex. 6, Culper Report at 3; ECF No. 88-1 at 86-87 ("We wonder how little money is truly going into . . . their proprietary 'AI' technology"). As to purported related party transactions, both short-sellers simply reviewed the same public sources—*i.e.*, state corporate records and Amazon storefronts—and even discussed some of the same entities. *Compare* Ex. 6, Culper Report at 22-23, *with* ECF No. 88-1 at 49-60.

*Second,* both short-sellers had a disclosed financial interest in driving down GigaCloud's stock price and have expressly disclaimed "as to the accuracy, timeliness, or completeness of any [representation] or with regard to the results to be obtained from its use." ¶ 402 ("We are short" GigaCloud stock); Ex. 6, Culper Report at 1; Ex. 10, Grizzly Disclaimer. Courts have rejected as implausible allegations that investors viewed these short-seller reports as revealing the falsity of

---

[21] *See also Opera Ltd.*, 527 F. Supp. 3d at 559–61 (no loss causation for Section 10(b) and Section 11 claims where short-seller report "merely analyzed the public data"); *MINISO*, 2024 WL 759246, at *20 (dismissing Section 10(b) and Section 11 claims where short-seller report "did not disclose any new facts"); *Fila v. Pingtan Marine Enterprises Ltd.*, 195 F. Supp. 3d 489, 496 (S.D.N.Y. 2016) ("Plaintiffs cannot use the [analyst] article to plausibly allege loss causation because it is based solely on public information."); *Canez v. Intelligent Sys. Corp.*, 2021 WL 3667012, at *9 (E.D.N.Y. Aug. 18, 2021) (no loss causation where short-seller report "did not disclose any new facts about the [alleged related party] transaction").

any prior statements. *See, e.g.*, *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 540-42 (9th Cir. 2024); *In re LexinFintech Holdings Ltd. Sec. Litig.* 2021 WL 5530949, at *16 (D. Or. Nov. 24, 2021) ("it is not plausible that investors would perceive the Grizzly report as revealing the falsity of statements"). Indeed, the two reports were so filled with speculation, *ad hominem* attacks, and glaring factual errors that even Plaintiffs have repeatedly declined to rely on the bulk of their allegations.

*Third*, Plaintiffs have not plausibly pleaded that the stock price drop was causally linked to the "corrective" disclosures regarding AI and/or GigaCloud Marketplace in either report. Even though the releases of the reports were each followed by a same-day drop in GigaCloud's stock price, the price quickly rebounded once investors saw that the headline was not supported by any reliable facts. *See supra* Background Section C. This severs any causal link between the alleged misstatements and the drop in stock prices at which Plaintiffs traded. *See In re China Organic Sec. Litig.*, 2013 WL 5434637, at *8-9 (S.D.N.Y. Sept. 30, 2013) (Furman, J.) (finding no loss causation where share price went up after alleged corrective disclosure); *In re Ideanomics, Inc., Sec. Litig.*, 2022 WL 784812, at *11 (S.D.N.Y. Mar. 15, 2022) (similar).

## V.    PLAINTIFFS FAIL TO ALLEGE A FRAUDULENT SCHEME

In a tacit admission that they state no claim under the traditional false statement rubric, Plaintiffs now add a claim for "scheme" liability under Section 10(b) and Rule 10b-5(a) and (c). To survive dismissal on this claim, Plaintiffs must plead with particularity "what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021). Again, the SAC does not remotely satisfy Plaintiffs' burden. *First*, because Plaintiffs fail to plead scienter or any actionable misstatements, "their scheme liability claims necessarily fail." *Buhrke Fam. Revocable Tr. v. U.S. Bancorp*, 2024 WL 1330047, at *27 (S.D.N.Y. Mar. 28, 2024); *see supra*

Sections II-III.[22]  *Second*, Plaintiffs fail to allege any "scheme" with the requisite particularity. Plaintiffs' alleged scheme is that "[p]rior to the Company's IPO, the Exchange Act Defendants began a process of transferring their corporate position at those separate entities to former GigaCloud employees." *See* ¶¶ 397-401.  But Plaintiffs provide no details showing specific actions undertaken by any Defendant, much less "articulate with precision" the deceptive scheme. *Danske*, 11 F.4th at 105.  At most, Plaintiffs' allegations suggest a historical shift in corporate structure and a focus toward the Marketplace and away from off-platform transactions (precisely what GigaCloud disclosed),[23] and the SAC does not offer any explanation for how these changes were "manipulative" or "inherently deceptive."  *See, e.g.*, *S.E.C. v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) ("There is nothing inherently deceptive about structuring a transaction with a counterparty so that the counterparty purchases advertising . . . ."); *Friedman v. Endo Int'l PLC*, 2018 WL 446189, at *4 (S.D.N.Y. Jan. 16, 2018) (Furman, J.) (finding "conclusory" allegations of illegal practices not sufficient to state a claim for scheme liability).

## VI.   PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY

Because Plaintiffs fail to plead the requisite primary violations of the Exchange Act and Securities Act, their "controlling person" claims under Section 20(a) of the Exchange Act and Section 15 of the Securities Act must also be dismissed.  *Bristol-Myers*, 658 F. Supp. 3d at 238.

---

[22] Plaintiffs additionally rely on FE-7's conclusory allegation that the scheme "was done . . . to pump up the marketplace" in support of scienter.  ¶ 401.  But "mere conclusory allegations connecting fraud to benefits for purposes of motive are insufficient."  *See Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 335 (S.D.N.Y. 2011)).

[23] The Offering Materials explained that (i) although GigaCloud was founded in 2006, it only launched the Marketplace in 2019, and (ii) the Marketplace has grown significantly and the Company, in turn, expected the proportion of sales from Off-Platform E-Commerce to gradually decrease.  Ex. 2, Prospectus at 1, 120.

## CONCLUSION

For the foregoing reasons, Moving Defendants respectfully request that the SAC be dismissed with prejudice.

Dated:  August 9, 2024
       New York, New York

Respectfully submitted,

**LATHAM & WATKINS LLP**

/s/ Jason C. Hegt
Jeff G. Hammel
Jason C. Hegt
Hanyu (Iris) Xie
Chengliang (Larry) Hong
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  jeff.hammel@lw.com
Email:  jason.hegt@lw.com
Email:  iris.xie@lw.com
Email:  larry.hong@lw.com

*Attorneys for GigaCloud Technology Inc,
Larry Lei Wu, Xin Wan, and Kwok Hei
David Lau*

**SICHENZIA ROSS FERENCE CARMEL LLP**

/s/ John J. Elliott*
Sameer Rastogi, Esq.
John J. Elliott, Esq.
1185 Avenue of the Americas, 31st Floor
New York, New York 10036
Telephone: (212) 930-9700
Facsimile: (212) 930-9725
Email: srastogi@srfc.law
Email: jelliott@srfc.law

*Attorneys for Aegis Capital Corp.*

\* Electronic signature used with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions

26