# EXHIBIT 3

F-1 1 d160437df1.htm FORM F-1

**Table of Contents**

**As filed with the Securities and Exchange Commission on July 8, 2022**

Registration No. 333-

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

## FORM F-1
## REGISTRATION STATEMENT
*Under*
*The Securities Act of 1933*

# GigaCloud Technology Inc
**(Exact name of Registrant as specified in its charter)**

**Not Applicable**
**(Translation of Registrant's name into English)**

| | | |
|---|---|---|
| **Cayman Islands** | **5961** | **Not Applicable** |
| **(State or other jurisdiction of incorporation or organization)** | **(Primary Standard Industrial Classification Code Number)** | **(I.R.S. Employer Identification Number)** |

**Unit A, 12/F, Shun Ho Tower**
**24-30 Ice House Street**
**Central**
**Hong Kong**
**+852 2369-8219**
**(Address, including zip code, and telephone number, including area code, of Registrant's principal executive offices)**

**Cogency Global Inc.**
**122 East 42nd Street, 18th Floor**
**New York, NY 10168**
**+1 800-221-0102**
**(Name, address, including zip code, and telephone number, including area code, of agent for service)**

*Copies to:*

| | |
|---|---|
| **Benjamin Su, Esq.** | **Anthony W. Basch, Esq.** |
| **Daying Zhang, Esq.** | **Alexander W. Powell, Esq.** |
| **Latham & Watkins LLP** | **Kaufman & Canoles, P.C.** |
| **18th Floor, One Exchange Square** | **Two James Center, 14th Floor** |
| **8 Connaught Place, Central** | **1021 East Cary St.** |
| **Hong Kong** | **Richmond, Virginia 23219** |
| **+852 2912-2500** | **+1 (804) 771-5700** |

**Approximate date of commencement of proposed sale to the public:**

**As soon as practicable after the effective date of this registration statement.**

If any of the securities being registered on this Form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, or the Securities Act, check the following box.  ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering.  ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering.  ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering.  ☐

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933.

Emerging growth company ☒

If an emerging growth company that prepares its financial statements in accordance with U.S. GAAP, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards† provided pursuant to Section 7(a)(2)(B) of the Securities Act.  ☐

**The Registrant hereby amends this registration statement on such date or dates as may be necessary to delay its effective date until the Registrant shall file a further amendment which specifically states that this registration statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act, as amended, or until the registration statement shall become effective on such date as the Securities and Exchange Commission, acting pursuant to said Section 8(a) may determine.**

---

†    The term "new or revised financial accounting standard" refers to any update issued by the Financial Accounting Standards Board to its Accounting Standards Codification after April 5, 2012.

Table of Contents

The information in this preliminary prospectus is not complete and may be changed. These securities may not be sold until the registration statement filed with the United States Securities and Exchange Commission is effective. This preliminary prospectus is not an offer to sell nor does it seek an offer to buy these securities in any jurisdiction where the offer or sale is not permitted.

Subject to Completion, dated          , 2022

PRELIMINARY   PROSPECTUS



# GigaCloud Technology Inc

### Class A Ordinary Shares

This is an initial public offering of        Class A ordinary shares, par value $0.05 per share, by GigaCloud Technology Inc. We anticipate the initial public offering price of our Class A ordinary shares to be between $      and $      per Class A ordinary share.

Prior to this offering, there has been no public market for our shares. We have applied to list our Class A ordinary shares on the Nasdaq Global Market, or Nasdaq, under the symbol "GCT."

In this prospectus, "Cayman Islands holding company" refers to GigaCloud Technology Inc, our Cayman Islands holding company and its predecessor entity; "we," "us," "our company," "our," "our group" or "GigaCloud Group" refers to GigaCloud Technology Inc, our Cayman Islands holding company, its predecessor entity, together as a group with its subsidiaries and, in the context of describing our operations and consolidated financial statements, its consolidated variable interest entities, or VIEs, and any subsidiaries of its consolidated VIEs; "Hong Kong Subsidiary" refers to GigaCloud Technology (HongKong) Limited, a wholly-owned subsidiary of GigaCloud Technology Inc in Hong Kong principally for operating the B2B GigaCloud Marketplace; and "PRC Subsidiaries" refer to operating subsidiaries of GigaCloud Technology Inc in mainland China principally for procurement and providing inter-group services to the group companies.

We are an "emerging growth company" as defined under applicable securities laws in the United States, or the U.S., and are eligible for reduced public company reporting requirements.

**See "Risk Factors" beginning on page 31 to read about factors you should consider before buying our Class A ordinary shares.**

