**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE GIGACLOUD TECHNOLOGY INC SECURITIES LITIGATION** | **No. 1:23-cv-10645-JMF** |
| | **CLASS ACTION** |
| **THIS DOCUMENT RELATES TO:** | **This Document Relates to: All Actions** |
| **ALL ACTIONS** | **JURY TRIAL DEMANDED** |

Defendants GigaCloud Technology Inc, ("GigaCloud"), Larry Lei Wu, Xin Wan, Kwok Hei David Lau, Zhiwu Chen, and Thomas Liu ("Answering Defendants"), by their attorneys, hereby respond to Co-Lead Plaintiffs Sashi Rajan and Meir Spear's ("Lead Plaintiffs") Second Amended Complaint ("SAC"), dated June 28, 2024.

## PRELIMINARY STATEMENT

Answering Defendants state that this lawsuit is demonstrably false and entirely without merit.

On January 27, 2025, the Court granted in substantial part Defendants' motion to dismiss the SAC (the "Dismissal Order") (ECF No. 117). Specifically, of the 100 statements challenged by Lead Plaintiffs, the Court dismissed with prejudice all claims predicated on 90 alleged statements regarding GigaCloud's Marketplace activities. Dismissal Order at 20; Appendix A (ECF No. 96-1), Statement Nos. 11-100. The Court also dismissed portions of Plaintiffs' claims based on statements regarding the general sophistication of GigaCloud's artificial intelligence ("AI") technology. *Id.* at 14. The only claims permitted to proceed past the pleading stage were a Section 11 claim predicated solely on statements regarding GigaCloud's use of AI and the related Section 15 control person claim. *Id.* at 14-15, 20. Therefore, the only issue remaining in this case against Answering Defendants is the narrow question regarding GigaCloud's disclosure about AI usage in its registration statement, based on seven, or at most nine, challenged statements. Appendix A, Statement Nos. 1-3, 5-6, 8-9.[1] These claims are baseless, and Answering Defendants continue to believe these statements are accurate today.

---

[1] Statement Nos. 4 and 7 (citing ¶¶ 131, 135), refer to "Our Strengths" or "Competitive Strengths," which Answering Defendants believe that the Court has already found to be inactionable puffery. Dismissal Order at 14 ("'vague corporate-speak' used to describe the general strength of GigaCloud's technology amounts to mere 'puffery'"). However, because these two statements

Plaintiffs assert that GigaCloud did not use *any* AI at the time of its initial public offering ("IPO") in August 2022. This is demonstrably false. Over the last several years, GigaCloud has developed and deployed an AI infrastructure to support various aspects of the Company's business operations, including but not limited to managing inventory, optimizing routing, and analyzing transaction patterns. *See* Prospectus (ECF No. 97-2) at 157-61. GigaCloud's Registration Statement accurately describes how GigaCloud used AI at the time of the IPO.

In particular, GigaCloud has been developing and refining its proprietary AI software from the ground up in 2016, and the software was operationalized in 2020 and improved and upgraded thereafter. That highly confidential research effort was led by data engineer, Mr. Yuan Wen, who was hired by GigaCloud in 2016 and later promoted to Chief Data Scientist in 2019. Mr. Yuan is a graduate of the Computer Science Experimental Class at Tsinghua University. Tsinghua University is a member of the C9 League, an association of China's leading universities (akin to the "Ivy League" in the United States). And this Computer Science Experimental Class, colloquially known in China as the "Yao Class," is one of the most highly selective programs in computer science in China, admitting only 30 students per year.[2] Although Yao Class graduates often go on to work at leading research universities and the world's largest technology companies, GigaCloud was able to recruit Mr. Yuan due to alumni network connection, since the Company's Chief Technology Officer Mr. Xin Wan was also a graduate from Tsinghua University. At GigaCloud, he has led the Company's efforts to develop various AI functionality to support its operations along with a small data science and analytical team consisting of five employees based

---

were not specifically addressed in the Dismissal Order, Answering Defendants answer the allegations in those relevant paragraphs below without conceding that either is still part of the case.

[2] The Yao Class is led by renowned AI expert and 2000 Turing Award winner Andrew Chi-Chih Yao. *See* https://iiis.tsinghua.edu.cn/en/yaoclass/.

in Suzhou, China.  Mr. Yuan reported, and still reports, directly to GigCloud's Chief Technology Officer Mr. Xin Wan.  Mr. Yuan and his small team have never been part of the Company's IT Department, which handles general website and technology support functions.  Indeed, because this AI work is both important and cutting-edge, the Company takes proactive steps to safeguard this work, including by limiting the number of personnel who know the exact back-end processes supporting the systems used by other GigaCloud employees.  In other words, aside from the few individuals charged with developing and overseeing its AI programs, most GigaCloud personnel, including the types of employees described as "former employees" in the SAC, would not be privy to the existence, let alone any details, of those programs.

The claims in this lawsuit were spawned by short-sellers who purposefully spread misinformation about GigaCloud with the goal of driving down GigaCloud's stock price and profiting from this decline.  The Court correctly dismissed the overwhelming majority of the suit as invalid as a matter of law.  With regard to the remaining claims, the evidence will prove that the only misstatement is, in fact, the false assertion—first made by the short-sellers and then repeated by Plaintiffs—that the Company does not use AI.

This Answer is submitted as of the date it is signed.  Answering Defendants deny each and every allegation in the SAC, except as specifically herein admitted, and any factual averment admitted herein is admitted only to the specific fact alleged.  Moreover, except to the extent expressly admitted herein, Answering Defendants specifically deny any allegations contained in the footnotes, the Table of Contents, the section headings and subheadings, or other portions of the SAC that are not contained within the specifically numbered paragraphs.  With respect to any purported document cited to or quoted in the SAC, Answering Defendants do not admit that the documents are relevant or admissible, and reserve all objections as to relevance and admissibility.

3

Answering Defendants reserve the right to change, supplement, and amend their Answer if and when new information is revealed to them.

Finally, Answering Defendants herein answer all of the allegations that are potentially remaining in this lawsuit without conceding that that is the case. To the extent Answering Defendants respond to any allegation, such response does not constitute any admission that the allegation is relevant to the remaining claims.

\* \* \* \* \*

## <u>NATURE OF THE ACTION</u>

1.    This is a federal securities class action asserting two separate sets of claims under the federal securities laws.

**<u>ANSWER</u>:**

Paragraph 1 alleges legal conclusions, to which no response is required. To the extent a response is required, Answering Defendants deny the allegation.

2.    First, this complaint asserts strict liability and negligence claims under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"). These claims (the "Securities Act Claims") are asserted on behalf of a class consisting of all persons and entities, other than Defendants, that purchased or otherwise acquired GigaCloud Class A ordinary shares pursuant or traceable to the Company's registration statement filed on Form F-1 with the SEC on July 8, 2022 and, as amended, declared effective on August 17, 2022 ("Registration Statement"). The Registration Statement was filed in connection with the initial public offering ("IPO") of GigaCloud's Class A ordinary shares, and included the Issuer Free Writing Prospectus dated and filed with the SEC on August 2, 2022 ("Free Writing Prospectus") and the Prospectus, on Form 424B4, dated August 17, 2022 that the Company filed with the SEC on August 19, 2022 ("Prospectus"). The Registration Statement was negligently prepared and contained material misstatements. The Securities Act claims are asserted against GigaCloud, the signatories to the Registration Statement, and GigaCloud's directors at the time the Registration Statement became effective.

**<u>ANSWER</u>:**

Paragraph 2 alleges legal conclusions, to which no response is required. To the extent a response is required, Answering Defendants admit that GigaCloud filed a registration statement on Form F-1 with the SEC on July 8, 2022 and, as amended, declared effective on August 17,

4

2022, and that the Registration Statement was filed in connection with the IPO of GigaCloud's

Class A ordinary shares.  Answering Defendants further admit that an Issuer Free Writing

Prospectus was filed with the SEC on August 2, 2022 and that the Prospectus, on Form 424B4,

dated August 17, 2022, was filed with the SEC on August 19, 2022.  Answering Defendants deny

the remaining allegations in Paragraph 2 and incorporate by reference the full contents of the

Registration Statement as if attached hereto.

3.      Second, and separately, this complaint asserts securities fraud claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and SEC Rule 10b-5 promulgated thereunder, 17 CFR 240.10b-5. These claims (the "Exchange Act Claims") are asserted on behalf of a class consisting of all persons and entities, other than Defendants, that purchased or otherwise acquired GigaCloud Class A ordinary shares during the period August 18, 2022 to May 22, 2024, inclusive ("Class Period"), and were damaged thereby. The Exchange Act Claims are asserted against GigaCloud, as well as its Chief Executive Officer, Chief Financial Officer, and Chief Technology Officer, in connection with materially false and misleading statements they made or controlled during the Class Period.

**ANSWER:**

Paragraph 3 alleges legal conclusions, to which no response is required.  To the extent a

response is required, Answering Defendants deny the allegations.

**JURISDICTION AND VENUE**

4.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77K and 77o, and Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a).

**ANSWER:**

Paragraph 4 alleges legal conclusions, to which no response is required.  To the extent a

response is required, Answering Defendants deny the allegations.

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act, 15 U.S.C. § 77v, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

**ANSWER:**

Paragraph 5 alleges legal conclusions, to which no response is required. To the extent a response is required, Answering Defendants deny the allegations.

6.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), Section 22 of the Securities Act, 15 U.S.C. § 77v, and Section 27(c) of the Exchange Act, 15 U.S.C. § 78aa(c). Defendants conduct business in this Judicial District and a significant portion of Defendants' activities took place within this Judicial District. In addition, GigaCloud's operative Articles of Incorporation governing its Class A ordinary shares provide that unless GigaCloud consents in writing to the selection of an alternative forum, the United States District Court for the Southern District of New York (or, if the United States District Court for the Southern District of New York lacks subject matter jurisdiction over a particular dispute, the state courts in New York County, New York) shall be the exclusive forum within the United States for the resolution of any complaint asserting a cause of action arising out of or relating in any way to the federal securities laws of the United States, regardless of whether such legal suit, action, or proceeding also involves parties other than the Company.

**ANSWER:**

The first sentence of Paragraph 6 alleges legal conclusions, to which no response is required. To the extent a response is required, Answering Defendants deny the allegations. The remainder of Paragraph 6 purports to characterize GigaCloud's operative Articles of Incorporation governing its Class A ordinary shares, which speak for themselves. Answering Defendants refer to those Articles for a complete and accurate statement of their contents. Answering Defendants deny the remaining allegations in Paragraph 6 and incorporate by reference the full contents of the operative Articles of Incorporation as if attached hereto.

7.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**ANSWER:**

Paragraph 7 alleges legal conclusions, to which no response is required. To the extent a response is required, Answering Defendants deny the allegations.

6

## SECURITIES ACT CLAIMS

### I.    INTRODUCTION

8.    The Securities Act Claims are based solely on negligence and strict liability, and are not based on any reckless or intentionally fraudulent conduct by or on behalf of the Securities Act Defendants (defined below). Lead Plaintiffs specifically disclaim any allegation of fraud, scienter, or recklessness in these non-fraud claims. All of the sources used in this complaint to support Lead Plaintiffs' Securities Act Claims have been introduced solely for the purpose of showing there were material misstatements in GigaCloud's Registration Statement. Lead Plaintiffs expressly disclaim any language in those sources that indicates that those misstatements were fraudulent or were made with scienter or recklessly for the purpose of their Securities Act Claims.

**ANSWER:**

Paragraph 8 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations.

9.    GigaCloud purports to be "a pioneer of global end-to-end [business-to-business] ecommerce solutions for large parcel merchandise," which is primarily furniture. The Company has built an ecommerce platform, the "GigaCloud Marketplace," which connects manufacturers, primarily in Asia, with resellers, primarily in the U.S., Asia and Europe. GigaCloud purportedly executes delivery and sale of merchandise bought and sold on GigaCloud Marketplace through a network of warehouses up to and including last-mile delivery to the customer.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants admit that the Registration Statement contains the phrases quoted and some of the information referenced in Paragraph 9 but deny that these phrases and the paraphrased language are a complete and accurate recitation of the relevant statements made in the Registration Statement.  Answering Defendants also state that the paraphrased or quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement.  Answering Defendants deny the remaining allegations in Paragraph 9 and incorporate by reference the full contents of the Registration Statement as if attached hereto.

10.    GigaCloud's Registration Statement sold the Company to investors based on its competitive technological advantage. Even the Company's name, GigaCloud *Technology*, portrays the Company as, first and foremost, a technology company. GigaCloud claimed this technological advantage was derived from "self-learning [Artificial Intelligence]" ("AI"), which was the basis of the Company's alleged operational efficiency and a key component of the Company's purported business strategy — to recruit more third-party buyers and sellers to GigaCloud Marketplace.

**ANSWER:**

Answering Defendants admit that the Registration Statement contains the phrases quoted and some of the information referenced in Paragraph 10 but deny that these phrases and the paraphrased language are a complete and accurate recitation of the relevant statements made in the Registration Statement.  Answering Defendants also state that the paraphrased or quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement.  Answering Defendants deny the remaining allegations in Paragraph 10 and incorporate by reference the full contents of the Registration Statement as if attached hereto.

11.    However, the Registration Statement's claims about the Company's AI-powered technology infrastructure were false. Instead, according to a former GigaCloud software engineer and two former Supply Chain Managers, all of whom worked in Suzhou, China where GigaCloud's Information Technology ("IT") department was based, *no AI technology was involved* in GigaCloud's logistics. Rather, according to GigaCloud's former President of U.S. Operations, GigaCloud used "AI" and "Machine Learning" as mere buzzwords, but its warehouse management system was neither state-of-the-art nor sophisticated. Instead, it was similar to what you would see in most other warehouse operations. Furthermore, a former employee who was tasked with recruiting U.S.-based buyers and sellers to GigaCloud Marketplace *had never heard about GigaCloud using AI*, despite the fact that the Registration Statement portrayed it as an important tool for recruiting third parties to GigaCloud Marketplace and a key competitive advantage.

**ANSWER:**

The first sentence in Paragraph 11 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegation. Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 11 and on that basis deny the allegations.

12.     GigaCloud's misleading statements about AI were not the only way in which the Registration Statement exaggerated the desirability and success of GigaCloud Marketplace. The Registration Statement also misled investors about the true nature of how GigaCloud Marketplace earns revenue and generates Gross Merchandise Value ("GMV").

**ANSWER:**

Answering Defendants deny the allegations in Paragraph 12.

13.     The Registration Statement states that GigaCloud generates revenue from GigaCloud Marketplace in two different ways. *First*, GigaCloud generates product revenues from GigaCloud Marketplace by selling its own merchandise to other businesses on the Marketplace. Those businesses market the products they buy on GigaCloud Marketplace directly to consumers, generally on ecommerce websites, such as Amazon, Wayfair, and Walmart.com. GigaCloud refers to the sale of its own merchandise on GigaCloud Marketplace as "GigaCloud 1P" transactions. *Second*, GigaCloud generates service revenue from GigaCloud Marketplace by facilitating transactions between third-party sellers and buyers on the Marketplace, which it refers to as "GigaCloud 3P" transactions. In addition to running GigaCloud Marketplace, the Company also generates revenue by bypassing GigaCloud Marketplace and selling its inventory directly to consumers through many of the same ecommerce websites on which buyers on GigaCloud Marketplace resell products, such as Amazon and Walmart.com. GigaCloud refers to this revenue category as "off-platform ecommerce". GigaCloud 1P was GigaCloud's largest revenue segment leading up to GigaCloud's IPO.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants admit that the Registration Statement contains some of the information referenced in Paragraph 13 but deny that the paraphrased language is a complete and accurate recitation of the relevant statements made in the Registration Statement.  Answering Defendants also state that the paraphrased language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement.  Answering Defendants deny the remaining allegations in Paragraph 13 and incorporate by reference the full contents of the Registration Statement as if attached hereto.

14.     The Registration Statement highlighted that product revenue from GigaCloud 1P transactions and service revenue from GigaCloud 3P transactions were both GigaCloud Marketplace revenue, which it distinguished from off-platform ecommerce, which was not part of

9

the Company's pitch to investors that it was innovating through GigaCloud Marketplace. The Registration Statement also combined GigaCloud 3P and GigaCloud 1P into a single GigaCloud Marketplace GMV metric and reported off-platform ecommerce GMV separately.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants admit that the Registration Statement contains some of the information referenced in Paragraph 14 but deny that the paraphrased language is a complete and accurate recitation of the relevant statements made in the Registration Statement.  Answering Defendants also state that the paraphrased language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement.  Answering Defendants deny the remaining allegations in Paragraph 14 and incorporate by reference the full contents of the Registration Statement.

15.     GigaCloud's story of a thriving Marketplace attractive to third-party buyers was misleading, however, because the Registration Statement omitted to disclose that a significant amount of GigaCloud 1P revenue and GigaCloud Marketplace GMV was generated by sales to companies closely connected to GigaCloud.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 15 and incorporate by reference the full contents of the Registration Statement.

16.     As explained by GigaCloud's former Director of Business Development: "*[M]ost of the transactions [on GigaCloud Marketplace] are coming from within the company*. They are transactions, but they are mainly sister companies buying and selling from each other, which illustrates that the marketplace is showing lots of revenue." GigaCloud's former President of U.S. Operations confirmed that *at least 50% of GigaCloud 1P revenue* was generated by purchases on GigaCloud Marketplace by companies managed by current or former GigaCloud employees.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants admit that the Registration Statement contains the phrases quoted and some of the information referenced in Paragraph 16 but deny that these phrases and the paraphrased language are a complete and accurate recitation of the relevant statements made in the Registration Statement. Answering Defendants also state that the paraphrased or quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement. Answering Defendants deny the remaining allegations in Paragraph 16 and incorporate by reference the full contents of the Registration Statement as if attached hereto.

17. Extensive documentary evidence and additional witness testimony support this — they show that there is a network of entities that: (1) were in most cases founded by either Defendants or other GigaCloud executives, (2) are currently controlled by someone with a close connection to GigaCloud or has other close to connections to GigaCloud, and (3) are responsible for a significant amount of GigaCloud 1P revenue and GigaCloud Marketplace GMV.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 17.

18. By failing to disclose that a significant amount of GigaCloud 1P revenue and GigaCloud Marketplace GMV were sales by GigaCloud to companies closely connected to it, GigaCloud misleadingly overstated the success of GigaCloud Marketplace and its attractiveness to buyers.

11

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 18.

II.    **PARTIES**

19.    Lead Plaintiffs purchased the Company's Class A ordinary shares pursuant and/or traceable to the Registration Statement as set forth in their previously filed Certifications (ECF Nos. 28-2 [Meir Spear] and 35-3 [Sashi Rajan]).

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief

about the allegations in Paragraph 19 and on that basis deny the allegations.

20.    Defendant GigaCloud is a Hong Kong-based corporation, incorporated under the laws of the Cayman Islands, with its principal executive offices located in El Monte, California (and previously, at the time of the IPO, in Hong Kong). GigaCloud's Class A ordinary shares trade on the Nasdaq Stock Market ("NASDAQ") under the symbol "GCT".

**ANSWER:**

Answering Defendants deny that GigaCloud is a Hong Kong-based corporation.

Answering Defendants admit the remaining allegations in Paragraph 20.

21.    Defendant Larry Lei Wu ("Wu") founded GigaCloud and was, at all relevant times, the Chief Executive Officer ("CEO") and Chairman of the Board of Directors of the Company (including when the Registration Statement became effective), and signed or authorized the signing of the Registration Statement.

**ANSWER:**

Answering Defendants admit the allegations in Paragraph 21.

22.    Defendant Kwok Hei David Lau ("Lau") was, at all relevant times, the Chief Financial Officer ("CFO") of the Company, was a Director of the Company when the Registration Statement became effective, and signed or authorized the signing of the Registration Statement.

**ANSWER:**

Answering Defendants admit the allegations in Paragraph 22.

12

23.     Defendant Xin Wan ("Wan") was, at all relevant times, Chief Technology Officer ("CTO") of the Company, was a Director of the Company when the Registration Statement became effective, and signed or authorized the signing of the Registration Statement. Defendant Wan also served as the Company's Executive Director from November 2020 until August 16, 2023.

**ANSWER:**

Answering Defendants admit the allegations in Paragraph 23.

24.     Defendant Frank Lin ("Lin") was a Director of the Company when the Registration Statement became effective and signed or authorized the signing of the Registration Statement.

**ANSWER:**

Answering Defendants admit the allegations in Paragraph 24.

25.     Defendant Xing Huang ("Huang") was a Director of the Company when the Registration Statement became effective and signed or authorized the signing of the Registration Statement.

**ANSWER:**

Answering Defendants admit the allegations in Paragraph 25.

26.     Defendant Zhiwu Chen ("Chen") was a Director of the Company when the Registration Statement became effective.

**ANSWER:**

Answering Defendants admit the allegations in Paragraph 26.

27.     Defendant Binghe Guo ("Guo") was a Director of the Company when the Registration Statement became effective.

**ANSWER:**

Answering Defendants admit the allegations in Paragraph 27.

28.     Defendant Thomas Liu ("Liu") was a Director of the Company when the Registration Statement became effective.

**ANSWER:**

Answering Defendants admit the allegations in Paragraph 28.

29.     Defendants Wu, Lau, Wan, Lin, Huang, Chen, Guo, and Liu are collectively referred to herein as the "Individual Securities Act Defendants."

13

**ANSWER:**

Paragraph 29 sets forth a defined term, to which no response is required.

30.     Defendant Aegis Capital Corp. ("Aegis") served as the sole underwriter and book-running manager of the Company's IPO. In the IPO, Aegis agreed to purchase 2,940,000 shares of the Company's Class A ordinary shares, as well as an over-allotment option of up to 441,000 additional Class A ordinary shares, which Aegis exercised in full.

**ANSWER:**

Answering Defendants admit that Aegis Capital Corp. was an underwriter in GigaCloud's IPO, and refer to the Registration Statement for a complete and accurate description of Aegis Capital Corp.'s role and the allocation of GigaCloud's Class A ordinary shares in the IPO.

31.     GigaCloud, the Individual Securities Act Defendants, and Aegis are collectively referred to herein as "Securities Act Defendants" or "Defendants."

**ANSWER:**

Paragraph 31 sets forth defined terms, to which no response is required.

32.     As the issuer, GigaCloud is strictly liable under Section 11 of the Securities Act for any material misstatement or omission in the Registration Statement, while the other Securities Act Defendants are liable under Sections 11 and/or 15 of the Securities Act unless they prove that they conducted a reasonable investigation and had a reasonable ground to believe (and did believe) that there were no material misstatements or omissions.

**ANSWER:**

Paragraph 32 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 32.

## III.     RELEVANT NON-PARTIES

33.     Former Employee ("FE")-1 was a Java Development Engineer at GigaCloud in Suzhou, China from July 2021 to June 2023. As a member of the Java development team, FE-1 developed software to handle logistics for the Company's U.S. warehouses and to monitor the distribution of the Company's inventory. This team was overseen by Yunbin Fan, director of the IT department.

14

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 33 and on that basis deny the allegations.

34.    FE-2 was a Supply Chain Manager at GigaCloud in Suzhou, China from March 2021 to September 2023. FE-2's primary responsibility was to liaison with e-commerce businesses that purchased from GigaCloud and sold those products to individual consumers.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34 and on that basis deny the allegations.

35.    FE-3 is another Supply Chain Manager who worked for GigaCloud in Suzhou, China from June 2017 to April 2022. FE-3 was responsible for the development and management of over 30 furniture and home furnishing suppliers.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35 and on that basis deny the allegations.

36.    FE-4 was GigaCloud's President of U.S. Operations from September 2021 to May 2022. FE-4 reported to Defendant Wu, with whom FE-4 spoke to by telephone almost every day. FE-4 worked out of GigaCloud's warehouse facility in City of Industry, California.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36 and on that basis deny the allegations.

37.    FE-5 was GigaCloud's Business Development Director from December 2021 to September 2022. FE-5 was responsible for increasing the number of U.S.-based buyers and sellers on GigaCloud Marketplace. Located in New York State, FE-5 initially reported to FE-4, President of U.S. Operations. After FE-4 left the Company in May 2022, FE-5 reported to Scott Chorna, Vice President of Sales Operations. FE-5 met with FE-4, and then Chorna, approximately three times a week. FE-5 also had Zoom calls with Defendant Wu, the Company's CEO, every few months.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37 and on that basis deny the allegations.

38.    FE-6 held the positions of Senior Operations Manager, Director of Operations, and Business Development Manager at GigaCloud in City of Industry, California, from March 2021 to February 2024. FE-6 's job was to recruit buyers and sellers to GigaCloud Marketplace.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 38 and on that basis deny the allegations.

39.    FE-7 was the Director of Business Development at GigaCloud in California from May 2021 to October 2023. In that position, FE-7 worked on developing business for both GigaCloud Marketplace and for GigaCloud's stand-alone logistics business.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39 and on that basis deny the allegations.

40.    FE-8 worked as a Java Development Engineer at Suzhou GigaCloud Venture Service Co., Ltd from April 2021 and February 2022. FE-8 was responsible for operations and technical support of a cross-border ecommerce platform that he believed was GigaCloud Marketplace.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 40 and on that basis deny the allegations.

41.    FE-9 was an Investment Manager at GigaCloud in Shenzhen, China from March 2022 to December 2023. FE-9's job was to attract supply chain investment for GigaCloud.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41 and on that basis deny the allegations.

## IV.    <u>UNDERWRITER LIABILITY ALLEGATIONS FOR THE SECURITIES ACT CLAIMS</u>

42.    Pursuant to the Securities Act, Aegis is liable for the false and misleading statements in the Registration Statement.

**<u>ANSWER</u>:**

Paragraph 42 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 42.

43.    Aegis is an investment banking house that specializes in, among other things, underwriting public offerings of securities. It served as the underwriter of the IPO and earned substantial fees thereon.

**<u>ANSWER</u>:**

Answering Defendants admit that Aegis Capital Corp. was an underwriter in GigaCloud's IPO and refer to the Registration Statement for a complete and accurate description of Aegis Capital Corp's role in the IPO and the fees earned thereon.  Answering Defendants deny the remaining allegations of Paragraph 43.

44.    Aegis also demanded and obtained an agreement from GigaCloud that GigaCloud would indemnify and hold Aegis harmless from any liability under the federal securities laws.

**<u>ANSWER</u>:**

Answering Defendants admit that GigaCloud entered into an agreement with Aegis Capital Corp. and refer to the agreement for a complete and accurate description of the referenced provisions.  Answering Defendants deny the remaining allegations of Paragraph 44.

45.    Representatives of Aegis also assisted GigaCloud and the Individual Securities Act Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of GigaCloud, an undertaking known as a "due diligence" investigation. Securities regulations require underwriters such as Aegis to engage in a fulsome due diligence investigation when underwriting and selling shares in an IPO. During the course of their "due diligence," Aegis had access to internal, confidential, current corporate information concerning GigaCloud's business.

