**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE GIGACLOUD TECHNOLOGY INC SECURITIES LITIGATION** | No. 1:23-cv-10645-JMF |
| **THIS DOCUMENT RELATES TO:**<br><br>**ALL ACTIONS** | |

**CO-LEAD PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

<u>**TABLE OF CONTENTS**</u>

**Page**

PRELIMINARY STATEMENT .................................................................... 1

BACKGROUND ....................................................................................... 2

    I.      SUMMARY OF THE LITIGATION ................................................ 2

    II.     NEGOTIATION OF THE SETTLEMENT ...................................... 6

    III.   THE TERMS OF THE PROPOSED SETTLEMENT ........................ 7

ARGUMENT ........................................................................................... 9

    I.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
         APPROVAL ................................................................................ 9

         A.     Legal Standard for Judicial Approval of Class Action Settlements. .......... 9

         B.     The Settlement Satisfies the Approval Requirements Under Rule 23(e)(2)
              and *Grinnell*. ........................................................................ 11

              1.     Plaintiffs and Co-Lead Counsel Adequately Represented the
                    Class ........................................................................ 11

              2.     The Settlement Is the Product of Good Faith, Arm's-Length
                    Negotiations. ........................................................... 12

              3.     The Settlement Is an Excellent Result for the Class. ................... 13

                   a.     The costs, risks and delay of trial and appeal support
                        approval. ...................................................... 14

                   b.     The other Rule 23(e)(2)(C) factors support approval. ...... 17

               4.     The Settlement Treats All Class Members Equitably. .................. 19

         C.     The Remaining *Grinnell* Factors Support Approval. ................................ 20

    II.     THE COURT SHOULD APPROVE THE PROPOSED PLAN OF NOTICE. ... 22

    III.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................. 24

    VI.   THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES. ... 24

         A.     The Settlement Class Meets the Requirements under Rule 23(a) ............. 25

B.    The Settlement Class Meets the Requirements of Rule 23(b). ................. 27

C.    Co-Lead Counsel Satisfies Rule 23(g). ..................................................... 28

CONCLUSION ........................................................................................................................ 28

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
  692 F.3d 34, 39-40 (2d Cir. 2012) ........................................................................6

*Amchem Prods., Inc., v. Windsor*,
  521 U.S. 591 (1997)................................................................................24, 25, 27

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ...........................................................................16

*Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) .........................................................................15

*Boluka Garment Co., Ltd. v. Canaan Inc.*,
  547 F. Supp. 3d 439, 447 (S.D.N.Y. 2021) ........................................................5

*Burns v. FalconStor Software, Inc.*,
  2013 WL 12432583 (E.D.N.Y. Oct. 9, 2013)....................................................17

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................11, 15, 19, 20

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)................................................................10, 11, 20

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) .....................................................15

*Enriquez v. Nabriva Therapeutics plc*,
  19-cv-04183 (S.D.N.Y. May 14, 2021) .............................................................18

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174, 186 (W.D.N.Y. 2005) .............................................................21

*Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
  925 F.3d 63 (2d Cir. 2019) ...............................................................................18

*Gordon v. Vanda Pharms. Inc.*,
  2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) .......................................26, 27, 28

*Hayes v. Harmony Gold Min. Co.*,
  2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) .....................................................18

*Hayes v. Harmony Gold Min. Co.*,
  509 F. App'x 21 (2d Cir. 2013) ...................................................................18

*In re Agent Orange Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ..............................................................13

*In re Agent Orange Prod. Liab. Litig.*,
  21818 F.2d 145 (2d Cir. 1987) ....................................................................13

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)..........................................................16

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  293 F.R.D. 459 (S.D.N.Y. 2013) ...................................................................9

*In re BioScrip, Inc. Sec. Litig.*,
  273 F. Supp. 3d 474 (S.D.N.Y. 2017)...........................................................18

*In re Carrier iQ, Inc., Consumer Privacy Litig.*,
  2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) .............................................19

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...............................................14

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) ...................................................................9

*In re Citigroup, Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013)...........................................................20

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).................................................16

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019).......................................................27, 28

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................9

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) .....................................................................9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2014 WL 6851096 (S.D.N.Y. Dec. 2, 2014) ................................................10

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................20

v

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) .................................................................20, 21

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................................16

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ...............................................................................9

*In re PPDAI Grp. Inc. Sec. Litig.*,
   2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ..........................................................18

*In re PaineWebber Ltd. Partnerships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.) ...................................................................................13

*In re PaineWebber Ltd. Partnerships Litig.*,
   117 F.3d 721 (2d Cir. 1997).................................................................................13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ......................................................................10, 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ..................................................................18

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ...........................................................................26

*In re Platinum & Palladium Commodities Litig.*,
   2014 WL 3500655 (S.D.N.Y. July 15, 2014) .......................................................11

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ...........................................................................12

*In re Schering-Plough Corp. Sec. Litig.*,
   2009 WL 5218066 (D. N.J. Dec. 31, 2009)...........................................................23

*In re Take Two Interactive Sec. Litig.*,
   2010 WL 11613684 (S.D.N.Y. June 29, 2010) .....................................................22

*In re Tesla Inc. Sec. Litig.*,
   No. 18-cv-4865 (N.D. Cal. Feb. 3 2023) ..............................................................16

*In re Vivendi Universal, S.A. Sec. Litig.*,
   No. 02-cv-5571 (S.D.N.Y. Apr. 21, 2017) ............................................................17

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007) ............................................................................24

*Kinnally v. GigaCloud Tech. Inc.*,
   No. 2:23-cv-8381 ......................................................................................................2, 3

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
   No. 02 C 5893 (N.D. Ill. Jun. 20, 2016) ...................................................................17

*Massiah v. MetroPlus Health Plan, Inc.*,
   2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)...........................................................21

*Melito v. Experian Mktg. Sols., Inc.*,
   923 F.3d 85 (2d Cir. 2019)........................................................................................22

*Micholle v. Ophthotech Corp.*,
   2022 WL 1158684 (S.D.N.Y. Mar. 14, 2022) ...........................................................27

*Moses v. N.Y. Times Co.*,
   79 F.4th 235 (2d Cir. 2023) .........................................................................................9

*Pantelyat v. Bank of Am., N.A.*,
   2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) ..............................................................15

*Pearlman v. Cablevision Sys. Corp.*,
   2019 WL 3974358 (E.D.N.Y. Aug. 20, 2019)...........................................................18