GigaCloud Technology Inc is a holding company incorporated in the Cayman Islands and not a direct Chinese or Hong Kong operating company. As a holding company with no material operations of its own, GigaCloud Technology Inc conducts its operations through its principal subsidiaries incorporated in mainland China, Hong Kong, Japan and the United States and principal consolidated VIEs incorporated in the United States and the United Kingdom. Our corporate structure involves unique risks to investors as they are purchasing equity securities in a Cayman Islands holding company with operations conducted by our subsidiaries and consolidated VIEs, and not equity securities of our subsidiaries based in mainland China, Hong Kong, Japan and the United States, nor equity securities of our consolidated VIEs based in the United States and the United Kingdom. The Class A ordinary shares offered in this offering are shares of our Cayman Islands holding company instead of the shares of our subsidiaries or consolidated VIEs. Investors will not and may never directly hold equity interests in our subsidiaries or consolidated VIEs, including the equity interests in our principal subsidiaries based in mainland China, Hong Kong, Japan and the United States and our principal consolidated VIEs based in the United States and the United Kingdom. While our current corporate structure does not contain any VIE in the People's Republic of China, or the PRC, and our group has no intention establishing any VIEs in the PRC in the future, if in the future our group's corporate structure were to contain a VIE, the PRC regulatory authorities could disallow the VIE structure, which would likely result in a material change in our operations and/or a material change in the value of the securities we are registering for sale, including that it could cause the value of such securities to significantly decline or in extreme cases, become worthless. We do not own any equity interest in the consolidated VIEs. We control and receive the economic benefits of our consolidated VIEs and their business operations through certain contractual arrangements. Uncertainties exist as to our ability to enforce the VIE agreements, and the enforceability of the VIE agreements has not been tested in a court of law. For a description of our corporate structure and our contractual arrangements with our consolidated VIEs and the risks related to our corporate structure, see "Corporate History and Structure—Contractual Arrangements with Our Consolidated VIEs and their Shareholders," "Risk Factors—Risks Related to Our Corporate Structure—We rely on contractual arrangements with our consolidated VIEs and their shareholders for a portion of our business operations. These arrangements may not be as effective as direct ownership in providing operational control," and "Risk Factors—Risks Related to Doing Business in China—The PRC government may exert more control over offerings conducted overseas and/or foreign investment in mainland China- and Hong Kong-based issuers, may exercise significant oversight and discretion over a company's ability to conduct business in mainland China and Hong Kong and may intervene in or influence our operations at any time, which could result in a material change in our operations and/or the value of the securities we are registering for sale."

The PRC government has recently indicated an intent to exert more oversight and control over overseas securities offerings and other capital markets activities by, and overseas and/or foreign investment in, companies with operations in mainland China and Hong Kong, including enhancing supervision over companies with operations in mainland China that are listed overseas using VIE structure, and that the PRC regulatory authorities could disallow the use of such VIE holding structure. We do not believe that we are directly subject to these regulatory actions or statements, as we do not currently have any VIE in the PRC. However, the rules and regulations and the enforcement thereof in China can change quickly. The PRC regulatory authorities could change the rules, regulations and policies regarding foreign ownership in the industry in which we operate, which would likely result in material change in our operations and/or a material change in the value of the securities we are registering for sale, including that it could cause the value of the securities to significantly decline, or become worthless. The PRC government may intervene with or influence our operations in mainland China and Hong Kong as the government deems appropriate to further regulatory, political and societal goals. Any such action, once taken by the PRC government, could result in a material change in our operations, significantly limit or completely hinder our ability to offer or continue to offer securities to investors and cause the value of the securities we are registering for sale to significantly decline or in extreme cases, become worthless. See "Risk Factors—Risks Related to Doing Business in China—The PRC government may exert more control over offerings conducted overseas and/or foreign investment in mainland China- and Hong Kong-based issuers, may exercise significant oversight and discretion over a company's ability to conduct business in mainland China and Hong Kong and may intervene in or influence our operations at any time, which could result in a material change in our operations and/or the value of the securities we are registering for sale."

On June 30, 2020, the Standing Committee of the National People's Congress of the PRC, or the Standing Committee of the NPC, promulgated the Law of the People's Republic of China on Safeguarding National Security in the Hong Kong Special Administrative Region, or the Law of PRC on Safeguarding National Security in Hong Kong. The interpretation of the Law of the PRC on Safeguarding National Security in Hong Kong involves a degree of uncertainty. Recently, the PRC government announced that it would step up supervision of overseas listed PRC businesses. Under the new measures, the PRC government will enhance regulation of cross-border data flows and security, crack down on illegal activity in the securities market and punish fraudulent securities issuance, market manipulation and insider trading. The PRC government will also check sources of funding for securities investment and control leverage ratios. The PRC government has also opened a probe into several U.S.-listed technology companies focusing on anti-monopoly, financial technology regulation and more recently, with the passage of the PRC Data Security Law, how companies collect, store, process and transfer personal data. Currently these laws (other than the Law of the PRC on Safeguarding National Security in Hong Kong) are expected to apply to mainland China domestic businesses, rather than businesses in Hong Kong which operate under a different set of laws from mainland China. However, there can be no assurance that the government of Hong Kong will not enact similar laws and regulations applicable to companies operating in Hong Kong. For example, the PRC government may pressure the government of Hong Kong to enact similar laws and regulations to those in the PRC, which may seek to exert control over offerings conducted overseas by Hong Kong companies. If any or all of the foregoing were to occur, it could lead to a material adverse change in GigaCloud Group's operations and limit or hinder our ability to offer securities to overseas investors or remain listed in the United States, which could cause the value of the securities we are registering for sale to significantly decline or become worthless. See "Risk Factors—Risks Related to Doing Business in China—Implementation of the Law of the PRC on Safeguarding National Security in Hong Kong involves uncertainty, and the recent policy pronouncements by the PRC government regarding business activities of U.S.-listed PRC businesses may negatively impact GigaCloud Group's existing and future operations in Hong Kong."