**ANSWER:**

Paragraph 45 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants admit that Aegis Capital Corp. was an underwriter in GigaCloud's IPO and refer to the Registration Statement for a complete and accurate description of Aegis Capital Corp.'s role in the IPO.  Defendants deny the remaining allegations of Paragraph 45 and incorporate by reference the Registration Statement as if attached hereto.

46.    In addition to availing themselves of access to internal corporate documents, agents of Aegis met with GigaCloud's lawyers, management and top executives and engaged in "drafting sessions." During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which GigaCloud's stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about GigaCloud's business and operations would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between Aegis and GigaCloud's management and top executives, Aegis knew of, or in the exercise of reasonable care should have known of, GigaCloud's existing problems as detailed herein.

**ANSWER:**

Paragraph 46 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants admit that Aegis Capital Corp. was an underwriter in GigaCloud's IPO and refer to the Registration Statement for a complete and accurate description of Aegis Capital Corp.'s role in the IPO.  Answering Defendants deny remaining allegations of Paragraph 46 and incorporate by reference the Registration Statement as if attached hereto.

47.    Aegis caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Lead Plaintiffs and the other members of the Securities Act Class.

**ANSWER:**

Paragraph 47 alleges legal conclusions, to which now response is required.  To the extent a response is required, Answering Defendants admit that Aegis Capital Corp. was an underwriter in GigaCloud's IPO and refer to the Registration Statement for a complete and accurate description

18

of Aegis Capital Corp.'s role in the IPO.  Answering Defendants deny the remaining allegations

in Paragraph 47 and incorporate by reference the Registration Statement as if attached hereto.

## V.    SUBSTANTIVE    ALLEGATIONS    SHOWING    THAT    THERE    WERE MATERIALLY FALSE AND MISLEADING STATEMENTS IN GIGACLOUD'S REGISTRATION STATEMENT.

### A.    Background of GigaCloud and Its IPO

48.    In 2006, Defendant Wu founded GigaCloud's predecessor, Oriental Standard Human Resources Holdings Limited ("Oriental Standard"), as a limited liability company formed under the laws of the Cayman Islands. Oriental Standard initially offered IT outsourcing services out of Suzhou, China, but, partly in response to circumstances created by the financial crisis beginning in 2007, pivoted to ecommerce in 2010. Initially focused on Japan, Oriental Standard expanded to the United Kingdom in 2013. The following year, it entered the U.S. market with the acquisition of Comptree Inc ("Comptree"). In January 2019, the Company launched the "GigaCloud Marketplace" ecommerce platform, which is described further below. Oriental Standard was renamed GigaCloud Technology Inc. effective February 28, 2021. Comptree was renamed GigaCloud Technology (USA) Inc. in 2021.

**ANSWER:**

Paragraph 48 contains Lead Plaintiffs' characterizations and/or legal conclusions as to

which no response is required.  To the extent that a response is required, Answering Defendants

deny the allegations in Paragraph 48.

49.    GigaCloud purports to be a "pioneer of global end-to-end [business to business] ecommerce solutions for large parcel merchandise" that is primarily furniture. According to the Prospectus, the core of the Company's business is the "GigaCloud Marketplace," a business-to-business ("B2B") ecommerce site, which purportedly integrates discovery, payments and logistics tools into one "easy-to-use platform." GigaCloud further boasts that "[o]ur global marketplace seamlessly connects manufacturers, primarily in Asia, with resellers, primarily in the U.S., Asia and Europe, to execute cross-border transactions with confidence, speed and efficiency."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants admit that the Registration Statement contains the phrases quoted and some

of the information referenced in Paragraph 49 but deny that these phrases and the paraphrased

language are a complete and accurate recitation of the relevant statements made in the Registration Statement. Answering Defendants also state that the quoted or paraphrased language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement. Answering Defendants deny the remaining allegations in Paragraph 49 and incorporate by reference the full contents of the Registration Statement as if attached hereto.

50. GigaCloud generates revenue from GigaCloud Marketplace in two different ways. First, it sells its own merchandise to buyers on the Marketplace who then market it directly to consumers (generally on ecommerce sites such as Amazon, Walmart.com, and Wayfair.com), which it refers to as "GigaCloud 1P" transactions, generating product revenues. Second, it generates service revenue by facilitating transactions between third-party sellers and buyers on the marketplace, which it refers to as "3P" transactions. The types of service revenue that GigaCloud purportedly receives from 3P transactions include commission fees, warehousing fees, last mile delivery fees, and fulfillment fees. In addition to running GigaCloud Marketplace, the Company also generates revenue by selling its inventory directly to consumers through other ecommerce websites, including as Amazon, Wayfair, and Walmart. It refers to this revenue category as "off-platform ecommerce".

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants admit that the Registration Statement contains the phrases quoted and some of the information referenced in Paragraph 50 but deny that these phrases and the paraphrased language are a complete and accurate recitation of the relevant statements. Answering Defendants also state that the paraphrased or quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement. Answering Defendants deny the remaining allegations in Paragraph 50 and incorporate by reference the full contents of the Registration Statement as if attached hereto.

51. As of March 31, 2022, GigaCloud had 694 full-time employees: 541 in China and 74 in the U.S.

**ANSWER:**

The allegations in Paragraph 51 appear to refer to statements made in the Registration Statement. Answering Defendants admit that the Registration Statement contain some of the information referenced in Paragraph 51 but deny that the paraphrased language is a complete and accurate recitation of the relevant statements made in the Registration Statement. Answering Defendants deny the remaining allegations in Paragraph 51 and incorporate by reference the full contents of the Registration Statement as if attached hereto.

52.    On May 24, 2021, the Company confidentially filed a draft registration statement with the SEC for a planned initial public offering of its stock. The Company conducted the IPO the following year, announcing that the IPO was complete on August 22, 2022. In the IPO, the Company sold 3,381,000 Class A ordinary shares at a price of $12.25 per share. The Company received net proceeds of approximately $34.2 million from the IPO.

**ANSWER:**

The first sentence in Paragraph 52 contains Lead Plaintiffs' characterizations as to which no response is required. Answering Defendants further state that the remaining allegations in Paragraph 52 appear to refer to statements made in the Registration Statement. Answering Defendants admit that the Registration Statement contains some of the information referenced in Paragraph 52 but deny that the paraphrased language is a complete and accurate recitation of the relevant statements made in the Registration Statement and incorporate by reference the full contents of the Registration Statement as if attached hereto.

**B.    GigaCloud Falsely Claimed That It Used AI and Machine Learning in Its Logistics.**

1.    *Definitions of Artificial Intelligence and Machine Learning*

53.    "Artificial intelligence" refers to more than just a complex computer system. Instead, it is "software and/or hardware that ***can learn to solve complex problems, make predictions or undertake tasks that require human-like sensing*** (such as vision, speech, and touch), perception, cognition, planning, learning, communication, or physical action."

**ANSWER:**

Paragraph 53 purports to quote a draft publication from the National Institute of Standards of Technology that Answering Defendants did not author and which speaks for itself. Answering Defendants refer to that publication for a complete and accurate statement of its contents, without conceding the accuracy of that publication. Answering Defendants deny the remaining allegations in Paragraph 53.

54.    "Machine learning," refers to computer programs that automatically improve their performance through experience without relying on explicit rules-based programming to do so. Neural networks, which consist of thousands or millions of processing nodes generally organized into layers and are designed to process information similar to the human brain, are a prominent type of machine learning.

**ANSWER:**

Paragraph 54 contains Lead Plaintiffs' characterizations as to which no response is required. To the extent that a response is required, Answering Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis denies them.

2.    *The Registration Statement Portrayed AI and Machine Learning As a Competitive Advantage That Would Be Crucial to Attracting Third-Party Sellers to GigaCloud Marketplace, Which Was Important to GigaCloud's Corporate Strategy.*

55.    Increasing transactions between third-party buyers and sellers on GigaCloud Marketplace is a major plank in GigaCloud's corporate strategy. According to the Prospectus, GigaCloud's focus is "on facilitating B2B ecommerce transactions in our GigaCloud Marketplace."

**ANSWER:**

Answering Defendants admit that the Registration Statement contains the phrases quoted and some of the information referenced in Paragraph 55 but deny that these phrases and the paraphrased language are a complete and accurate recitation of the relevant statements made in the Registration Statement. Answering Defendants also state that the paraphrased or quoted language

was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement. Answering Defendants deny the remaining allegations in Paragraph 55 and incorporate by reference the full contents of the Registration Statement as if attached hereto.

56.     Despite the Company's goal of increasing its business with third-party (3P) sellers, at the time of the IPO, approximately three-quarters of GigaCloud's revenue arose from sales of its own inventory (including both GigaCloud 1P sales and off-platform ecommerce sales).

**ANSWER:**

Answering Defendants admit that the Registration Statement contains some of the information referenced in Paragraph 56 but deny that the paraphrased language is a complete and accurate recitation of the relevant statements made in the Registration Statement. Answering Defendants also state that the paraphrased language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement. Answering Defendants deny the remaining allegations in Paragraph 56 and incorporate by reference the full contents of the Registration Statement as if attached hereto.

57.     The Prospectus asserted, however, that "[a]s we focus on expanding our GigaCloud Marketplace into a leading global large parcel B2B marketplace, we expect service revenue from 3P to grow faster than product revenue from 1P in the future." Moreover, the Company indicated that 3P sellers would be a key driver of the product catalog in its marketplace, which would help attract and retain buyers.

**ANSWER:**

Answering Defendants admit that the Registration Statement contains the phrases quoted and some of the information referenced in Paragraph 57 but deny that these phrases and the paraphrased language are a complete and accurate recitation of the relevant statements made in the Registration Statement. Answering Defendants also state that the paraphrased or quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement. Answering Defendants deny the remaining allegations in

23

Paragraph 57 and incorporate by reference the full contents of the Registration Statement as if attached hereto.

58.    The Company's technology was key to this goal since "[o]nce [the Company] attract[ed] new sellers and buyers to [its] marketplace," it would "leverage [its] technology and supply chain solutions to drive retention." The Prospectus further stated that GigaCloud's ability to "leverage our algorithm[] [to] determine when and where to ship a product, reduce the amount of time a product is handled and select the most effective delivery mechanism for the product" was the crux of its "Value Proposition to Sellers" and thus to the Company's outlook and financial results.

**ANSWER:**

Answering Defendants admit that the Registration Statement contains the phrases quoted and some of the information referenced in Paragraph 58 but deny that these phrases and the paraphrased language are a complete and accurate recitation of the relevant statements made in the Registration Statement.  Answering Defendants also state that the paraphrased or quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement.  Answering Defendants deny the remaining allegations in Paragraph 58 and incorporate by reference the full contents of the Registration Statement as if attached hereto.

59.    The Prospectus emphasized that the key to GigaCloud's technological advantage was "***Data Intelligence Powered by AI***," which the Prospectus listed under "**Competitive Strengths**." It explained that "self-learning AI" improved the Company's "operating efficiency" by "automating and optimizing inventory globally based on historical data, rebalancing our merchandise across warehouses to maximize first mile collection and last mile delivery efficiency." The Prospectus further stated that GigaCloud's "in-house reinforcement learning algorithms are built to optimize our inventory management across our multiple warehouses around the world, analyzing historical data to determine how to manage our inventory and even where to establish our next warehouse" and that the learning algorithm also "accounts for the fragility of certain types of inventory and reduces the number of times a product is moved." The AI also purportedly "optimizes routing by organizing incoming orders and rebalancing inventory levels within our warehousing network."

**ANSWER:**

Answering Defendants admit that the Registration Statement contains the phrases quoted and some of the information referenced in Paragraph 59 but deny that these phrases and the paraphrased language are a complete and accurate recitation of the relevant statements made in the Registration Statement.  Answering Defendants also state that the paraphrased or quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement.  Answering Defendants deny the remaining allegations in Paragraph 59 and incorporate by reference the full contents of the Registration Statement as if attached hereto.

60.    The Prospectus specifically tied the Company's AI capacity to long-term growth of third parties that use GigaCloud Marketplace, stating: "We leverage our proprietary data and AI to accelerate the network effects in our marketplace. As our marketplace grows, we accumulate user and product data to develop analytical and predicative tools such as product sales forecasts. This information is valuable to our sellers as it allows them to efficiently manage."

**ANSWER:**

Answering Defendants admit that the Registration Statement contains the phrases quoted and some of the information referenced in Paragraph 60 but deny that these phrases and the paraphrased language are a complete and accurate recitation of the relevant statements made in the Registration Statement.  Answering Defendants also state that the paraphrased or quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement.  Answering Defendants deny the remaining allegations in Paragraph 60 and incorporate by reference the full contents of the Registration Statement as if attached hereto.

61.    The Prospectus further boasted that "[o]ur AI-powered warehousing management system solves the many practical problems faced by sellers and buyers in connection with complex, cross-border transactions involving large parcel goods." It also warned that "[t]he satisfactory performance, reliability and availability of our marketplace, software such as our AI, data analytics

25

tools, warehouse management system and other technology infrastructures are ***critical to our reputation and our ability to acquire and retain customers***."

**ANSWER:**

Answering Defendants admit that the Registration Statement contains the phrases quoted in Paragraph 61 but deny that these phrases are a complete and accurate recitation of the relevant statements made in the Registration Statement. Answering Defendants also state that the quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement. Answering Defendants deny the remaining allegations and incorporate by reference the full contents of the Registration Statement as if attached hereto.

62. Since the Company charges commission fees for 3P transactions consummated on GigaCloud Marketplace, GigaCloud's revenues depended on the number of sellers and buyers who trade on GigaCloud Marketplace and the amount of GMV that GigaCloud Marketplace handles. Per the Prospectus, in the twelve months ended March 31, 2022, GigaCloud's users transacted $438.1 million of GigaCloud Marketplace GMV, representing a 69.1% year-over-year increase. The foundation of this growth was, supposedly, the Company's advanced AI algorithms. Accordingly, the Company told investors that any "unavailability of... our logistics algorithm would reduce the volume of GMV in our business operations," and thus decrease revenues.

**ANSWER:**

Answering Defendants admit that the Registration Statement contains the phrases quoted and some of the information referenced in Paragraph 62 but deny that these phrases and the paraphrased language are a complete and accurate recitation of the relevant statements made in the Registration Statement. Answering Defendants also state that the paraphrased or quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement. Answering Defendants deny the remaining allegations and incorporate by reference the full contents of the Registration Statement as if attached hereto.

63. The Free Writing Prospectus, which was labeled "Investor Presentation," also boasted about how GigaCloud's AI and Machine Learning drove "Incremental Operating Efficiencies":

26



**ANSWER:**

Answering Defendants admit that the Free Writing Prospectus contains the phrases quoted in Paragraph 63 but deny that these phrases are a complete and accurate recitation of the relevant statements made in the Free Writing Prospectus.  Answering Defendants also state that the quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Free Writing Prospectus.  Answering Defendants deny the remaining allegations and incorporate by reference the full contents of the Free Writing Prospectus as if attached hereto.

64.    One of the Company's other offerings to sellers—financing—was also purportedly driven by AI. According to the Prospectus, in September 2020, the Company began "leverag[ing] [its] data analytics in order to provide supply chain finance solutions to select quality suppliers based on [its] extensive data on their performance and quality." This purportedly provides additional value to sellers using GigaCloud Marketplace.

**ANSWER:**

Answering Defendants admit that the Registration Statement contains the phrases quoted and some of the information referenced in Paragraph 64 but deny that these phrases and the

27

paraphrased language are a complete and accurate recitation of the relevant statements made in the Registration Statement. Answering Defendants also state that the paraphrased or quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement. Answering Defendants deny the remaining allegations and incorporate by reference the full contents of the Registration Statement as if attached hereto.

65. Thus, the Company's purported advanced AI and Machine Learning capabilities were, according to the Registration Statement, the foundation of the Company's operations, financial performance, and growth prospects.

**ANSWER:**

Answering Defendants admit that the Registration Statement contains some of the information referenced in Paragraph 65 but deny that the paraphrased language is a complete and accurate recitation of the relevant statements made in the Registration Statement. Answering Defendants also state that the paraphrased language in Paragraph 65 was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement. Answering Defendants deny the remaining allegations and incorporate by reference the full contents of the Registration Statement as if attached hereto.

66. Aegis' first analyst report about GigaCloud, published on October 3, 2022, confirmed that investors would interpret the Registration Statement as portraying AI and Machine Learning technologies as key to GigaCloud's ability to attract third-party sellers and buyers to GigaCloud Marketplace and, therefore, to the Company's future growth. It emphasized that GigaCloud's "[d]ata analytics help drive growth," stating that it was "building up a highly enviable and proprietary resource with regards to customer data" and that "[t]he company's artificial intelligence (AI) software, which generates seller ratings and credit profiles with volume data, can leverage such data to develop analytical and predictive tools such as sales forecasts, which can in turn help sellers more efficiently manage inventory and pricing." The report continued: "Such optimization strategies naturally help encourage additional sellers to join the platform and transact in GigaCloud Marketplace. Increasing numbers of both sellers and buyers naturally lead to a growing cycle, as evidenced by the company's rapid top line expansion in recent years."

**ANSWER:**

Paragraph 66 purports to quote the Aegis Analyst Report that Answering Defendants did not author and which speaks for itself.  Answering Defendants refer to that publication for a complete and accurate statement of its contents, without conceding the accuracy of that publication.  Answering Defendants deny the remaining allegations in Paragraph 66.

> 3.    *Contrary to the Claims in the Registration Statement, GigaCloud Did Not Use AI and Machine Learning in Its Logistics Operation.*

67.    Three former GigaCloud employees—a Java Development Engineer and two Supply Chain Managers—each of whom worked for the Company in Suzhou, China where its IT development and management is based, said that *no AI technology was involved* in GigaCloud's logistics.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 67 and otherwise deny the allegations.

68.    FE-1, the software engineer, worked for GigaCloud in Suzhou, China from July 2021 to June 2023. As a member of the Java development team, FE-1 developed software to handle logistics for the Company's U.S. warehouses and monitor the distribution of the Company's inventory. This team was overseen by Yunbin Fan, director of the IT department.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 68 and on that basis deny the allegations.

69.    FE-1 stated that, although GigaCloud's Java development teams crafted "intricate management systems" that were "tasked with handling complex business processes", "***no AI technology was involved***" in GigaCloud's logistics systems.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 69 and on that basis deny the allegations.

70.    FE-2, a Supply Chain Manager, worked for GigaCloud in Suzhou, China from March 2021 to September 2023. FE-2's primary responsibility was to liaison with e-commerce businesses that purchased from GigaCloud and sold those products to individual consumers.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 70 and on that basis deny the allegations.

71.     Like FE-1, FE-2 said that "AI technology is not used" in GigaCloud's logistics. Instead, FE-2 said that what GigaCloud used was "just an ERP system." "ERP" stands for "Enterprise Resource Planning" and refers to an ordinary type of software that organizations use to manage day-to-day business activities such as accounting, procurement, project management, risk management and compliance, and supply chain operations.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 71 and on that basis deny the allegations.

72.     When asked to distinguish between a logistics system that uses AI technology and GigaCloud's logistics system, FE-2 explained that GigaCloud's logistics system relied on manual computations of existing data and, because of that, required at least 100 IT employees to maintain it. FE-2 further stated that if AI was used, fewer people would be needed and the capacity and accuracy of GigaCloud's logistics would be improved.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 72 and on that basis deny the allegations.

73.     FE-3 was also a Supply Chain Manager for GigaCloud in Suzhou, China. FE-3's tenure was from June 2017 to April 2022. FE-3 was responsible for the development and management of over 30 furniture and home furnishing suppliers.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 73 and on that basis deny the allegations.

74.     FE-3 further confirmed that GigaCloud's statements about AI technology were false. FE-3 stated that "***AI technology was not being developed***" when FE-3 was at GigaCloud and that "GigaCloud is not a technology company…., since it does not rely on technology to create value."

30

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 74 and on that basis deny the allegations.

75.     FE-1, FE-2, and FE-3's reports were corroborated by former GigaCloud employees who had worked for the Company in the U.S.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 75 and on that basis deny the allegations.

76.     FE-4 served as the President of GigaCloud's U.S. Operations from September 2021 until May 2022. FE-4's primary responsibility was to manage a sales team that recruited third-party buyers and sellers to GigaCloud Marketplace. FE-4 stated that GigaCloud used "AI" and "Machine Learning" as "buzzwords," but, in actuality, GigaCloud's warehouse management system was not state-of-the-art and would have been found in most warehouse operations. It was significantly inferior to Amazon's, where FE-4 used to work. For example, FE-4 explained that GigaCloud's "load balancing," the movement of inventory between warehouses to meet sales demand, was less sophisticated than what Amazon and Walmart are doing and was similar to most other warehouse operations. For example, to decide which warehouse needed to be replenished, GigaCloud would consider how many units it was getting along with where the concentrations of orders were and how many weeks of stock it had at each distribution center. This was based on an unsophisticated calculation.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 76 and on that basis deny the allegations.

77.     FE-4 also noted that the system used for pulling data at GigaCloud reminded him of systems that were decades old, and FE-4 was unable to make their own inquiries like FE-4 had done at other companies. Instead, FE-4 was only able to pull the data into Excel spreadsheets in pre-determined formats.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 77 and on that basis deny the allegations.

78.     FE-5, who was GigaCloud's Business Development Director from December 2021 to September 2022, was responsible for increasing the number of U.S. buyers and sellers on

GigaCloud Marketplace. FE-5 initially reported to FE-4, the President of U.S. Operations. After FE-4 left the Company in May 2022, FE-5 reported to Scott Chorna, Vice President of Sales Operations.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 78 and on that basis deny the allegations.

79.    Despite being responsible for persuading U.S. furniture stores to use GigaCloud Marketplace to source furniture, FE-5 had *never even heard about GigaCloud using AI*. Given that the Registration Statement claimed that GigaCloud's "AI-powered warehousing management system" solved problems faced by both buyers and sellers, this should have been part of FE-5's pitch to stores as well as manufacturers and importers. Instead, FE-5 had not even heard of any AI allegedly used by the Company and was never instructed to use AI as part of sales pitches. Furthermore, the existence of AI at the Company did not come up during two tours that FE-5 took of GigaCloud's California warehouses, during Zoom calls with Defendant Wu regarding how to build the business, which occurred every few months, or during thrice-weekly meetings with superiors.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 79 and on that basis deny the allegations.

80.    Further, though GigaCloud repeatedly touted to investors its use of AI to generate profiles for the Company's supply chain financing program, which financed sellers, this was also not part of FE-5's pitch to the U.S. manufacturers and importers that FE-5 was tasked with convincing to sell goods on GigaCloud Marketplace.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 80 and on that basis deny the allegations.

81.    FE-6 held the positions of Senior Operations Manager, Director of Operations, and Business Development Manager at GigaCloud from March 2021 to February 2024. FE-6's job was to recruit buyers and sellers to GigaCloud Marketplace. As with FE-4 and FE-5, FE-6 saw no evidence that the Company used AI technology, stating that their systems were not sophisticated. FE-6 strongly doubted that GigaCloud used AI to make optimization decisions given that a seller bringing in a container might have to wait a few days for a decision by GigaCloud about which warehouse it was going to and the process did not appear to be automated.

32

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 81 and on that basis deny the allegations.

82.    Thus, the accounts of these former GigaCloud employees show that: (1) GigaCloud's logistics operation did not use AI and/or Machine Learning; (2) the technology GigaCloud did use was not state-of-the-art or sophisticated and would have been found in most warehouse operations; and (3) despite the Registration Statement's repeated claims that GigaCloud's alleged AI technology was important for recruiting third-party sellers, GigaCloud did not pitch its AI capabilities when marketing the platform to third-party sellers.

**ANSWER:**

Answering Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 82 and on that basis deny the allegations.

    **C.    GigaCloud's Registration Statement Misleadingly Represented GigaCloud Marketplace Activity.**

        1.    *The Prospectus Reported GigaCloud's Sales on GigaCloud Marketplace and Sales on Other Ecommerce Sites Separately.*

83.    As alleged above, according to GigaCloud, it is a "pioneer of global end-to-end B2B ecommerce solutions" due to its GigaCloud Marketplace. In 2019, the Company launched GigaCloud Marketplace in an attempt to shift away from the business of "primarily selling [its] own self-procured large parcel merchandise directly to end customers," *i.e.*, the "off-platform ecommerce" category. Accordingly, in the Prospectus' list of "strengths", GigaCloud listed its "[p]ioneering cross-border B2B ecommerce marketplace for the large parcel market" first.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 83.

84.    The importance of GigaCloud Marketplace to the Company is underscored by the fact that the Prospectus divides GigaCloud's revenue and GMV based on whether the transaction took place on GigaCloud Marketplace or was "off-platform ecommerce."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 84.

85.    According to the Prospectus, "GigaCloud 3P [third party sellers] and GigaCloud 1P [goods sold by GigaCloud on GigaCloud Marketplace] together make up our GigaCloud Marketplace, generating service revenues and product revenues, respectively."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 85.

86.    The Prospectus showed GigaCloud's revenue and GMV leading up to the IPO with the following graphic that emphasized what portion of it was derived from GigaCloud Marketplace:



**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 86.

87.    This graphic reported that GigaCloud 1P contributed almost two-thirds of GigaCloud's revenue from GigaCloud Marketplace. Additionally, it reports the combined GigaCloud 3P and GigaCloud 1P as a single GigaCloud Marketplace GMV metric (that accounted for more than 75% of GigaCloud's GMV leading up to the IPO) without differentiating between 3P and 1P transactions. Furthermore, the Prospectus lists GigaCloud Marketplace GMV as a "key" metric to which investors should attach special importance. It reports off-platform ecommerce GMV separately.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 87.

88.    Accordingly, GigaCloud admitted that, at the time of its IPO, the primary driver of GigaCloud Marketplace revenue and GMV was not third-party sellers, but instead GigaCloud selling its own inventory to purportedly third-party buyers who the Prospectus states can then "list the product on their preferred ecommerce websites such as Amazon, Wayfair or their own store." Importantly, that the buyers are independent third parties is a key component of GigaCloud's metrics because direct sales by GigaCloud over Amazon or Wayfair *would not have been included in GigaCloud Marketplace revenue or GMV* in the Prospectus. Instead, direct sales are included in separate off-platform ecommerce metrics.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 88.

89.    Aegis' first analyst report about GigaCloud, published on October 3, 2022, left no doubt that the attractiveness of GigaCloud Marketplace to third-party buyers was highly material to investors. In the "**Investment Highlights**" portion on the front page of the report, Aegis highlighted the "**Impressive market penetration of the company's e-commerce platform,**" stating that the "successful establishment" of "[t]he company's flagship GigaCloud Marketplace" had given it "a distinct advantage and barrier to competition for the company." The report further

35

supported it positive view of GigaCloud by emphasizing that GigaCloud Marketplace revenue had grown from 46.8% of the Company's revenue in 2019 to 76% in 2022, supplanting off-platform commerce revenue as the primary revenue stream.