*Pearlstein v. BlackBerry Ltd.*,
   2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ..............................................................25

*Penn. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*,
   772 F.3d 111 (2d Cir. 2014) ......................................................................................25

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .................................................................................16

*Rodriguez v. CPI Aerostructures, Inc.*,
   2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021)................................................12, 21, 25, 26, 27

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir.2010)..........................................................................................27

*Villanueva v. GigaCloud Tech. Inc.*,
   No. 2:23-cv-9134 (C.D. Cal. Nov. 22, 2023) ..............................................................3

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)......................................................................................9, 11

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
   2015 U.S. Dist. LEXIS 73276 (E.D.N.Y. Apr. 17, 2015) .........................................10

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)......................................................................24

**Statutes**

15 U.S.C. §78u-4(a)(7) ...........................................................................22

Securities Act of 1933 .................................................................. *passim*

Securities Exchange Act of 1934 ................................................... *passim*

Private Securities Litigation Reform Act of 1995 .......................... *passim*

**Rules**

Fed. R. Civ. P. 23 ......................................................................... *passim*

**Other Authorities**

Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action
   Litigation: 2024 Full-Year Review* ....................................................14

4 Newberg & Rubenstein on Class Actions (6th ed.) ...................................24

7 Newberg & Rubenstein on Class Actions (6th ed.) ...................................19

Court-appointed Co-Lead Plaintiffs Sashi Rajan ("Rajan") and Meir Spear ("Spear", and collectively with Rajan, "Co-Lead Plaintiffs" or "Plaintiffs"),[1] on behalf of themselves and the proposed Settlement Class, respectfully submit this memorandum of law in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated June 16, 2025 (the "Stipulation"), filed herewith; (ii) preliminary certification of the proposed Settlement Class for purposes of Settlement; (iii) approval of the form and manner of giving notice of the proposed Settlement to Settlement Class Members; and (iv) a date for a final settlement fairness hearing (the "Settlement Hearing") and deadlines for the mailing and publication of the Notice, Settlement Class Member objections and exclusion requests, the filing of Plaintiffs' motions for Final Approval of the Settlement and for Co-Lead Counsel's application for an award of attorneys' fees and payment of Litigation Expenses and compensatory awards to Plaintiffs.

## PRELIMINARY STATEMENT

Plaintiffs have negotiated a Settlement that provides a strong and immediate recovery that is highly favorable in light of the risks of continued litigation. Pursuant to the proposed Settlement, GigaCloud, on behalf of the Settling Defendants,[2] has agreed to pay, or cause to be paid, $2,750,000 in cash for the benefit of the Settlement Class in exchange for the settlement of all claims asserted in the Action, the dismissal with prejudice of the Second Amended Complaint, and

---

[1] All capitalized terms used and not otherwise defined in this Memorandum have the meanings ascribed to them in the Stipulation.

[2] The Settling Defendants are GigaCloud Technology Inc ("GigaCloud" or the "Company"), Larry Lei Wu ("Wu"), Xin Wan ("Wan"), Kwok Hei David Lau ("Lau"), Zhiwu Chen ("Chen"), Thomas Liu ("Liu"), and Aegis Capital Corp. ("Aegis"). Stip. ¶1(oo). Plaintiffs and the Settling Defendants are collectively referred to herein as the "Parties". Defendants Frank Lin, Xing Huang, and Binghe Guo have not appeared in the Action. The Stipulation provides that Plaintiffs will not pursue further action against these Defendants. *Id*. ¶6.

the release of all Released Plaintiffs' Claims by Plaintiffs and the other members of the Settlement Class against Defendants and the Released Defendant Parties.

The Settlement provides a substantial, immediate, and guaranteed recovery for the Settlement Class, eliminates additional costs to the Parties, and circumvents future risks of litigation. These risks include disputes over liability and damages, including Plaintiffs' ability to (1) prove that the software GigaCloud used in its logistics operations did not constitute artificial intelligence ("AI"), (2) prove that this was material to investors, and (3) rebut Defendants' position that declines in the price of GigaCloud Stock during the Class Period were not related to the alleged misstatements.

In addition, Plaintiffs faced numerous other risks unique to large complex class action litigation, such as their ability to secure and maintain a certified class and recover any award obtained at trial. For these reasons and others, the Settlement is fair, reasonable, adequate, and in the Settlement Class Members' best interest. The Settlement is the product of vigorous good-faith, arm's-length negotiations between experienced counsel over a period of several weeks. The Settlement meets the requirements of Federal Rule of Civil Procedure ("Rule") 23(e) and Second Circuit precedent. Moreover, the proposed content and manner of providing notice satisfies requirements imposed by Rule 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process. For these reasons, the Court should approve Plaintiffs' motion.

## BACKGROUND[3]

## I.    SUMMARY OF THE LITIGATION

The initial complaint in this Action was filed on October 4, 2023, in the United States District Court for the Central District of California. *Kinnally v. GigaCloud Tech. Inc.*, No. 2:23-

---

[3] This background is set forth in greater detail in the Declaration of Jonathan D. Park ("Park Decl.") filed herewith.

cv-8381 (the "Kinnally Action"), ECF No. 1. On January 11, 2024, after the Kinnally Action and a related action were transferred to this Court (Kinnally Action, ECF No. 12; *Villanueva v. GigaCloud Tech. Inc.*, No. 2:23-cv-9134, ECF No. 13 (C.D. Cal. Nov. 22, 2023)), the Court appointed Rajan and Spear as Co-Lead Plaintiffs and approved their selection of Pomerantz LLP and The Rosen Law Firm, P.A. as Co-Lead Counsel for the proposed class (ECF No. 42).

On March 18, 2024, after a thorough investigation, Co-Lead Plaintiffs filed an Amended Class Action Complaint (the "Amended Complaint"). ECF No. 59. The Amended Complaint asserted (i) securities fraud claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder, and (2) against Wu, Lau, Wan, and Schrock under Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and (ii) non-fraud, negligence-based claims under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"). Supported by information obtained from four former GigaCloud employees, the Amended Complaint alleged that the Registration Statement for GigaCloud's August 2022 initial public offering (the "IPO") contained materially false and misleading statements regarding the Company's use of artificial intelligence ("AI") software, and that the Defendants named therein made additional material misstatements during a class period of August 18, 2022 through September 28, 2023.