Although we have operations in many locations globally, we face various legal and operational risks and uncertainties as a result of being based in and having operations in mainland China and Hong Kong. We launched our GigaCloud Marketplace under our Hong Kong Subsidiary in 2019. Our PRC Subsidiaries perform cost functions and internal operational functions, but our PRC Subsidiaries do not generate revenue in the PRC. Accordingly, the laws and regulations of the PRC have an impact on the operational and procurement aspects of our business. Furthermore, the PRC government has authority to exert political and economic influence on the ability of a company with operations in mainland China and Hong Kong to conduct business, accept foreign investment or list on the United States or the other foreign exchange. For example, we may face risks associated with regulatory approvals of offshore offerings, anti-monopoly regulatory actions, oversight on cybersecurity and data privacy, the lack of inspection of the Public Company Accounting Oversight Board, or the PCAOB, of our auditors, as well as regulatory risks relating to companies in Hong Kong. Based on our inquiry with the relevant PRC government authority and the advice of our PRC legal counsel, we believe we, including our PRC Subsidiaries and our Hong Kong Subsidiary, are currently not required to file with the Cyberspace Administration of China, or the CAC, for a cybersecurity review as of the date hereof, because (i) our B2B ecommerce platform, GigaCloud Marketplace, is operated in Hong Kong under our Hong Kong Subsidiary with under one million users, and (ii) our GigaCloud Marketplace is a B2B ecommerce platform and any data we collected on our sellers and buyers are limited without any personal information. See "Risk Factors—Risks Related to Doing Business in China—The approval or other administration requirements of the China Securities Regulatory Commission, or the CSRC, or other PRC governmental authorities, may be required in connection with this offering under a PRC regulation or any new laws, rules or regulations to be enacted, and if required, we cannot assure you that we will be able to obtain such approval. The regulation also establishes more complex procedures for acquisitions conducted by foreign investors that could make it more difficult for us to grow through acquisitions." In light of recent statements and regulatory actions by the PRC government related to the PRC's extension of authority into Hong Kong, there is also risk that the PRC government may intervene or influence our operations in Hong Kong, as our operations in Hong Kong are subject to political and economic influence from the PRC government. Our Hong Kong Subsidiary may be subject to direct intervention or influence from the PRC government in the future due to changes in laws or other unforeseeable reasons. Such risks could impact our ability to conduct our business, accept foreign investments, or list on the United States or the other foreign exchange, result in a material change in our operations and/or the value of our Class A ordinary shares or could significantly limit or completely hinder our ability to offer or continue to offer Class A ordinary shares and/or other securities to investors and cause the value of the securities we are registering for sale to significantly decline or be worthless. See "Risk Factors—Risks Related to Doing Business in China—The PRC government may exert more control over offerings conducted overseas and/or foreign investment in mainland China- and Hong Kong-based issuers, may exercise significant oversight and discretion over a company's ability to conduct business in mainland China and Hong Kong and may intervene in or influence our operations at any time, which could result in a material change in our operations and/or the value of the securities we are registering for sale," and "Risk Factors—Risks Related to Doing Business in China—We operate our GigaCloud Marketplace through our Hong Kong Subsidiary. If the PRC government were to extend its oversight into companies in Hong Kong, our Hong Kong Subsidiary may be subject to additional regulations which could have a material effect on our business operations."

**Table of Contents**

On December 2, 2021, the SEC adopted amendments to finalize rules implementing the submission and disclosure requirements in the Holding Foreign Companies Accountable Act, or the HFCA Act. The rules apply to registrants the SEC identifies as having filed an annual report with an audit report issued by a registered public accounting firm that is located in a foreign jurisdiction and that the PCAOB is unable to inspect or investigate, or the Commission-Identified Issuers. The final amendments require Commission-Identified Issuers to submit documentation to the SEC establishing that it is not owned or controlled by a governmental entity in the public accounting firm's foreign jurisdiction. Furthermore, on June 22, 2021, the U.S. Senate passed the Accelerating Holding Foreign Companies Accountable Act, which, if enacted into law would amend the HFCA Act and require the SEC to prohibit an issuer's securities from trading on U.S. stock exchanges if its auditor is not subject to PCAOB inspections for two consecutive "non-inspection" years instead of three, and therefore reducing the time before our securities may be prohibited from trading on the Nasdaq or other U.S. stock exchanges, and this ultimately could result in our Class A ordinary shares being delisted. On September 22, 2021, the PCAOB adopted a final rule implementing the HFCA Act, which provides a framework for the PCAOB to use when determining, as contemplated under the HFCA Act, whether the PCAOB is unable to inspect or investigate completely registered public accounting firms located in a foreign jurisdiction because of a position taken by one or more authorities in that jurisdiction. On December 16, 2021, the PCAOB issued a report on its determinations that the PCAOB is unable to inspect or investigate completely PCAOB-registered public accounting firms headquartered in mainland China and Hong Kong, because of positions taken by PRC authorities in these jurisdictions. The PCAOB included in its report a list of registered public accounting firms headquartered in mainland China and Hong Kong that the PCAOB is unable to inspect or investigate completely, including our auditor, KPMG Huazhen LLP. Our Class A ordinary shares may be delisted under the HFCA Act if the PCAOB is unable to inspect auditors who are located in China and if we fail to implement measures to enable PCAOB' inspection of our auditor. See "Risk Factors—Related to Our Class A Ordinary Shares and this Offering—Our Class A ordinary shares may be delisted under the HFCA Act if the PCAOB is unable to inspect auditors who are located in China and if we fail to implement measures to enable PCAOB's inspection of our auditor. The delisting of our Class A ordinary shares, or the threat of their being delisted, may materially and adversely affect the value of your investment. Additionally, the inability of the PCAOB to conduct inspections deprives our investors of the benefits of such inspections."