**ANSWER:**

Paragraph 89 purports to quote the Aegis Analyst Report that Answering Defendants did not author and which speaks for itself. Answering Defendants refer to that publication for a complete and accurate statement of its contents, without conceding the accuracy of that publication. Answering Defendants deny the remaining allegations in Paragraph 89.

> 2. *GigaCloud 1P Revenue and GigaCloud Marketplace GMV Included Purchases by Entities Closely Connected with GigaCloud.*

90.    GigaCloud misleadingly failed to disclose that many of the nominally third-party entities whose purchases from GigaCloud on GigaCloud Marketplace were included in GigaCloud 1P revenue and GigaCloud Marketplace GMV were closely connected to GigaCloud. By failing to disclose this, GigaCloud misleadingly overstated the success of GigaCloud Marketplace and its attractiveness to buyers.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 90.

91.    On May 22, 2024, Grizzly Research LLC ("Grizzly Research") published a short seller report entitled "GigaCloud Technology Inc – Another China Hustle Inflating Key Metrics Using Undisclosed Related Party Shell Companies" (the "Grizzly Report"). The Grizzly Report is attached as Exhibit A hereto. Grizzly Research states that it is owned and operated by its CEO Siegfried G. Eggert, who previously worked as an Analyst at GeoInvesting, LLC and has a master's degree in Finance from the University of Rochester's Simon Business School. Grizzly Research's website states that its "US-based analyst team consists of trained accountants, economists, and engineers" and that it maintains "its own private investigators in China that enable [it] to conduct site visits and interviews with locals, suppliers, customers and other stakeholders." It further states that Grizzly Research uses its "research and on-the-ground due diligence capacities to consult on a range of M&A transactions, and structured investments" and serves "institutional clients including family offices, hedge funds, investment banks, and operating companies."

36

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 91.

92. The Grizzly Report used documentary evidence and witness testimony to show that a significant number of buyers on GigaCloud Marketplace were companies associated with GigaCloud, stating that "[a]t first these entities appear to also operate 'third-party' storefronts but a deeper look reveals them to be very closely connected to GCT."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 92.

93. Grizzly Research found that the key characteristics of the undisclosed entities are: (1) they were set up and are controlled by current or former GigaCloud employees acting as agents; (2) they are shell companies purely for distribution and have no balance sheet or inventory; (3) they have no import records, so they appear to be exclusively sourcing from GigaCloud; (4) the entities' return addresses are GigaCloud warehouses and these entities do no operate nor own any operational facilities; and (5) Grizzly Research estimated revenue in tens of millions for each entity based on information from their online storefronts.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 93.

94. A former high ranking GigaCloud employee admitted to Grizzly Research that it was standard practice at GigaCloud for current and former employees to use nominally separate companies to set up storefronts on Amazon that were controlled by GigaCloud, stating that: "*what GigaCloud has done um internally is they have a bunch of people set up Amazon stores and then they sell through all those different Amazon stores right but those are still like one first one party* or one first party because they're all GigaCloud controlled right but these guys need a company so they set up the company themselves and then they generate sales for GCT basically." (Emphasis in original).

37

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants the allegations in Paragraph 94.

95.     Grizzly Research also spoke to several additional former employees who told them that most of GigaCloud's reported growth comes from sales to distribution businesses of current and former employees, which GigaCloud books as GigaCloud 1P revenue. These employees estimated that there were at least 25 such entities, and some estimated the number to be over 100, most of which were U.S. entities controlled by Chinese nationals that work remotely from China.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 95.

96.     Plaintiffs confirmed that a large percentage of GigaCloud 1P transactions are sales to companies connected to GigaCloud in an interview with FE-7. FE-7 was the Director of Business Development at GigaCloud from May 2021 to October 2023. In that position, FE-7 worked on developing business for both GigaCloud Marketplace and for GigaCloud's stand-alone logistics business. FE-7 said regarding GigaCloud Marketplace that "***most of the transactions are coming from within the company***. They are transactions, but ***they are mainly sister companies buying and selling from each other, which illustrates that the marketplace is showing lots of revenue***."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 96.

97.     FE-4, the former President of GigaCloud's U.S. Operations, further confirmed that there was a network of buyers on GigaCloud Marketplace managed by current or former GigaCloud employees and these buyers ***accounted for more than 50% of GigaCloud 1P revenue***. FE-4 was present on weekly calls with 20 to 50 of the entities that made the largest volume of purchases and stated that there were at least 200 companies closely connected to GigaCloud that made a significant volume of purchases from GigaCloud on GigaCloud Marketplace. Topics on the calls included discussions of good and bad selling products, items that needed to be replenished, and IT functionality.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 97.

> 3.  *Documentary Evidence and Former Employee Statements Show Close Connections Between Multiple GigaCloud Marketplace Buyers and GigaCloud.*

98.    In addition to statements of former GigaCloud employees, the Grizzly Report provided detailed documentary evidence showing close connections between specific buyers on GigaCloud Marketplace and GigaCloud. The entities that Grizzly Research identified were Orien Life Corp. ("Orien Life"), CompHome Corp. ("CompHome"), Steve Roger Digital Consultation LLC ("Steve Roger Digital"), General Sherman International Inc. ("General Sherman"), Comp Goods Corp. ("Comp Goods"), and Compthunder International Inc. ("Compthunder").

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 98.

99.    It uncovered these entities "using various approaches such as 1) GigaB2B products searches on third-party e-commerce platforms, 2) former executives names in state databases, 3) addresses of subsidiaries, and 4) By searching for joint filings with GCT, such as UCC [Uniform Commercial Code] filings, in various databases."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 99.

100.    Among the documents that Grizzly Research cited was a November 2020 lien financing statement (the "2020 Lien Financing Statement") issued in California between East West Bank and a list of co-debtors that include both disclosed GigaCloud subsidiaries Comptree and Tmall, Inc. ("Tmall") and the undisclosed closely connected companies that serve as buyers on GigaCloud Marketplace discussed above: Orien Life, CompHome, Steve Roger Digital, General Sherman, Comp Goods, and Compthunder. The collateral posted for the debt encompassed substantially all the companies' assets, and as co-debtor, GigaCloud was responsible for all due

obligations. In July 2021, after Comptree was renamed GigaCloud Technology (USA) Inc., an amendment to the 2020 Lien Financing Statement was filed to reflect that name change (the "2021 Lien Financing Amendment"). The 2020 Lien Financing Statement and 2021 Lien Financing Amendment are attached as Exhibit B hereto.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 100.

101.    Lead Plaintiffs have conducted an independent investigation that confirmed the evidence in the Grizzly Report and uncovered additional evidence of connections between those entities and GigaCloud. In addition to the 2020 Lien Financing Statement and 2021 Lien Financing Amendment, there is significant additional evidence of each entity's close connection to GigaCloud.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 101.

a)      Orien Life

102.    Orien Life was incorporated in Nevada on December 6, 2016. State records show that Orien Life added Defendant Wu as its President and Director and Joseph Huang, GigaCloud's CFO from April 2016 to January 2022, as its Treasurer between December 6, 2016 and November 13, 2018. Between May 13, 2019 and November 22, 2020, Orien Life also added Joseph Huang as Secretary.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 102.

103.    Orien Life appointed Zexue Wang to President, Director, Treasurer, and Secretary between November 22, 2020 and April 8, 2021. A person named Zexue Wang is also the legal representative, Executive Director, and 100% owner of Suzhou GigaCloud Venture Service Co., Ltd ("GigaCloud Venture"). On information and belief, this is the same person. GigaCloud

40

Venture is located in the same industrial park as GigaCloud's main Chinese entity, GigaCloud Technology (Suzhou) Co., Ltd. GigaCloud Technology (Suzhou) Co., Ltd's address is 8F, House 9, Creative Industrial Park, No.328 Xinghu Street Industrial Park, Suzhou, Jiangsu Province, People's Republic of China. That address appears on the front page of GigaCloud's draft F-1 Registration Statement, which it filed with the SEC on May 24, 2021. GigaCloud Venture is located at 9-802 Unit at the same address.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 103.

104.    FE-8 worked as a Java Development Engineer at GigaCloud Venture from April 2021 to February 2022. FE-8 believed that GigaCloud Venture was a subsidiary of GigaCloud. That belief is supported by the fact that GigaCloud Venture's business is identical to GigaCloud's. FE-8 described GigaCloud Venture as a "cross-border e-commerce" business that sells furniture and provides logistics services. FE-8 was responsible for operations and technical support of a cross-border ecommerce platform that he believed was GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 104.

105.    Additionally, at the time the Grizzly Report was published, Orien Life's phone number on its storefront on Walmart's website was "(626) 912-8886." This number belongs to Comptree, the former name of GigaCloud's primary U.S. subsidiary. The Better Business Bureau lists the same number for Bulkea, a GigaCloud trademark, and lists Comptree as an alternative business name for Bulkea. The website for the Industry Business Counsel in City of Industry, California, where GigaCloud is located, also lists the same phone number for Comptree. Finally, the brand Churanty, which is also a GigaCloud trademark, has the same phone number.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 105.

41

106.    FE-6 further confirmed GigaCloud's close connection to Orien Life. FE-6 told Lead Plaintiffs' investigator that Orien Life is so closely connected to GigaCloud that he thought it was one of GigaCloud's brands. A GigaCloud employee named Martin, who worked in China, told FE-6 that he managed Orien Life.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 106.

107.    Orien Life sells products on Amazon and Walmart.com. Orien Life's Amazon storefront is extensive and clearly generates substantial revenue — it has almost 1,000 ratings for the storefront and lists more than 3,000 products. All the trademarks of viewable products of the storefront are either owned by GigaCloud or found on GigaCloud Marketplace. The storefront also sells unbranded products found on GigaCloud Marketplace. Furthermore, many of the pictures that Orien Life uses on Amazon are identical to the ones on GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 107.

b)    CompHome

108.    CompHome was originally formed in Nevada on December 8, 2016. State records show that between December 8, 2016 and November 13, 2018, CompHome added Defendant Wu as its President and Director and Joseph Huang as its Treasurer. The company was later dissolved and re-established in 2021 in Arizona with Joseph Cothran as Director, President, Secretary, and Treasurer. Cothran worked as a GigaCloud E-commerce Wholesale Manager from April 2019 to April 2021, the same month that he assumed those positions at CompHome.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 108.

109.    A former employee told Grizzly Research that Cothran was referred to as "Little Joe" around the GigaCloud offices. Other former GigaCloud employees told Grizzly Research that

42

even after he started running CompHome and was considered a GigaCloud 1P buyer on GigaCloud Marketplace, he was a constant presence at GigaCloud's office and gave seminars about how salespeople should increase their output. Little Joe was presented by GigaCloud as an example of a successful distributor, selling millions of dollars of merchandise per month on Wayfair. He seemed to be selling GigaCloud products exclusively and seemed indistinguishable from a GigaCloud employee.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 109.

110. FE-4 confirmed to Lead Plaintiffs' investigator that Cothran was Little Joe and further stated that Defendant Wu used either GigaCloud's or his own money to help Cothran get the re-established version of CompHome off the ground. FE-4 said that Cothran bought three to four million dollars' worth of products off GigaCloud Marketplace per year at the time he left GigaCloud.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 110.

111. FE-6 also confirmed to Lead Plaintiffs' investigator that Cothran was Little Joe. FE-6 further stated that Defendant Wu allowed Cothran to "spin off" as long as he used GigaCloud as a source and "it was a win for Larry [Wu], with Joseph continuing to purchase in large volume on the Marketplace." FE-6 also told Lead Plaintiffs' investigator that Cothran maintained a close relationship with GigaCloud and was even tasked with providing FE-6 some training, further corroborating the Grizzly Report.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 111.

c)    Steve Roger Digital

112.    Steve Roger Digital was incorporated in Nevada on November 18, 2013. State records show that between November 18, 2013 and November 4, 2018, Steve Roger Digital added Defendant Wan as Managing Member and Xinyan Hao ("Hao"), who has been GigaCloud's COO since 2010, as Agent. Defendant Wan was removed as Managing Member between November 22, 2020 and April 8, 2021 and replaced by XiaoXiao Li and Hao was replaced as Agent by Registered Agents, Inc in August 2021. But state records list Li as having the same address that Wan did — 284 C E Lake Mead Parkway, Henderson, NV 89015, with only the P.O. Box number changed.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 112.

113.    Furthermore, Lead Plaintiffs' investigation confirms that XiaoXiao Li was an employee of GigaCloud. FE-9 was an Investment Manager at GigaCloud in Shenzhen, China from March 2022 to December 2023. FE-9 's job was to attract supply chain investment for GigaCloud. FE-9 told Lead Plaintiffs' investigator that XiaoXiao Li was an employee in the investment promotion department of GigaCloud, but he was not sure if XiaoXiao Li still worked there.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants state that Answering Defendants deny the allegations in Paragraph 113.

114.    Steve Roger Digital sells products on Amazon through the Pay_Low storefront, which lists more than 300 products, with many of them costing hundreds of dollars. The trademarks of all the viewable products are owned by GigaCloud and the storefront also sells unbranded products found on GigaCloud Marketplace. As with Orien Life, Pay_Low uses many of the same pictures of the products as GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 114.

d)      General Sherman

115.    General Sherman was incorporated in Nevada on January 9, 2013. Similar to Steve Roger Digital, state records show that General Sherman added Hao as Agent between January 9, 2013 and January 5, 2019. General Sherman also added Dong Tian, GigaCloud's current Human Resources Director, as President, Director, Secretary, and Treasurer during that time period. Those positions are now occupied by Yanyan Lu, but state records list Lu as having the same address that Hao did, for a postal and shipping services company at 2620 South Maryland Parkway #14-833, Las Vegas, NV 89109.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 115.

116.    Additionally, FE-9 told Lead Plaintiffs' investigator that Yanyan Lu was a GigaCloud employee who worked in the Company's purchase department.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 116.

117.    General Sherman sells products on Amazon through the PrimeShop Pro storefront, which lists more than 250 products, with many of them costing hundreds of dollars. As with Steve Roger Digital, all trademarks of the viewable products on General Sherman's storefront are owned by GigaCloud and also sells unbranded products found on GigaCloud Marketplace. As with the other storefronts, PrimeShop Pro uses many of the same pictures of the products as GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 117.

e)      Comp Goods

118.    Comp Goods was incorporated in Nevada on May 12, 2017. According to state records, Comp Goods added Joseph Huang as its first President, Director, Secretary, and Treasurer

45

between May 12, 2017 and October 16, 2018. Those positions were changed to Qian Jia between September 23, 2021 and October 9, 2021, but state records list Jia as having the same address as Joseph Huang — 806 Buchanan Blvd Ste 115, P.O. Box #262, Boulder City, NV 89005.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 118.

119.    Additionally, FE-9 told Lead Plaintiffs' investigator that Qian Jia was an employee of GigaCloud's 1P business and should still be working for the Company.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 119.

120.    Comp Goods sells products on Amazon through the Virubi storefront, which lists more than 300 products, many of them costing hundreds of dollars. The trademarks of all of the viewable products on the storefront are owned by GigaCloud and it also sells unbranded products found on GigaCloud Marketplace. As with the other storefronts, Virubi uses many of the same pictures of the products as GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 120.

f)    Compthunder

121.    Compthunder was incorporated in California on May 2, 2018. Its current President, Secretary, and Treasurer is Yuying Zhou. Yuying Zhou is registered as a supervisor of Shenzhenshi Ziyu Wangluokeji Youxiangongsi, discussed further below. Compthunder's official filings from the state of California show its registered address as 385 Lemon Avenue, Unit E186 Walnut, CA 91789. This is in the same small building as Tmall, Inc., one of GigaCloud's disclosed subsidiaries.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 121.

122.    Compthunder sells products on Amazon through the Polibi storefront — ***Polibi is a trademark registered by Comptree Inc., former name of GigaCloud's primary U.S. subsidiary.*** The Polibi storefront lists more than 600 products, many costing hundreds of dollars. All the trademarks of viewable products of the storefront are either owned by GigaCloud or found on GigaCloud Marketplace. The storefront also sells unbranded products found on GigaCloud Marketplace. Furthermore, as with the storefronts, many of the pictures on the Polibi are identical to the ones on GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 122.

g)    Shenzhenshi Ziyu Wangluokeji Youxiangongsi

123.    Plaintiffs' investigation independently uncovered Shenzhenshi Ziyu Wangluokeji Youxiangongsi, which is another undisclosed entity closely connected to GigaCloud. Shenzhenshi Ziyu Wangluokeji Youxiangongsi runs the Habitrio storefront on Amazon. Habitrio is another registered trademark of Comptree, and has more than 800 product listings, many of them costing hundreds of dollars. The trademarks of all of the viewable products on the storefront are owned by GigaCloud.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 123.

124.    Shenzhenshi Ziyu Wangluokeji Youxiangongsi's address on Amazon is the address of GigaCloud Network Technology (Shenzhen) Co. Ltd, one of GigaCloud's main business entities in China. Shenzhenshi Ziyu Wangluokeji Youxiangongsi's business records listed this same address until November 2021.

47

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 124.

> 4. *GigaCloud Did Not Deny That It Counts Purchases by the Entities Discussed in the Grizzly Report in GigaCloud 1P Revenue and GigaCloud Marketplace GMV.*

125. After the Grizzly Report was published, GigaCloud did not deny that it counted purchases by Orien Life, CompHome, Steve Roger Digital, General Sherman, Comp Goods, and Compthunder in GigaCloud 1P Revenue and GigaCloud Marketplace GMV. Instead, in a May 23, 2024 press release entitled "GigaCloud Technology Inc Responds to Short-Seller Report," the Company stated:

> The short-seller report claims that the purported lack of website activity is explained by allegedly undisclosed transactions with related parties. This claim is false and misleading for the reasons noted above: GigaCloud's B2B marketplace has substantial monthly traffic. There is also no merit to the claims the short-seller makes about purported related party transactions. Following similar unsubstantiated allegations made in September 2023 by another short-seller, the Company carefully evaluated its customer relationships and has disclosed in its filings made with the U.S. Securities and Exchange Commission all related party transactions required by the applicable rules and accounting standards.

> There is also no basis in the short-seller's unsupported suggestion that sales made through certain entities are not legitimate. As the Company previously disclosed, buyers in its marketplace can list products for sale to consumers on their own stores or other ecommerce websites and GigaCloud will handle fulfilment directly to their end customer. These transactions represent legitimate sales that can be validated through the records of deliveries to end customers and are corroborated by the substantial expenses the Company has previously reported for delivery and logistics services.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 125.

126. This response side-stepped the primary thrust of the allegations above — that revenue and GMV numbers in GigaCloud's Prospectus overstated the success of GigaCloud

Marketplace and its attractiveness to buyers because a significant amount of the GigaCloud 1P revenue and GigaCloud Marketplace GMV is generated by buyers with pre-existing and close connections to GigaCloud.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 126.

**VI.    MATERIALLY FALSE AND MISLEADING STATEMENTS IN GIGACLOUD'S REGISTRATION STATEMENT**

127.    The Registration Statement was negligently prepared. It contained a series of false and misleading statements that misrepresented (1) GigaCloud's technological capacity, and (2) activity and revenues on GigaCloud Marketplace. The Securities Act Defendants are liable for those false and misleading statements either because they are strictly liable or because the statements were made negligently.

**ANSWER:**

Paragraph 127 alleges legal conclusions to which no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 127 and incorporate by reference the full contents of the Registration Statement as if attached hereto.

**A.    Materially False and Misleading Statements Concerning Artificial Intelligence**

128.    The Registration Statement falsely emphasized GigaCloud's AI capabilities, claiming that these touched nearly every part of the Company's business, from routing orders and rebalancing inventory levels, to generating credit profiles for the Company's supply chain financing program, to determining order details, even to deciding where to establish new warehouses.

**ANSWER:**

Answering Defendants admit that the Registration Statement contains some of the information referenced in Paragraph 128 but deny that the paraphrased language is a complete and accurate recitation of the relevant statements made in the Registration Statement. Answering Defendants also state that the paraphrased language in Paragraph 128 was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration

Statement.  Answering Defendants deny the remaining allegations and incorporate by reference the full contents of the Registration Statement as if attached hereto.

129.    The Prospectus twice stated, first in the "**Overview**" of the "**PROSPECTUS SUMMARY**" and again under "**Business Overview,**" that GigaCloud has "artificial intelligence software, or AI" that "optimizes routing by organizing incoming orders and rebalancing inventory levels within our warehousing network" and that the Company leverages "AI to accelerate the network effects in our marketplace":

> *We have artificial intelligence software, or AI, that generates seller ratings and credit profiles through volume data. Additionally, our AI optimizes routing by organizing incoming orders and rebalancing inventory levels within our warehousing network.* Our software platform includes flexible trading tools with which sellers can set prices based on quantities, delivery dates and fulfillment methods, and buyers have the option to purchase merchandise individually or in bulk.

> *We leverage our proprietary data and AI to accelerate the network effects in our marketplace.* As our marketplace grows, we accumulate user and product data to develop analytical and predicative tools such as product sales forecasts. This information is valuable to our sellers as it allows them to efficiently manage inventory and pricing. As sellers succeed in our marketplace, more sellers join, which expands our merchandise offerings. Our broad merchandise selection, competitive pricing and virtual warehousing capabilities encourage buyers to join and transact in our marketplace. More buyer activity leads to more sellers, creating a virtuous cycle.

**ANSWER:**

Answering Defendants admit that the Registration Statement contains the phrases quoted in Paragraph 129 but deny that these phrases are a complete and accurate recitation of the relevant statements made in the Registration Statement.  Answering Defendants also state that the quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement.  Answering Defendants deny the remaining allegations and incorporate by reference the full contents of the Registration Statement as if attached hereto.

130.    The foregoing statement was false and misleading because, as described in Paragraphs 67-82: (1) GigaCloud's logistics operation did not use AI and (2) the technology GigaCloud did use was not state-of-the-art or sophisticated and would have been found in most warehouse operations.

**ANSWER:**

Paragraph 130 alleges legal conclusions, to which no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 130.

131.  Also, in the "**PROSPECTUS SUMMARY**," under the title "**Our Strengths**," the Prospectus listed "Data Intelligence powered by AI":

**Our Strengths** [emphasis in original]

We believe that the following components contribute to our success and differentiate us from our competitors:

- Pioneering cross-border B2B ecommerce marketplace for the large parcel market;

- Compelling value proposition to both sellers and buyers enhanced by network effects;

- Industry-leading supply chain capabilities;

- Our technology system;

- *Data intelligence powered by AI*; and

- Experienced and innovative team.

**ANSWER:**

Answering Defendants admit that the Registration Statement contains the phrases quoted in Paragraph 131 but deny that these phrases are a complete and accurate recitation of the relevant statements made in the Registration Statement. Answering Defendants also state that the quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement. Answering Defendants deny the remaining allegations and incorporate by reference the full contents of the Registration Statement as if attached hereto.

132.  The foregoing statement was false and misleading because, as described in Paragraphs 67-82: (1) GigaCloud's logistics operation did not use AI and (2) the technology GigaCloud did use was not a "strength[]" because it was not state-of-the-art or sophisticated and would have been found in most warehouse operations.

51

**ANSWER:**

Paragraph 132 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 132.

133.    The Prospectus further stated: "***We use complex AI software*** in our technology infrastructure, which we seek to continually update and improve."

**ANSWER:**

Answering Defendants admit that the Registration Statement contains the phrases quoted in Paragraph 133 but deny that these phrases are a complete and accurate recitation of the relevant statements made in the Registration Statement.  Answering Defendants also state that the quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement.  Answering Defendants deny the remaining allegations and incorporate by reference the full contents of the Registration Statement as if attached hereto.

134.    The foregoing statement was false and misleading because, as described in Paragraphs 67-82: (1) GigaCloud's logistics operation did not use AI and (2) the technology GigaCloud did use was not state-of-the-art or sophisticated and would have been found in most warehouse operations.

**ANSWER:**

Paragraph 134 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 134.

135.    Under "**Competitive Strengths**," the Prospectus listed "***Data Intelligence Powered by AI***" and stated that the Company "leverage[s] self-learning AI to improve our operating efficiency":

> ***Data Intelligence Powered by AI*** [emphasis in original]
>
> ***We leverage self-learning AI to improve our operating efficiency. Our system is capable of automating and optimizing inventory globally based on historical data, rebalancing our merchandise across warehouses to maximize first mile collection and last mile delivery efficiency.*** We have also developed trading pattern analytics tools that constantly analyze transaction patterns, generating insightful information to suppliers to make well-informed decision regarding markets. We also leverage

52

our data analytics in order to provide supply chain finance solutions to select quality suppliers based on our extensive data on their performance and quality.

**ANSWER:**

Answering Defendants admit that the Registration Statement contains the phrases quoted in Paragraph 135 but deny that these phrases are a complete and accurate recitation of the relevant statements made in the Registration Statement.  Answering Defendants also state that the quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement.  Answering Defendants deny the remaining allegations and incorporate by reference the full contents of the Registration Statement as if attached hereto.

136.    The foregoing statement was false and misleading because, as described in Paragraphs 67-82: (1) GigaCloud's logistics operation did not use AI and (2) the technology GigaCloud did use was not a "competitive strength[]" because it was not state-of-the-art or sophisticated and would have been found in most warehouse operations.

**ANSWER:**

Paragraph 136 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 136.

137.    The Prospectus further stated under "**Logistics Network and Value-added Services**" that GigaCloud uses "AI" to "to determine optimal distribution of inventory among [its] warehouses" and that its "AI-powered warehousing management system solves the many practical problems faced by sellers and buyers in connection with complex, cross-border transactions involving large parcel goods":

*Warehousing Network* [emphasis in original]

...

*We use AI and data analytics to determine optimal distribution of inventory among our warehouses under a unified warehouse management system* and provide a virtual warehousing solution for sellers and buyers in our marketplace. *Our AI-powered warehousing management system solves the many practical problems faced by sellers and buyers in connection with complex, cross-border transactions involving large parcel goods*.

**ANSWER:**

Answering Defendants admit that the Registration Statement contains the phrases quoted in Paragraph 137 but deny that these phrases are a complete and accurate recitation of the relevant statements made in the Registration Statement.  Answering Defendants also state that the quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement.  Answering Defendants deny the remaining allegations and incorporate by reference the full contents of the Registration Statement as if attached hereto.

138.   The foregoing statement was false and misleading because, as described in Paragraphs 67-82: (1) GigaCloud's logistics operation did not use AI and (2) the technology GigaCloud did use was not state-of-the-art or sophisticated and would have been found in most warehouse operations.

**ANSWER:**

Paragraph 138 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 138.

139.   Also under "**Logistics Network and Value Added Services**," the Prospectus listed "***AI Algorithm and Data Analysis***" and stated that "[o]ur in-house reinforcement learning algorithms are built to optimize our inventory management across our multiple warehouses around the world":

> *AI Algorithm and Data Analysis* [emphasis in original]
>
> ***Our in-house reinforcement learning algorithms are built to optimize our inventory management across our multiple warehouses around the world, analyzing historical data to determine how to manage our inventory and even where to establish our next warehouse. Our algorithm also accounts for the fragility of certain types of inventory and reduces the number of times a product is moved.*** Each time a product is handled, there is an increased chance of damage, which is an issue embedded in the home furnishing industry.
>
> We also create sales analytics and provide them to our sellers for a fee. ***The services provide meaningful value to our sellers bringing products to new markets and support a high retention rate.*** Additionally, we leveraged the data collected on each seller's inventory, sales history and performance to establish a credit profile under our supply chain financing program.