On May 17, 2024, Defendants GigaCloud, Wu, Wan, Schrock, and Aegis moved to dismiss the Amended Complaint. ECF No. 82. On May 22, 2024, however, Grizzly Research LLC ("Grizzly Research") published a report entitled "GigaCloud Technology Inc – Another China Hustle Inflating Key Metrics Using Undisclosed Related Party Shell Companies" (the "Grizzly Report"). After obtaining leave to file a second amended complaint by June 28, 2024 (ECF No. 87), Plaintiffs investigated the matters raised in the Grizzly Report.

On June 28, 2024, Plaintiffs filed the operative complaint, the Second Amended Complaint (ECF No. 88), which differed from the Amended Complaint in several key respects, including the following.

First, in line with the Grizzly Report, it added allegations that Defendants made material representations, both in the IPO Registration Statement and during the Class Period, concerning activity on GigaCloud Marketplace.

Second, the Second Amended Complaint alleged a Class Period that was longer by approximately eight months, ending on May 22, 2024, when the Grizzly Report was published. *Compare* Second Amended Complaint ¶3, *with* Amended Complaint ¶3.

Third, it alleged that certain Defendants participated in a fraudulent scheme to mislead the public regarding GigaCloud Marketplace activity. Second Amended Complaint ¶¶397-401, 435-44.

Fourth, it asserted claims under the Securities Act only, and not under the Exchange Act, for alleged misstatements concerning GigaCloud's AI capabilities. The Second Amended Complaint identified such misstatements only in the Registration Statement, and did not allege AI-related misstatements at any other time or in any other context.

Fifth, the Second Amended Complaint contained additional allegations based on former employees previously cited in the Amended Complaint, as well as allegations based on three *additional* former GigaCloud employees. Second Amended Complaint ¶¶33-41, 97, 110, 376. It also extensively cited other records and sources. *E.g.*, Second Amended Complaint ¶¶102-03, 105, 107-08, 112, 114-15, 117-18, 120-24, and Ex. B thereto.

On August 9, 2024, Defendants GigaCloud, Wu, Lau, Wan, and Aegis filed a motion to dismiss the Second Amended Complaint. After Defendant Chen accepted service of a summons

and complaint, Chen filed a notice of joinder with the motion to dismiss filed by Defendants GigaCloud, Wu, Lau, Wan, and Aegis, and filed a separate motion to dismiss for lack of personal jurisdiction as to him. ECF Nos. 105-06. Plaintiffs opposed both of these motions (ECF Nos. 107-10), and these Defendants filed replies (ECF No. 115-16).

On January 27, 2025, the Court issued an Opinion and Order (1) granting in part and denying in part GigaCloud, Wu, Lau, Wan, and Aegis's motion to dismiss the Second Amended Complaint, and (2) denying Chen's motion to dismiss the Second Amended Complaint. ECF No. 117.

The Court held that Plaintiffs plausibly alleged that the Registration Statement contained materially misleading statements about GigaCloud's use of AI in violation of Section 11 of the Securities Act. *Id.* at 14-18. The Court found that the former GigaCloud employees cited in the Second Amended Complaint were described with sufficient particularity to support the probability that they possessed the information attributed to them, and that such information was "sufficient to support an inference that GigaCloud did not use AI in its logistics operations as claimed in the Offering Materials." *Id.* at 16-17.

The Court also rejected Defendants' argument that Plaintiffs' AI-related claims should be dismissed on loss causation grounds, reasoning that Section 11 does not require Plaintiffs to plead loss causation and that it is not "apparent from the face of the complaint that the plaintiff[s] cannot recover [their] alleged losses." *Id.* at 17 (alterations in original) (quoting *Boluka Garment Co., Ltd. v. Canaan Inc.*, 547 F. Supp. 3d 439, 447 (S.D.N.Y. 2021)). Defendants further argued that GigaCloud's stock price rebounded following the alleged corrective disclosures, negating loss causation. The Court rejected this argument, holding that the fact "'that the price [of the stock] rebounded does not, at the pleading stage, negate the plaintiff's showing of loss causation' because

5

when 'drawing all reasonable inferences in favor of [plaintiff], [we] assume that the price rose for reasons unrelated to its initial drop.'" *Id.* at 18 n.5 (alterations in original) (quoting *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 39-40 (2d Cir. 2012)).

The Court also denied Chen's motion to dismiss for lack of personal jurisdiction, holding that allegations that Chen signed a written consent to be named in the Registration Statement as being or about to become a director of GigaCloud provided a sufficient basis for the Court to exercise personal jurisdiction over Chen. *Id.* at 18-19

The Court, however, dismissed Plaintiffs' claims that Defendants made material misstatements concerning activity on GigaCloud Marketplace, finding that Defendants accurately represented that activity and were not obligated to disclose the allegedly concealed and misrepresented information. *Id.* at 11-12. The Court also dismissed Plaintiffs' scheme-liability claims on the basis that "they are premised on the same misstatements" regarding GigaCloud Marketplace. *Id.* at 13.

Thus, the Court sustained Plaintiffs' Securities Act claims only with respect to alleged AI-related misstatements, and dismissed the remainder of the claims.

## II.    NEGOTIATION OF THE SETTLEMENT

Following entry of the Court's order sustaining the Second Amended Complaint in part, the Parties began discussing the scope of discovery and schedule for the Action. Park Decl. ¶57. In the course of those discussions, the Parties broached the subject of a potential negotiated resolution to the Action. Since these discussions were productive, the Parties jointly requested two extensions of the initial pretrial conference that the Court set in its order regarding the Second Amended Complaint. *Id.* ¶¶57-58.

On April 23, 2025, after weeks of negotiations, the Parties reached a settlement-in-principle to resolve the Action for $2,750,000 and began negotiating a term sheet. *Id.* ¶58. On May 2, 2023, the Parties executed the term sheet, which set forth the material terms associated with resolving the Action, subject to the execution of a customary "long form" stipulation and related papers. *Id.* ¶59. The Parties informed the Court of this development that same day. *Id.*

The Parties thereafter negotiated the terms of the full Stipulation.

## III.    THE TERMS OF THE PROPOSED SETTLEMENT

The Stipulation (with its exhibits) constitutes the final and binding agreement between the Parties. Per the Stipulation, GigaCloud, on behalf of all Settling Defendants, will pay or cause to be paid $2,750,000 in cash, which amount plus accrued interest will comprise the Settlement Fund. Stip. ¶¶1(mm), 7. In exchange, Plaintiffs agreed to release all Released Plaintiffs' Claims by Plaintiffs and the Settlement Class against Defendants and Released Defendant Parties. Stip. ¶¶4, 10.