We have operations in many locations globally through our principal subsidiaries incorporated in mainland China, Hong Kong, Japan and the United States and our principal consolidated VIEs incorporated in the United States and the United Kingdom. If needed, cash can be transferred between our holding company and subsidiaries through intercompany fund advances. In 2019, GigaCloud Technology Inc, our Cayman Islands holding company (i) received a total of $4.4 million in cash from our subsidiaries and our consolidated VIEs, of which nil was from our Hong Kong Subsidiary or PRC Subsidiaries; and (ii) transferred a total of $3.3 million in cash to our subsidiaries and our consolidated VIEs, of which $1.0 million was to our Hong Kong Subsidiary and $1.4 million was to Suzhou Dajianyun Transport Co., Ltd., or Suzhou GigaCloud. In 2020, GigaCloud Technology Inc (i) received a total of $12.3 million in cash from our subsidiaries and our consolidated VIEs, of which $1.1 million was from our Hong Kong Subsidiary and nil from our PRC Subsidiaries; and (ii) transferred a total of $2.1 million in cash to our subsidiaries and our consolidated VIEs, of which $1.8 million was to our Hong Kong Subsidiary. In 2021, GigaCloud Technology Inc (i) received a total of $6.7 million in cash, of which $6.7 million was from our Hong Kong Subsidiary; and (ii) transferred a total of $18.6 million in cash to our subsidiaries, of which $18.5 million was to our Hong Kong Subsidiary and $0.1 million was to GigaCloud Trading (HongKong) Limited. In the three months ended March 31, 2022, GigaCloud Technology Inc (i) did not receive any cash transfer from our subsidiaries or consolidated VIEs; and (ii) transferred a total of $10.1 million to our subsidiaries, of which $10.0 million was to our Hong Kong Subsidiary and $0.1 million was to GigaCloud Trading (HongKong) Limited. Suzhou GigaCloud was a consolidated VIE in mainland China from 2018 to February 2021, and we acquired 100% of the equity interest in Suzhou GigaCloud in February 2021, which then became our indirect wholly-owned subsidiary. In 2019, Suzhou GigaCloud did not have any transfers, dividends or distributions with our Cayman Islands holding company or other intercompany entities. In 2020 and 2021, Suzhou GigaCloud received a total of $0.4 million and $1.5 million, respectively, in cash from our Hong Kong Subsidiary. In the three months ended March 31, 2022, Suzhou GigaCloud received a total of $0.3 million in cash from our Hong Kong Subsidiary. In 2020 and 2021, Suzhou GigaCloud transferred a total of nil and $0.5 million, respectively, in cash to our subsidiary in Japan and our consolidated VIE in the United States. In the three months ended March 31, 2022, Suzhou GigaCloud did not have any transfers, dividends or distributions with our Cayman Islands holding company or other intercompany entities. In 2019, 2020, 2021 and the three months ended March 31, 2022, GigaCloud Technology (Suzhou) Co., Ltd., our wholly-owned subsidiary in mainland China, transferred a total of $0.04 million, nil, $0.06 million and nil, respectively, in cash to our subsidiaries in mainland China. In 2019, 2020, 2021 and the three months ended March 31, 2022, GigaCloud Technology (Suzhou) Co., Ltd. received a total of $3.1 million in cash, of which $1.7 million was from our Hong Kong Subsidiary and $1.4 million was from GigaCloud Technology Inc, $4.6 million in cash from our Hong Kong Subsidiary, $15.1 million in cash, of which $15.0 million was from our Hong Kong Subsidiary and $0.1 million was from one of our PRC Subsidiaries, and $2.9 million in cash from our Hong Kong Subsidiary, respectively. As of the date of this prospectus, other than the cash transfer described hereto, there were no transfer of other assets between our Cayman Islands holding company, our subsidiaries and VIEs. Our subsidiaries and consolidated VIEs have never made any dividends or distributions to our Cayman Islands holding company, or to investors. Similarly, our Cayman Islands holding company has not declared or made any dividend or other distribution to its shareholders, including U.S. investors, in the past. If we decide to pay dividends on any of our ordinary shares in the future, as a holding company, we will be dependent on receipt of funds from our principal subsidiaries in Hong Kong, Japan and the United States and our principal consolidated VIEs in the United States and the United Kingdom. There are currently no restrictions on foreign exchange and our ability to transfer cash among our Cayman Islands holding company and our principal subsidiaries and consolidated VIEs, as applicable, in Hong Kong, Japan, the United States and the United Kingdom, or to investors. Although we did not rely on our PRC Subsidiaries in dividends or other distributions on equity in the past, in the event that our PRC Subsidiaries were to issue dividends or distribution to us out of mainland China in the future, our PRC Subsidiaries may be subject to the applicable foreign currency control. To date, there have not been any such dividends or other distributions from our PRC Subsidiaries to our subsidiaries located outside of mainland China. In addition, save as disclosed above, as of the date of this prospectus, none of our subsidiaries have ever issued any dividends or distributions to us or their respective shareholders outside of mainland China. In the PRC, the PRC government imposes controls on the convertibility of the Renminbi into foreign currencies and the remittance of currency out of the PRC which may restrict our PRC Subsidiaries' ability to transfer cash from our PRC Subsidiaries to our other non-mainland China entities. To the extent cash is generated in our PRC Subsidiaries, and may need to be used to fund operations outside of mainland China, such funds may not be available due to limitations placed by the PRC government. Furthermore, to the extent assets (other than cash) in our business are located in mainland China or held by a mainland China entity, the assets may not be available to fund operations or for other use outside of mainland China due to interventions in or the imposition of restrictions and limitations on the ability of us and our subsidiaries to transfer assets by the PRC government. If certain PRC laws and regulations, including existing laws and regulations and those enacted or promulgated in the future were to become applicable to our Hong Kong Subsidiary in the future, and to the extent cash is generated in our Hong Kong Subsidiary and to the extent assets (other than cash) in our business are located in Hong Kong or held by a Hong Kong entity and may need to be used to fund operations outside of Hong Kong, such funds or assets may not be available due to interventions in or the imposition of restrictions and limitations on the ability of us and our subsidiaries to transfer funds or assets by the PRC government. Furthermore, there can be no assurance that the PRC government will not intervene or impose restrictions on GigaCloud Group's ability to transfer or distribute cash within its organization, which could result in an inability or prohibition on making transfers or distributions to entities outside of mainland China and Hong Kong and adversely affect its business. Saved as the foregoing limitations imposed by the PRC government as described hereto, there are currently no limitations on our or our subsidiaries' ability to transfer cash to investors. See "Risk Factors—Risks Related to Doing Business in China—Governmental control of currency conversion may limit our ability to utilize our revenues, transfer or distribute cash within our group effectively and affect the value of your investment."