**ANSWER:**

Answering Defendants admit that the Registration Statement contains the phrases quoted in Paragraph 139 but deny that these phrases are a complete and accurate recitation of the relevant statements made in the Registration Statement.  Answering Defendants also state that the quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement.  Answering Defendants deny the remaining allegations and incorporate by reference the full contents of the Registration Statement as if attached hereto.

140.    The foregoing statement was false and misleading because, as described in Paragraphs 67-82: (1) GigaCloud's logistics operation did not use AI and (2) the technology GigaCloud did use was not state-of-the-art and would have been found in most warehouse operations.

**ANSWER:**

Paragraph 140 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 140.

141.    The Free Writing Prospectus, in a PowerPoint, labeled "Investor Presentation," boasted about how GigaCloud had a "Data Driven Technology Stack Powered by AI & Machine Learning [that] Drives Incremental Operating Efficiencies," and "[o]ptimizes inventory levels globally to improve operating efficiencies."



**ANSWER:**

Answering Defendants admit that the Free Writing Prospectus contains the phrases quoted in Paragraph 141 but deny that these phrases are a complete and accurate recitation of the relevant statements made in the Free Writing Prospectus. Answering Defendants also state that the quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Free Writing Prospectus. Answering Defendants deny the remaining allegations and incorporate by reference the full contents of the Free Writing Prospectus as if attached hereto.

142.    The foregoing statement was false and misleading because as described in Paragraphs 67-82: (1) GigaCloud's logistics operation did not use AI and/or Machine Learning and (2) the technology GigaCloud did use was not state-of-the-art or sophisticated and would have been found in most warehouse operations.

**ANSWER:**

Paragraph 142 alleges legal conclusions, to which no response is required. To the extent a response is required, Answering Defendants deny the remaining allegations in Paragraph 142.

56

**B.**    **Materially False and Misleading Statements Concerning GigaCloud Marketplace Activity**

143.    The Registration Statement misleadingly omitted to disclose that, as described in Paragraphs 90-126, a significant amount of GigaCloud 1P revenue (revenue from GigaCloud selling its own inventory on GigaCloud Marketplace) and GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it. By failing to disclose this, GigaCloud misleadingly overstated the success of GigaCloud Marketplace and its attractiveness to buyers.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 143.

144.    The Prospectus stated that:

***To enhance our marketplace experience, we sell our own inventory, or 1P, through the GigaCloud Marketplace*** *and to and through third-party ecommerce websites, such as Rakuten in Japan, Amazon and Walmart in the U.S. and Wayfair in the United Kingdom, or the U.K.* ***These 1P revenues expand our market presence, reduce inventory and logistics risk for sellers, create more products for buyers, drive volume-based cost efficiencies for sourcing products, provide us with proprietary data and increase the velocity of sales on our marketplace***.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 144.

145.    This statement was materially false and misleading because: (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it; and (2) GigaCloud sold its own inventory on GigaCloud Marketplace to companies closely connected to itself not just to "enhance [the] marketplace experience" but, instead, to cause GigaCloud Marketplace to appear more successful and attractive to buyers than it really was.

57

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 145.

146.    The Prospectus contained the following statements:

*In 2020, our users transacted $190.5 million of GigaCloud Marketplace GMV with an average spend per buyer of $112,777….*

*In 2021, our users transacted $414.2 million of GigaCloud Marketplace GMV with an average spend per buyer of $116,150….*

*In the 12 months ended March 31, 2022, our users transacted $438.1 million of GigaCloud Marketplace GMV with an average spend per buyer of $115,845… .*

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 146.

147.    These statements were materially false and misleading because they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 147.

148.    The Prospectus stated that:

We are a pioneer of global end-to-end B2B ecommerce solutions for large parcel merchandise. We generate revenues through three revenue streams:

- *GigaCloud 3P*: generates service revenues by facilitating transactions between sellers and buyers in our GigaCloud Marketplace.

58

- ***GigaCloud 1P***: generates product revenues through the sale of our inventory in our GigaCloud Marketplace.

- ***Off-platform ecommerce***: generates product revenues through the sale of our inventory to and through third-party ecommerce websites.

(Emphasis in original.)

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 148.

149.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it; and (2) by contrasting GigaCloud 1P revenue with off-platform ecommerce revenue, it created the false impression that GigaCloud 1P revenue reflected sales to true third-party entities and organic activity on GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 149.

150.    The Prospectus contained the following chart depicting and reporting the Company's revenues for the years ended December 31, 2020 and 2021 as well as the three months ended March 31, 2021 and 2022:



**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 150.

151.    This chart was materially false and misleading because (1) it omitted, as described
in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue and GigaCloud
Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a
result, the above reports of GigaCloud 1P revenue and GigaCloud Marketplace GMV made
GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2)
by contrasting GigaCloud 1P revenue with off-platform ecommerce revenue, it created the false
impression that GigaCloud 1P revenue reflected sales to true third-party entities and organic
activity on GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 151.

152.    The Prospectus also stated:

**_Once we attract new sellers and buyers to our marketplace, we leverage our
technology and supply chain solutions to drive retention._** We provide value-added

services like product sales forecasts to our sellers to allow them to more efficiently manage inventory and reduce costs. Our integrated supply chain also offers manufacturers and online resellers in our marketplace enhanced visibility into product inventory, reducing inventory turnover and associated transaction costs. ***The value of our model is demonstrated by the growth in GMV from our new and existing sellers and buyers.***

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 152.

153. This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; (2) it purported to explain how the Company retained buyers on GigaCloud Marketplace without disclosing GigaCloud's transactions with closely connected companies, who were "retained" on GigaCloud Marketplace due to these undisclosed connections; and (3) it purported to explain the reasons for the reported "growth in GMV from [GigaCloud's] new and existing sellers and buyers" without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 153.

154. The Prospectus contained the following statement and chart entitled "All Buyer GMV in GigaCloud Marketplace":

The chart below displays GigaCloud Marketplace GMV of our buyers in our GigaCloud Marketplace for the 12 months ended in December 31, 2019, 2020 and 2021 and March 31, 2022. 2019 Buyers, 2020 Buyers and 2021 Buyers represent the groups of buyers who first purchased products in our GigaCloud Marketplace in 2019, 2020, 2021 and the 12 months ended March 31, 2022, respectively. The Active Buyers shows the total number of buyers who have made at least one purchase in our GigaCloud Marketplace in the last 12 months. Our number of buyers and buyer GMV have grown in each quarter since inception, as shown below:

61



**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 154.

155.    The above chart, and the description of that chart, were materially false and misleading because they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 155.

156.    The Prospectus's description of GigaCloud's business model contained the following statements describing the GigaCloud 1P and Off-platform Ecommerce revenue streams:

*GigaCloud 1P* [emphasis in original]

*Through GigaCloud 1P, we further enhance our marketplace experience by selling our own inventory. Our 1P selling creates more products for buyers, gives us insights into seller needs, provides us with proprietary data and increases the*

62

*velocity of sales in our marketplace*. Through GigaCloud 1P we generate revenues from product sales.

***Off-platform Ecommerce*** [emphasis in original]

***In addition to facilitating transactions*** in our GigaCloud Marketplace, we also procure highly-rated products directly from manufacturers and sell them directly to and through third-party ecommerce websites such as Rakuten, Amazon, Walmart and Wayfair. Off-platform ecommerce sales deepen our relationships with sellers and provide us with proprietary data. We expect the off-platform ecommerce GMV to GigaCloud Marketplace GMV as percentages of total GMV to gradually decrease. Through off-platform ecommerce we generate revenues from product sales.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 156.

157.    These statements were materially false and misleading because: (1) they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it; (2) by contrasting GigaCloud 1P revenue with off-platform ecommerce revenue, they created the false impression that GigaCloud 1P revenue reflected sales to true third-party entities and organic activity on GigaCloud Marketplace; (3) GigaCloud sold "its own inventory" on GigaCloud Marketplace to companies closely connected to itself not just to "enhance [the] marketplace experience," but to cause GigaCloud Marketplace to appear more successful and attractive to buyers than it truly was; and (4) a significant amount GigaCloud 1P sales on GigaCloud Marketplace were not "facilitat[ed]" by the Marketplace because those sales were to companies closely connected to GigaCloud.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 157.

158.    The Prospectus also stated:

***The growth in GigaCloud Marketplace GMV, including GMV from both GigaCloud 3P and GigaCloud 1P, reflects our ability to attract and retain sellers and buyers in the GigaCloud Marketplace.*** The revenues we generate in our

63

marketplace is highly correlated to the amount of GMV transacted in the GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 158.

159.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV and GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV and GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; (2) it purported to explain the reasons for the reported increase in GigaCloud Marketplace GMV and GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies; and (3) it represented that GigaCloud Marketplace GMV and GigaCloud 1P revenue resulted from GigaCloud's "ability to attract and retain... buyers in the GigaCloud Marketplace" without disclosing GigaCloud's transactions with closely connected companies, and that transactions with those companies reflected this undisclosed relationship rather than the Company's "ability to attract and retain" buyers.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 159.

160.    The Prospectus contained the following statements and chart entitled "GigaCloud Marketplace GMV by Quarter":

> ***GigaCloud Marketplace GMV increased from $35.5 million in 2019 to $190.5 million in 2020***, representing a growth of 437.0%, ***primarily due to the growth in the numbers of sellers and buyers transacting in our marketplace and increase in spend per active buyer.*** Growth in GigaCloud Marketplace GMV increased significantly in the 12 months ended June 30, September 30 and December 31 in 2020 ***due to our growing marketplace to reach economies of scale, introduction of new sellers and buyers to our marketplace while maintaining transactions volume from our existing sellers and buyers, as well as accelerated migration of large parcel purchases online because of COVID-19. GigaCloud Marketplace GMV increased from $190.5 million in 2020 to $414.2 million in 2021***, representing a growth of 117.4% year-over-year, and further increased to $438.1 million in the 12 months ended March 31, 2022, representing a growth of 69.1%

period-over-period, ***primarily due to the continued increases in the numbers of sellers and buyers transacting in our marketplace and an increase in spend per active buyer.*** We expect our growth to continue post COVID-19 as consumers increasingly embrace online purchases for large parcel products.



**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 160.

161.   The above statements and chart were materially false and misleading because (1) they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) they purported to explain the reasons for the reported increases in GigaCloud Marketplace GMV without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 161.

162.   The Prospectus also stated that:

The number of active buyers in the GigaCloud Marketplace has been increasing every quarter since the first quarter in 2019. We had 441 active buyers in 2019, 1,689 active buyers in 2020, 3,566 active buyers in 2021 and 3,782 active buyers

65

in the 12 months ended March 31, 2022. ***We view number of active buyers as a key driver of our GigaCloud Marketplace GMV and revenues growth, and a key indicator of our ability to attract and engage buyers in our marketplace***. We expect continued growth in the number of active buyers through internal sales force initiatives, referrals by existing users, word-of-mouth and direct visits to our website, however, the growth rate may be slower than the previous years due to inflationary pressure and changes in the global economic conditions.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 162.

163.   This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it; (2) it purported to explain the reasons for the growth of GigaCloud Marketplace without disclosing GigaCloud's transactions with closely connected companies; and (3) it represented that GigaCloud Marketplace GMV and corresponding revenues growth, including from GigaCloud 1P sales, resulted from GigaCloud's "ability to attract and engage buyers in our marketplace" without disclosing GigaCloud's transactions with closely connected companies, and transactions with those companies reflected this undisclosed relationship rather than the Company's "ability to attract and engage buyers."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 163.

164.   The Prospectus also stated:

Buyers in our marketplace are typically resellers based in the U.S. and Europe who procure large parcel merchandise to resell to end customers. ***Our marketplace is attractive to buyers because we minimize inventory risk from our buyers' business operations.*** Our buyers can browse a product in our marketplace and list the product on their preferred ecommerce websites such as Amazon, Wayfair or their own store prior to procuring and storing the product in a warehouse or shop. Once a sale to the end customer takes place, buyers can order the product in our marketplace and we will handle the fulfillment directly to the end customer.

66

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants also state that the quoted language was accompanied by, and must be read with, risk factors and other explanatory language in GigaCloud's Registration Statement. Answering Defendants deny the allegations in Paragraph 164.

165.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it; (2) it purported to explain the reason GigaCloud Marketplace is "attractive to buyers" without disclosing GigaCloud's transactions with closely connected companies, who were "attract[ed]" to GigaCloud Marketplace due to these undisclosed connections.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 165.

166.    The Prospectus stated that:

*Product Revenues*—GigaCloud 1P [emphasis in original]

We derive product revenues from the sales of products through ***selling our own inventory on our marketplace****. **This 1P selling creates more products for buyers, gives us insights into seller needs, provides us with proprietary data and increases the velocity of sales in our marketplace*.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 166.

167.    This statement was materially false and misleading because: (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it; and (2) a significant amount

67

of GigaCloud's "selling [of] [its] own inventory on [its] marketplace" was not done just to "create[] more products for buyers, give[] us insights into seller needs, provide[] us with proprietary data and increase[] the velocity of sales in our marketplace," but to cause GigaCloud Marketplace to appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 167.

168. The Prospectus stated that "*[w]e are focused on attracting new buyers to our marketplace*. For the year ended December 31, 2020 and 2021 and the 12 months ended March 31, 2022, we had 1,689, 3,566 and 3,782 buyers, respectively*, generating $190.5 million, $414.2 million and $438.1 million of GigaCloud Marketplace GMV, respectively.*"

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 168.

169. This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV were from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) it represented that GigaCloud was "focused on attracting new buyers to our marketplace" without disclosing that a significant amount of GigaCloud 1P sales on GigaCloud Marketplace were to buyers closely connected to GigaCloud.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 169.

170. The Prospectus contained the following statement and table of revenues:

The Group's revenues are disaggregated by major products/service lines and timing of revenue recognition. Detailed information is specified as follows:

68

| Major products/services lines | Three Months Ended March 31, | |
| --- | --- | --- |
| | 2021 | 2022 |
| | US$ | US$ |
| Service revenues | | |
| GigaCloud 3P | 20,418 | 31,218 |
| | | |
| Total service revenues | 20,418 | 31,218 |
| Product revenues | | |
| Product sales to B | 11,575 | 10,824 |
| Product sales to C | 20,276 | 16,127 |
| | | |
| Off-platform ecommerce | 31,851 | 26,951 |
| GigaCloud 1P | 42,259 | 54,273 |
| | | |
| Total product revenues | 74,110 | 81,224 |
| | | |
| Revenues | 94,528 | 112,442 |

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 170.

171.    The Prospectus also contained the following statement and table of revenues for the years ended December 31, 2019, 2020, and 2021:

The Group's revenues are disaggregated by major products/service lines and timing of revenue recognition. Detailed information is specified as follows:

69

|                              | Year ended December 31, | | |
| Major products/services lines | 2019 | 2020 | 2021 |
| --- | --- | --- | --- |
|                              | US$ | US$ | US$ |
| **Service revenues** | | | |
| GigaCloud 3P | 15,151 | 60,130 | 98,332 |
| **Total service revenues** | **15,151** | **60,130** | **98,332** |
| **Product revenues** | | | |
| Product sales to B | 22,994 | 39,858 | 50,699 |
| Product sales to C | 42,010 | 53,388 | 76,900 |
| Off-platform ecommerce | 65,004 | 93,246 | 127,599 |
| *GigaCloud 1P* | *42,141* | *122,102* | *188,266* |
| **Total product revenues** | **107,145** | **215,348** | **315,865** |
| **Revenues** | **122,296** | **275,478** | **414,197** |

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 171.

172.    The Prospectus also contained the following statement and table of revenues for the years ended December 31, 2019, 2020, and 2021, and the three months ended March 31, 2021 and 2022:

The following table sets forth the breakdown of our revenues, both in absolute amount and as a percentage of our total revenues, for the periods presented:

70

| | For the Year Ended December 31, | | | | | | For the Three Months Ended March 31, | | | |
| | 2019 | | 2020 | | 2021 | | 2021 | | 2022 | |
| | $ | % | $ | % | $ | % | $ | % | $ | % |
| | | | | ($ in thousands, except for percentages) | | | | | | |
| **Revenues** | | | | | | | | | | |
| Service revenue | | | | | | | | | | |
| GigaCloud 3P | 15,151 | 12.4 | 60,130 | 21.8 | 98,332 | 23.7 | 20,418 | 21.6 | 31,218 | 27.8 |
| **Subtotal** | 15,151 | 12.4 | 60,130 | 21.8 | 98,332 | 23.7 | 20,418 | 21.6 | 31,218 | 27.8 |
| Product revenue | | | | | | | | | | |
| *GigaCloud 1P* | 42,141 | 34.4 | 122,102 | 44.4 | 188,266 | 45.5 | 42,259 | 44.7 | 54,273 | 48.2 |
| Off-platform ecommerce | 65,004 | 53.2 | 93,246 | 33.8 | 127,599 | 30.8 | 31,851 | 33.7 | 26,951 | 24.0 |
| **Subtotal** | 107,145 | 87.6 | 215,348 | 78.2 | 315,865 | 76.3 | 74,110 | 78.4 | 81,224 | 72.2 |
| **Total** | 122,296 | 100.0 | 275,478 | 100.0 | 414,197 | 100.0 | 94,528 | 100.0 | 112,442 | 100.0 |

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 172.

173.    The tables in the above three paragraphs were materially false and misleading because they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue were from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 173.

174. The Prospectus also stated:

*Product Revenue from GigaCloud 1P* [non-bolded emphasis in original]. ***Our product revenues from GigaCloud 1P increased by 28.4% from $42.3 million in the three months ended March 31, 2021 to $54.3 million in the three months ended March 31, 2022. The increase was attributable to an increase in our GigaCloud Marketplace GMV from $89.5 million in the three months ended March 31, 2021 to $113.4 million in the three months ended March 31, 2022,*** and an increase in the number of our SKUs from 5,172 as of March 31, 2021 to 7,245 as of March 31, 2022, partially offset by a decrease in average spend per buyer in the three months ended March 31, 2022 as consumer demand slowed down due to inflationary pressure.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the remaining allegations in Paragraph 174.

175. The Prospectus also stated:

*Product Revenue from GigaCloud 1P* [non-bolded emphasis in original]. ***Our product revenues from GigaCloud 1P increased by 54.2% from $122.1 million in 2020 to $188.3 million in 2021. This increase was attributable to an increase in the overall market demand for online home furniture which continued to drive the increase in sales per active buyers and an increase in the number of our SKUs.***

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the remaining allegations in Paragraph 175.

176. The Prospectus also stated:

72

*Product Revenue from GigaCloud 1P* [non-bolded emphasis in original]. ***Our product revenues from GigaCloud 1P increased by 189.7% from $42.1 million in 2019 to $122.1 million in 2020. This increase was attributable to an increase in the overall market demand for online home furniture, driving the increase in sales per active buyers.***

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the remaining allegations in Paragraph 176.

177.    The statements in the above three paragraphs were materially false and misleading because (1) they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue and GigaCloud Marketplace GMV were from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud 1P revenue and GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) they purported to explain the reasons for the reported increase in GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 177.

## VII.    CLASS ACTION ALLEGATIONS

178.    With respect to the Securities Act Claims, Lead Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the following proposed "Securities Act Class":

All persons and entities that purchased or otherwise acquired Class A ordinary shares issued by GigaCloud pursuant and/or traceable to the Registration Statement issued in connection with GigaCloud's August 2022 initial public offering, and were damaged thereby.

**ANSWER:**

Answering Defendants admit that Lead Plaintiffs purport to bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure but deny that Lead Plaintiffs

state legally cognizable claims under the federal law, or any other statute, rule, or the common law, deny that Lead Plaintiffs' claims are properly certifiable as a class, and otherwise deny any and all remaining allegations in Paragraph 178.

179.    Excluded from the Securities Act Class are: (i) Defendants and any affiliates or subsidiaries thereof; (ii) present and former officers and directors of GigaCloud and their immediate family members (as defined in Item 404 of SEC Regulation S-K, 17 C.F.R. § 229.404, Instructions (1)(a)(iii) & (1)(b)(ii)); (iii) Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof; (iv) any entity in which any Defendant had or has had a controlling interest; (v) GigaCloud's employee retirement and benefit plan(s); and (vi) the legal representatives, heirs, estates, agents, successors, or assigns of any person or entity described in the preceding categories.

**ANSWER:**

Paragraph 179 merely defines the proposed class and contains no factual allegations for which a response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 179.

180.    The members of the Securities Act Class are so numerous that joinder of all members is impracticable. Lead Plaintiffs believe that the Securities Act Class members number at least in the thousands. GigaCloud sold 3,381,000 Class A ordinary shares in the IPO and, as of April 23, 2024, had over 32 million Class A ordinary shares outstanding. GigaCloud Class A ordinary shares traded actively on the NASDAQ after the IPO.

**ANSWER:**

The first sentence of Paragraph 180 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants admit that GigaCloud's Class A ordinary shares traded on the NASDAQ and state that the Registration Statement speaks for itself.  Answering Defendants deny the remaining allegations in Paragraph 180 and incorporate by reference the Registration Statement as if attached hereto.

181.    Lead Plaintiffs' claims are typical of the claims of the members of the Securities Act Class. All members of the Securities Act Class are similarly situated in that they acquired GigaCloud Class A ordinary shares pursuant and/or traceable to the Registration Statement, which contained untrue statements of material fact and omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading.

**ANSWER:**

Paragraph 181 alleges legal conclusions, to which no response is required.  To the extent a

response is required, Answering Defendants deny the remaining allegations in Paragraph 181.

182.    Lead Plaintiffs will fairly and adequately protect the interests of the members of
the Securities Act Class and have retained counsel competent and experienced in class and
securities litigation. Lead Plaintiffs have no interests antagonistic to or in conflict with those of the
Securities Act Class.

**ANSWER:**

Paragraph 182 alleges legal conclusions, to which no response is required.  To the extent a

response is required, Answering Defendants deny the remaining allegations in Paragraph 182.

183.    Common questions of law and fact exist as to all members of the Securities Act
Class and predominate over any questions solely affecting individual members of the Securities
Act Class. Among the questions of law and fact common to the Securities Act Class are:

- whether Defendants' acts violated the federal securities laws as alleged herein;

- whether the Registration Statement contained any untrue statements of material fact
  or omitted to state any material facts required to be stated therein or necessary to
  make the statements therein not misleading;

- whether the Individual Securities Act Defendants were controlling persons under
  Section 15 of the Securities Act; and

- Whether any of the Individual Securities Act Defendants can sustain their burden
  of establishing an affirmative defense under applicable provisions of the Securities
  Act.

**ANSWER:**

Paragraph 183 alleges legal conclusions, to which no response is required.  To the extent a

response is required, Answering Defendants deny the remaining allegations in Paragraph 183.

184.    A class action is superior to all other available methods for the fair and efficient
adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the
damages suffered by individual Securities Act Class members may be relatively small, the expense
and burden of individual litigation make it impossible for members of the Securities Act Class to
individually redress the wrongs done to them.

**ANSWER:**

Paragraph 184 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the remaining allegations in Paragraph 184.

185.    There will be no difficulty in the management of this action as a class action. Securities Act Class members may be identified from records maintained by the Company or its transfer agent(s), or by other means, and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

**ANSWER:**

Paragraph 185 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the remaining allegations in Paragraph 185.

## VIII.    SECURITIES ACT COUNTS

### COUNT I

**Violations of Section 11 of the Securities Act**
**Against the Securities Act Defendants**

186.    Lead Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, except to the extent they sound in fraud.

**ANSWER:**

Paragraph 186 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 186.

187.    This Count does not sound in fraud. This Count does not allege, and does not intend to allege, fraud or scienter, which are not elements of a Section 11 claim, and any implication of fraud or scienter is disclaimed. Any allegations of fraud or fraudulent conduct and/or motive are specifically excluded, except that any challenged statements of opinion or belief made in the Registration Statement are alleged to have been materially misstated statements of opinion or belief when made and at the time of the IPO. Lead Plaintiffs do not allege that any Securities Act Defendant acted with intentional, reckless, or otherwise fraudulent intent with respect to the alleged misstatements in the Registration Statement. The Securities Act allegations herein are based in strict liability and negligence.

**ANSWER:**

Paragraph 187 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 187.

76

188.    The Registration Statement, at the time when it became effective, was inaccurate and misleading, contained untrue statements of material facts, omitted to state material facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

**ANSWER:**

Paragraph 188 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 188 and incorporate by reference the full contents of the Registration Statement as if attached hereto.

189.    The Securities Act Defendants were responsible for the content and dissemination of the Registration Statement.

**ANSWER:**

Paragraph 189 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 189.

190.    GigaCloud is the issuer and registrant for the IPO. As issuer, GigaCloud is strictly liable for any material misstatements and omissions in the Registration Statement.

**ANSWER:**

Paragraph 190 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants admit that GigaCloud was the issuer and registrant for the IPO and deny the remaining allegations in Paragraph 190.

191.    The other Securities Act Defendants acted negligently in that none of them made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and not misleading, and that the Registration Statement did not omit any material facts required to be stated therein or necessary to make the statements made therein not misleading.

**ANSWER:**

Paragraph 191 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 191.

192.    Lead Plaintiffs and the Securities Act Class acquired GigaCloud Class A ordinary shares pursuant and/or traceable to the Registration Statement.

**ANSWER:**

Paragraph 192 alleges legal conclusions, to which no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 192.

193.    When they acquired GigaCloud Class A ordinary shares pursuant and/or traceable to the Registration Statement, Lead Plaintiffs and other members of the Securities Act Class did not know, nor in the exercise of reasonable care could they have known, of the untruths and omissions contained (and/or incorporated by reference) in the Registration Statement.

**ANSWER:**

Paragraph 193 alleges legal conclusions, to which no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 193.

194.    Lead Plaintiffs and the Securities Act Class have sustained damages. The value of GigaCloud Class A ordinary shares has declined substantially subsequent to and due to the Securities Act Defendants' violations.

**ANSWER:**

Paragraph 194 alleges legal conclusions, to which no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 194.

## COUNT II

### For Violation of Section 15 of the Securities Act
### Against the Individual Securities Act Defendants

195.    Lead Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

**ANSWER:**

Paragraph 195 alleges legal conclusions, to which no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 195.

196.    This Count does not sound in fraud. This Count does not allege, and does not intend to allege, fraud or scienter, which are not elements of a Section 15 claim, and any implication of fraud or scienter is disclaimed. Any allegations of fraud or fraudulent conduct and/or motive are specifically excluded, except that any challenged statements of opinion or belief made in the Registration Statement are alleged to have been materially misstated statements of opinion or belief when made and at the time of the IPO. Lead Plaintiffs do not allege that any Securities Act Defendant acted with intentional, reckless, or otherwise fraudulent intent with respect to the

78

alleged misstatements in the Registration Statement. The Securities Act allegations herein are based in strict liability and negligence.