The proposed Settlement Class is defined as all persons and entities who or that purchased or otherwise acquired GigaCloud Stock during the period from August 18, 2022 to May 22, 2024, both dates inclusive, and were damaged thereby. Stip. ¶1(ll). Excluded from the Settlement Class are: (i) Defendants and any affiliates or subsidiaries thereof; (ii) present and former officers and directors of GigaCloud and members of their Immediate Families; (iii) Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof; (iv) any entity in which any Defendant had or has had a controlling interest; (v) GigaCloud's employee retirement and benefit plan(s); (vi) the legal representatives, heirs, estates, agents, successors, or assigns of any such excluded person or entity in (i)-(v); and (vii) any persons or entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court. *Id.*

The cost of Notice to the Settlement Class and settlement administration ("Notice and Administration Expenses") will be funded by the Settlement Fund. Stip. ¶10. After a competitive bidding process, Co-Lead Counsel retained – subject to Court approval – a nationally recognized class action settlement administrator, Strategic Claims Services ("SCS"), to administer the process of giving notice to the Settlement Class, to receive and assess claims submitted by Claimants and, upon Court approval, to distribute the Net Settlement Fund to Class Members. *See* Park Decl. ¶63.

The Notice provides that Co-Lead Counsel will submit an application for an award of attorneys' fees in an amount not to exceed 33.4% of the Settlement Amount and litigation expenses in an amount not to exceed $130,000, plus interest accrued on both amounts at the same rate as earned by the Settlement Fund. *See* Stip., Ex. A-1 ("Notice") at 2. The Notice also states that Plaintiffs may also seek compensatory awards under the PSLRA not to exceed $15,000 in total for both Plaintiffs. *Id*. Such fees, awards, and expenses shall be paid from the Settlement Fund. *Id*.

While Plaintiffs believe that the merits of their case are strong, Defendants contend that they did not violate the securities laws and did not cause damages to the Settlement Class. Plaintiffs recognize that they face numerous dangers, including an unfavorable decision on a motion for class certification or summary judgment, the possibility that a jury may not return a verdict in their favor or may award damages less than the Settlement Amount, or an unfavorable appellate decision. Moreover, even achieving a favorable verdict would involve years of delay. Given these significant risks, Plaintiffs and Co-Lead Counsel believe that the proposed Settlement provides an excellent result, is in the best interest of the Settlement Class.

**ARGUMENT**

## I.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

### A.    Legal Standard for Judicial Approval of Class Action Settlements.

The Second Circuit recognizes the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005), *superseded on other grounds*, Fed. R. Civ. P. 23(e)(2), *as recognized in Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012).[4] Courts should approve a class action settlement if it is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013).

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent 'fairness hearing.'" *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007), *adhered to on reconsideration*, 2007 WL 844710 (S.D.N.Y. Mar. 20, 2007). "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice" and "[o]nce preliminary approval is bestowed, the second step of the process ensues: notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). "Preliminary approval is not tantamount to a finding that a proposed settlement is fair and reasonable. Instead, at this stage, we need only decide whether the terms of the Proposed Settlement are at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In*

---

[4] Unless otherwise noted, all emphasis is added, and internal quotations and citations are omitted throughout.

*re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2014 WL 6851096, at *2 (S.D.N.Y. Dec. 2, 2014). Additionally, "courts should give proper deference to the private consensual decision of the parties," and should bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, 2015 U.S. Dist. LEXIS 73276, at *18 (E.D.N.Y. Apr. 17, 2015).

Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). Pursuant to Rule 23(e)(2), courts assessing settlement approval consider whether:

(A)    The class representatives and class counsel have adequately represented the class;

(B)    The proposal was negotiated at arm's length;

(C)    The relief provided for the class is adequate, taking into account:

    (i)    The costs, risks, and delay of trial and appeal;

    (ii)    The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    The terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)    Any agreement required to be identified under Rule 23(e)(3);

(D)    The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (*Payment Card I*). Courts in the Second Circuit have long considered the following *Grinnell* factors to evaluate "whether a class action settlement is fair, reasonable, and adequate under Rule 23":

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at \*8-9 (S.D.N.Y. Oct. 16, 2019) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). The Second Circuit has not prescribed any set order of consideration, but at least one district court has suggested that courts first "consider[] the Rule 23(e)(2) factors, and then consider[] additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors." *See Payment Card I*, 330 F.R.D. at 29.

Either way, the court should not "engage in a complete analysis at the preliminary approval stage . . . as other courts in this Circuit have held, 'it is not necessary to exhaustively consider the factors applicable to final approval'" when considering preliminary approval. *Id.* at 30 n.24 (quoting *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at \*12 (S.D.N.Y. July 15, 2014)). Indeed, certain factors—such as the reaction of the class to the settlement—cannot be thoroughly assessed until the final approval stage. *Id.*

As set forth below, the proposed Settlement satisfies both prongs of Rule 23(e)(1) and meets the criteria for approval enumerated in Rule 23(e)(2) and in *Grinnell*.

## B. The Settlement Satisfies the Approval Requirements Under Rule 23(e)(2) and *Grinnell*.

### 1. Plaintiffs and Co-Lead Counsel Adequately Represented the Class.

Plaintiffs and Co-Lead Counsel more than satisfy Rule 23(e)(2)(A)'s "[a]dequate representation" requirement, which focuses primarily on the "alignment of interests between class members." *See Wal-Mart Stores, Inc.*, 396 F.3d at 106-07. Here, Plaintiffs' interests were fully aligned with the interests of absent Settlement Class Members. Plaintiffs' claims (like those of the

Settlement Class) concern publicly traded GigaCloud Stock, and are based on the same facts and legal theory over the same Class Period.  Plaintiffs and Co-Lead Counsel "share the common goal of maximizing recovery" for the Settlement Class, so "there is no conflict of interest[.]" *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006).

Moreover, Plaintiffs and Co-Lead Counsel have vigorously litigated this case. *See* Park Decl. ¶4. Co-Lead Counsel: (i) thoroughly investigated Defendants' alleged misstatements, including interviewing numerous former GigaCloud employees; (ii) consulted with experts regarding accounting, market efficiency, loss causation, and damages issues; (iii) prepared two detailed amended complaints; (iv) filed oppositions to motions to dismiss the Second Amended Complaint, after which the Court sustained Plaintiffs' claims in part; and (v) negotiated the Settlement over the course of several weeks. *Id.* ¶¶4, 20-53, 56-62. Plaintiffs oversaw the litigation, including counsel's investigations, the drafting of the Amended Complaint and Second Amended Complaint, and the negotiations that resulted in the Settlement.