We currently have not maintained any cash management policies that dictate the purpose, amount and procedure of fund transfers among our Cayman Islands holding company, our subsidiaries, the consolidated VIEs, or investors. Rather, the funds can be transferred in accordance with the applicable laws and regulations. See "Prospectus Summary—Cash Transfers and Dividend Distribution." We may require additional capital resources in the future and we may seek to issue additional equity or debt securities or obtain new or expanded credit facilities, which could subject us to operating and financing covenants, including requirements to maintain certain amount of cash reserves. See "Risk Factors—Risks Related to Our Business and Industry—Our ability to raise capital in the future may be limited, and our failure to raise capital when needed could prevent us from growing."

**Neither the United States Securities and Exchange Commission nor any other regulatory body has approved or disapproved of these securities or passed upon the accuracy or adequacy of this prospectus. Any representation to the contrary is a criminal offense.**

| | Per Class A ordinary share | Total |
|---|---|---|
| Initial public offering price | $ | $ |
| Underwriting discounts and commissions (1) | $ | $ |
| Proceeds, before expenses, to us | $ | $ |

(1)    For additional information on underwriting compensation, see "Underwriting."

We have granted the underwriter a 45-day option to purchase up to an aggregate of          additional Class A ordinary shares, representing 15% of the Class A ordinary shares sold in the offering, from GigaCloud Technology Inc solely to cover over-allotments, if any, at the initial public offering price less the underwriting discounts and commissions.

Immediately prior to the completion of this offering, our outstanding share capital will consist of Class A ordinary shares and Class B ordinary shares. Mr. Larry Lei Wu, our chairman of board of directors and chief executive officer, will beneficially own all of our issued Class B ordinary shares and will be able to exercise approximately         % of the total voting power of our issued and outstanding share capital immediately following the completion of this offering. Holders of Class A ordinary shares and Class B ordinary shares will have the same rights except for voting and conversion rights. Each Class A ordinary share will be entitled to one vote, and each Class B ordinary share will be entitled to ten votes. Our Class A ordinary shares and Class B ordinary shares vote together as a single class on all matters submitted to a vote of our shareholders, except as may otherwise be required by law. Each Class B ordinary share will be convertible into Class A ordinary share. Class A ordinary shares will not be convertible into Class B ordinary shares under any circumstances.

Upon the completion of this offering, we will be a "controlled company" as defined under the Nasdaq Stock Market Listing Rules because Mr. Larry Lei Wu, our chairman of board of directors and chief executive officer, will hold more than 50% of our voting power for the election of directors through TALENT BOOM GROUP LIMITED and Ji Xiang Hu Tong Holdings Limited, the entities controlled by Mr. Wu. In addition, our directors, officers and certain affiliated shareholders will own a substantial majority of our shares and will be able to exercise a substantial majority of the total voting power of our total issued and outstanding ordinary shares immediately upon the completion of this offering, assuming the underwriter does not exercise the option to purchase additional Class A ordinary shares. See "Principal Shareholders" for details.

The underwriter expects to deliver the Class A ordinary shares against payment in U.S. dollars in New York, New York on or about              , 2022

Sole Book-Running Manager

**Aegis Capital Corp.**

PROSPECTUS DATED              , 2022

**Table of Contents**

**MANAGEMENT**

**Directors and Executive Officers**

The following table sets forth information regarding our directors and executive officers as of the date of this prospectus.

| Directors and Executive Officers | Age | Position/Title |
|---|---|---|
| Larry Lei Wu | 50 | Founder, chairman, director and chief executive officer |
| Xin Wan | 42 | Director and chief technology officer |
| Frank Lin | 57 | Director |
| Xing Huang | 48 | Director |
| Zhiwu Chen* | 58 | Independent Director Appointee |
| Binghe Guo* | 47 | Independent Director Appointee |
| Thomas Liu* | 57 | Independent Director Appointee |
| Kwok Hei David Lau | 37 | Chief financial officer |

\*    Each of Mr. Zhiwu Chen, Mr. Binghe Guo and Mr. Thomas Liu has accepted our appointment to be a director of our company, effective upon the SEC's declaration of the effectiveness of our registration statement on Form F-1 of which this prospectus is a part.