**ANSWER:**

Paragraph 196 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 196.

197.    During their tenures as officers and/or directors of GigaCloud, including at the time of the IPO and when the Registration Statement became effective, the Individual Securities Act Defendants acted as controlling persons of GigaCloud within the meaning of § 15 of the Securities Act.

**ANSWER:**

Paragraph 197 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 197.

198.    By virtue of their positions of control and authority and their direct participation in and/or awareness of GigaCloud's operations and finances, the Individual Securities Act Defendants had the power to, and did, direct or cause the direction of the management, policies, and actions of GigaCloud and its employees, and caused GigaCloud to issue, offer, and sell Class A ordinary shares pursuant to the defective Registration Statement.

**ANSWER:**

Paragraph 198 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 198.

199.    The Individual Securities Act Defendants had the power to, and did, control the decision-making of GigaCloud, including the content and issuance of the statements contained (and/or incorporated by reference) in the Registration Statement; they were provided with or had unlimited access to copies of the Registration Statement (and/or documents incorporated by reference) alleged herein to contain actionable statements or omissions prior to and/or shortly after such statements were issued, and had the power to prevent the issuance of the statements or omissions or to cause them to be corrected; and they signed the Registration Statement and were directly involved in or responsible for providing false or misleading information contained in the Registration Statement (and/or documents incorporated by reference therein) and/or certifying and approving that information.

**ANSWER:**

Paragraph 199 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 199.

79

200.    The Individual Securities Act Defendants acted negligently in that none of them exercised reasonable care to ensure, or had reasonable grounds to believe, that the Registration Statement was true and not misleading as to all material facts and did not omit to state any material fact required to be stated therein or necessary to make the statements therein not misleading.

**ANSWER:**

Paragraph 200 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 200.

201.    Lead Plaintiffs and other members of the Exchange Act Class suffered damages in connection with the purchase or acquisition of GigaCloud Class A ordinary shares pursuant and/or traceable to the Registration Statement.

**ANSWER:**

Paragraph 201 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 201.

202.    By reason of such conduct, the Individual Securities Act Defendants are liable pursuant to § 15 of the Securities Act.

**ANSWER:**

Paragraph 202 alleges legal conclusions, to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 202.

## EXCHANGE ACT CLAIMS

### I.    INTRODUCTION

203.    All the preceding allegations in this complaint are repeated and realleged herein as they are applicable to Lead Plaintiffs' claims under Sections 10(b) and 20(a) of the Exchange Act, with the exception of any disclaimers of fraudulent or intentional misconduct.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 203.

204.    The allegations in this Exchange Act Claims section of this complaint apply only to Lead Plaintiffs' claims under the Exchange Act and are not alleged in respect of any of Lead Plaintiffs' Securities Act claims.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 204.

205.    These Exchange Act Claims are based on reckless or intentionally fraudulent conduct by or on behalf of the Exchange Act Defendants (defined below) during the Class Period.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 205.

206.    During the Class Period, the Exchange Act Defendants misled investors by portraying GigaCloud Marketplace as a thriving operation attractive to third-party buyers while omitting to disclose that a significant amount of GigaCloud 1P revenue and GigaCloud Marketplace GMV was generated by companies closely connected to GigaCloud. While concealing those facts, the Exchange Act Defendants touted growth in GigaCloud Marketplace GMV, GigaCloud 1P revenue, and active buyers on GigaCloud Marketplace. Indeed, the Exchange Act Defendants emphasized GigaCloud Marketplace GMV and active buyers as "key" metrics to which investors should attach special importance, and touted growing GigaCloud 1P product revenue as proof of the purported success of GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 206.

207.    While misleading investors, the Exchange Act Defendants cashed in by selling their GigaCloud stock holdings at prices that were artificially inflated by their misrepresentations. In less than two months, Defendant Wu sold *over a million* shares of GigaCloud stock, reaping *over $40 million in profits*. Defendants Lau and Wan also sold significant portions of their holdings before investors learned the full truth.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 207.

208. The Exchange Act Defendants also had another motive. Throughout the Class Period, they pushed a narrative that GigaCloud was increasingly focusing on its Marketplace business, rather than off-platform sales. By concealing that a significant amount of GigaCloud 1P revenue and GigaCloud Marketplace GMV was generated by companies closely connected to GigaCloud, the Exchange Act Defendants reported Marketplace growth that supported this story.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 208.

209. Moreover, the concealed practice of companies closely connected to GigaCloud buying from GigaCloud on its Marketplace was known throughout the Company and involved numerous high-level executives. Both Defendant Wu and Defendant Wan were personally involved; for instance, Defendant Wu was a corporate officer and/or director of both Orien Life and CompHome. These and other facts clearly establish that the Exchange Act Defendants knowingly or recklessly misled investors. Indeed, the response of the Exchange Act Defendants to research reports casting doubt on their misstatements is itself sufficient to establish their scienter.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 209.

210. On September 28, 2023, a research report by short seller firm Culper Research revealed that GigaCloud executives and employees served as directors and officers of undisclosed "third party" entities that operated Amazon and Walmart storefronts and also imported furniture from China (the "Culper Report"). GigaCloud's stock price fell over *18%*, causing millions in investor losses. In response, the Exchange Act Defendants crafted carefully worded denials designed to appear to rebut the research report. However, their public statements did not, in fact, provide any information undermining the short seller's disclosures.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 210.

211.   On May 22, 2024, the Grizzly Report provided more detailed information, directly tying undisclosed "third party" entities to GigaCloud 1P revenue from the Marketplace. The stock price fell over 5%, injuring investors further. GigaCloud again issued a slyly worded "rebuttal" that did not provide any information to refute the Grizzly Report's claims that current and former GigaCloud employees operated "third party" companies that purchased from GigaCloud on the Marketplace, boosting GigaCloud's "key" metrics. Indeed, GigaCloud's faux denials confirm that the Culper Report and the Grizzly Report revealed correct information that the Exchange Act Defendants had concealed and misrepresented during the Class Period.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 211.

## II.   PARTY AND CONTROL PERSON ALLEGATIONS

212.   Lead Plaintiffs acquired GigaCloud Class A ordinary shares at artificially inflated prices during the Class Period, as set forth in their previously filed Certifications (ECF Nos. 28-2 [Meir Spear] and 35-3 [Sashi Rajan]), and were damaged upon the disclosure of the true facts and the materialization of the risks concealed by the Exchange Act Defendants.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 212.

213.   Lead Plaintiffs' claims under Section 10(b) of the Exchange Act are asserted against Defendants (1) GigaCloud, (2) Wu, (3) Wan, and (4) Lau. These four Defendants are referred to collectively herein as the "Exchange Act Defendants."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 213.

214.   Lead Plaintiffs' claims under Section 20(a) of the Exchange Act are asserted against Defendants (1) Wu, (2) Lau, and (3) Wan. These three Defendants are referred to collectively herein as the "Individual Exchange Act Defendants."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 214.

215.   Together, GigaCloud, Wu, Lau, and Wan are referred to collectively herein as the "Exchange Act Defendants."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 215.

216.   Defendant Wu founded GigaCloud's predecessor and has served as CEO since then. He signed the Registration Statement and, as GigaCloud's principal executive officer, certified that the Company's annual report on Form 20-F for the fiscal year ended December 31, 2022 (the "2022 20-F"), the Company's annual report on Form 10-K for the fiscal year ended December 31, 2023 (the "2023 10-K"), and the Company's quarterly report on Form 10-Q for the first quarter of 2024 (the Form "Q1 2024 10-Q") fairly presented, in all material respects, the financial condition and results of operations of the Company. Wu further certified that the 2022 20-F, the 2023 10-K, and the Q1 2024 10-Q did not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the periods covered by those reports. Wu also signed, and was quoted in, each Form 6-K and Form 8-K containing the false and misleading statements and omissions alleged herein. Wu spoke on the Company's behalf during earnings calls with analysts and was quoted in the Company's press releases. GigaCloud's former President of U.S. Operations, FE-4, reported that the Company is "centralized" around Defendant Wu as the "ultimate decision-maker," and that Wu "was involved in all significant decisions, and even insignificant decisions" at GigaCloud. Further, during the entirety of the Class

Period, GigaCloud was a "controlled company" as defined under the Nasdaq Stock Market Listing Rules because Defendant Wu held more than 50% of its total voting power.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 216.

217.    Defendant Lau has served as the Company's CFO since May 2022. According to GigaCloud, Lau has been an investment banker for more than 12 years with experience in M&A and IPO transactions in the U.S. and China. Prior to joining GigaCloud, Lau served as the director of Wells Fargo Securities Asia Limited from August 2013 to May 2022. Lau received a bachelor's degree in commerce from University of Toronto in 2008 and a master's degree in economics from The University of Hong Kong in 2010. In addition, Lau acquired a certified financial risk manager issued by the Global Association of Risk Professionals in the U.S. in 2009. Lau signed the Registration Statement and, as GigaCloud's principal financial officer, certified that the 2022 20-F, the 2023 10-K, and the Q1 2024 10-Q fairly presented, in all material respects, the financial condition and results of operations of the Company. Lau further certified that the 2022 20-F, the 2023 10-K, and the Q1 2024 10-Q did not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the periods covered by such reports. Lau spoke on the Company's behalf during earnings calls with analysts and was quoted in the Company's press releases.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 217.

218.    Defendant Wan has served as the Company's CTO since 2014. Wan received a master's degree in software engineering in 2007 and a bachelor's degree in software engineering in 2004 from Tsinghua University. Wan also received a bachelor's degree in chemical engineering and English from Dalian University of Technology in 2002. Wan signed the Registration Statement.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 218.

### III. MATERIALLY FALSE AND MISLEADING STATEMENTS MADE BY THE EXCHANGE ACT DEFENDANTS DURING THE CLASS PERIOD

#### A. False and Misleading Statements in the Registration Statement

219. The Registration Statement was signed by Defendants Wu, Wan, and Lau. The allegations of its falsity in Paragraphs 143-177 are incorporated herein.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 219.

#### B. False and Misleading Statements Made During GigaCloud's Q2 2022 Earnings Call on September 30, 2022

220. On September 30, 2022, GigaCloud held an earnings call regarding its Q2 2022 earnings. During the call, Defendants Wu and Lau presented to investors.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 220.

221. During the call, Defendant Lau stated:

***Our GigaCloud marketplace GMV was $458.8 million in the 12 month ended June 30 2022, and that's up 43.8% year over year.*** We had 452 active 3P sellers in the 12 months ended June 30[,] 2022, and that's up 67.4% year over year. We have 4,061 active buyers in 12 months ended June 30[,] 2022, up 58.9% year over year.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 221.

222.    This statement was materially false and misleading because it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 222.

223.    During the call, Defendant Lau stated:

*Product revenue from GigaCloud 1P was $60.7 million in the second quarter of 2022*, and that's up 15.4% year over year, *mainly due to an increase in the number of active buyers and better selection of products catering to buyers' preferences.*

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 223.

224.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) it purported to explain the reasons for the reported increase in GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies.

87

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 224.

225.    During the call, an investor asked: "It's about your GMV increased over 40%, so the buyer and seller base, both increased over 50% and my question is can you share the story behind this strong growth?" This question referred to Defendant Lau's statement quoted four paragraphs above. Thus, the investor's question referred to GigaCloud Marketplace GMV and to active 3P sellers and active buyers on GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 225.

226.    Defendant Lau answered the question as follows:

Yes, I think right now - and I'll - I'll give it a go, Larry and see if you want to add to that. I think right now, we started the business with the platform in 2019. We've ran this close to getting into our fourth year now, and when we start building up this platform, we're basically trying to revolutionize how to transact on a cross border basis, without the hassle of seller has to worry about kind of the logistic part of that trade. ***And I think when we start building that story people starting to appreciate that and when users are getting that experience and that really scaled up our business, so we picked up a lot of this momentum when users starting to appreciate the services that we offer, and that same goes to the user base - the number of active users that you pointed out, I think that's also a testament to the services offering that we're providing, the seamless logistic services, the warehousings that we provide***. ***And the cloud storage solutions that we provide all helped us to build that propositions to all the active users that is enjoying the business that they are using from us***.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 226.

88

227.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the report of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; (2) it purported to explain the reasons for the reported increase in GigaCloud Marketplace GMV without disclosing GigaCloud's transactions with closely connected companies; and (3) it purported to explain that why GigaCloud Marketplace users used the marketplace without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 227.

**C.     False and Misleading Statements Made in GigaCloud's Form 6-K and Press Release Filed September 30, 2022**

228.    On September 30, 2022, GigaCloud filed a Form 6-K and an attached press release announcing Q2 2022 financial results. Defendant Wu signed the Form 6-K and was quoted in the press release, as was Defendant Lau.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 228.

229.    The press release stated that:

**GigaCloud Marketplace GMV** [non-italicized emphasis in original] ***was $458.8 million in the 12 months ended June 30, 2022***, an increase of 43.8% from $319.2 million in the 12 months ended June 30, 2021.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 229.

89

230.    This statement was materially false and misleading because it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 230.

231.    The press release also stated that:

***Product revenue from GigaCloud 1P was $60.7 million in the second quarter of 2022***, increased by 15.4% from $52.6 million in the second quarter of 2021. ***The increase was primarily due to an increase in number of active buyers and better selection of products catering to buyers' preference.***

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 231.

232.    The press release also stated that:

***Product revenue from GigaCloud 1P was $115.0 million in the six months ended June 30, 2022***, increased by 21.2% from $94.9 million in the six months ended June 30, 2021. ***The increase was primarily due to an increase in number of active buyers and better selection of products catering to buyers' preference***.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 232.

233.    The statements in the above two paragraphs were materially false and misleading because (1) they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue and GigaCloud Marketplace GMV were from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud 1P revenue and

GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) they purported to explain the reasons for the reported increase in GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 233.

234.    The press release quoted Defendant Lau as stating:

We are pleased to see topline growth despite a quarter of supply chain challenges. ***This is attributable to the Company's effort to continue attracting more buyers*** and sellers as demand continues to rise for large parcel sales and deliveries.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 234.

235.    This statement was materially false and misleading because it attributed the Company's financial performance to "the Company's effort to continue attracting more buyers" without disclosing, as described in Paragraphs 90-126, that a significant amount of buying activity on GigaCloud Marketplace was conducted by companies closely connected to GigaCloud.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 235.

**D.    False and Misleading Statements Made During GigaCloud's Q3 2022 Earnings Call on November 30, 2022**

236.    On November 30, 2022, GigaCloud held an earnings call regarding its Q3 2022 earnings. During the call, Defendants Wu and Lau presented to investors.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 236.

237.    During that call, Defendant Lau stated:

> ***Our GigaCloud Marketplace GMV was $486.3 million in the 12 months ended September 30, 2022, up 31.7% year-over-year***. We had 517 active 3P sellers in the 12 months ended September 30, 2022, up 57.1% year-over-year and 4,198 active buyers in the 12 months ended September 30, 2022, up 36.2% year-over-year.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 237.

238.    This statement was materially false and misleading because it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 238.

239.    During that call, Defendant Lau further stated:

> ***Product revenue from GigaCloud 1P was $58.2 million in the third quarter of 2022***, up 30.5% year-over-year, ***and that's mainly due to an increase in the number of active buyers and a better selection of products catering to buyers' preferences.***

92

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 239.

240.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) it purported to explain the reasons for the reported increase in GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 240.

E.    **False and Misleading Statements Made in GigaCloud's Form 6-K and Press Release Filed November 30, 2022**

241.    On November 30, 2022, GigaCloud filed a Form 6-K and an attached press release announcing Q3 2022 financial results. Defendant Wu signed the Form 6-K and was quoted in the press release, as was Defendant Lau.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 241.

242.    The press release quoted Defendant Lau as stating:

Despite a challenging market environment, *our GigaCloud Marketplace GMV has grown over 30% year-over-year, which demonstrated our ability in creating values for our 3P sellers and buyers and expanding our marketplace.*

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 242.

243.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) it purported to explain the reasons for the reported growth in GigaCloud Marketplace GMV without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 243.

244.    The press release stated that:

**GigaCloud Marketplace GMV** [non-italicized emphasis in original] ***was $486.3 million in the 12 months ended September 30, 2022***, an increase of 31.7% from $369.2 million in the 12 months ended September 30, 2021.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 244.

245.    This statement was materially false and misleading because it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 245.

246.    The press release also stated that:

> ***Product revenue from GigaCloud 1P was $58.2 million in the third quarter of 2022***, increased by 30.5% from $44.6 million in the third quarter of 2021. ***The increase was primarily due to an increase in number of active buyers and better selection of products catering to buyers' preference.***

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 246.

247.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) it purported to explain the reasons for the reported increase in GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 247.

> **F.    False and Misleading Statements Made in GigaCloud's Form 6-K and Press Release Filed March 17, 2023**

248.    On March 17, 2023, GigaCloud filed a Form 6-K and an attached press release announcing Q4 and fiscal year 2022 financial results. Defendant Wu signed the Form 6-K and was quoted in the press release, as was Defendant Lau.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 248.

249. The press release stated that:

**GigaCloud Marketplace GMV** [non-italicized emphasis in original] ***was $518.2
million in the 12 months ended December 31, 2022***, an increase of 25.1% from
$414.2 million in the 12 months ended December 31, 2021.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 249.

250. This statement was materially false and misleading because it omitted to disclose,
as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was
from sales by GigaCloud to companies closely connected to it and, as a result, the above report of
GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and
attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 250.

251. The press release also stated that:

***Product revenue from GigaCloud 1P*** was $58.5 million in the fourth quarter of
2022, increased by 19.9% from $48.8 million in the fourth quarter of 2021. ***The
increase was primarily due to an increase in number of active buyers and better
selection of products catering to buyers' preference.***

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 251.

252.    The press release also stated that:

> ***Product revenue from GigaCloud 1P was $231.7 million for the full year of 2022***, increased by 23.1% from $188.3 million for the full year of 2021. ***The increase was primarily due to an increase in the number of active buyers and better selection of products catering to buyers' preference.***

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 252.

253.    The statements in the above two paragraphs were materially false and misleading because (1) they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) they purported to explain the reasons for the reported increase in GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 253.

**G.    False and Misleading Statements Made in GigaCloud's Annual Report on Form 20-F Filed April 24, 2023**

254.    On April 24, 2023, GigaCloud filed its annual report on Form 20-F for the year ended December 31, 2022 (the "2022 20-F"). Defendants Wu and Lau signed and certified the 2022 20-F.

97

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 254.

255. The 2022 20-F also stated:

> ***To enhance our marketplace experience, we sell our own inventory, or 1P, through the GigaCloud Marketplace*** and to and through third-party ecommerce websites, such as Rakuten in Japan, Amazon and Walmart in the U.S. and Wayfair in the U.K. ***These 1P revenues expand our market presence, reduce inventory and logistics risk for sellers, create more products for buyers, drive volume-based cost efficiencies for sourcing products, provide us with proprietary data and increase the velocity of sales on our marketplace***.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 255.

256. This statement was materially false and misleading because: (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it; and (2) GigaCloud sold its own inventory on GigaCloud Marketplace to companies closely connected to itself not just to "enhance [the] marketplace experience" but, instead, to cause GigaCloud Marketplace to appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 256.

257. The 2022 20-F contained the following statements:

> ***In 2020, our users transacted $190.5 million of GigaCloud Marketplace GMV with an average spend per buyer of $112,777.*** . . .

> ***In 2021, our users transacted $414.2 million of GigaCloud Marketplace GMV with an average spend per buyer of $116,150.*** . . .

98

*In 2022, our users transacted $518.2 million of GigaCloud Marketplace GMV with an average spend per buyer of $124,692. This is a 25.1% year-over-year increase in GigaCloud Marketplace GMV and a 7.4% year-over-year increase in average spend per buyer from 2021, respectively*. . . .

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 257.

258.    These statements were materially false and misleading because they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 258.

259.    The 2022 20-F also stated:

*GigaCloud 1P* [emphasis in original]

*Through GigaCloud 1P, we further enhance our marketplace experience by selling our own inventory. Our 1P business creates more products for buyers, gives us insights into seller needs, provides us with proprietary data and increases the velocity of sales in our marketplace*. Our GigaCloud 1P business generates revenues from product sales.

*Off-platform Ecommerce* [emphasis in original]

*In addition to facilitating transactions in our GigaCloud Marketplace*, we also procure highly rated products directly from manufacturers and sell them directly to and through third-party websites such as Rakuten, Amazon, Walmart and Wayfair as part of our off-platform ecommerce business. Off-platform ecommerce sales deepen our relationships with sellers and provide us with proprietary data. Our off-platform ecommerce business generates revenues from product sales to both end customers and third-party ecommerce websites.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 259.

260.    These statements were materially false and misleading because: (1) they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it; (2) by contrasting GigaCloud 1P revenue with off-platform ecommerce revenue, they created the false impression that GigaCloud 1P revenue reflected sales to true third-party entities and organic activity on GigaCloud Marketplace; (3) GigaCloud sold "its own inventory" on GigaCloud Marketplace to companies closely connected to itself not just to "enhance [the] marketplace experience," but to cause GigaCloud Marketplace to appear more successful and attractive to buyers than it truly was; and (4) a significant amount GigaCloud 1P sales on GigaCloud Marketplace were not "facilitat[ed]" by the Marketplace because those sales were to companies closely connected to GigaCloud.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 260.

261.    The 2022 20-F stated:

We are a pioneer of global end-to-end B2B ecommerce solutions for large parcel merchandise. We generate revenues through three revenue streams:

*GigaCloud 3P*: generates service revenues, including revenues from platform services, warehouse services, last mile delivery services, ocean transportation services and others, by facilitating transactions between sellers and buyers in our GigaCloud Marketplace.

*GigaCloud 1P*: generates product revenues through the sale of our inventory in our GigaCloud Marketplace.

*Off-platform ecommerce*: generates product revenues through the sale of our inventory to and through third-party ecommerce websites.

(Emphasis in original.)

100

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 261.

262.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it; and (2) by contrasting GigaCloud 1P revenue with off-platform ecommerce revenue, it created the false impression that GigaCloud 1P revenue reflected sales to true third-party entities and organic activity on GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 262.

263.    The 2022 20-F contained the following chart depicting and reporting the Company's revenues for the years ended December 31, 2020, 2021 and 2022:



101

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 263.

264.    This chart was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue and GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud 1P revenue and GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) by contrasting GigaCloud 1P revenue with off-platform ecommerce revenue, it created the false impression that GigaCloud 1P revenue reflected sales to true third-party entities and organic activity on GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 264.

265.    The 2022 20-F also stated:

> ***Once we attract new sellers and buyers to our marketplace, we leverage our technology and supply chain solutions to drive retention.*** We provide value-added services like product sales forecasts to our sellers to allow them to more efficiently manage inventory and reduce costs. Our integrated supply chain also offers manufacturers and online resellers in our marketplace enhanced visibility into product inventory, reducing inventory turnover and associated transaction costs. ***The value of our model is demonstrated by the growth in GMV from our new and existing sellers and buyers.***

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 265.

266.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above

102

reports of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; (2) it purported to explain how the Company retained buyers on GigaCloud Marketplace without disclosing GigaCloud's transactions with closely connected companies, who were "retained" on GigaCloud Marketplace due to these undisclosed connections; and (3) it purported to explain the reasons for the reported "growth in GMV from [GigaCloud's] new and existing sellers and buyers" without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 266.

267.    The 2022 20-F also stated:

***The growth in GigaCloud Marketplace GMV, including GMV from both GigaCloud 3P and GigaCloud 1P, reflects our ability to attract and retain sellers and buyers in the GigaCloud Marketplace.*** The revenues we generate in our marketplace are highly correlated to the amount of GMV transacted in the GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 267.

268.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV and GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV and GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; (2) it purported to explain the reasons for the reported increase in GigaCloud Marketplace GMV and GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies; and (3) it represented that GigaCloud Marketplace GMV and GigaCloud 1P revenue resulted from GigaCloud's "ability to attract and retain... buyers in the GigaCloud Marketplace" without disclosing GigaCloud's transactions with closely connected companies, and that transactions with those companies reflected this undisclosed relationship rather than the Company's "ability to attract and retain" buyers.

103

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 268.

269.    Further, the 2022 20-F contained the following statements and chart entitled "GigaCloud Marketplace GMV by Quarter":

> *GigaCloud Marketplace GMV increased from $190.5 million in 2020 to $414.2 million in 2021, representing a growth of 117.4% year-over-year, and further increased to $518.2 million in 2022, representing a growth of 25.1% year-over-year, primarily due to the continued increase in the numbers of sellers and buyers transacting in our marketplace and an increase in spend per active buyer.*



**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 269.

270.    The above statements and chart were materially false and misleading because (1) they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) they purported to explain the reasons for the reported increases in GigaCloud Marketplace GMV without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 270.

271.    The 2022 20-F also stated:

The number of active buyers in the GigaCloud Marketplace has been increasing every quarter since the first quarter in 2020. We had 1,689 active buyers in 2020, 3,566 active buyers in 2021 and 4,156 active buyers in 2022. *We view the number of active buyers as a key driver of our GigaCloud Marketplace GMV and revenue growth, and a key indicator of our ability to attract and engage buyers in our marketplace*. *We expect continued growth in the number of active buyers through internal sales initiatives, referrals by existing users, word-of-mouth and direct visits to our website; however, the growth rate may be slower than in previous years due to inflationary pressure and changes in the global economic conditions*.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 271.

272.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it; (2) it purported to explain the reasons for the growth of GigaCloud Marketplace without disclosing GigaCloud's transactions with closely connected companies; and (3) it represented that GigaCloud Marketplace GMV and corresponding revenues growth, including from GigaCloud 1P sales, resulted from GigaCloud's "ability to attract and engage buyers in our marketplace" without disclosing GigaCloud's transactions with closely connected companies, and transactions with those companies reflected this undisclosed relationship rather than the Company's "ability to attract and engage buyers."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 272.

105

273.    The 2022 20-F also stated:

*Product Revenue—GigaCloud 1P* [non-bolded emphasis in original]

We derive product revenues from the sales of products through selling our own inventory on our marketplace*. **This 1P business creates more products for buyers, gives us insights into seller needs, provides us with proprietary data and increases the velocity of sales in our marketplace***.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 273.

274.    This statement was materially false and misleading because: (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it; and (2) a significant amount of GigaCloud's "selling [of] [its] own inventory on [its] marketplace" was not done just to "create[] more products for buyers, give[] us insights into seller needs, provide[] us with proprietary data and increase[] the velocity of sales in our marketplace," but to cause GigaCloud Marketplace to appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 274.