Plaintiffs and Co-Lead Counsel also vigorously pursued settlement discussions over the course of several weeks after the Court sustained the Second Amended Complaint in part. Co-Lead Counsel, who is experienced in prosecuting complex class actions, had a clear view of the strengths and risks of the Action, and were equipped to make an informed decision regarding the reasonableness of a potential settlement. The result of these efforts is an impressive settlement of $2,750,000 in cash. Accordingly, Plaintiffs and Co-Lead Counsel have adequately represented the Settlement Class, which weighs in favor of approval.

### 2.      The Settlement Is the Product of Good Faith, Arm's-Length Negotiations.

A settlement is procedurally fair when it is "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests." *Rodriguez v.*

*CPI Aerostructures, Inc.*, 2021 WL 9032223, at *4 (E.D.N.Y. Nov. 10, 2021); *see also* Fed. R. Civ. P. 23(e)(2)(B). In such circumstances, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd* 117 F.3d 721 (2d Cir. 1997).

The Parties discussed the scope of discovery and a potential schedule for the Action before focusing on the possibility of a settlement, and thereafter engaged in negotiations over the course of several weeks before agreeing to resolve the Action. Park Decl. ¶¶57-61. This favors preliminary approval.

### 3.    The Settlement Is an Excellent Result for the Class.

The proposed Settlement provides an excellent result and immediate recovery for the Class, and is fair, reasonable, and adequate considering "the costs, risks, and delay of trial and appeal" and other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The Settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

Here, the Settlement provides a cash payment of $2,750,000 for the benefit of the Class. This is an excellent result given the significant risks of continued litigation. After consulting with an econometric expert, Plaintiffs and Co-Lead Counsel estimate that the maximum aggregated damages possible, upon a successful verdict of all claims asserted in the Second Amended Complaint (including the dismissed Exchange Act claims), is approximately $75 million, which does not account for the effect of other company-specific information, unrelated to the alleged misstatements, that may have been disclosed contemporaneously with the alleged corrective disclosures. *See* Park Decl. ¶80. The large majority of this $75 million relates to Plaintiffs'

Exchange Act claims, which the Court dismissed. Plaintiffs and Co-Lead Counsel estimate that the maximum damages possible for Plaintiffs' Securities Act claims, which are the only claims that survived Defendants' motions to dismiss the Second Amended Complaint, is $23.78 million. *Id.* ¶82.

However, even if Plaintiffs were to secure a successful verdict, collection could be delayed and jeopardized by post-trial appeals and insurance coverage litigation. Even if Plaintiffs prevailed, a jury might not accept that all, or any, of the stock price decline on each disclosure date was caused by the alleged securities law violations, which could reduce or eliminate damages.

The Settlement is also favorable compared to other securities class actions with similar damages even though, in this case, the Court dismissed the Exchange Act claims. Plaintiffs estimate that this recovery represents approximately 3.67% of the approximately $75 million in aggregate damages. This recovery is in line with the average settlement amount in securities fraud class actions. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("[T]he average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses").[5]

Further, the Settlement Amount represents approximately 11.56% of the maximum estimated damages of $23.78 million for the Securities Act claims sustained by the Court. This is significantly above recovery percentages that have been approved by courts in this District. *China Sunergy*, 2011 WL 1899715, at *5.

                **a.**     **The costs, risks and delay of trial and appeal support approval.**

---

[5] Additionally, according to NERA, cases with "NERA-Defined Investor Losses" between $50 and $99 million settled for an average of 3.8% of such losses last year. Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* at 26 (Fig. 23) (NERA Jan. 22, 2025)

In assessing a settlement, courts consider "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). A court need only determine whether the Settlement falls within a range of reasonableness that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Pantelyat v. Bank of Am., N.A.*, 2019 WL 402854, at *7 (S.D.N.Y. Jan. 31, 2019).

Although Plaintiffs and Co-Lead Counsel believe the allegations are strong, they acknowledge that Defendants have put forth substantial arguments. Plaintiffs would still need to prevail at summary judgment and trial, where issues regarding the falsity of Defendants' alleged misstatements, the materiality of those misstatements, and whether those misstatements were the cause of investor losses would be hotly disputed. *See* Park Decl. ¶¶71-90 (discussing risks in greater detail).

Defendants would be expected to seek to establish, *inter alia*, that there is no authoritative definition of "AI" and thus that the Registration Statement could not have misled investors, and that GigaCloud *did* use "AI" in its logistics operations. *Id.* ¶¶73-76. Defendants would also seek to establish that the alleged misrepresentations did not cause investor losses because, *inter alia*, GigaCloud's stock price declined below the $12.25 IPO price early in the Class Period, before either of the corrective disclosures that Plaintiffs pleaded with respect to their Exchange Act claims, and thus the price decline was unrelated to the alleged misrepresentations. *Id.* ¶87.

Successfully prosecuting this Action through trial would be both complex and risky. *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *10 ("In evaluating the settlement of a securities class

action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*15 (S.D.N.Y. Nov. 8, 2010) (recognizing that complex securities class actions are "notably difficult and notoriously uncertain"). Moreover, there can be no assurance that a jury would find Defendants made misrepresentations, that these misrepresentations were material, or that they were the cause of investor losses. Indeed, a recent securities class action trial ended in a defense verdict, leaving the class with nothing, despite the Court previously finding, at summary judgment, that the defendant made a material misrepresentation and did so with scienter. *See* Verdict Form, *In re Tesla Inc. Sec. Litig.*, No. 18-cv-4865 (N.D. Cal. Feb. 3 2023), ECF No. 671.

Even assuming Plaintiffs' claims survived a motion to dismiss and summary judgment, a jury trial would have required a substantial amount of factual and expert testimony. *See, e.g.*, *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants."). And whatever the outcome at trial, it is virtually certain that an appeal would follow. This continued litigation would have posed considerable expense to the Parties, and would have delayed any potential recovery, if one was even achieved.