*Larry Lei Wu* is our founder and has served as our director, chairman and chief executive officer since our inception in 2006. Prior to founding our company, among others, Mr. Wu served as the general manager of a vocational education and online education company, New Oriental Education & Technology Group Inc. (NYSE: EDU and SEHK: 9901), from 2002 to 2006. Mr. Wu received his MBA degree from Yale University in 2002 and his bachelor's degree in mechanical manufacturing from Beijing Union University in 1994.

*Xin Wan* has served as our director since November 2020 and as our chief technology officer since 2014. Prior to joining us, Mr. Wan served as the vice president of the education business unit of Aspire Company of China Mobile from 2010 to 2014 and as channel operation center manager and director in Oriental Standard (Beijing) Talent Service Co., Ltd. from 2007 to 2010. Mr. Wan received his master's degree in software engineering in 2007 and his bachelor's degree in software engineering in 2004 from Tsinghua University, and his bachelor's degree in chemical engineering and English from Dalian University of Technology in 2002.

*Frank Lin* has served as our director since November 2006. Mr. Lin is a general partner of DCM, a technology venture capital firm and one of our principal shareholders. Prior to joining DCM in 2006, Mr. Lin was the chief operating officer of SINA Corporation (Nasdaq: SINA). He co-founded SINA's predecessor, SinaNet, in 1995 and later helped guiding SINA through its listing on Nasdaq. Prior to founding SinaNet, Mr. Lin was a consultant at Ernst & Young Management Consulting Group. Mr. Lin currently serves on the board of directors of numerous DCM portfolio companies, including Tuniu Corporation (Nasdaq: TOUR) and Vipshop Holdings Limited (NYSE: VIPS), as well as China Online Education Group (NYSE: COE) and Kuaishou Technology (HKSE: 1024). Mr. Lin received his MBA degree from Stanford University in 1993 and his bachelor's degree in engineering from Dartmouth College in 1988.

*Xing Huang* has served as our director since November 2020. Mr. Huang has over 17 years of experience in logistics and warehouse management. From 1996 to 2013, Mr. Huang served as warehouse manager, general manager in logistics and logistics directors in various companies. Mr. Huang received his MBA degree from Fudan University in 2008 and his bachelor's degree in environmental chemistry from Nankai University in Tianjin in 1996.

*Zhiwu Chen* will serve as our independent director immediately upon the effectiveness of our registration statement on Form F-1, of which this prospectus is a part. He is an independent director at Noah

181

Table of Contents

Holdings (NYSE:NOAH) since December 2013 and an independent director at Bairong Inc. (HKEX: 6608) since March 2021. Professor Chen has been a faculty member at the University of Hong Kong since 2016 and currently serves as director of the Asia Global Institute and Victor and William Fung Professor in Economics at the University of Hong Kong. Professor Chen was formerly a professor of finance at Yale University from 1999 to 2017. Professor Chen was on the board of directors at PetroChina Company Limited (HKEX: 857, SHSE: 601857, NYSE: PTR) from May 2011 to June 2017, Bank of Communications (SHSE:601328) from November 2010 to August 2018, and IDG Energy Investment Ltd (HKEX: 650) from July 2015 to October 2018. Professor Chen received his PhD in financial economics from Yale University in 1990, his master's degree in computer science from Changsha Institute of Technology in 1986 and his bachelor's degree in computer science from Central-South University in 1983.

*Binghe Guo* will serve as our independent director immediately upon the effectiveness of our registration statement on Form F-1, of which this prospectus is a part. Mr. Guo served as our director from April 2017 to February 2022. Mr. Guo is currently the vice chairman, a member of strategy and investment committee and the authorized representative of Red Star Macalline Group Corporation Ltd. (HKSE: 1528 and SSE: 601828), parent of one of our principal shareholders, and serves on its board of directors. In Red Star Macalline Group Corporation Ltd., Mr. Guo is primarily responsible for its capital market, legal compliance, corporate governance, internal control, investor relations and information disclosure, in addition to the fund management and intellectual properties investment. Prior to joining Red Star Macalline Group Corporation Ltd. in 2007, Mr. Guo worked in Skyone Securities Co., Ltd. from March 2004 to October 2005 and Shenyin & Wanguo Securities Co., Ltd. from July 2001 to March 2004. Mr. Guo received his master's degree in economics from Fudan University in 2001 and his executive MBA degree from Cheung Kong Graduate School of Business in 2013.

*Thomas Liu* will serve as our independent director immediately upon the effectiveness of our registration statement on Form F-1, of which this prospectus is a part. Since August 2020, Mr. Liu has served as president of Prologis, Greater China Region, with full responsibilities of operations, business development, capital deployment, venture capital investment, and mergers and acquisitions. From 2014 to 2020, Mr. Liu was the head of Wanda Capital, overseeing capital deployment, strategic acquisition, fund raising and risk management for Dalian Wanda Group, a cross-industry multinational conglomerate. Prior to Wanda Capital, Mr. Liu took leadership roles at Honeywell Greater China, Lear Corporation, China and Johnson Controls in the U.S. Mr. Liu received his executive MBA degree, with a focus in finance and investment, from Cheung Kong Graduate School of Business in China in 2013, his master of science degree in systems design engineering from University of Waterloo in 1992 and his bachelor of science degree in manufacturing systems engineering from Kettering University in 1989.