275.    The 2022 20-F contained the following statement and table of revenues:

The Group's revenues are disaggregated by major products/service lines and timing of revenue recognition. Detailed information is specified as follows:

106

| Major products/services lines | Year ended December 31, | | |
| --- | --- | --- | --- |
| | 2020 US$ | 2021 US$ | 2022 US$ |
| **Service revenues** | | | |
| Platform commission | 3,888 | 4,814 | 6,872 |
| Ocean transportation service | 12,537 | 36,257 | 37,957 |
| Warehousing service | 3,310 | 10,498 | 16,242 |
| Last-mile delivery service | 26,294 | 33,693 | 62,745 |
| Others | 14,101 | 13,070 | 16,812 |
| **Total service revenues** | **60,130** | **98,332** | **140,628** |
| **Product revenues** | | | |
| Product sales to B | 39,858 | 50,699 | 49,128 |
| Product sales to C | 53,388 | 76,900 | 68,633 |
| Off-platform ecommerce | 93,246 | 127,599 | 117,761 |
| *GigaCloud 1P* | *122,102* | *188,266* | *231,682* |
| **Total product revenues** | **215,348** | **315,865** | **349,443** |
| **Revenues** | **275,478** | **414,197** | **490,071** |

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 275.

276.    The 2022 20-F also contained the following statement and table of revenues:

The following table sets forth the breakdown of our revenues, both in absolute amount and as a percentage of our total revenues, for the periods presented:

| | For the Year Ended December 31, | | | | | |
| | 2020 | | 2021 | | 2022 | |
| | $ | % | $ | % | $ | % |
| | ($ in thousands, except for percentages) | | | | | |
| **Revenues** | | | | | | |
| Service revenue | | | | | | |
| Platform services | 3,888 | 1.4 | 4,814 | 1.2 | 6,872 | 1.4 |
| Warehouse services | 3,310 | 1.2 | 10,498 | 2.5 | 16,242 | 3.3 |
| Last mile delivery services | 26,294 | 9.5 | 33,693 | 8.1 | 62,745 | 12.8 |
| Ocean transportation services | 12,537 | 4.6 | 36,257 | 8.8 | 37,957 | 7.7 |
| Others | 14,101 | 5.1 | 13,070 | 3.2 | 16,812 | 3.4 |
| Subtotal | 60,130 | 21.8 | 98,332 | 23.7 | 140,628 | 28.7 |
| **Product revenue** | | | | | | |
| GigaCloud 1P | 122,102 | 44.4 | 188,266 | 45.5 | 231,682 | 47.3 |
| Off-platform ecommerce | 93,246 | 33.8 | 127,599 | 30.8 | 117,761 | 24.0 |
| Subtotal | 215,348 | 78.2 | 315,865 | 76.3 | 349,443 | 71.3 |
| Total | 275,478 | 100.0 | 414,197 | 100.0 | 490,071 | 100.0 |

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 276.

277.   The tables in the above two paragraphs were materially false and misleading because they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue were from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 277.

278.   The 2022 20-F also stated:

*Product Revenue from GigaCloud 1P* [non-bolded emphasis in original]. ***Our product revenues from GigaCloud 1P increased by 23.1% from $188.3 million in 2021 to $231.7 million in 2022. The increase was primarily due to an increase in the number of active buyers from 3,566 in 2021 to 4,156 in 2022 and better selection of products catering to buyers' preference leading to an increase in spend per active buyer from $116,150 in 2021 to $124,692 in 2022.***

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 278.

279.    The 2022 20-F also stated:

*Product Revenue from GigaCloud 1P* [non-bolded emphasis in original]. ***Our product revenues from GigaCloud 1P increased by 54.2% from $122.1 million in 2020 to $188.3 million in 2021. This increase was attributable to an increase in the overall market demand for online home furniture, which continued to drive the increase in sales per active buyer, and an increase in the number of our SKU.***

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 279.

280.    The statements in the above two paragraphs were materially false and misleading because (1) they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) they purported to explain the reasons for the reported increase in GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 280.

109

**H.    False and Misleading Statements Made in GigaCloud's Form 6-K and Press Release Filed May 24, 2023**

281.    On May 24, 2023, GigaCloud filed a Form 6-K and an attached press release announcing Q1 2023 financial results. Defendant Wu signed the Form 6-K and was quoted in the press release, as was Defendant Lau.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 281.

282.    The press release stated that:

**GigaCloud Marketplace GMV** [non-italicized emphasis in original] *was $553.5 million in the 12 months ended March 31, 2023*, an increase of 26.3% from $438.1 million in the 12 months ended March 31, 2022.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 282.

283.    This statement was materially false and misleading because it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 283.

284.    The press release quoted Defendant Lau as stating:

*The continued increase in our GigaCloud Marketplace GMV as well as our expanded user base are strong testament to the value we offer to streamline cross border transactions of large parcel merchandise.*

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 284.

285. This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) it purported to explain the reasons for the reported growth in GigaCloud Marketplace GMV without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 285.

286. The press release also stated that:

***Product revenue from GigaCloud 1P was $61.4 million in the first quarter of 2023***, increased by 13.2% from $54.3 million in the first quarter of 2022. ***The increase was primarily due to an increase in spend per active buyer.***

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 286.

287. This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) it purported to explain the reasons for the reported increase in GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies.

111

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 287.

**I.    False and Misleading Statements Made During GigaCloud's Q2 2023 Earnings Call on August 15, 2023**

288.    On August 15, 2023, GigaCloud held an earnings call regarding its Q2 2023 earnings. During the call, Defendants Wu and Lau presented to investors.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 288.

289.    During that call, Defendant Lau stated:

***Product revenue from GigaCloud 1P saw a 14.9% year-over-year increase to $69.8 million***, and product revenue from off-platform e-commerce saw a 31.6% year-over-year increase to $40.1 million.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 289.

290.    This statement was materially false and misleading because it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

112

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 290.

> **J.      False and Misleading Statements Made in GigaCloud's Form 6-K and Press
> Release Filed August 15, 2023**

291.    On August 15, 2023, GigaCloud filed a Form 6-K and an attached press release
announcing Q2 2023 financial results. Defendant Wu signed the Form 6-K and was quoted in the
press release.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 291.

292.    The press release stated that:

> **GigaCloud Marketplace GMV** [non-italicized emphasis in original] ***was $607.5
> million in the 12 months ended June 30, 2023***, an increase of 32.4% from $458.8
> million in the 12 months ended June 30, 2022.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 292.

293.    This statement was materially false and misleading because it omitted to disclose,
as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was
from sales by GigaCloud to companies closely connected to it and, as a result, the above report of
GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and
attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 293.

294.    The press release also quoted Defendant Wu as stating, in part:

*We are seeing our momentum continue to grow at both the 1P and 3P level in our GigaCloud Marketplace as we execute on our strategy and further our market leading position as a trusted global B2B ecommerce brand.*

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 294.

295.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace activity and GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of 1P "momentum" on GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) it purported to explain the reasons for this purported "momentum" without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 295.

296.    The press release also stated that:

*Product revenue from GigaCloud 1P was $69.8 million in the second quarter of 2023*, increased by 14.9% from $60.7 million in the second quarter of 2022. *The increase was primarily due to increases in spend per active buyer.*

114

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 296.

297.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) it purported to explain the reasons for the reported increase in GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 297.

K.    **False and Misleading Statements Made in GigaCloud's Form 6-K and Press Release Filed November 30, 2023**

298.    On November 30, 2023, GigaCloud filed a Form 6-K and an attached press release announcing Q3 2023 financial results. Defendant Wu signed the Form 6-K and was quoted in the press release.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 298.

299.    The press release stated that:

**GigaCloud Marketplace GMV** [non-italicized emphasis in original] *was $684.8 million in the 12 months ended September 30, 2023*, an increase of 40.8% from $486.3 million in the 12 months ended September 30, 2022.

115

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 299.

300.    This statement was materially false and misleading because it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 300.

301.    The press release also stated that:

***Product revenue from GigaCloud 1P was $80.4 million in the third quarter of 2023***, increased by 38.1% from $58.2 million in the third quarter of 2022. ***The increase was primarily due to increases in spend per active buyer.***

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 301.

302.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) it purported to explain the reasons for the reported increase in GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies.

116

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 302.

**L.    False and Misleading Statements Made During GigaCloud's Q3 2023
Earnings Call on December 5, 2023**

303.    On December 5, 2023, GigaCloud held an earnings call regarding its Q3 2023
earnings. During the call, Defendants Wu and Lau presented to investors.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 303.

304.    During that call, Defendant Lau stated:

Product revenue from GigaCloud 1P saw a 38.1% year-over-year increase to $80.4
million.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 304.

305.    This statement was materially false and misleading because (1) it omitted to
disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue
was from sales by GigaCloud to companies closely connected to it and, as a result, the above report
of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to
buyers than it really was; and (2) it purported to explain the reasons for the reported increase in
GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected
companies.

117

Case 1:23-cv-10645-JMF   Document 125   Filed 03/11/25   Page 119 of 184

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 305.

> **M.    False and Misleading Statements Made in GigaCloud's Form 8-K and Press Release Filed March 15, 2024**

306.    On March 15, 2024, GigaCloud filed a Form 8-K and an attached press release announcing Q4 and fiscal year 2023 financial results. Defendant Wu signed the Form 8-K and was quoted in the press release.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 306.

307.    The press release stated that:

> **GigaCloud Marketplace GMV** [non-italicized emphasis in original] was $794.4 million in the 12 months ended December 31, 2023, an increase of 53.3% from $518.2 million in the 12 months ended December 31, 2022.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 307.

308.    This statement was materially false and misleading because it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 308.

309. The press release also stated that:

*Product revenue from GigaCloud 1P was $88.3 million in the fourth quarter of 2023*, increased by 50.9% from $58.5 million in the fourth quarter of 2022. *The increase was primarily due to increases in the number of buyers and spend per active buyer.*

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 309.

310. This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) it purported to explain the reasons for the reported increase in GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 310.

**N.    False and Misleading Statements Made During GigaCloud's Q4 2023 Earnings Call on March 18, 2024**

311. On March 18, 2024, GigaCloud held an earnings call regarding its Q4 2023 and full year 2023 earnings. During the call, Defendants Wu and Lau presented to investors.

119

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 311.

312.    During that call, Defendant Lau stated:

Product revenue from GigaCloud, 1P saw a 50.9% year over year increased to $88.3 million.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 312.

313.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) it purported to explain the reasons for the reported increase in GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 313.

O.    **False and Misleading Statements Made in GigaCloud's Annual Report on Form 10-K Filed March 27, 2024**

314.    On March 27, 2024, GigaCloud filed its annual report on Form 10-K for the year ended December 31, 2023 (the "2023 10-K"). Defendants Wu and Lau signed and certified the 2023 10-K.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 314.

315.    The 2023 10-K also stated:

*To enhance our marketplace experience, we also sell our own inventory, or 1P products, through the GigaCloud Marketplace* and to and through third-party ecommerce websites such as Rakuten in Japan, and Amazon, Walmart, Home Depot, Overstock and Wayfair in the U.S. and OTTO in Germany. *These product revenues expand our market presence, reduce inventory and logistics risk for suppliers, create more products for buyers, drive volume-based cost efficiencies for sourcing products and provide us with data and increase the velocity of sales on our marketplace.* Product revenues through the GigaCloud Marketplace and to and through third-party ecommerce websites represented 76.3%, 71.3% and 71.7% of total revenues in 2021, 2022 and 2023, respectively.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 315.

316.    The 2023 10-K also stated:

*To enhance our marketplace experience, we sell our own products, or 1P products, through the GigaCloud Marketplace* and to and through third-party ecommerce websites, such as Rakuten in Japan, and Amazon, Walmart, Home Depot, Overstock and Wayfair in the U.S. and OTTO in Germany. *These 1P revenues expand our market presence, reduce inventory and logistics risk for suppliers, create more products for buyers, drive volume-based cost efficiencies for sourcing products, provide us with proprietary data and increase the velocity of sales on our marketplace.* With the acquisition of Noble House, we further diversified the 1P product variety and offerings for our buyers. 1P revenues through the GigaCloud Marketplace and to and through third-party ecommerce websites represented 76.3%, 71.3% and 71.7% of total revenues in 2021, 2022 and 2023, respectively.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 316.

317.    The statements in the two paragraphs above were materially false and misleading because: (1) they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it; and (2) GigaCloud sold its own inventory on GigaCloud Marketplace to companies closely connected to itself not just to "enhance [the] marketplace experience" but, instead, to cause GigaCloud Marketplace to appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 317.

318.    The 2023 10-K also contained the following statements:

*In 2021, our users transacted $414.2 million of GigaCloud Marketplace GMV with an average spend per buyer of $116,150*. . . .

*In 2022, our users transacted $518.2 million of GigaCloud Marketplace GMV with an average spend per buyer of $124,692*. . . .

*In 2023, our users transacted $794.4 million of GigaCloud Marketplace GMV with an average spend per buyer of $158,569*. . . .

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 318.

319.    These statements were materially false and misleading because they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 319.

320.   The 2023 10-K stated that:

We are a pioneer of global end-to-end B2B ecommerce solutions for large parcel merchandise. We generate revenues primarily through three revenue streams:

- ***GigaCloud 3P***: generates service revenues, including revenues from platform commission, ocean transportation service, warehousing service, last-mile delivery service, packaging service and others, by facilitating transactions between sellers and buyers in our GigaCloud Marketplace.

- ***GigaCloud 1P***: generates product revenues through the sale of our inventory in our GigaCloud Marketplace.

- ***Off-platform ecommerce***: generates product revenues through the sale of our inventory to and through third-party ecommerce websites.

(Emphasis in original.)

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 320.

321.   This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it; and (2) by contrasting GigaCloud 1P revenue with off-platform ecommerce revenue, it created the false impression that GigaCloud 1P revenue reflected sales to true third-party entities and organic activity on GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 321.

123

322.    The 2023 10-K contained the following chart depicting and reporting the Company's "revenues and GMV contribution from these revenue streams" for the years ended December 31, 2021, 2022, and 2023:



| | Service Revenues | Product Revenues | | |
| | CigaCloud 3P | CigaCloud 1P | Off-Platform Ecommerce | Others |
|---|---|---|---|---|
| | | (In thousands) | | |
| Year Ended December 31, 2021 | $98,332 | $188,266 | $127,599 | — |
| Year Ended December 31, 2022 | $140,628 | $231,682 | $117,761 | — |
| Year Ended December 31, 2023 | $199,184 | $299,930 | $204,622 | $95 |

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 322.

323.    This chart was materially false and misleading because (1) it omitted, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue and GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud 1P revenue and GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) by contrasting GigaCloud 1P revenue with off-platform ecommerce revenue, it created the false impression that GigaCloud 1P revenue reflected sales to true third-party entities and organic activity on GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 323.

324.    The 2023 10-K also stated:

*Once we attract new sellers and buyers to our marketplace, we leverage our technology and supply chain solutions to drive retention*. We provide value-added services like product sales forecasts to our sellers to allow them to more efficiently manage inventory and reduce costs. Our integrated supply chain also offers manufacturers and online resellers in our marketplace enhanced visibility into product inventory, reducing inventory turnover and associated transaction costs. *The value of our model is demonstrated by the growth in GMV from our new and existing sellers and buyers.*

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 324.

325.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; (2) it purported to explain how the Company retained buyers on GigaCloud Marketplace without disclosing GigaCloud's transactions with closely connected companies, who were "retained" on GigaCloud Marketplace due to these undisclosed connections; and (3) it purported to explain the reasons for the reported "growth in GMV from [GigaCloud's] new and existing sellers and buyers" without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 325.

125

326.    The 2023 10-K contained the following statement and chart entitled "All Buyer GMV in GigaCloud Marketplace":

The chart below displays the quarterly GigaCloud Marketplace GMV of our buyers in our GigaCloud Marketplace in 2021, 2022 and 2023. 2021 Buyers, 2022 Buyers and 2023 Buyers represent the groups of buyers who first purchased products in our GigaCloud Marketplace in 2021, 2022 and 2023, respectively. The Active Buyers shows the total number of buyers who had made at least one purchase in our GigaCloud Marketplace in the last 12 months. Our number of buyers and buyer GMV have grown consistently since inception, as shown below.



**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 326.

327.    The above chart, and the description of that chart, were materially false and misleading because they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 327.

328.    The 2023 10-K's description of GigaCloud's business model contained the following statements describing the GigaCloud 1P and Off-platform Ecommerce revenue streams:

> *GigaCloud 1P* [emphasis in original]
>
> ***Through GigaCloud 1P, we further enhance our marketplace experience by selling our own inventory. Our 1P business creates more products for buyers, gives us insights into seller needs, provides us with proprietary data and increases the velocity of sales in our marketplace.*** Our GigaCloud 1P business generates revenues from product sales.
>
> *Off-platform Ecommerce* [emphasis in original]
>
> ***In addition to facilitating transactions in our GigaCloud Marketplace***, *we also procure highly rated products directly from manufacturers and sell them directly to and through third-party websites such as Rakuten, Amazon, Walmart, Wayfair, Home Depot and OTTO as part of our off-platform ecommerce business*. Off-platform ecommerce sales deepen our relationships with sellers and provide us with proprietary data. Our off-platform ecommerce business generates revenues from product sales to both end customers and third-party ecommerce websites.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 328.

329.    These statements were materially false and misleading because: (1) they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it; (2) by contrasting GigaCloud 1P revenue with off-platform ecommerce revenue, they created the false impression that GigaCloud 1P revenue reflected sales to true third-party entities and organic activity on GigaCloud Marketplace; (3) GigaCloud sold "its own inventory" on GigaCloud Marketplace to companies closely connected to itself not just to "enhance [the] marketplace experience," but to cause GigaCloud Marketplace to appear more successful and attractive to buyers than it truly was; and

127

(4) a significant amount GigaCloud 1P sales on GigaCloud Marketplace were not "facilitat[ed]" by the Marketplace because those sales were to companies closely connected to GigaCloud.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 329.

330. The 2023 10-K also stated:

***The growth in GigaCloud Marketplace GMV, including GMV from both GigaCloud 3P and GigaCloud 1P, reflects our ability to attract and retain sellers and buyers in the GigaCloud Marketplace.*** The revenues we generate in our marketplace are highly correlated to the amount of GMV transacted in the GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 330.

331. This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV and GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV and GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; (2) it purported to explain the reasons for the reported increase in GigaCloud Marketplace GMV and GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies; and (3) it represented that GigaCloud Marketplace GMV and GigaCloud 1P revenue resulted from GigaCloud's "ability to attract and retain... buyers in the GigaCloud Marketplace" without disclosing GigaCloud's transactions with closely connected companies, and that transactions with those companies reflected this undisclosed relationship rather than the Company's "ability to attract and retain" buyers.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 331.

332.    The 2023 10-K also contained the following statements and chart entitled "GigaCloud Marketplace GMV by Quarter":

*GigaCloud Marketplace GMV increased from $414.2 million in 2021 to $518.2 million in 2022*, representing a growth of 25.1% year-over-year, and further increased to $794.4 million in 2023, representing a growth of 53.3% year-over-year, *primarily due to the continued increase in the numbers of sellers and buyers transacting in our marketplace and an increase in spend per active buyer as our marketplace continued to gain scale and market position*.



**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 332.

333.    The above statements and chart were materially false and misleading because (1) they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) they purported to explain the reasons for the reported increases in GigaCloud Marketplace GMV without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 333.

334.    The 2023 10-K also stated:

*Product Revenues—GigaCloud 1P* [emphasis in original]

We derive product revenues from the sales of products through selling our own
inventory on our marketplace. ***This 1P business creates more products for buyers,
gives us insights into seller needs, provides us with proprietary data and increases
the velocity of sales in our marketplace****.*

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 334.

335.    This statement was materially false and misleading because: (1) it omitted to
disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue
was from sales by GigaCloud to companies closely connected to it; and (2) a significant amount
of GigaCloud's "selling [of] [its] own inventory on [its] marketplace" was not done just to "create[]
more products for buyers, give[] us insights into seller needs, provide[] us with proprietary data
and increase[] the velocity of sales in our marketplace," but to cause GigaCloud Marketplace to
appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 335.

336.    The 2023 10-K also stated:

*Product Revenues from GigaCloud 1P* [non-bolded emphasis in original]. ***Our
product revenues from GigaCloud 1P increased by 29.4% from $231.7 million in
2022 to $299.9 million in 2023. The increase was primarily due to increases in
the number of buyers and spend per active buyer as our marketplace continued
to grow in scale.***

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 336.

337.    The 2023 10-K also stated:

*Product Revenues from GigaCloud 1P* [non-bolded emphasis in original]. **Our product revenues from GigaCloud 1P increased by 23.1% from $188.3 million in 2021 to $231.7 million in 2022. The increase was primarily due to an increase in the number of active buyers from 3,566 in 2021 to 4,156 in 2022 and better selection of products catering to buyers' preference leading to an increase in spend per active buyer from $116,150 in 2021 to $124,692 in 2022.**

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 337.

338.    The statements in the above two paragraphs were materially false and misleading because (1) they omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) they purported to explain the reasons for the reported increase in GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 338.

339.    The 2023 10-K contained the following statement and table of revenues:

The Group's revenues are disaggregated by major products/service lines and timing of revenue recognition. Detailed information is specified as follows:

131

| Major products/services lines | Year ended December 31, | | |
|---|---|---|---|
| | 2021 | 2022 | 2023 |
| | (In thousands) | | |
| **Service revenues** | | | |
| Platform commission | $ 4,814 | $ 6,872 | $ 11,187 |
| Ocean transportation service | 36,257 | 37,957 | 19,703 |
| Warehousing service | 10,498 | 16,242 | 24,423 |
| Last-mile delivery service | 33,693 | 62,745 | 105,978 |
| Packaging service | 5,498 | 7,735 | 17,296 |
| Others | 7,572 | 9,077 | 20,597 |
| **Total service revenues** | 98,332 | 140,628 | 199,184 |
| **Product revenues** | | | |
| *Product sales to B* | 50,699 | 49,128 | 86,578 |
| *Product sales to C* | 76,900 | 68,633 | 118,044 |
| Off-platform ecommerce | 127,599 | 117,761 | 204,622 |
| GigaCloud 1P | 188,266 | 231,682 | 299,930 |
| Others | — | — | 95 |
| **Total product revenues** | 315,865 | 349,443 | 504,647 |
| Revenues | $ 414,197 | $ 490,071 | $ 703,831 |

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 339.

340.    This table was materially false and misleading because it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue were from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 340.

> **P.      False and Misleading Statements Made in GigaCloud's Q1 2024 Earnings Call**
> **on May 9, 2024**

341.    On May 9, 2024, GigaCloud held an earnings call regarding its Q1 2024 earnings. During the call, Defendants Wu and Lau presented to investors.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 341.

342.    During that call, Defendant Lau stated:

*Product revenues from GigaCloud 1P, which mainly include product sales of our inventory through that GigaCloud marketplace improved to $90 million, an increase of nearly 47% year over year.*

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 342.

343.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above report of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) it purported to explain the reasons for the reported increase in GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 343.

**Q.    False and Misleading Statements Made in GigaCloud's Quarterly Report on Form 10-Q Filed May 9, 2024**

344.    On May 9, 2024, GigaCloud filed its quarterly report on Form 10-Q for Q1 2024 (the "Q1 2024 10-Q"). Defendants Wu and Lau signed and certified the Q1 2024 10-Q.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 344.

345.    The Q1 2024 10-Q stated:

We are a pioneer of global end-to-end B2B ecommerce solutions for large parcel merchandise. We generate revenues through three revenue streams:

*GigaCloud 3P*: generates service revenues by facilitating transactions between sellers and buyers in our GigaCloud Marketplace.

*GigaCloud 1P*: generates product revenues through the sale of our inventory in our GigaCloud Marketplace.

*Off-platform ecommerce*: generates product revenues through the sale of our inventory to and through third-party ecommerce websites.

(Emphasis in original.)

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 345.

346.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue

134

was from sales by GigaCloud to companies closely connected to it; and (2) by contrasting GigaCloud 1P revenue with off-platform ecommerce revenue, it created the false impression that GigaCloud 1P revenue reflected sales to true third-party entities and organic activity on GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 346.

347.    The Q1 2024 10-Q also stated:

***The growth in GigaCloud Marketplace GMV, including GMV from both GigaCloud 3P and GigaCloud 1P, reflects our ability to attract and retain sellers and buyers in the GigaCloud Marketplace.*** The revenues we generate in our marketplace are highly correlated to the amount of GMV transacted in the GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 347.

348.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV and GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud Marketplace GMV and GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; (2) it purported to explain the reasons for the reported increase in GigaCloud Marketplace GMV and GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies; and (3) it represented that GigaCloud Marketplace GMV and GigaCloud 1P revenue resulted from GigaCloud's "ability to attract and retain... buyers in the GigaCloud Marketplace" without disclosing GigaCloud's transactions with closely connected companies, and that transactions with those companies reflected this undisclosed relationship rather than the Company's "ability to attract and retain" buyers.

135

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 348.

349.    The Q1 2024 10-Q also stated:

***GigaCloud Marketplace GMV increased from $553.5 million in the 12 months
ended March 31, 2023 to $907.7 million in the 12 months ended March 31, 2024,
representing a growth of 64.0% period-over-period, primarily due to the
continued increase in the numbers of sellers and buyers transacting in our
marketplace and an increase in spend per active buyer as our marketplace
continued to gain scale and market position.***

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 349.

350.    This statement was materially false and misleading because (1) it omitted to
disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace
GMV was from sales by GigaCloud to companies closely connected to it and, as a result, the above
reports of GigaCloud Marketplace GMV made GigaCloud Marketplace appear more successful
and attractive to buyers than it really was; and (2) it purported to explain the reasons for the
reported increases in GigaCloud Marketplace GMV without disclosing GigaCloud's transactions
with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 350.

351.    The Q1 2024 10-Q also stated:

Buyers in our marketplace are typically resellers operating in the U.S., Asia and
Europe who procure large parcel merchandise to resell to end customers. ***Our
marketplace is attractive to buyers because we minimize inventory risk from our
buyers' business operations***. Our buyers can browse a product in our marketplace

136

and list the product on their preferred ecommerce websites such as Rakuten, Amazon, Walmart, Wayfair, Home Depot and OTTO, or their own store prior to procuring and storing the product in a warehouse or shop. Once a sale to the end customer takes place, buyers can order the product in our marketplace and we will handle the fulfillment directly to the end customer.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 351.

352.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud Marketplace GMV was from sales by GigaCloud to companies closely connected to it; (2) it purported to explain the reason GigaCloud Marketplace is "attractive to buyers" without disclosing GigaCloud's transactions with closely connected companies, who were "attract[ed]" to GigaCloud Marketplace due to these undisclosed connections.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 352.

353.    The Q1 2024 10-Q also stated:

*Product Revenues—GigaCloud 1P* [emphasis in original]

We derive product revenues from the sales of products through selling our own inventory in our marketplace. ***This 1P business creates more products for buyers, gives us insights into seller needs, provides us with proprietary data and increases the velocity of sales in our marketplace***.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 353.

354.    This statement was materially false and misleading because: (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue

137

was from sales by GigaCloud to companies closely connected to it; and (2) a significant amount of GigaCloud's "selling [of] [its] own inventory on [its] marketplace" was not done just to "create[] more products for buyers, give[] us insights into seller needs, provide[] us with proprietary data and increase[] the velocity of sales in our marketplace," but to cause GigaCloud Marketplace to appear more successful and attractive to buyers than it really was.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 354.