Moreover, prevailing at trial would not necessarily result in a larger recovery. The jury could award a smaller number of damages, or the verdict could be appealed. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs against an accounting firm and entering judgment for defendant); *Anixter v. Home-Stake*

*Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs in a case tried in 1988 on the basis of a Supreme Court opinion handed down in 1994). And even if Plaintiffs were able to achieve a favorable verdict, this would only come after years of delay. For example, in two PSLRA cases that went to trial, plaintiffs did not move for preliminary approval until approximately *seven years* after their respective juries rendered verdicts in their favor. *See* Class Plaintiffs' Memorandum of Law in Support of Motion for Approval of Settlement, *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02-cv-5571 (S.D.N.Y. Apr. 21, 2017), ECF No. 1313 (preliminary approval motion filed after appeal and approximately 7.5 years after the jury verdict); *see also* Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02 C 5893 (N.D. Ill. Jun. 20, 2016), ECF No. 2212 (preliminary approval motion filed approximately 7 years after the jury verdict and after appeal, which reversed verdict in part and ordered a limited new trial).

Moreover, further litigation could consume resources that form part of the Settlement Amount. *See Burns v. FalconStor Software, Inc.*, 2013 WL 12432583, at *8 (E.D.N.Y. Oct. 9, 2013) (granting preliminary approval while defendants' motion to dismiss was still pending because further litigation "would likely consume tremendous time and resources").

### b.    The other Rule 23(e)(2)(C) factors support approval.

Rule 23(e)(2)(C) states that adequacy should be assessed in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[,]" "the terms of any proposed award of attorney's fees, including timing of payment[,]" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports approval here.

First, the Settlement calls for an experienced Claims Administrator to process claims and distribute the Net Settlement Fund to Class Members according to the Plan of Allocation using procedures that are well-established and have proven effective in securities class action litigation. Co-Lead Counsel selected SCS to serve as Claims Administrator (subject to Court approval) after a competitive bidding process. *See* Park Decl. ¶63. Under the guidance of Co-Lead Counsel, SCS will process claims and provide Claimants with a reasonable opportunity to cure deficiencies in their claims. *Id*. The Claims Administrator will audit the claims received and evaluate the proposed distribution according to the Plan of Allocation, and Co-Lead Counsel will move the Court for an order of distribution permitting checks to be mailed to eligible claimants.[6] *Id*.

Second, as disclosed in the Notice, Co-Lead Counsel, who have not been paid to date for their efforts in this Action, will apply for a fee award not to exceed one-third of the Settlement Fund, including interest earned at the same rate as the Settlement Fund. Such a fee is considered reasonable for the work performed and the results obtained and is consistent with awards in similar complex class action cases. *See, e.g.*, *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *17 (E.D.N.Y. Jan. 21, 2022) (approving a one-third of a $9 million settlement).[7]

---

[6] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement Fund based on the number or value of the claims submitted.

[7] *Enriquez v. Nabriva Therapeutics plc*, 19-cv-04183, ECF No. 78 (S.D.N.Y. May 14, 2021) (approving fee award that was one-third of a $3 million settlement); *Pearlman v. Cablevision Sys. Corp.*, 2019 WL 3974358, at *3 (E.D.N.Y. Aug. 20, 2019) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million."); *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 497 (S.D.N.Y. 2017) (approving 33 1/3% settlement and stating "courts routinely award a percentage amounting to approximately 1/3"), *aff'd sub nom. Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63 (2d Cir. 2019); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million . . . ."); *Hayes v. Harmony Gold Min. Co.,* 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (noting that attorneys' fee of

Third, Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the Parties in connection with the Settlement. On May 2, 2025, the Parties executed a term sheet memorializing their settlement-in-principle. Park Decl. ¶59. On June 16, 2025 they entered into the Stipulation – which superseded the term sheet – and a confidential Supplemental Agreement regarding requests for exclusion (the "Supplemental Agreement"). *See* Stip. ¶40. The Supplemental Agreement provides that GigaCloud has the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. *See id.* As is standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement to the detriment of the Settlement Class. *See* 7 Newberg & Rubenstein on Class Actions § 22:59 (6th ed.), Westlaw (June 2025 update). Such an agreement "is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *15; *In re Carrier iQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest"). Per its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and term sheet are the only agreements between the Parties concerning the Settlement.

### 4. The Settlement Treats All Class Members Equitably.

The Settlement easily satisfies the Rule 23(e)(2)(D) criteria that it treat class members equitably relative to one another. A plan of allocation, "particularly if recommended by experienced and competent class counsel," should be approved so long as it is "fair and adequate"

---

one-third of the $9 million settlement amount was fair, reasonable and adequate), *aff'd*, 509 F. App'x 21 (2d Cir. 2013).

and "ha[s] a reasonable, rational basis." *Christine Asia,* 2019 WL 5257534, at \*15. Under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund, which shall be the Authorized Claimant's Recognized Loss divided by the total of Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Park Decl. *See* Notice at Question 9 and Plan of Allocation. As described in the Notice, the Plan of Allocation has a rational basis and was formulated by Co-Lead Counsel, with the assistance of Plaintiffs' damages expert, ensuring its fairness and reliability. Park Decl. ¶92. The Plan of Allocation also clearly identifies the circumstances under which Settlement Class Members may participate in the distribution of the Net Settlement Fund. As such, the Plan of Allocation is consistent with Plaintiffs' alleged theories of damages and is substantially similar to other plans approved and successfully implemented in securities class actions in this Circuit. *See, e.g.*, *In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010). Thus, the proposed Settlement treats all Settlement Class Members equitably and the Plan of Allocation is fair and adequate and has a reasonable and rational basis, weighing in favor of approval. *See, e.g.*, *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the *pro rata* distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

C.    **The Remaining *Grinnell* Factors Support Approval.**

The additional *Grinnell* factors include: the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of

litigation.[8] While "a court need not find that every factor militates in favor of a finding of fairness" but "considers the totality of these factors in light of the particular circumstances," each supports approval here. *Merrill Lynch*, 249 F.R.D. at 134.

First, the stage of the proceedings favors approval. This factor assesses "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012). Here, Co-Lead Counsel investigated the claims and consulted with experts before filing the Amended Complaint and the Second Amended Complaint, opposed two motions to dismiss, and engaged in extensive negotiations before agreeing to the Settlement. *See* Park Decl. ¶¶20-42. As a result of these efforts, Co-Lead Counsel is in a position to effectively evaluate the merits of the Action and the risks Plaintiffs would face if the Action were to proceed. *See Rodriguez*, 2021 WL 9032223, at *5 ("While formal discovery has not occurred in this case . . . . Plaintiffs filed an exhaustive Amended Complaint in this case and defendants responded with a motion to dismiss, apprising plaintiffs of the defendants' position. Moreover, Lead Plaintiff and his counsel engaged in extensive negotiations with the defendants with the aid of a mediator.").