*Kwok Hei David Lau* has served as our chief financial officer since May 2022. Mr. Lau has been an investment banker for more than 12 years with experience in M&A and IPO transactions in U.S. and China. Prior to joining us, Mr. Lau served as the director of Wells Fargo Securities Asia Limited from August 2013 to May 2022. Mr. Lau received his bachelor degree in commerce from University of Toronto in 2008 and his master degree in economics in 2010 from The University of Hong Kong. Mr. Lau acquired a certified financial risk manager issued by the Global Association of Risk Professionals in the U.S. in 2009.

**Board of Directors**

Our board of directors will consist of seven directors upon the SEC's declaration of effectiveness of our registration statement on Form F-1, of which this prospectus is a part. A director is not required to hold any shares in our company to qualify to serve as a director. A director may vote with respect to any contract, proposed contract, or arrangement in which he or she is interested in provided that (i) such director, if his or her interest in such contract or arrangement is material, has declared the nature of his interest at the earliest meeting of the board at which it is practicable for him to do so, either specifically or by way of a general notice and (ii) if such contract or arrangement is a transaction with a related party, such transaction has been approved by the

Table of Contents

audit committee. If he or she does so, his or her vote shall be counted and he or she may be counted in the quorum at any meeting of the directors at which any such contract or proposed contract or arrangement is considered. A director may exercise all the powers of the company to borrow money, mortgage its business, property and uncalled capital, and issue debentures or other securities whenever money is borrowed or as security for any obligation of the company or of any third party. None of our directors has a service contract with us or any of our subsidiaries that provides for benefits upon termination of service.

**Committees of the Board of Directors**

We will establish three committees under the board of directors immediately upon the effectiveness of our registration statement on Form F-1, of which this prospectus is a part: an audit committee, a compensation committee and a nominating and corporate governance committee. We will adopt a charter for each of the three committees. Each committee's members and functions are described below.

*Audit Committee*

Our audit committee will consist of Zhiwu Chen, Binghe Guo and Thomas Liu. Zhiwu Chen will be the chairman of our audit committee. We have determined that Zhiwu Chen, Binghe Guo and Thomas Liu satisfy the "independence" requirements of the Rule 5605(c)(2) of the Nasdaq Stock Market Listing Rules and meets the independence standards under Rule 10A-3 under the Exchange Act. Our audit committee will consist solely of independent directors that satisfy the Nasdaq and SEC requirements within one year of the completion of this offering. Our board of directors has also determined that Zhiwu Chen qualifies as an "audit committee financial expert" within the meaning of the SEC rules and possesses financial sophistication within the meaning of the Nasdaq Stock Market Listing Rules.

The audit committee will oversee our accounting and financial reporting processes and the audits of our financial statements. The audit committee will be responsible for, among other things:

- selecting our independent registered public accounting firm and pre-approving all auditing and non-auditing services performed by our independent registered public accounting firm;

- reviewing with the independent registered public accounting firm any audit problems or difficulties and management's response;

- reviewing and approving all proposed related-party transactions, as defined in Item 404 of Regulation S-K under the Securities Act;

- discussing the annual audited financial statements with management and our independent registered public accounting firm;

- annually reviewing and reassessing the adequacy of our audit committee charter;

- reviewing the adequacy and effectiveness of our accounting and internal control policies and procedures and any steps taken to monitor and control major financial risk exposures;

- meeting separately and periodically with management and our independent registered public accounting firms;

- reporting regularly to the full board of directors; and

- performing such other matters that are specifically delegated to our audit committee by our board of directors from time to time.

Table of Contents

*Compensation Committee*

Our compensation committee will consist of Binghe Guo, Zhiwu Chen and Thomas Liu. Binghe Guo will be the chairman of our compensation committee. We have determined that Binghe Guo, Zhiwu Chen and Thomas Liu satisfy the "independence" requirements of Rule 5605(a)(2) of the Nasdaq Stock Market Listing Rules.

The compensation committee will assist the board in reviewing and approving the compensation structure, including all forms of compensation, relating to our directors and executive officers. Our chief executive officer may not be present at any committee meeting during which his compensation is deliberated.

The compensation committee will be responsible for, among other things:

- reviewing and approving, or recommending to the board for its approval, the compensation for our chief executive officer and other executive officers;

- reviewing and recommending to the board for determination with respect to the compensation of our non-employee directors;

- reviewing and making recommendations to the board of directors with respect to the compensation of our directors;

- reviewing periodically and approving any long-term incentive compensation or equity plans, programs or similar arrangements, annual bonuses, employee pension and welfare benefit plans; and

- selecting compensation consultant, legal counsel or other adviser only after taking into consideration all factors relevant to that person's independence from management.

*Nominating and Corporate Governance Committee*

Our nominating and corporate governance committee will consist of Binghe Guo, Zhiwu Chen and Thomas Liu. Binghe Guo will be the chairperson of our nominating and corporate governance committee. We have determined that Binghe Guo, Zhiwu Chen and Thomas Liu satisfy the "independence" requirements of Rule 5605(a)(2) of the Nasdaq Stock Market Listing Rules.