355.    The Q1 2024 10-Q also stated:

*Product Revenues from GigaCloud 1P* [emphasis in original]. **Our product revenues from GigaCloud 1P increased by 46.9% from $61.4 million in the three months ended March 31, 2023 to $90.2 million in the three months ended March 31, 2024. The increase was primarily due to increases in GigaCloud Marketplace GMV, the number of buyers and spend per active buyer as our marketplace continued to grow in scale.**

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 355.

356.    This statement was materially false and misleading because (1) it omitted to disclose, as described in Paragraphs 90-126, that a significant amount of GigaCloud 1P revenue was from sales by GigaCloud to companies closely connected to it and, as a result, the above reports of GigaCloud 1P revenue made GigaCloud Marketplace appear more successful and attractive to buyers than it really was; and (2) it purported to explain the reasons for the reported increase in GigaCloud 1P revenue without disclosing GigaCloud's transactions with closely connected companies.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 356.

## IV.    ADDITIONAL SCIENTER ALLEGATIONS ONLY FOR THE EXCHANGE ACT CLAIMS

### A.    The Individual Exchange Act Defendants Had Motives to Mislead Investors.

#### 1.    *The Individual Exchange Act Defendants Had a Motive to Show GigaCloud Marketplace Activity.*

357.    Defendants Wu, Wan, and Lau had a motive to inflate GigaCloud 1P revenue and GigaCloud Marketplace GMV and create the false impression that they reflected sales to true third-party entities and organic activity on GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 357.

358.    *First*, the Exchange Act Defendants touted GigaCloud Marketplace GMV and active buyers as "key" metrics of GigaCloud's performance and future prospects. Throughout the Class Period, beginning with the Registration Statement, the Exchange Act Defendants included these as two of four (and later five) "key financial and operating metrics" (and later, "key operating metrics") that they "monitor[ed]... to evaluate the growth of our GigaCloud Marketplace, measure our performance, identify trends affecting our business, formulate business plans and make strategic decisions." Thus, arranging for nominally third-party entities to act as buyers on GigaCloud Marketplace inflated the most important metrics that the Exchange Act Defendants emphasized to investors. These metrics underpinned GigaCloud's appeal. As Defendant Lau stated in GigaCloud's May 24, 2023 press release, "[t]he continued increase in our GigaCloud Marketplace GMV as well as our expanded user base are strong testament to the value we offer to streamline cross border transactions of large parcel merchandise." Similarly, as Defendant Lau was quoted in the Company's September 30, 2022 press release, "[w]e are pleased to see topline growth despite a quarter of supply chain challenges. ***This is attributable to the Company's effort to continue attracting more buyers*** and sellers as demand continues to rise for large parcel sales and deliveries." And FE-7, who said that "[m]ost of the transactions are coming from within the company" and "are mainly sister companies buying and selling from each other, ***which illustrates that the marketplace is showing lots of revenue***," believed this was done to "***pump up the marketplace***."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 358.

359.    Indeed, these purported markers of the success of GigaCloud Marketplace were central to the Exchange Act Defendants' narrative of GigaCloud's past development and future plans. GigaCloud "started [its] business by primarily selling [its] own self-procured large parcel merchandise directly to end customers," as stated in the Registration Statement. In 2019, the Company launched GigaCloud Marketplace, and the Exchange Act Defendants told investors that the Marketplace, rather than off-platform sales, was the foundation of the Company's future prospects. Indeed, the very first of GigaCloud's "strengths" listed in the Prospectus was the Company's supposed "[p]ioneering cross-border B2B ecommerce marketplace for the large parcel market." Demonstrating that GigaCloud Marketplace was becoming a more important engine of the Company's success, relative to off-platform sales, was at the core of the Company's proposition to investors. As the Exchange Act Defendants stated in the Prospectus and elsewhere, "[w]e expect the off-platform ecommerce GMV to GigaCloud Marketplace GMV as percentages of total GMV to gradually decrease."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 359.

360.    *Second*, according to the Exchange Act Defendants themselves, increasing GigaCloud Marketplace GMV and the pool of active buyers on the Marketplace was important for attracting third-party sellers to the Marketplace. Greater Marketplace GMV and active buyers meant the Marketplace appeared more appealing to sellers, attracting them to and keeping them on the Marketplace. This was the Company's' main focus, as the Company's U.S. President, Iman Schrock, told investors on the Company's May 24, 2023 earnings call: "[o]ur focus will always remain on inviting more and more sellers into the platform." Increasing GigaCloud Marketplace GMV and active buyers was critical to this effort. As the Exchange Act Defendants put it, "[m]ore buyer activity leads to more sellers, creating a virtuous cycle."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 360.

2.    *Defendants Wu, Wan, and Lau Had a Motive to Defraud Investors in Order to Sell GigaCloud Stock at Inflated Prices.*

361.    Defendants Wu, Wan, and Lau had a motive to defraud investors in order to sell GigaCloud stock at inflated prices.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 361.

362.    During the Class Period, from March 26, 2024 to May 17, 2024, Defendant Wu sold a total of 1,162,000 shares of GigaCloud's Class A ordinary shares for total proceeds of **$41,840.073**. Though Defendant Wu's filings stated that these sales were made pursuant to a plan intended to satisfy the affirmative defense conditions of SEC Rule 10b5-1(c), that plan was entered into during the Class Period. Specifically, GigaCloud disclosed that on December 29, 2023, Defendant Wu adopted a 10b5-1(c) trading arrangement for the sale of up to 1,250,000 shares of GigaCloud's Class A ordinary shares. Thus, Defendant Wu sold **93%** of the shares covered by the plan within a span of less than two months. Further, Defendant Wu had not previously sold any shares of GigaCloud's Class A ordinary shares, and sold over 12.45% of his holdings in less than two months, and reaped massive proceeds that far exceeded his 2023 salary of $162,000.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 362.

363.    During the Class Period, on March 28, 2024, Defendant Wan sold a total of 150,000 shares of GigaCloud's Class A ordinary shares, reaping total proceeds of $4,088,709.40. These sales were not made pursuant to a plan intended to satisfy the affirmative defense conditions of SEC Rule 10b5-1(c). This sale was unusual because Wan had not previously reported any sales of his holdings of GigaCloud's Class A ordinary shares, and because he sold over 13% of his holdings on that single day. Further, it is virtually certain that the proceeds he received were disproportionate to his compensation: though GigaCloud has not disclosed Defendant Wan's compensation, the most significant salary it disclosed for 2023 (for Defendant Lau) was $307,263. Defendant Wan's insider stock sales dwarfed that amount.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 363.

364.    During the Class Period, on March 19, 2024, Defendant Lau sold 2,619 shares of GigaCloud's Class A ordinary shares at $30.50 per share, reaping proceeds of $79,879.50. This

141

sale was not made pursuant to a plan intended to satisfy the affirmative defense conditions of SEC Rule 10b5-1(c). This was unusual because Lau had not previously reported any sales of his holdings of GigaCloud's Class A ordinary shares, and because Lau sold over 8% of his holdings on that single day. Further, the proceeds he received constituted a material amount relative to his 2023 salary of $307,263.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 364.

> **B.      The Individual Exchange Act Defendants Behaved Intentionally or Recklessly.**
>
> 1.      *Individual Scienter Allegations Against Wu*
>
> a)      <u>Wu Served as a Corporate Officer and/or Director of Orien Life and CompHome.</u>

365.    Defendant Wu's scienter is established by the fact that he served as a corporate officer and/or director of Orien Life and CompHome. Nevada corporate records show that between December 6, 2016 and November 13, 2018, Orien Life added Defendant Wu as its President and Director. Further, records show that between December 8, 2016 and November 13, 2018, CompHome added Defendant Wu as its President and Director.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 365.

366.    Wu's personal involvement with Orien Life and CompHome establishes a strong inference that Wu knew or was reckless as to the relationship between GigaCloud, on the one hand, and Orien Life, CompHome, and the other nominally third-party entities that made "1P" purchases on GigaCloud Marketplace, on the other.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 366.

142

b)      Other GigaCloud Executives and Employees Also Served as Corporate Officers and Directors for Nominally Third-Party "1P" Buyers.

367.    The service of other senior GigaCloud executives as corporate officers and directors for nominally third-party entities that made "1P" purchases on GigaCloud Marketplace, as set forth in Securities Act Claims, Section V.C.3, *supra*, contributes to the inference of Defendant Wu's scienter.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 367.

368.    First, GigaCloud's former CFO, Joseph Huang, served as Orien Life's Secretary and Treasurer at the same time as Wu served as its President and Director. Further, Joseph Huang also served as the President/Secretary/Treasurer/Director of Comp Goods for years, until February 22, 2021, and as CompHome's Secretary and Treasurer prior to that company being dissolved and re-established in 2021.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 368.

369.    Second, Wu was replaced as Orien Life's President and Director by Zexue Wang, which is the name of the legal representative, Executive Director, and 100% owner of GigaCloud Venture.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 369.

370.    Third, Joseph Cothran became the Director, President, Secretary, and Treasurer of CompHome immediately after leaving his position as GigaCloud's E-commerce Wholesale Manager, which was done pursuant to his agreement with Defendant Wu that he "spin off" with

143

financial assistance from either GigaCloud or Wu personally, as long as he used GigaCloud as a source. Further, Cothran continued to be a constant presence at GigaCloud's offices.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 370.

371.    Fourth, Defendant Wan was Managing Member of Steve Roger Digital and Xinyan Hao, GigaCloud's COO since 2010, was its Agent.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 371.

372.    Fifth, Hao was also the Agent for General Sherman, and Yanyan Lu, a GigaCloud employee, is General Sherman's President, Secretary, and Treasurer.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 372.

373.    Sixth, Qian Jia, a definite former and likely current employee of GigaCloud, replaced Joseph Huang as Comp Goods' President, Director, Secretary, and Treasurer sometime between September 23, 2021 and October 9, 2021.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 373.

374.    Seventh, Yuying Zhou, is the registered supervisor of Shenzhenshi Ziyu Wangluokeji Youxiangongsi, which lists the same address as GigaCloud Network Technology

144

(Shenzhen) Co. Ltd, as well as the President, Secretary, and Treasurer of Compthunder, which shares the address of Tmall, Inc.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 374.

375.    In sum, the many ties between GigaCloud and these undisclosed nominal third parties strongly support the inference that the Exchange Act Defendants acted with scienter.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 375.

> c)    Wu was On Weekly Calls with Buyers that Were Closely Connected to GigaCloud.

376.    According to FE-4, GigaCloud's former President of U.S. Operations, both FE-4 and Defendant Wu participated in weekly calls with buyers on GigaCloud Marketplace that were managed by current and former GigaCloud employees. Generally 20 to 50 of the buyers would participate weekly. Topics on the calls included discussions of good and bad selling products, items that needed to be replenished, and IT functionality.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 376.

> d)    Wu Was The Founder of GigaCloud and the Company was Centralized Around Him.

377.    The inference of Defendant Wu's scienter is further strengthened by the fact that he founded the Company. GigaCloud's former President of U.S. Operations, FE-4, reported that the Company is "centralized" around Larry Wu as the "ultimate decision-maker," and that Wu "was involved in all significant decisions, and even insignificant decisions" at GigaCloud. Further, during the entirety of the Class Period, GigaCloud was a "controlled company" as defined under the Nasdaq Stock Market Listing Rules because Defendant Wu held more than 50% of its total

voting power. FE-4 further stated that the scheme of using buyers closely connected to make purchases from GigaCloud on GigaCloud Marketplace "wouldn't have happened without Larry [Wu] giving the go-ahead."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 377.

378. Indeed, Wu signed and certified every annual and quarterly report GigaCloud filed with the SEC, signed the Registration Statement, signed and was quoted in every single Form 6K and press release containing false and misleading statements and omissions, as alleged herein, and spoke on behalf of the Company during every earnings call during the Class Period.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 378.

### 2.    *Individual Scienter Allegations Against Lau*

379. A strong inference of Defendant Lau's scienter is established by his admitted "real-time visibility" into GigaCloud's operations. As the Company's CFO, Lau had plenary access to information about the Company's finances. Lau signed Company filings highlighting that GigaCloud "monitor[ed]" the "key" metrics of GigaCloud Marketplace GMV and active buyers "to evaluate the growth of our GigaCloud Marketplace, measure our performance, identify trends affecting our business, formulate business plans and make strategic decisions." Further, Lau told investors that he had "real-time visibility of [GigaCloud's] operations," as he stated in GigaCloud's press release containing its first earnings release as a public company on September 30, 2022.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 379.

380. Lau also repeatedly spoke about the operations and performance of GigaCloud Marketplace. For instance, in the September 30, 2022 press release, Lau stated: "We are pleased

146

to see topline growth despite a quarter of supply chain challenges. ***This is attributable to the Company's effort to continue attracting more buyers*** and sellers as demand continues to rise for large parcel sales and deliveries." In the next earnings release, on November 30, 2022, he said: "Despite a challenging market environment, our ***GigaCloud Marketplace GMV has grown*** over 30% year-over-year, which demonstrated ***our ability in creating values for our 3P sellers and buyers and expanding our marketplace***." And in the Company's May 24, 2023 press release announcing earnings for the first quarter of 2023, he said, "***The continued increase in our GigaCloud Marketplace GMV as well as our expanded user base*** are strong testament to the value we offer to streamline cross border transactions of large parcel merchandise." Lau addressed investors in all of the Company's earnings calls during the Class Period, and touted the "key" metrics of GigaCloud Marketplace GMV and active buyers in nearly all of them.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 380.

381.    In addition, the fact that numerous other GigaCloud executives and employees were connected to nominally third-party entities acting as buyers on GigaCloud Marketplace, as set forth in Paragraphs 98-124, further supports a strong inference of Lau's scienter.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 381.

3.      *Individual Scienter Allegations Against Wan*

382.    A strong inference of Defendant Wan's scienter is established by the fact that, during his service as GigaCloud's CTO—which began in 2014—he also served as Managing Member of Steve Roger Digital. He was removed as Steve Roger's Managing Member at some point, only to be replaced in August 2021 by XiaoXiao Li, another GigaCloud employee. Wan's personal involvement with Steve Roger Digital establishes a strong inference that Wu knew or was reckless as to the relationship between GigaCloud and Steve Roger Digital and the other nominally third-party entities that made "1P" purchases on GigaCloud Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 382.

383.    Defendant Wan's scienter is further supported by the fact that numerous other GigaCloud executives and employees were connected to nominally third-party entities acting as buyers on GigaCloud Marketplace, as set forth in Paragraphs 98-124. Especially in light of Defendant Wan's lengthy service as GigaCloud's CTO, there is a strong inference that he knew about the connections between GigaCloud and those nominal third parties.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 383.

> 4.    *The Abrupt Deregistration of GigaCloud Venture after the Culper Report Supports Scienter.*

384.    As set forth above, GigaCloud Venture was an entity located in the same industrial park as GigaCloud's main Chinese entity, whose address appeared on the front page of GigaCloud's draft F-1 Registration Statement. Zexue Wang, who was appointed President, Director, Treasurer, and Secretary of Orien Life at some point between November 22, 2020 and April 8, 2021, was also the legal representative, Executive Director, and 100% owner of GigaCloud Venture.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 384.

385.    Less than a month after the Culper Report disclosed that GigaCloud was connected to Orien Life through GigaCloud Venture, GigaCloud venture was deregistered as an entity. This response to scrutiny provides strong support for the scienter of the Exchange Act Defendants.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 385.

5.    *GigaCloud's Response to the Corrective Disclosures Supports Scienter.*

386.    GigaCloud's carefully worded responses to the corrective disclosures alleged herein supports scienter. First, the Culper Report first identified Orien Life along with several furniture import entities with GigaCloud executives and employees as corporate officers. Following the release of the Culper Report, the Company first issued, on September 29, 2023, a statement that, while asserting that the Culper Report "lacks merit and contains numerous defamatory, selective, inaccurate, incomplete and misleading statements and speculations," provided no information undermining the Culper Report. The Company filed that statement with the SEC as an attachment to a Form 6-K signed by Defendant Wu.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 386.

387.    Then, on October 9, 2023, the Company issued a press release responding to "certain" claims in the Culper Report. The Company also filed this press release with the SEC attached to a Form 6-K signed by Defendant Wu. Under a bullet point entitled "Related Party Transactions" the press release stated only that "the Company disclosed its related party transaction in accordance with the Form 20-F rules under the Securities Exchange Act of 1934 and applicable accounting standards in the filings made with the Securities and Exchange Commission." Thus, the Company did not deny that GigaCloud executives and employees served as officers for companies that ran ecommerce storefronts and furniture import companies. The October 9, 2023 press release stated that "the Company's board of directors have authorized the Company to engage a reputable independent third-party to conduct an independent review concerning certain allegations made in the short seller report." The press release did not specify which "certain" allegations would be addressed by this "independent review."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 387.

149

388.    On November 13, 2023, GigaCloud issued a press release announcing that the "independent review" was complete. Again, the Company filed this press release with the SEC as an attachment to a Form 6-K signed by Defendant Wu. The Company stated that, under the instructions of the Board's Audit Committee, certain unspecified "key allegations" in the Culper Report for an unspecified "relevant time period as instructed by the Audit Committee" were reviewed, and that, based on this review, "the Audit Committee has concluded that the reviewed claims in the [Culper] Report were not substantiated." This statement, though crafted as a denial of the Culper Report, did not in fact provide any information undermining the Culper Report. Indeed, it did not even state that the Culper Report's disclosures about GigaCloud's connections to nominal third-party entities had been reviewed. This provides further support for Defendant's scienter.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 388.

389.    In addition, after the release of the Grizzly Report, GigaCloud responded by issuing a press release on May 23, 2024, which it filed with the SEC as an attachment to a Form 8-K signed by Defendant Wu. With respect to the Grizzly Report's revelations of GigaCloud's undisclosed connections to other entities, the press release stated:

> The short-seller report claims that the purported lack of website activity is explained by allegedly undisclosed transactions with related parties. This claim is false and misleading for the reasons noted above: GigaCloud's B2B marketplace has substantial monthly traffic. There is also no merit to the claims the short-seller makes about purported related party transactions. *Following similar unsubstantiated allegations made in September 2023 by another short-seller, the Company carefully evaluated its customer relationships and has disclosed in its filings made with the U.S. Securities and Exchange Commission all related party transactions required by the applicable rules and accounting standards.*
>
> *There is also no basis in the short-seller's unsupported suggestion that sales made through certain entities are not legitimate. As the Company previously disclosed, buyers in its marketplace can list products for sale to consumers on their own stores or other ecommerce websites and GigaCloud will handle fulfilment directly to their end customer. These transactions represent legitimate sales that can be validated through the records of deliveries to end customers and are corroborated by the substantial expenses the Company has previously reported for delivery and logistics services.*

150

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 389.

390.    Again, the Company issued a statement crafted to *appear* to refute the Grizzly Report, but the statement did not actually deny that a significant number of buyers on GigaCloud Marketplace were companies closely connected with GigaCloud and that a significant amount of the GigaCloud 1P revenue and GigaCloud Marketplace GMV is generated by buyers with a pre-existing and close connections to GigaCloud. The Company's carefully worded response provides further support for the Exchange Act Defendants' scienter.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 390.

> 6.    *GigaCloud Marketplace 1P Sales Were a Core Operation of the Company, Supporting the Scienter of Wu, Wan, and Lau.*

391.    GigaCloud's 1P sales on GigaCloud Marketplace were a core operation of the Company, providing further support for the Exchange Act Defendants' scienter. Defendants told investors that GigaCloud sold its own 1P inventory on GigaCloud Marketplace "[t]o enhance our marketplace experience," and "[t]his 1P business creates more products for buyers, gives us insights into seller needs, provides us with proprietary data and increases the velocity of sales in our marketplace."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 391.

392.    As set forth above, attracting buyers was a central plank of the Company's strategy to increase the seller base on GigaCloud Marketplace—in the "virtuous cycle" mentioned above—increase GigaCloud Marketplace GMV, and build GigaCloud Marketplace revenue stream as the basis of the Company's success, as opposed to 1P off-platform sales. Defendants repeatedly touted increased GigaCloud Marketplace GMV and GigaCloud 1P sales on the Marketplace, and

151

attributed increases in GigaCloud 1P product revenues to increases in the number of active buyers on the Marketplace.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 392.

393. Furthermore, according to FE-4, the former President of U.S. Operations, the scheme to use closely connected companies to make large volumes purchases on GigaCloud Marketplace was well known at GigaCloud.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 393.

394. Thus, GigaCloud Marketplace 1P sales were a core operation of the Company which provides additional support for a strong inference of the Exchange Act Defendants' scienter.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 394.

C.    **GigaCloud's Scienter and Liability**

395. GigaCloud is liable for the acts of the Individual Exchange Act Defendants under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 395.

396.    The scienter of the Individual Exchange Act Defendants and other employees and agents of GigaCloud is similarly imputed to GigaCloud under *respondeat superior* and agency principles. Indeed, in the Registration Statement, GigaCloud acknowledged that "[w]e are highly dependent upon our senior management, particularly our chief executive officer, as well as our vice presidents and other members of our senior management team." Accordingly, regardless of whether the allegations against the Individual Exchange Act Defendants are sufficient, the facts alleged in this complaint must be imputed to GigaCloud.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 396.

## V.    THE EXCHANGE ACT DEFENDANTS ENGAGED IN A SCHEME TO DECEIVE INVESTORS.

397.    The Exchange Act Defendants engaged in a scheme to mislead the public regarding GigaCloud Marketplace activity. Defendants Wu and Wan, and other GigaCloud insiders, established or helped to establish separate corporate entities to purchase furniture and other bulky goods from GigaCloud in order to resell them to consumers on Amazon, Wayfair, and other ecommerce platforms.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 397.

398.    Prior to the Company's IPO, the Exchange Act Defendants began a process of transferring their corporate positions at those separate entities to former GigaCloud employees. For example, Defendant Wu was listed as the President and Director of Orien Life but, between November 22, 2020 and April 8, 2021, Orien Life appointed Zexue Wang (the legal representative, Executive Director, and 100% owner of GigaCloud Venture) to the positions of President, Director, Treasurer, and Secretary. For another example, between November 22, 2020 and April 8, 2021, Defendant Wan was replaced as Managing Member of Steve Roger Digital, and Hao was replaced as Agent by Registered Agents, Inc in August 2021. Defendant Wan's replacement as Managing Member was XiaoXiao Li, a GigaCloud employee.

153

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 398.

399.    The Defendant Wu also provided undisclosed support to closely connected companies that purchased from GigaCloud on GigaCloud Marketplace. CompHome, where Defendant Wu served as President and Director, was dissolved and re-established in 2021 with "Little Joe" Cothran as Director, President, Secretary, and Treasurer, and Defendant Wu financed—using his own money or GigaCloud's—CompHome for a period of time.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 399.

400.    The Exchange Act Defendants were aware or should have been aware that these entities closely collected to GigaCloud purchased from GigaCloud on GigaCloud Marketplace, with material contributions to GigaCloud Marketplace GMV and GigaCloud 1P revenue.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 400.

401.    The Exchange Act Defendants' scheme had the purpose and effect of misleading investors. The Exchange Act Defendants engaged in this conduct for the purpose of increasing activity on GigaCloud Marketplace, reflected in higher GigaCloud Marketplace GMV and GigaCloud 1P revenue. As FE-7, put it: "[m]ost of the transactions are coming from within the company" and "are mainly sister companies buying and selling from each other, *which illustrates that the marketplace is showing lots of revenue*." This was done, FE-7 believed, to "*pump up the marketplace*." The Exchange Act Defendants touted increases in these metrics to investors as proof of GigaCloud's success and prospects, and purported to explain the reasons for increases in those metrics without disclosing GigaCloud's transactions with closely connected companies.

154

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 401.

## VI.    LOSS CAUSATION

402.    On September 28, 2023, at 9:51 a.m. Eastern time (after the markets opened), the investment research firm Culper Research posted a Tweet on the social media platform X (formerly known as Twitter) stating: "We are short GigaCloud Technology Inc $GCT. Our full report is now available at our website." This Tweet linked to a report about GigaCloud entitled "GigaCloud Technology Inc (NASDAQ: GCT): If It's Too Good To Be True…"

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 402.

403.    This Tweet was the first entry in a series of Tweets that included a Tweet (posted at 9:57 a.m. Eastern Time) stating that "[w]e've also uncovered numerous entities which name $GCT insiders – including CEO Wei, former CFO Joseph Huang, and more employees – yet these are not disclosed as either subsidiaries nor related parties. This raises both disclosure and potential round-tripping concerns, in our view."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 403.

404.    At 9:58 a.m. Eastern Time, Culper Research tweeted, "For ex, nowhere in $GCT's filings are Nixxon Digital Marketing, Nisson Trading, *Orien Life*, or Orien Home disclosed as either subsidiaries or related parties. Yet these all list current and former $GCT insiders on corporate documents."

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 404.

405.   The Culper Report contained a section entitled "GigaCloud Insiders Named in Various Undisclosed Entities," which disclosed, inter alia, that Orien Life was incorporated in Nevada in 2016, and listed Defendant Wu as President and former GigaCloud CFO Joseph Huang as Treasurer, and both Wu and Joseph Huang were replaced in December 2020 by another individual, and that Orien Life's corporate filings list a UPS dropbox as its address.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 405.

406.   The Culper Report further stated that Orien Life ran "several furniture-oriented ecommerce storefronts, including on Amazon and Walmart" and included a screenshot of its Walmart.com storefront.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 406.

407.   "In summary," the Culper Report stated,

we have uncovered what appears to be several entities which list several different GigaCloud insiders and former insiders on their documents. These entities have never been disclosed by GigaCloud as subsidiaries, nor have they been otherwise mentioned in GigaCloud's filings as related parties, business partners, or otherwise, Yet they appear to be engaged in the very same business as GigaCloud, namely the import and online sales of furniture.

156

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 407.

408.    Thus, the Culper Report partially corrected the Exchange Act Defendants' misstatements and constituted a materialization of the risk concealed by the Exchange Act Defendants.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 408.

409.    On this news, the Company's share price fell $1.78 from its $9.47 closing price on September 27, 2023, or more than 18%, to close at $7.69 per share on September 28, 2023, on unusually heavy trading volume of over 4.8 million shares (more than seven times the trading volume on September 27).

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 409.

410.    On May 22, 2024, before the market opened, Grizzly Research issued the Grizzly Report. As set forth in greater detail in paragraphs 91-95 and 98-100, the Grizzly Report disclosed documentary evidence and witness testimony showing that, *inter alia*, a significant amount of GigaCloud 1P revenue arose from GigaCloud 1P sales to companies associated with GigaCloud, that it was standard practice at GigaCloud for employees to set up storefronts on Amazon using companies controlled by GigaCloud, and that most of GigaCloud's reported growth comes from sales to distribution businesses of current and former employees, which GigaCloud books as GigaCloud 1P revenue. The Grizzly Report thus corrected the Exchange Act Defendants' misstatements and constituted a materialization of the risk concealed by the Exchange Act Defendants' misstatements.