Second, no class has yet been certified, and even assuming class certification is achieved, the Court could revisit certification at any time. Thus, absent settlement, there would be a meaningful risk that this case or parts thereof might not be maintained on a class-wide basis through trial. *Rodriguez*, 2021 WL 9032223, at *6 (citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("[T]he risk that the case might not [be] certified is not illusory . . . . .")).

---

[8] One remaining *Grinnell* factor, the reaction of the Settlement Class, cannot meaningfully be assessed until Notice is disseminated, and thus will be addressed at a later stage.

Finally, the Settlement is within the range typically found reasonable relative to the maximum prospective recovery. Reasonableness must be judged "in light of the strengths and weaknesses of plaintiffs' case" not "the best of all possible worlds." *In re Agent Orange*, 597 F. Supp. at 762.

## II.    THE COURT SHOULD APPROVE THE PROPOSED PLAN OF NOTICE.

Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B)) and Rule 23(e) directs "notice in a reasonable manner" (Fed. R. Civ. P. 23(e)(1)(B)). Pursuant to the PSLRA, the notice must also include an explanation of the plaintiff's recovery. *In re Take Two Interactive Sec. Litig.*, 2010 WL 11613684, at *12–13 (S.D.N.Y. June 29, 2010) (citing 15 U.S.C. §78u-4(a)(7)). The notice must also "fairly apprise[] the prospective members of the class of the terms of the proposed settlement and of the options that [are] open to them in connection with the proceedings." *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 95 (2d Cir. 2019).

Plaintiffs' proposed notice plan satisfies these standards. The Notice contains all information required by Rule 23(c)(2), as it states (i) the nature of the Action (Notice, Question 2); (ii) the definition of the Settlement Class (*id.*, Questions 5-6); (iii) the claims asserted on behalf of the Settlement Class (Notice, Question 2); (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires (*id.*, Question 16); (v) that the Court will exclude from the Settlement Class any member who requests exclusion (*id.*, Questions 6, 13); (vi) the time and manner for requesting exclusion (*id.*, Question 13); and (vii) the binding effect of a class judgment on members under Rule 23(c)(3) (*id.*, Question 14).

The Notice also contains all information required by the PSLRA (15 U.S.C. § 78u-4(a)(7)), specifically: (i) the amount of the settlement proposed to be distributed to Settlement Class,

determined in the aggregate and on an average per share basis (Notice at 1); (ii) a statement concerning the issue or issues on which the parties disagree, given that they do not agree on the average amount of damages per share that would be recoverable if Plaintiffs prevailed on each of their claims (*id.* at 3 and Question 4); (iii) a statement indicating which parties or counsel intend to apply to the court for an award of attorneys' fees or costs, the amount of fees and costs that will be sought (including on an average per share basis), and a brief explanation supporting the fees and costs sought (*id.* at 2 and Question 17); (iv) identification of counsel for the Settlement Class who will be reasonably available to answer questions from Settlement Class Members concerning any matter contained in the Notice (*id.* at 4); and (v) a brief statement explaining the reasons why the parties are proposing the Settlement (*id.*, Question 4).

The proposed Summary Notice also provides essential information about the Settlement and directs Settlement Class Members to alternative sources for additional information. *See* Stip., Ex. A-3. Likewise, the proposed Postcard Notice provides necessary information about the Settlement and how to participate. *See* Stip., Ex. A-4. In addition to the mailed and published notice, the Stipulation provides for the establishment of a website devoted to posting Settlement-related information, and a toll-free telephone number for Settlement Class Members to call with inquiries.

Accordingly, the proposed plan of notice meets all the requirements of due process, the PSLRA, and Rule 23. *See e.g.*, *In re Schering-Plough Corp. Sec. Litig.*, 2009 WL 5218066, at *1, *6 (D. N.J. Dec. 31, 2009) (finding that a settlement notice with a mailing to all class members who could be identified with reasonable effort and publication of a summary notice and over the PR Newswire, satisfied the requirements of Rule 23 and due process).

## III.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

In conjunction with the Preliminary Approval Order, the Parties respectfully propose the following schedule for Settlement-related events:

| Event | Proposed Due Date |
|---|---|
| Deadline to mail Postcard Notice and post Notice and Claim Form on Settlement website ("Notice Date") | 10 business days after entry of Preliminary Approval Order |
| Deadline to publish Summary Notice | 14 calendar days after Notice Date |
| Deadline to file papers in support of final approval and seek fees and expenses | 35 calendar days before the Settlement Fairness Hearing |
| Deadline to object or request exclusion | 21 calendar days before the Settlement Fairness Hearing |
| Deadline for submitting a Proof of Claim | Postmarked no later than 90 calendar days after the Notice Date |
| Deadline to file response to any objections, or reply in further support of final approval or fees and expenses | 7 calendar days before the Settlement Fairness Hearing |
| Affidavit or declaration of Notice, and list of timely and untimely exclusion requests | 7 calendar days before the Settlement Fairness Hearing |
| Settlement Fairness Hearing | Approximately 100-105 days after entry of the Preliminary Approval Order |

## IV.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

In preliminarily approving the proposed Settlement, this Court must consider whether to conditionally certify the Settlement Class for settlement purposes. *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation (Fourth) § 21.632. The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). "[T]he standards for certification are laxer at settlement" than in the typical certification process. 4 Newberg & Rubenstein on Class Actions § 13:18 (6th ed.), Westlaw (June 2025 update). The Court need not conduct a rigorous analysis at this stage to determine whether to certify a settlement class and should reserve this analysis for the final approval hearing. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). Further, in certifying the Settlement Class, the Court need not determine whether the action, if

24

tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D).

Here, the Parties have stipulated to the certification of the Settlement Class for settlement purposes only. Stip. ¶3. Plaintiffs submit that class certification is appropriate because the four prerequisites of Rule 23(a) (numerosity, commonality, typicality, adequacy of representation) are met. *See Amchem*, 521 U.S. at 613. Also, common issues of law or fact predominate over individual issues, making the class action a superior vehicle to fairly and efficiently adjudicate the Class's claims. *See* Fed. R. Civ. P. 23(b)(3). Plaintiffs, therefore, respectfully request that the Court certify the Settlement Class using the definition agreed to in the Stipulation.