The nominating and corporate governance committee will assist the board of directors in selecting directors and in determining the composition of our board and board committees. The nominating and corporate governance committee will be responsible for, among other things:

- identifying and recommending nominees for election or re-election to our board of directors, or for appointment to fill any vacancy;

- reviewing annually with our board of directors its composition in light of the characteristics of independence, age, skills, experience and availability of service to us;

- identifying and recommending to our board the directors to serve as members of committees;

- advising the board periodically with respect to developments in the law and practice of corporate governance as well as our compliance with applicable laws and regulations;

- making recommendations to our board of directors on corporate governance matters and on any corrective action to be taken; and

184

Table of Contents

- monitoring compliance with our code of business conduct and ethics, including reviewing the adequacy and effectiveness of our procedures to ensure compliance.

## Duties of Directors

Under Cayman Islands law, our directors owe to us fiduciary duties, including a duty of loyalty, a duty to act honestly and a duty to act in what they consider in good faith to be in our best interests. Our directors also have a duty to act with skill and care. It was previously considered that a director need not exhibit in the performance of her or his duties a greater degree of skill than may reasonably be expected from a person of his knowledge and experience. However, English and Commonwealth Courts have moved towards an objective standard with regard to the required skill and care and these authorities are likely to be followed in the Cayman Islands.

In fulfilling their duty of care to us, our directors must ensure compliance with our memorandum and articles of association, as amended and restated from time to time.

Our company may have the right to seek damages if a duty owed by our directors is breached. You should refer to "Description of Share Capital—Differences in Corporate Law" for additional information on our standard of corporate governance under Cayman Islands law.

Our board of directors has all the powers necessary for managing, and for directing and supervising, our business affairs. The functions and powers of our board of directors include, among others:

- convening shareholders' annual and extraordinary general meetings and reporting its work to shareholders at such meetings;

- declaring dividends and distributions;

- appointing officers and determining the term of office of officers;

- exercising the borrowing powers of our company and mortgaging the property of our company; and

- approving the transfer of shares of our company, including the registering of such shares in our register of members.

## Risk Management

One of the key functions of our board of directors is informed oversight of our risk management process. Our board of directors does not have a standing risk management committee, but rather administers this oversight function directly through our board of directors as a whole, as well as through various standing committees of our board of directors that address risks inherent in their respective areas of oversight. In particular, our board of directors is responsible for monitoring and assessing strategic and regulatory risk exposure, including monitoring the Company's compliance with cybersecurity and data protection rules and regulations, approving the Company's budget after considering various risks such as risks associated with supply chain, suppliers and key service provider, if any. Our board receives periodic reporting from our chief executive officer on cybersecurity and any other business operational risks.

## Interested Transactions

A director may, subject to any separate requirement for audit committee approval under applicable law, our memorandum and articles of association, as amended and restated from time to time, or the Nasdaq Stock Market Listing Rules Company Manual, or disqualification by the chairman of the relevant board meeting, vote

185

**Table of Contents**

**GigaCloud Technology Inc**

**EXHIBITS INDEX**

| Exhibit No. | Description of Exhibit |
|---|---|
| 1.1* | Form of Underwriting Agreement |
| 3.1 | Sixth Amended and Restated Memorandum and Articles of Association of the Registrant, as currently in effect |
| 3.2* | Form of Seventh Amended and Restated Memorandum and Articles of Association of the Registrant, effective immediately prior to the completion of this offering |
| 4.1* | Registrant's Specimen Certificate for Class A Ordinary Shares |
| 4.2 | Fifth Amended and Restated Shareholders Agreement among the Registrant and other parties thereto dated February 28, 2021 |
| 4.3 | Fourth Amended and Restated Registration Rights Agreement among the Registrant and other parties thereto dated February 28, 2021 |
| 4.4 | Founder Undertaking Agreement entered into among the founder of the Registrant, the Registrant and other parties thereto dated July 6, 2022 |
| 5.1 | Opinion of Maples and Calder (Hong Kong) LLP regarding the validity of the ordinary shares being registered and certain Cayman Islands tax matters |
| 8.1 | Opinion of Maples and Calder (Hong Kong) LLP regarding certain Cayman Islands tax matters (included in Exhibit 5.1) |
| 8.2 | Opinion of Han Kun Law Offices regarding certain PRC tax matters (included in Exhibit 99.2) |
| 10.1 | 2008 Share Incentive Plan |
| 10.2 | 2017 Share Incentive Plan |
| 10.3 | Form of Indemnification Agreement between the Registrant and each of its directors and executive officers |
| 10.4 | Form of Employment Agreement between the Registrant and each of its executive officers |
| 10.5 | Form of Account Control Agreement |
| 21.1 | Principal Subsidiaries and Principal VIEs of the Registrant |
| 23.1 | Consent of KPMG Huazhen LLP, an independent registered public accounting firm |
| 23.2 | Consent of Maples and Calder (Hong Kong) LLP (included in Exhibit 5.1) |
| 23.3 | Consent of Han Kun Law Offices (included in Exhibit 99.2) |
| 24.1 | Powers of Attorney (included on signature page) |
| 99.1 | Code of Business Conduct and Ethics of the Registrant |
| 99.2 | Opinion of Han Kun Law Offices regarding certain PRC law matters |
| 99.3 | Consent of Frost & Sullivan |
| 99.4 | Consent of Zhiwu Chen |
| 99.5 | Consent of Binghe Guo |
| 99.6 | Consent of Thomas Liu |
| 107 | Filing Fee Table |

---

\*      To be filed by amendment.

II-4