157

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 410.

411.    On this news, the Company's share price fell $1.62 from its $31.45 closing price on May 21, 2024, or more than 5.15%, to close at $29.83 per share on May 22, 2024, on unusually heavy trading volume of over 10.1 million shares (more than four times the trading volume on May 21, 2024).

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 411.

## VII.    CLASS ACTION ALLEGATIONS

412.    With respect to the Exchange Act Claims, Lead Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the following proposed "Exchange Act Class":

> All persons and entities that purchased or otherwise acquired GigaCloud Class A ordinary shares during the Class Period, and were damaged thereby.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required. To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 412.

413.    Excluded from the Exchange Act Class are: (i) Defendants and any affiliates or subsidiaries thereof; (ii) present and former officers and directors of GigaCloud and their immediate family members (as defined in Item 404 of SEC Regulation S-K, 17 C.F.R. § 229.404, Instructions (1)(a)(iii) & (1)(b)(ii)); (iii) Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof; (iv) any entity in which any Defendant had or has had a controlling interest; (v) GigaCloud's employee retirement and benefit plan(s); and (vi) the legal representatives, heirs, estates, agents, successors, or assigns of any person or entity described in the preceding categories.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 413.

414.    The members of the Exchange Act Class are so numerous that joinder of all members is impracticable. Lead Plaintiffs believe that Exchange Act Class members number at least in the thousands. GigaCloud sold 3,381,000 Class A ordinary shares in the IPO and, as of April 23, 2024, had over 32 million Class A ordinary shares outstanding. GigaCloud Class A ordinary shares traded actively on the NASDAQ during the Class Period.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 414.

415.    Lead Plaintiffs' claims are typical of the claims of the members of the Exchange Act Class. All members of the Exchange Act Class are similarly situated in that they acquired GigaCloud Class A ordinary shares and were similarly affected by the Exchange Act Defendants' wrongful conduct in violation of federal law that is complained of herein.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 415.

416.    Lead Plaintiffs will fairly and adequately protect the interests of the members of the Exchange Act Class and have retained counsel competent and experienced in class and securities litigation. Lead Plaintiffs have no interests antagonistic to or in conflict with those of the Exchange Act Class.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 416.

417.    Common questions of law and fact exist as to all members of the Exchange Act Class and predominate over any questions solely affecting individual members of the Exchange Act Class. Among the questions of law and fact common to the Exchange Act Class are:

- whether the Exchange Act Defendants' acts violated the federal securities laws as alleged herein;

- whether the Exchange Act Defendants made materially false or misleading statements to the investing public during the Class Period;

- whether the Individual Exchange Act Defendants were controlling persons under Section 20(a) of the Exchange Act; and

- whether the Exchange Act Defendants acted knowingly or recklessly in issuing false and misleading statements;

- whether the prices of GigaCloud Class A ordinary shares were artificially inflated during the Class Period because of the Individual Exchange Act Defendants' conduct complained of herein; and

- whether the members of the Exchange Act Class have sustained damages and, if so, what is the proper measure of damages.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 417.

418.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Exchange Act Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Exchange Act Class to individually redress the wrongs done to them.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 418.

419.    There will be no difficulty in the management of this action as a class action. Exchange Act Class members may be identified from records maintained by the Company or its

160

transfer agent(s), or by other means, and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 419.

**VIII.    APPLICABILITY        OF        PRESUMPTION        OF        RELIANCE: FRAUD-ON-THE-MARKET AND *AFFILIATED UTE* PRESUMPTIONS**

420.    For the Exchange Act Claims, Lead Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Exchange Act Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the Exchange Act Defendants' omissions and misrepresentations were material;

- GigaCloud Class A ordinary shares traded in an efficient market;

- GigaCloud Class A ordinary shares was liquid and traded with moderate to heavy volume during the Class Period, with an average weekly trading volume during the Class Period of over 6.6 million shares;

- GigaCloud Class A ordinary shares traded on the NASDAQ and was covered by multiple analysts during the Class Period;

- during the Class Period, there were ninety-seven market makers for GigaCloud Class A ordinary shares;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of GigaCloud Class A ordinary shares; and

- Lead Plaintiffs and members of the Exchange Act Class purchased, acquired and/or sold GigaCloud Class A ordinary shares between the time the Exchange Act Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 420.

421.    Based upon the foregoing, Lead Plaintiffs and the members of the Exchange Act Class are entitled to a presumption of reliance upon the integrity of the market.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 421.

422.    Alternatively, Lead Plaintiffs and the members of the Exchange Act Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), as the Exchange Act Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 422.

## IX.    INAPPLICABILITY OF STATUTORY SAFE HARBOR AND BESPEAKS CAUTION DOCTRINE

423.    The protections applicable to forward-looking statements under certain circumstances do not apply to any of the false or misleading statements alleged herein. The statements complained of herein concerned then-present or historical facts or conditions that existed at the time the statements were made. No cautionary language could, or did, protect Defendants' material misstatements of present and historical fact.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 423.

424. To the extent any of the false or misleading statements alleged herein can be construed as forward-looking, (a) they were not accompanied by meaningful cautionary language identifying important facts that could cause actual results to differ materially from those in the statements, and the generalized risk disclosures GigaCloud or other Exchange Act Defendants made were not sufficient to shield Defendants from liability, and (b) the person who made each such statement knew that the statement was untrue or misleading when made, or each such statement was approved by an executive officer of GigaCloud who knew that the statement was untrue or misleading when made.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 424.

## X.    EXCHANGE ACT COUNTS

### COUNT III

**Violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5(b) Against Defendants GigaCloud, Wu, Lau, and Wan**

425. Lead Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, with the exception of any disclaimers of fraud, recklessness, and intentional misconduct.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 425.

426. This Count is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

163

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 426.

427. This Count is asserted against the Exchange Act Defendants: GigaCloud, Wu, Lau, and Wan. During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Lead Plaintiffs and the other members of the Exchange Act Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of GigaCloud's Class A ordinary shares. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Lead Plaintiffs and other Exchange Act Class members, as alleged herein; (ii) artificially inflate and maintain the market price of GigaCloud Class A ordinary shares; and (iii) cause Lead Plaintiffs and other members of the Exchange Act Class to purchase or otherwise acquire GigaCloud Class A ordinary shares at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 427.

428. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the Registration Statement, the 2022 20-F, the 2023 10-K, the Q1 2024 10-Q, the Forms 6-K and 8-K described above, investor presentations and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for GigaCloud Class A ordinary shares. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about GigaCloud 1P revenue and GigaCloud Marketplace GMV.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 428.

429.    By virtue of their positions at GigaCloud, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Lead Plaintiffs and the other members of the Exchange Act Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants. Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth. In addition, each Exchange Act Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 429.

430.    Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of GigaCloud, Defendants Wu, Lau, and Wan had knowledge of the details of GigaCloud's internal affairs.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed

from the case with prejudice, thus no response is required.  To the extent a response is required,

Answering Defendants deny the allegations in Paragraph 430.

431.    Defendants Wu, Lau, and Wan are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, Defendants Wu, Lau, and Wan were able to and did, directly or indirectly, control the content of the statements of GigaCloud. As the CEO, CFO, and CTO, respectively, of a publicly-held company, Defendants Wu, Lau, and Wan had a duty to disseminate timely, accurate, and truthful information with respect to GigaCloud's businesses, operations, and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price

165

of GigaCloud's Class A ordinary shares was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning GigaCloud 1P revenue and GigaCloud Marketplace GMV which were concealed by the Exchange Act Defendants, Lead Plaintiffs and the other members of the Exchange Act Class purchased or otherwise acquired GigaCloud's Class A ordinary shares at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 431.

432.    During the Class Period, GigaCloud's Class A ordinary shares was traded on an active and efficient market. Lead Plaintiffs and the other members of the Exchange Act Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired GigaCloud's Class A ordinary shares at prices artificially inflated by the Exchange Act Defendants' wrongful conduct. Had Lead Plaintiffs and the other members of the Exchange Act Class known the truth, they would not have purchased or otherwise acquired said Class A ordinary shares, or would not have purchased or otherwise acquired GigaCloud's Class A ordinary shares at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Lead Plaintiffs and the Exchange Act Class, the true value of GigaCloud's Class A ordinary shares was substantially lower than the prices paid by Lead Plaintiffs and the other members of the Exchange Act Class. The market price of GigaCloud's Class A ordinary shares declined sharply upon public disclosure of the facts alleged herein to the injury of Lead Plaintiffs and Exchange Act Class members.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 432.

433.    By reason of the conduct alleged herein, Defendants Wu, Lau, and Wan, and thereby GigaCloud, knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 433.

434.    As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Lead Plaintiffs and the other members of the Exchange Act Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's Class A ordinary shares during the Class Period, upon the disclosure that the Company had been disseminating misrepresented statements to the investing public.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 434.

## COUNT IV

### Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5(a) and (c) Against Defendants GigaCloud, Wu, Lau, and Wan

435.    Lead Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, with the exception of any disclaimers of fraud, recklessness, and intentional misconduct.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 435.

436.    This Count is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c) promulgated thereunder by the SEC. Accordingly, Lead Plaintiffs need not allege in this Court nor prove in this case that any of the Exchange Act Defendants made any misrepresentations or omissions of material fact for which they may also be liable under Rule 10b-5(b) and/or any other provisions of law.

167

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 436.

437. This Count is asserted against the Exchange Act Defendants: GigaCloud, Wu, Lau, and Wan. During the Class Period, the Exchange Act Defendants carried out a common plan, scheme, and unlawful course of conduct that was intended to, and did: (i) deceive the investing public, including Lead Plaintiffs and the Exchange Act Class; (ii) artificially inflate the price of GigaCloud's Class A ordinary shares; and (iii) cause Lead Plaintiffs and other members of the Exchange Act Class to purchase GigaCloud's Class A ordinary shares at artificially inflated prices.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 437.

438. In furtherance of this unlawful plan, scheme and course of conduct, Defendants employed devices, schemes and artifices to defraud, and knowingly and/or recklessly engaged in acts, transactions, practices, and courses of business that operated as a fraud and deceit upon Lead Plaintiffs and the Exchange Act Class in connection with their purchases of GigaCloud's Class A ordinary shares, in violation of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) promulgated thereunder.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 438.

439. The Exchange Act Defendants' fraudulent devices, schemes, artifices and deceptive acts, practices, and course of business included their scheme to defraud investors by creating separate entities to purchase furniture and other bulky goods from GigaCloud in order to resell them, knowing that the purchases of these companies from GigaCloud on GigaCloud Marketplace would be reflected in GigaCloud's financial statements and other public statements to investors, including in the metrics of GigaCloud Marketplace GMV and GigaCloud 1P revenue, and the Exchange Act Defendants made and/or controlled the making of those statements, while concealing the creation and conduct of the network of companies connected to GigaCloud.

168

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 439.

440.    Despite the numerous representations that were made to the market—and ample opportunity to supplement, alter, or correct such misrepresentations—the Exchange Act Defendants failed to do so, thereby concealing the Company's scheme to defraud from investors.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 440.

441.    Lead Plaintiffs and the Exchange Act Class reasonably relied upon the integrity of the market in which GigaCloud's Class A ordinary shares traded.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 441.

442.    During the Class Period, Lead Plaintiffs and the Exchange Act Class were unaware of the Exchange Act Defendants' fraudulent scheme and unlawful course of conduct and/or the impact of the fraudulent scheme. Had Lead Plaintiffs and the Exchange Act Class known the true extent of the Exchange Act Defendants' unlawful scheme and unlawful course of conduct, they would not have purchased GigaCloud's Class A ordinary shares, or if they had, would not have done so at the artificially inflated prices paid for such securities.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 442.

443.    As a direct and proximate result of the Exchange Act Defendants' scheme to defraud and such unlawful course of conduct, Lead Plaintiffs and the Exchange Act Class suffered damages in connection with their purchases of GigaCloud's Class A ordinary shares during the Class Period.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 443.

444.    By reason of the foregoing, the Exchange Act Defendants violated Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) promulgated thereunder, and are liable to Lead Plaintiffs and the Exchange Act Class for damages suffered in connection with their purchases of GigaCloud's Class A ordinary shares during the Class Period.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 444.

## COUNT V

### Violations of Section 20(a) of the Securities Exchange Act of 1934
### Against Defendants Wu, Lau, and Wan

445.    Lead Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, with the exception of any disclaimers of fraud, recklessness, and intentional misconduct.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 445.

446.    This Count is based upon Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 446.

447. This Count is asserted against the Individual Exchange Act Defendants: Wu, Lau, and Wan. During the Class Period, the Individual Exchange Act Defendants participated in the operation and management of GigaCloud, and conducted and participated, directly and indirectly, in the conduct of GigaCloud's business affairs. Because of their senior positions, they knew the adverse non-public information about management statements described above.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 447.

448. As the CEO, CFO, and CTO, respectively, of a publicly owned company, the Individual Exchange Act Defendants had a duty to disseminate timely, accurate, and truthful information with respect to GigaCloud's businesses, operations, and future prospects, and to correct promptly any public statements issued by GigaCloud which had become materially false or misleading.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 448.

449. Because of their positions of control and authority as senior officers, the Individual Exchange Act Defendants were able to, and did, control the contents of the various reports, press releases, presentations and public filings which GigaCloud disseminated in the marketplace during the Class Period concerning GigaCloud's businesses, operations, and future prospects. Throughout the Class Period, the Individual Exchange Act Defendants exercised their power and authority to cause GigaCloud to engage in the wrongful acts complained of herein. The Individual Exchange Act Defendants, therefore, were "controlling persons" of GigaCloud within the meaning of Section 20(a) of the Exchange Act. In this capacity, the Individual Exchange Act Defendants in the unlawful conduct alleged which artificially inflated the market price of GigaCloud's Class A ordinary shares.

171

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 449.

450.    Each of the Individual Exchange Act Defendants, therefore, acted as a controlling person of GigaCloud. By reason of their senior management positions and/or being directors of GigaCloud, each of the Individual Exchange Act Defendants had the power to direct the actions of, and exercised the same to cause, GigaCloud to engage in the unlawful acts and conduct complained of herein. Each of the Individual Exchange Act Defendants exercised control over the general operations of GigaCloud and possessed the power to control the specific activities which comprise the primary violations about which Lead Plaintiffs and the other members of the Exchange Act Class complain.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 450.

451.    By reason of the above conduct, the Individual Exchange Act Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by GigaCloud.

**ANSWER:**

Answering Defendants state that the claim supported by this allegation has been dismissed from the case with prejudice, thus no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 451.

**ANSWER TO PRAYER FOR RELIEF**

Answering Defendants deny that Lead Plaintiffs are entitled to any relief against Answering Defendants, and respectfully requests that the Court dismiss the claims against them with prejudice and order such further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to the Federal Rule of Civil Procedure 38, Answering Defendants demand a jury trial of all issues triable by jury under applicable law.

## DEFENSES

Answering Defendants assert the following defenses and affirmative defenses to the SAC without assuming the burden of proof or any other burden if such burdens would otherwise be on Lead Plaintiffs and members of the purported Class.

## FIRST DEFENSE

The SAC and each purported claim for relief fail to state a claim upon which relief can be granted.

## SECOND DEFENSE

Lead Plaintiffs' claims are barred, in whole or in part, because matters that Lead Plaintiffs claim to be the subject of misrepresentations and omissions were publicly disclosed or were in the public domain and, as such, the alleged "truth" regarding such matters was available to Lead Plaintiffs and members of the purported class.

## THIRD DEFENSE

Answering Defendants are not liable to Lead Plaintiffs because the Registration Statement did not contain any false or misleading statements of material fact or omit any material fact.

## FOURTH DEFENSE

Lead Plaintiffs' claims are not actionable as to the alleged untrue statements of material fact, omissions of material fact, misleading statements, and/or other challenged statements made by Answering Defendants that are forward-looking statements and are accompanied by meaningful cautionary statements and risk disclosure.

173

## FIFTH DEFENSE

Lead Plaintiffs and members of the purported Class failed to act reasonably to mitigate their damages, if any, allegedly sustained as a result of the facts alleged in the SAC and are therefore barred from recovering any damages which might reasonably have been avoided.

## SIXTH DEFENSE

Lead Plaintiffs' and the members of the purported Class's damages are subject to being offset by the amounts they have recovered from other Defendants or third parties in connection with the claims alleged in the SAC and by the amounts they received in connection with the sale of their GigaCloud securities.

## SEVENTH DEFENSE

Any recovery for damages allegedly incurred by Lead Plaintiffs and members of the purported Class, if any, is subject to offset in an amount including, but not limited to, any tax benefits actually received by Lead Plaintiffs or the purported Class members throughout their investments.

## EIGHTH DEFENSE

To the extent Lead Plaintiffs suffered damages, if at all, such damages must be offset by Plaintiffs' gains, amounts received, or benefits gained.

## NINTH DEFENSE

Lead Plaintiffs and members of the purported Class would have acquired GigaCloud Class A ordinary shares even if, when acquired, Class members had known of the allegedly untrue statements of material fact, misleading statements, or other wrongful conduct upon which Answering Defendants' purported liability rests.

## TENTH DEFENSE

Answering Defendants are not liable to Lead Plaintiffs because any damages or injuries allegedly sustained by Lead Plaintiffs were not actually or legally caused by Answering Defendants or any misstatement or omission alleged in the SAC.

## ELEVENTH DEFENSE

Answering Defendants are not liable to Lead Plaintiffs because Answering Defendants acted at all times in good faith, including by acting in conformity with the rules and regulations of the Securities and Exchange Commission, and had no knowledge, and were not reckless or negligent in not knowing, that any alleged statement or omission was false or misleading.

## TWELFTH DEFENSE

Any damage, loss, or liability sustained by Lead Plaintiffs and members of the purported Class must be reduced, diminished, and/or barred in proportion to the wrongful or negligent conduct of persons or entities other than Answering Defendants under the principles of equitable allocation, recoupment, set-off, proportionate responsibility, and comparative fault.

## THIRTEENTH DEFENSE

Lead Plaintiffs' claims are barred in whole or in part because any injury or damage as alleged in the SAC was caused and brought about by individuals and/or entities other than Answering Defendants and, as such, any recovery herein should be precluded or diminished in proportion to the amount of fault attributable to such other individuals and/or entities.

## FOURTEENTH DEFENSE

If a false or misleading statement was made, or if any material fact required to be stated or necessary to make a statement not misleading was omitted, which Answering Defendants deny, Lead Plaintiffs and some or all of the members of the purported Class were aware of or, in the

175

exercise of reasonable care, could have learned of that misstatement or omission and/or did not rely upon it in selling or holding GigaCloud securities.

## FIFTEENTH DEFENSE

The claims alleged in the SAC are not actionable because the alleged untrue statements of material fact, omissions of material fact, misleading statements, and/or other challenged statements made by Answering Defendants were general statements of corporate optimism on which no reasonable investor would rely.

## SIXTEENTH DEFENSE

The claims alleged in the SAC are not actionable because the alleged untrue statements of material fact, omissions of material fact, misleading statements, and/or other challenged statements made by Answering Defendants were statements of opinion.

## SEVENTEENTH DEFENSE

Lead Plaintiffs' and members of the purported Class's claims against Answering Defendants are barred, in whole or in part, because the purported misstatements or omissions alleged in the SAC that are attributed to Answering Defendants did not affect the market price of GigaCloud securities.

## EIGHTEENTH DEFENSE

Lead Plaintiffs' and members of the purported Class's claims against Answering Defendants are barred, in whole or in part, because Lead Plaintiffs and members of the purported Class lack standing to asset their claims against Answering Defendants.

## NINETEENTH DEFENSE

Lead Plaintiffs and members of the purported Class are precluded from recovering attorneys' fees or experts' fees or other costs and disbursements, or any other relief purportedly requested in the SAC from Answering Defendants under applicable provisions of law.

176

**TWENTIETH DEFENSE**

Under any theory of liability, Lead Plaintiffs and members of the purported Class may not recover damages based on valuation of GigaCloud securities that resulted from factors other than the alleged material devices, schemes, or artifices to defraud, misstatements or omissions, acts, practices, or courses of business, which are cited in the SAC.

**TWENTY-FIRST DEFENSE**

Other parties not named in the SAC may be indispensable parties to this action.

**TWENTY-SECOND DEFENSE**

Lead Plaintiffs' and members of the purported Class's claims against Answering Defendants are barred in whole or in part because of the comparative and/or contributory negligence of Lead Plaintiffs, members of the purported Class, or other persons.

**TWENTY-THIRD DEFENSE**

This action is not properly maintainable as a class action.

**TWENTY-FOURTH DEFENSE**

The claims alleged in the SAC are barred, in whole or in part, to the extent that damages sought exceed those permitted under the Securities Act of 1933, the Private Securities Litigation Reform Act, common law, or any other applicable statute, rule, or regulation.

**TWENTY-FIFTH DEFENSE**

The claims alleged in the SAC are barred, in whole or in part, because any misrepresentations or omissions alleged in the SAC were not material.

**TWENTY-SIXTH DEFENSE**

The claims alleged in the SAC are barred, in whole or in part, because Answering Defendants reasonably relied in good faith on the professional judgments, opinions, and advice of

177

legal and finance professionals, and had no reasonable grounds to believe and did not believe that any statements made by them were materially false or misleading.

## TWENTY-SEVENTH DEFENSE

The claims alleged in the SAC are barred, in whole or in part, because no act or omission by Answering Defendants was the cause-in-fact or proximate cause of any damage alleged by Lead Plaintiffs and members of the purported Class.

## TWENTY-EIGHTH DEFENSE

The claims in the SAC are barred, in whole or in part, because Answering Defendants had no duty to disclose any facts not allegedly disclosed.

## TWENTY-NINTH DEFENSE

Answering Defendants are not liable because they did not breach any duty owed to Lead Plaintiffs or the members of the putative class.

## THIRTIETH DEFENSE

The claims in the SAC are barred, in whole or in part, because the alleged misstatements and omissions attributed to Answering Defendants in the SAC were not made in connection with the purchase or sale of any securities by Lead Plaintiffs and members of the purported Class.

## THIRTY-FIRST DEFENSE

Answering Defendants are not liable to Lead Plaintiffs because none of the statements for which Answering Defendants are allegedly responsible contain any material misrepresentations or omissions.

## THIRTY-SECOND DEFENSE

Lead Plaintiffs and the members of the purported Class did not suffer any damages, because the purported misstatements or omissions alleged in the SAC did not affect the market price of

178

GigaCloud securities.  Factors other than the alleged untrue statements of material fact, omissions of material fact, misleading statements, or other wrongful conduct caused their alleged losses.

## THIRTY-THIRD DEFENSE

The claims asserted in the SAC are barred or fail, in whole or in part, because Answering Defendants made a reasonable investigation of the facts and had reasonable grounds to believe, and did believe, that GigaCloud's Registration Statement did not contain an untrue statement and did not omit any material fact at the time those documents were issued or became effective.

## THIRTY-FOURTH DEFENSE

Lead Plaintiffs are not entitled to any recovery from Answering Defendants because, with respect to portions of the Registration Statement purporting to be made on the authority of experts retained to assist in preparing such documents including, but not limited to, financial statements and technology statements contained in the Registration Statement, Answering Defendants had no reasonable grounds to believe, and did not believe at the time such part of the Registration Statement became effective, that the statements therein were untrue or that there was an omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading, or that such part of the Registration Statement did not fairly represent the statement of the expert.

## THIRTY-FIFTH DEFENSE

Answering Defendants are not liable to Lead Plaintiffs because Answering Defendants did not know, and in the exercise of reasonable care could not have known, of any alleged misstatements or omissions of fact in the Registration Statement.

## THIRTY-SIXTH DEFENSE

Lead Plaintiffs cannot recover from Answering Defendants because Lead Plaintiffs have not suffered any cognizable injury or sustained any damages and because any damages (which Answering Defendants deny) are speculative.

## THIRTY-SEVENTH DEFENSE

Lead Plaintiffs' claims against Answering Defendants are barred in whole or in part because the alleged damages or other injuries were caused solely by the acts, omissions, and/or negligence of the Lead Plaintiffs or others.

## THIRTY-EIGHTH DEFENSE

Answering Defendants are not liable to Lead Plaintiffs because Lead Plaintiffs purchased GigaCloud stock with actual or constructive knowledge of the risks involved in an investment in GigaCloud stock, and thus assumed the risk that the value of the securities would decline if such risks materialized.

## THIRTY-NINTH DEFENSE

Lead Plaintiffs' claims against Answering Defendants are barred, in whole or in part, by laches, equitable estoppel, waiver, ratification, or other equitable defenses.

## FORTIETH DEFENSE

Any recovery by Lead Plaintiffs in this action is barred in whole or in part to the extent they already received recovery from another lawsuit, action, proceeding, or otherwise.

## FORTY-FIRST DEFENSE

Answering Defendants are not liable because the Registration Statement complied with the laws of the United States and the regulations of the Securities and Exchange Commission.

## FORTY-SECOND DEFENSE

Lead Plaintiffs are not entitled to any recovery from Answering Defendants because the damages alleged represent something other than the depreciation in value of the offered securities resulting from such part of the Registration Statement, with respect to which liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

## FORTY-THIRD DEFENSE

Answering Defendants adopt by reference any applicable defense pled or that may be pled by any other defendant not expressly set forth herein.  Answering Defendants reserve the right to assert such additional defenses as may be appropriate at a later time.

## FORTY-FOURTH DEFENSE

Answering Defendants are entitled to recover contribution from others for any liability they incur as a result of any of the purported misstatements, omissions, and conduct alleged in the claims against Answering Defendants.

## FORTY-FIFTH DEFENSE

Lead Plaintiffs' claims are barred, in whole or in part, because at all relevant times Answering Defendants relied in good faith on the representations, reports, expert opinions, and advice of others.

## FORTY-SIXTH DEFENSE

Lead Plaintiffs' claims are barred with respect to Defendant Thomas Liu because service of process is insufficient as to him.

*    *    *

181

182

Answering Defendants expressly reserve the right to plead additional defenses that may become available or apparent during pretrial proceedings in this action and/or required by any further amendments to the SAC.

**WHEREFORE**, Answering Defendants pray this Court enter judgment as follows:

1. That judgment be entered in favor of Answering Defendants;

2. That Lead Plaintiffs and the purported Class take nothing from Answering Defendants by their SAC, and that the same be dismissed with prejudice;

3. For costs, attorneys' fees, expert witness fees, and court hearing costs incurred herein; and

4. For such other and further relief as this Court deems just and proper.

Dated:  March 11, 2025
       New York, New York

Respectfully submitted,

**LATHAM & WATKINS LLP**

/s/ Jason C. Hegt
Jeff G. Hammel
Jason C. Hegt
Hanyu (Iris) Xie
Chengliang (Larry) Hong
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  jeff.hammel@lw.com
Email:  jason.hegt@lw.com
Email:  iris.xie@lw.com
Email:  larry.hong@lw.com

*Attorneys for GigaCloud Technology Inc,*
*Larry Lei Wu, Xin Wan, Kwok Hei David*
*Lau, Zhiwu Chen, and Thomas Liu*