## A.    The Settlement Class Meets the Requirements under Rule 23(a).

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. In the Second Circuit, "[n]umerosity is presumed for classes larger than forty members." *Penn. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at *7 (S.D.N.Y. Jan. 26, 2021); *see also Rodriguez*, 2021 WL 9032223, at *8. Here, during the Class Period, GigaCloud Stock was actively traded on NASDAQ. Second Amended Complaint ¶180. Thus, while Plaintiffs "do[] not know the 'exact' number of class members, [they] estimate[] that there are "thousands" of investors residing in geographically disparate areas that would be included in the class, thus rendering joinder impracticable." *Rodriguez*, 2021 WL 9032223, at *8. Consequently, numerosity is satisfied.

Second, "questions of law or fact common to the class" exist. Fed. R. Civ. P. 23(a)(2). "In securities fraud cases, where putative class members have been injured by similar material

misrepresentations and omissions, the commonality requirement is satisfied." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *see also Gordon v. Vanda Pharms. Inc.*, 2022 WL 4296092, at *7 (E.D.N.Y. Sept. 15, 2022). Here, Plaintiffs allege that Defendants engaged in conduct involving a common nucleus of operative facts by mispresenting or omitting material information concerning GigaCloud's AI capabilities and ecommerce marketplace, injuring investors. Other courts have found similar questions satisfy commonality. *See, e.g., Rodriguez*, 2021 WL 9032223, at *8 (collecting cases).

Next, Rule 23(a)(3) requires "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "This is satisfied, where, as here, the claims of [ ] [P]laintiffs arise from the same course of conduct that gives rise to claims of the other class members, … are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as [Plaintiffs] . . . ." *Gordon*, 2022 WL 4296092, at *7. Thus, typicality is satisfied.

Lastly, Rule 23(a)(4) requires that the interests of the class be adequately represented. First, "class counsel [must be] qualified, experienced and able to conduct the litigation" and "[s]econd, the named plaintiffs' interests must not be antagonistic to the interest of other members of the class." *Rodriguez*, 2021 WL 9032223, at *9. Plaintiffs interests do not conflict with the class "given that the class was injured by the same allegedly materially false and misleading statements as [ ] Plaintiff[s]." *Id.* Plaintiffs retained highly experienced counsel, regularly communicated with and oversaw counsel, and evaluated and approved the Settlement. Moreover, Co-Lead Counsel is qualified and experienced in securities class actions and has demonstrated its ability to prosecute the Action.

**B.      The Settlement Class Meets the Requirements of Rule 23(b).**

Rule 23(b)(3) requires proof that common issues predominate, and that a class action is the superior method of adjudication. As the Supreme Court noted, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. "Moreover, common issues, such as liability, may be certified even where other issues, such as damages, do not lend themselves to classwide proof." *Rodriguez*, 2021 WL 9032223, at *11. Here, "[r]esolution of [P]laintiff[s'] allegations—including questions of liability, causation, and damages—are susceptible to generalized proof and, further, such generalized inquiries predominate over any issues specific to individual class members." *Gordon*, 2022 WL 4296092, at *8; *see also Micholle v. Ophthotech Corp.*, 2022 WL 1158684, at *3 (S.D.N.Y. Mar. 14, 2022) ("Predominance is met here because the members of the Settlement Class were subject to the same alleged misrepresentations and omissions of Defendants and the claim is susceptible to common evidence and proof.").

Finally, Courts have long recognized that the class action is not only a superior method, but possibly the only feasible method to fairly and efficiently adjudicate a controversy involving a significant number of purchasers of securities injured by securities law violations. *See Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir.2010) ("[T]he class action device is frequently superior to individual actions."). Considerations in assessing superiority, include: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) whether other litigation has already commenced; (3) the desirability of concentrating claims in one forum; and (4) the difficulties likely to be encountered in the management of a class action. *Amchem*, 521 U.S. at 616. Here, there are no other parallel actions, and because many investors suffered losses too small to justify individual litigation, class adjudication is the only realistic basis for recourse. *Gordon*, 2022 WL 4296092, at *9 (citing *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686,

702 (S.D.N.Y. 2019)). Moreover, because "[t]here are likely thousands of class members nationwide . . . consolidating their claims is in the interests of efficiency and judicial economy." *Gordon*, 2022 WL 4296092, at *9; *see also GSE Bonds*, 414 F. Supp. 3d at 702 ("[C]oncentrating the case in one forum will help improve fairness and efficiency in adjudication of the claims of plaintiffs, who are widely dispersed."). Finally, Plaintiffs do not foresee any difficulty in effecting a class-wide settlement.

### C.    Co-Lead Counsel Satisfies Rule 23(g).

Lastly, Rule 23(g) requires the appointment of class counsel that can fairly and adequately represent the interests of the Class. Fed. R. Civ. P. 23(g)(1)(A). Here, Co-Lead Counsel spent significant effort investigating relevant facts asserted in this Action. Co-Lead Counsel is also highly experienced in securities litigation. *See* Park Decl. Exs. A & B (firm resumes). Finally, Co-Lead Counsel has expended significant resources in prosecuting this Action. Thus, Co-Lead Counsel's extensive efforts and in-depth knowledge of the law governing this Action weigh strongly in favor of appointment under Rule 23(g).

### CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court grant their motion in its entirety.

DATED: June 16, 2025                              Respectfully submitted,


                                                  **POMERANTZ LLP**

                                                  */s/ Jonathan D. Park*
                                                  Jeremy A. Lieberman
                                                  Jonathan D. Park
                                                  600 Third Avenue, 20th Floor
                                                  New York, New York 10016
                                                  Telephone: (212) 661-1100
                                                  Facsimile: (212) 661-8665

jalieberman@pomlaw.com
jpark@pomlaw.com

*Counsel for Co-Lead Plaintiff Sashi Rajan and
Co-Lead Counsel for the Class*

**PORTNOY LAW FIRM**
Lesley F. Portnoy
1100 Glendon Ave, 14th Floor
Los Angeles, California 90024
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Co-Lead Plaintiff Sashi
Rajan*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Phillip Kim
Brian B. Alexander
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com
balexander@rosenlegal.com

*Counsel for Co-Lead Plaintiff Meir Spear and
Co-Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall
(*pro hac vice* application forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Co-Lead Plaintiff Meir
Spear*