**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GIGACLOUD TECHNOLOGY INC SECURITIES LITIGATION | No. 1:23-cv-10645-JMF |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**DECLARATION OF JONATHAN D. PARK**
**IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Jonathan D. Park, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am a member of the Bar of the State of New York, and am admitted to appear before this Court. I am Of Counsel with the law firm of Pomerantz LLP ("Pomerantz"), counsel for Co-Lead Plaintiff Sashi Rajan ("Rajan") and Co-Lead Counsel for the proposed Settlement Class. Rajan and Co-Lead Plaintiff Meir Spear ("Spear", and collectively with Rajan, "Co-Lead Plaintiffs" or "Plaintiffs"), who is represented by Co-Lead Counsel The Rosen Law Firm, P.A., together assert claims on behalf of the proposed Settlement Class.[1] I have been actively involved in all aspects of the prosecution and resolution of the Action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein based upon my supervision and

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings provided in the Stipulation and Agreement of Settlement, dated as of June 16, 2025 (the "Stipulation"), which was entered into by and between Plaintiffs, on the one hand, and GigaCloud Technology Inc ("GigaCloud" or the "Company"), Larry Lei Wu ("Wu"), Xin Wan ("Wan"), Kwok Hei David Lau ("Lau"), Zhiwu Chen ("Chen"), Thomas Liu ("Liu"), and Aegis Capital Corp. ("Aegis") (collectively, the "Settling Defendants"), on the other. Plaintiffs and Settling Defendants are referred to collectively as the "Parties".

participation in all material aspects of the Action, and if called as a witness, could and would testify competently thereto.

2.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion").

## I.     PRELIMINARY STATEMENT

3.     The proposed Settlement now before the Court provides for the resolution of all claims in the Action in exchange for a cash payment of $2,750,000. As detailed herein, Plaintiffs and Co-Lead Counsel respectfully submit that the Settlement represents a very favorable result for the Settlement Class in light of the significant risks of continuing to litigate the Action.

4.     Plaintiffs and Co-Lead Counsel have vigorously litigated this case since they were appointed to represent the putative class on January 11, 2024. *See* ECF No. 42 (appointing co-lead plaintiffs and co-lead counsel). Even prior to that, on October 30, 2024, my firm filed the complaint in the Villanueva Action (defined below), which was later consolidated into this Action. *See id.* (consolidating actions). The Settlement was achieved only after Plaintiffs and Co-Lead Counsel, *inter alia,* as detailed herein:

> (i)     conducted a thorough and wide-ranging investigation that included a review and analysis of publicly available information and analysis of applicable accounting standards, as well as interviews with numerous former GigaCloud employees;

> (ii)    consulted with experts regarding accounting, market efficiency, loss causation, and damages issues;

> (iii)   prepared and filed a detailed Amended Class Action Complaint (the "Amended Complaint") (ECF No. 59) that identified numerous alleged misrepresentations by Defendants and contained allegations derived from four former GigaCloud employees;

> (iv)    analyzed Defendants' motion to dismiss the Amended Complaint (ECF No. 82);

(v)     following the publication of a report by Grizzly Research LLC, conducted an additional investigation concerning matters raised therein;

(vi)    prepared and filed a detailed Second Amended Class Action Complaint (the "Second Amended Complaint") (ECF No. 88) that identified additional alleged misrepresentations by Defendants and contained allegations derived from three additional former GigaCloud employees;

(vii)   prepared and filed Plaintiffs' opposition (ECF Nos. 107-08) to Defendants GigaCloud, Wu, Lau, Wan, and Aegis's motion to dismiss the Second Amended Complaint (ECF No. 95), which the Court granted in part and denied in part (ECF No. 117);

(viii)  prepared and filed Plaintiffs' opposition (ECF Nos. 109-10) to Defendant Chen's separate motion to dismiss the Second Amended Complaint (ECF No. 105), which the Court denied in full (ECF No. 117);

(ix)    undertook extensive efforts to serve pleadings on Defendants, several of whom are believed to reside in the People's Republic of China;

(x)     following the Court's order sustaining the Second Amended Complaint in part, engaged in discussions with Defendants' Counsel regarding the scope of discovery and a schedule for the Action; and

(xi)    engaged in discussions with Defendants' Counsel over a period of several weeks regarding a potential negotiated resolution of the Action, leading to the proposed Settlement.

5.      Plaintiffs and Co-Lead Counsel believe that the Settlement is in the best interests of the Settlement Class. Due to their efforts, Plaintiffs and Co-Lead Counsel are well-informed about the strengths and weaknesses of the claims and defenses in the Action. As discussed in detail below, the Settlement was achieved in the face of vigorous opposition by Defendants who would have continued to raise numerous challenging defenses. For example, Defendants raised significant arguments against Plaintiffs' allegations regarding the falsity of the alleged misstatements and loss causation, and Defendants would likely attack these same elements at later stages of this Action if the Parties were to continue litigating. In addition, Defendants would likely argue that damages are not significant. Issues relating to damages would likely have come down to an inherently unpredictable and hotly disputed "battle of the experts," with Defendants' experts opining, among

other things, that Plaintiffs' expert(s) overstated damages and failed to account for other factors that may have caused the price of GigaCloud Stock to decline. In the absence of a settlement, there is a very real risk that, after months or years of additional litigation, the Settlement Class could recover nothing or an amount less than the negotiated Settlement.

6.     With respect to the proposed Plan of Allocation for the Settlement Fund, as discussed below, the plan was developed with the assistance of Plaintiffs' damages expert, and provides for the distribution of the Net Settlement Fund to Settlement Class Members who submit Claim Forms that are approved for payment on a *pro rata* basis based on their losses attributable to the alleged securities law violations.

7.     Plaintiffs believe the proposed Settlement represents a victory for the Settlement Class. Therefore, Plaintiffs seek to notify Class members of the proposed Settlement so they may evaluate the Settlement and determine whether to exclude themselves from the Settlement Class, object to the Settlement, or submit a Claim Form.

## II.     PROCEDURAL HISTORY

### A.     Commencement of the Action, Transfer to this Court, and Appointment of Co-Lead Plaintiffs and Co-Lead Counsel

8.     On October 4, 2023, this Action commenced with the filing of a class action complaint by plaintiff Thomas J. Kinnally in the United States District Court for the Central District of California, styled *Kinnally v. GigaCloud Technology Inc.*, No. 2:23-cv-8381 (the "Kinnally Action"), ECF No. 1. The initial complaint in the Kinnally Action asserted claims (i) against GigaCloud, Wu, Lau, Wan, Lin, Huang, and Aegis under Section 11 of the Securities Act of 1933 (the "Securities Act"); (ii) against Wu, Lau, Wan, Lin, and Huang under Section 15 of the Securities Act; (iii) against GigaCloud, Wu, and Lau under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder; and (iv)

against Wu and Lau under Section 20(a) of the Exchange Act. In general, the complaint alleged misstatements and omissions in connection with GigaCloud's August 2022 initial public offering (the "IPO") and during the period from August 18, 2022 to September 27, 2023, both dates inclusive. The complaint asserted such claims on behalf of persons and entities that purchased or otherwise acquired (a) GigaCloud Stock pursuant and/or traceable to the registration statement and prospectus for the IPO, and/or (b) GigaCloud securities during the period from August 18, 2022 to September 27, 2023, both dates inclusive, and were damaged thereby.

9.    On October 30, 2023, plaintiff Rock Villanueva filed a securities class action complaint in the United States District Court for the Central District of California styled *Villanueva v. GigaCloud Technology Inc.*, No. 2:23-cv-9134 (the "Villanueva Action"), ECF No. 1. The complaint alleged substantially the same allegations as the Kinnally Action.

10.    On November 20, 2023, Kinnally and GigaCloud stipulated to the transfer of the Kinnally Action to the United States District Court for the Southern District of New York (the "Court"). Kinnally Action, ECF No. 11; Villanueva Action, ECF No. 12. In that stipulation, GigaCloud's counsel accepted service of the summons and complaint in the Kinnally Action on behalf of GigaCloud. Kinnally Action, ECF No. 11; Villanueva Action, ECF No. 12.

11.    On November 22, 2023, the Kinnally Action was transferred to the United States District Court for the Southern District of New York (the "Court"). Kinnally Action, ECF No. 12. That same day, the Villanueva Action was also transferred to the Court. Villanueva Action, ECF No. 13. The Kinnally Action and the Villanueva Action were assigned case numbers 1:23-cv-10684 and 1:23-cv-10645, respectively, in this Court.

12.    Pursuant to Section 21D(a)(3) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, on December 4, 2023, three purported members of the putative class

alleged in the Kinnally and Villanueva Actions filed motions for consolidation of the two cases, their respective appointments as lead plaintiffs, and appointment of their respective counsel as lead counsel. Kinnally Action, ECF Nos. 13-15, 17-22.

13.    On December 15, 2023, the Court ordered that, in view of the transfer of the Kinnally and Villanueva Actions to the Southern District of New York, the deadline to seek appointment as lead plaintiff would be extended to December 22, 2023. ECF No. 23.

14.    On December 22, 2023, three motions to consolidate Kinnally and Villanueva Actions, appoint a lead plaintiff, and approve lead counsel were filed by, respectively, (1) Rajan (ECF Nos. 32-25); (2) Spear (ECF Nos. 26-28); and (3) Thomas J. Kinnally (ECF Nos. 29-31).

15.    On January 10, 2024, Kinnally filed a notice of non-opposition to the competing lead plaintiff motions filed by Rajan and Spear, respectively. ECF No. 39.

16.    On January 10, 2024, Rajan and Spear filed a stipulation and [proposed] order to, inter alia, (1) consolidate the Kinnally and Villanueva Actions for all purposes, (2) appoint Rajan and Spear as Co-Lead Plaintiffs in the consolidated action, (3) approve Rajan and Spear's selections of Pomerantz and Rosen Law as Co-Lead Counsel, and (4) deny Kinnally's lead plaintiff motion. ECF No. 41.

17.    On January 11, 2024, the Court granted that stipulation and entered the [proposed] order. ECF No. 42.

18.    On January 18, 2024, Co-Lead Plaintiffs, on the one hand, and Defendants GigaCloud, Wu, and Wan, on the other, filed a stipulation and proposed order (1) setting forth the duties and responsibilities of Co-Lead Plaintiffs and Co-Lead Counsel and (2) proposing a schedule for Co-Lead Plaintiffs to file any amended complaint or designate a previously filed complaint as operative, for Defendants GigaCloud, Wu, and Wan to respond to the operative

complaint and, if Defendants GigaCloud, Wu, and Wan filed a motion to dismiss, for briefing thereon. ECF No. 46. Per that stipulation, GigaCloud, Wu, and Wan, through their counsel, agreed to waive service of the summons and complaint in this action. ECF No. 46. On January 22, 2024, the Court entered that order. ECF No. 54.

19.    On January 22, 2024, Aegis was served with a summons and complaint. ECF No. 55.

### B.    The Amended Complaint and Defendants' First Motion to Dismiss

20.    On March 18, 2024, Co-Lead Plaintiffs filed an Amended Class Action Complaint (the "Amended Complaint"). ECF No. 59. The Amended Complaint, on behalf of a proposed Class of all persons and entities that purchased or otherwise acquired Class A ordinary shares issued by GigaCloud pursuant and/or traceable to the Registration Statement issued in connection with GigaCloud's IPO,[2] and were damaged thereby, asserted claims (1) against GigaCloud, Wu, Lau, Wan, Lin, Huang, Chen, Guo, Liu, and Aegis under Section 11 of the Securities Act, and (2) against Wu, Lau, Wan, Lin, Huang, Chen, Guo, and Liu under Section 15 of the Securities Act. In addition, the Amended Complaint, on behalf of a proposed Class of all persons and entities that purchased or otherwise acquired GigaCloud Class A ordinary shares during the period August 18, 2022 to September 28, 2023, both dates inclusive, and were damaged thereby, asserted claims (1) against GigaCloud, Wu, Wan, and Iman Schrock ("Schrock") under Section 10(b) of the Exchange

---

[2] On May 31, 2021, the Company confidentially filed a draft registration statement with the SEC for a planned initial public offering of its stock. Amended Complaint ¶39. The Company conducted the IPO the following year, announcing that the IPO was complete on August 22, 2022. *Id.* In the IPO, the Company sold 3,381,000 Class A ordinary shares at a price of $12.25 per share. *Id.* The Company received net proceeds of approximately $34.2 million from the IPO. *Id.*

Act and Rule 10b-5 promulgated thereunder, and (2) against Wu, Lau, Wan, and Schrock under Section 20(a) of the Exchange Act.

21.     The Amended Complaint alleged that the Registration Statement contained materially false and misleading statements regarding the Company's use of artificial intelligence ("AI") software. The Prospectus represented, *inter alia*, that one of GigaCloud's "Competitive Strengths" was "Data Intelligence Powered by AI," that "self-learning AI" improved the Company's "operating efficiency" by "automating and optimizing inventory globally based on historical data, rebalancing our merchandise across warehouses to maximize first mile collection and last mile delivery efficiency," and that "[o]ur AI-powered warehousing management system solves the many practical problems faced by sellers and buyers in connection with complex, cross-border transactions involving large parcel goods." Amended Complaint ¶¶72, 74.

22.     The Amended Complaint also alleged that Defendants made additional misstatements about GigaCloud's AI capabilities on GigaCloud's website, in SEC filings, and during earnings calls and other investor calls. *Id.* ¶¶149-90.

23.     The Amended Complaint alleged that these statements were false because GigaCloud did not have the AI capabilities touted by Defendants. The Amended Complaint contained allegations drawn from four former GigaCloud employees in support of Plaintiffs' claims. *Id.* ¶¶26-29.

24.     The Amended Complaint alleged that a short seller report from Culper Research (the "Culper Report") revealed the falsity of Defendants' misstatements on September 28, 2023. The Culper Report stated that "we couldn't find a single GCT employee on LinkedIn or otherwise who claimed to have developed any AI for the Company" and that GigaCloud "doesn't even disclose software development expenses or capitalized software costs in its financial statements."

*Id.* ¶192. The price of GigaCloud Stock fell $1.78 from its $9.47 closing price on September 27, 2023, or more than 18%, to close at $7.69 per share on September 28, 2023. *Id.* ¶193.

25.    On March 20, 2024, Plaintiffs requested from the Court a summons as to Iman Schrock. ECF No. 60. The summons was issued the following day (ECF No. 61) and Plaintiffs effected service on Schrock (ECF No. 62).

26.    On April 5, 2024, after researching addresses for Defendants Lau, Lin, Huang, Chen, Guo, and Liu, Plaintiffs requested from the Court summonses as to these Defendants. *See* ECF Nos. 63-68. Plaintiffs attempted to serve these Defendants at GigaCloud's Hong Kong executive office pursuant to the requirements of the Hague Service Convention. After sending the necessary materials to the Hong Kong authorities, Plaintiffs were eventually advised by those authorities that service could not be effected on Defendants Lau, Lin, Huang, Guo, and Liu. No explanation for this failure was provided.

27.    On May 17, 2024, Defendants GigaCloud, Wu, Wan, Schrock, and Aegis (the "Moving Defendants") filed a motion to dismiss the Amended Complaint, supported by a memorandum of law, attorney declaration, and exhibits thereto. ECF Nos. 82-84. In support of the motion, these Moving Defendants argued that Plaintiffs (i) failed to allege any material misstatements or omissions; (ii) failed to allege, as required for Plaintiffs' Exchange Act claims, a strong inference that any Defendant acted with scienter; (iii) failed to allege loss causation, which is a required element of Plaintiffs' Exchange Act claims, and that this failure also required dismissal of the Securities Act claims; and (iv) failed to plead control person liability. ECF No. 83.

28.    On May 20, 2024, the Court ordered that, notwithstanding the briefing schedule adopted on January 19, 2024, Plaintiffs shall file any second amended complaint by June 7, 2024.

ECF No. 85. The Court stated that "Plaintiffs will not be given any further opportunity to amend to address issues raised by the motion to dismiss." *Id.*

### C.     The Second Amended Complaint

29.     On May 22, 2024, five days after the Moving Defendants filed their motion to dismiss the Amended Complaint, Grizzly Research LLC ("Grizzly Research") published a report entitled "GigaCloud Technology Inc – Another China Hustle Inflating Key Metrics Using Undisclosed Related Party Shell Companies" (the "Grizzly Report"). Second Amended Complaint ¶91.

30.     In order to investigate the Grizzly Report and determine whether to address it in a second amended complaint, on May 28, 2024, Plaintiffs requested a twenty-one day extension, until June 28, 2024, to file a second amended complaint. ECF No. 86. Defendants did not object to this request. *Id.* On May 29, 2024, the Court granted the request. ECF No. 87.

31.     After conducting an additional investigation, Plaintiffs filed the Second Amended Complaint on June 28, 2024. ECF No. 88. The Second Amended Complaint, on behalf of a proposed Class of all persons and entities that purchased or otherwise acquired Class A ordinary shares issued by GigaCloud pursuant and/or traceable to the Registration Statement issued in connection with GigaCloud's August 2022 IPO, asserted claims (1) against GigaCloud, Wu, Lau, Wan, Lin, Huang, Chen, Guo, Liu, and Aegis under Section 11 of the Securities Act, and (2) against Wu, Lau, Wan, Lin, Huang, Chen, Guo, and Liu under Section 15 of the Securities Act. In addition, the Second Amended Complaint, on behalf of a proposed Class of all persons and entities that purchased or otherwise acquired GigaCloud Class A ordinary shares during the period August 18, 2022 to May 22, 2024, both dates inclusive (the "Class Period"), asserted claims (1) against GigaCloud, Wu, Lau, and Wan under Section 10(b) of the Exchange Act and Rule 10b-5

promulgated thereunder, and (2) against Wu, Lau, and Wan under Section 20(a) of the Exchange Act.

32.    The Second Amended Complaint differed from the Amended Complaint in several key respects, including the following.

33.    First, it added allegations that Defendants made material misstatements and omissions concerning activity on GigaCloud Marketplace. The Second Amended Complaint alleged that misstatements regarding this topic were made in the Registration Statement for the IPO and during the Class Period.

34.    Second, the Second Amended Complaint alleged that the falsity of Defendants' misstatements was revealed on two dates: September 28, 2023 and May 22, 2024. Second Amended Complaint ¶¶402-11. Accordingly, the Second Amended Complaint alleged that Defendants made misstatements during a Class Period beginning on August 18, 2022 (as in the Amended Complaint) and ending on May 22, 2024 (approximately eight months after the September 28, 2023 conclusion of the Class Period alleged in the Amended Complaint). *Compare* Second Amended Complaint ¶3, *with* Amended Complaint ¶3.

35.    Third, the Second Amended Complaint alleged that certain Defendants participated in a fraudulent scheme to mislead the public regarding GigaCloud Marketplace activity. Second Amended Complaint ¶¶397-401, 435-44.

36.    Fourth, the Second Amended Complaint alleged that Defendants made material misstatements concerning GigaCloud's AI capabilities only in the Registration Statement and only for purposes of Plaintiffs' Securities Act claims. Unlike the Amended Complaint, it did not allege AI-related misstatements at any other time or in any other context, and did not assert any Exchange Act claims based on AI-related misstatements. As a result, it did not include Schrock, who

Plaintiffs alleged in the Amended Complaint had made misstatements concerning GigaCloud's AI capabilities during earnings and investor calls, as a defendant.

37.    Fifth, the Second Amended Complaint contained additional allegations based on information from a total of seven GigaCloud employees, including the four former employees cited in the Amended Complaint. Second Amended Complaint ¶¶33-41. It also set forth additional allegations from certain of the former employees cited in the Amended Complaint. *E.g.*, Second Amended Complaint ¶¶ 97, 110, 376. It also extensively cited other records and sources in support of the claims. *E.g.*, Second Amended Complaint ¶¶102-03, 105, 107-08, 112, 114-15, 117-18, 120-24, and Ex. B thereto).

### D.    Defendants' Motions to Dismiss the Second Amended Complaint

38.    On August 9, 2024, Defendants GigaCloud, Wu, Lau, Wan, and Aegis filed a motion to dismiss the Second Amended Complaint, supported by a memorandum of law, attorney declaration, and exhibits thereto. ECF Nos. 95-97. In support of their motion, these Defendants argued that the Second Amended Complaint (i) failed to allege any material misstatements or omissions; (ii) failed to allege, as required for Plaintiffs' Exchange Act claims, a strong inference that any Defendant acted with scienter; (iii) failed to allege loss causation, which is a required element of Plaintiffs' Exchange Act claims, and that this failure also required dismissal of the Securities Act claims; (iv) failed to allege a fraudulent scheme, and (iv) failed to plead control person liability. ECF No. 96.

39.    On August 13, 2024, Defendants' Counsel advised Co-Lead Counsel that the Bailiff Section of the Hong Kong Judiciary had attempted to deliver service of process to Defendant Chen, that Chen did not contest service, that Chen would appear through counsel to respond the Second Amended Complaint, and that Chen anticipated submitting a short joinder adopting the motion to dismiss the Second Amended Complaint filed by GigaCloud, Wu, Lau,

Wan, and Aegis, and making an additional personal jurisdiction argument that is uniquely applicable to him. ECF No. 99 at 1.

40.     On August 21, 2024, Defendant Chen filed a notice of joinder with the motion to dismiss the Second Amended Complaint filed by Defendants GigaCloud, Wu, Lau, Wan, and Aegis, and a motion to dismiss the Second Amended Complaint for lack of personal jurisdiction, supported by a memorandum of law. ECF Nos. 105-06.

41.     On October 8, 2024, Co-Lead Plaintiffs filed memoranda of law, attorney declarations, and exhibits thereto in opposition to the motions to dismiss the Second Amended Complaint. ECF Nos. 107-10.

42.     On November 7, 2024, Defendants GigaCloud, Wu, Lau, Wan, Aegis, and Chen filed replies in support of their motions to dismiss the Second Amended Complaint. ECF Nos. 115-16.

### E.     Plaintiffs Continue to Attempt to Serve the Remaining Defendants

43.     As indicated above, by the time the briefing was complete regarding Defendants' motions to dismiss the Second Amended Complaint, the following Defendants had not been served with a summons and complaint or waived service thereof: Frank Lin, Xing Huang, Binghe Guo, and Thomas Liu. Plaintiffs, through counsel and investigators, conducted a substantial amount of research to identify addresses at which to serve these Defendants, and to attempt such service.

44.     After their attempt to serve these Defendants at GigaCloud's principal executive office in Hong Kong was unsuccessful, Plaintiffs investigated further and identified addresses in the United States for Defendants Lin and Liu. Plaintiffs were unable to identify additional addresses at which they believed they could effect service on Defendants Guo and Huang.

45.     As to Defendant Lin, Plaintiffs' process server attempted on November 1, 2024 to effect service at a United States business address that Plaintiffs identified for Lin, but the server

was told by an individual who claimed to be an executive assistant that, though Lin was employed at that address, he was in China for an extended amount of time. Plaintiffs then considered moving the Court to permit alternative service on Lin through GigaCloud in light of his membership on GigaCloud's board of directors. However, according to a report GigaCloud filed with the SEC, Lin resigned from GigaCloud's board of directors on November 6, 2024, effective immediately.[3]

46.    As to Defendant Liu, Plaintiffs' process server reported that their three attempts to serve process at the United States address identified by Plaintiffs were unsuccessful. Plaintiffs then sent to Liu two copies of a waiver of service form, one copy of each of the Amended Complaint, amended summons issued October 25, 2024 (ECF No. 113), and a request to waive service, as well as a prepaid return envelope; these materials were delivered on November 21, 2024. As this yielded no response from Liu, Plaintiffs continued to attempt to effect personal service on Liu at that address. On January 25, 2025, Defendants' Counsel contacted Co-Lead Counsel by email, stating that they did not represent Liu and did not have authority to accept service for him and that Liu is a non-US resident and did not live or work at the address in question.

**F.    The Court Upholds the Second Amended Complaint in Part**

47.    On January 27, 2025, the Court issued an Opinion and Order (1) granting in part and denying in part GigaCloud, Wu, Lau, Wan, and Aegis's motion to dismiss the Second Amended Complaint, and (2) denying Chen's motion to dismiss the Second Amended Complaint. ECF No. 117.

48.    The Court held that Plaintiffs plausibly alleged that the Registration Statement contained materially misleading statements about GigaCloud's use of AI in violation of Section

---

[3] *See* GigaCloud Technology, Inc., Current Report (Form 8-K) (Nov. 13, 2024), available at https://www.sec.gov/Archives/edgar/data/1857816/000185781624000216/gct-20241113.htm.

11 of the Securities Act. *Id.* at 14-18. The Court found that the former GigaCloud employees anonymously cited in the Second Amended Complaint were described with sufficient particularity to support the probability that they possessed the information attributed to them, and that such information was "sufficient to support an inference that GigaCloud did not use AI in its logistics operations as claimed in the Offering Materials." *Id.* at 16-17.

49.     The Court also rejected Defendants' argument for dismissal of these claims for failure to sufficiently allege loss causation, reasoning that Section 11 does not require Plaintiffs to plead loss causation and that it is not "apparent from the face of the complaint that the plaintiff[s] cannot recover [their] alleged losses." *Id.* at 17 (alterations in original) (quoting *Boluka Garment Co., Ltd. v. Canaan Inc.*, 547 F. Supp. 3d 439, 447 (S.D.N.Y. 2021)). Defendants argued that GigaCloud's stock price rebounded following the alleged corrective disclosures, negating loss causation. The Court rejected this argument, holding that the fact "'that the price [of the stock] rebounded does not, at the pleading stage, negate the plaintiff's showing of loss causation' because when 'drawing all reasonable inferences in favor of [plaintiff], [we] assume that the price rose for reasons unrelated to its initial drop.'" *Id.* at 18 n.5 (alterations in original) (quoting *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 39-40 (2d Cir. 2012)).

50.     The Court also denied Chen's motion to dismiss for lack of personal jurisdiction, holding that allegations that Chen signed a written consent to be named in the Registration Statement as being or about to become a director of GigaCloud provided a sufficient basis for the Court to exercise personal jurisdiction over Chen. *Id.* at 18-19.

51.     However, the Court dismissed Plaintiffs' claims that Defendants made material misstatements concerning activity on GigaCloud Marketplace, finding that Defendants accurately represented activity on GigaCloud Marketplace and were not obligated to disclose the allegedly

concealed and misrepresented information. *Id.* at 11-12. The Court also dismissed Plaintiffs' scheme-liability claims on the basis that "they are premised on the same misstatements." *Id.* at 13.

52.     The Court also denied Plaintiffs leave to amend their allegations, reasoning that "the problems with Plaintiffs' dismissed claims are substantive, so amendment would be futile." *Id.* at 21 (citing *Roundtree v. City of New York*, 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021)).

53.     Thus, the Court upheld Plaintiffs' claims regarding GigaCloud's AI capabilities, which were brought under the Securities Act only, but dismissed Plaintiffs' claims regarding GigaCloud Marketplace, which were brought under both the Securities Act and the Exchange Act. Therefore, Plaintiffs' Exchange Act claims were dismissed in their entirety.

### G.     Defendants' Answers

54.     On March 4, 2025, Defendant Aegis filed its answer to the Second Amended Complaint. ECF No. 124. In its answer, Aegis denied liability and asserted thirty-three purported affirmative defenses.

55.     On March 11, 2025, Defendants GigaCloud, Wu, Wan, Lau, Chen, and Liu filed their answer to the Second Amended Complaint. ECF No. 125. In their answer, these Defendants denied liability and asserted forty-six purported defenses including, as to Defendant Liu, insufficient service of process. *Id*. at 181.

## III.    SETTLEMENT NEGOTIATIONS

56.     The Court's Opinion and Order scheduled an initial pretrial conference for March 26, 2025, and established a deadline of March 20, 2025, for the Parties to submit a joint status letter and proposed Case Management Plan. ECF No. 117 at 21-22.

57.     Accordingly, the Parties began discussing the scope of discovery and schedule for the Action. In the course of those discussions, the Parties broached the subject of a potential

negotiated resolution to the Action. As these discussions were productive, on March 17, 2025, the Parties jointly requested that the Court adjourn the pretrial conference and related deadlines by thirty days to permit the Parties to continue discussing the possibility of a resolution. ECF No. 127. The Court granted that request, rescheduling the initial conference to April 30, 2025. ECF No. 128.

58.    On April 23, 2025, the Parties reached a settlement-in-principle to resolve the Action for $2,750,000 and began negotiating a term sheet. The following day, the Parties advised the Court that they had had constructive discussions about a potential resolution of the Action, requested a second thirty-day extension to permit those discussions to continue, and stated that thy intended to inform the Court of the status of these discussions by May 2, 2025. ECF No. 130. That same day, the Court granted the adjournment, rescheduling the initial conference to May 28, 2025, and ordered the Parties to file a joint status letter no later than May 2, 2025. ECF No. 131.

59.    Following additional negotiations, on May 2, 2023, the Parties, through their counsel, executed a confidential term sheet setting forth the material terms associated with the resolution of the Action, subject to the execution of a customary "long form" stipulation and agreement of settlement and related papers. That same day, the Parties wrote jointly to notify the Court that they had reached a settlement-in-principle and that Plaintiffs intended to file a motion for preliminary approval of the settlement within forty-five days thereafter. ECF No. 132. In light of the settlement in principle, the Parties jointly requested an adjournment of the initial pretrial conference, then scheduled for May 28, 2025, and all other deadlines in this case, pending the submission of Plaintiffs' preliminary approval motion. *Id*

60.     The Court granted that request the same day, adjourning the pretrial conference and all existing deadlines *sine die* pending the filing of a motion for class certification and preliminary approval of the Settlement, for which the Court set a deadline of June 16, 2025. ECF No. 133.

61.     The Parties then negotiated the terms of the Stipulation and Supplemental Agreement, which the Parties executed on June 16, 2025.

62.     As provided for in the Stipulation, in exchange for payment of the Settlement Amount, the Action will be dismissed with prejudice and Plaintiffs and the Settlement Class will forever release all Released Plaintiffs' Claims against the Released Defendant Parties. Released Plaintiffs' Claims are any and all claims and causes of action of every nature and description, whether known claims or Unknown Claims, contingent or absolute, mature or not mature, liquidated or unliquidated, accrued or not accrued, concealed or hidden, regardless of legal or equitable theory and whether arising under federal, state, common, or foreign law, that Co-Lead Plaintiffs or any other member of the Settlement Class: (a) asserted in the Action, including, for the avoidance of doubt, all claims already dismissed by the Court's order dated January 27, 2025, granting in part and denying in part Defendants GigaCloud, Wu, Lau, Wan, and Aegis's motion to dismiss the Second Amended Complaint (ECF Nos. 95-97); or (b) could have asserted in the Action or any forum that arise out of, are based upon, or relate to both (i) the allegations, transactions, facts, activities, matters or occurrences, conduct, representations, or omissions involved, set forth, or referred to in the Action and (ii) the purchase or acquisition of GigaCloud Stock during the Class Period. Released Plaintiffs' Claims shall not include claims to enforce the Settlement. *See* Stipulation ¶1(gg). Also, upon the Effective Date of the Settlement, Defendants will forever release all Released Defendants' Claims against the Released Plaintiff Parties.

Released Defendants' Claims are all claims related to the institution, prosecution, or settlement of the claims against Defendants. *See* Stipulation ¶1(ee).

## IV.    PLAINTIFFS' PROPOSAL TO NOTIFY MEMBERS OF THE PROPOSED SETTLEMENT CLASS OF THE PROPOSED SETTLEMENT

63.    Plaintiffs have retained Strategic Claims Services ("SCS" or the "Claims Administrator") as the proposed Claims Administrator to supervise and administer the notice procedure as well as the processing of claims. Plaintiffs retained SCS only after requesting proposals from reputable claims administration firms with substantial experience administering securities class action settlements. Co-Lead Counsel reviewed the proposals received in response, of which SCS's was the most cost-effective option. In light of that, and SCS's experience in the field, Co-Lead Counsel selected SCS to serve as claims administrator subject to court approval. If the Court so approves, Plaintiffs will instruct the Claims Administrator to disseminate copies of the Postcard Notice by mail, to publish the Summary Notice, and to post the Notice and Claim Form on the Settlement website. Under the guidance of Co-Lead Counsel, SCS will process claims and provide Claimants with a reasonable opportunity to cure deficiencies in their claims. The Claims Administrator will audit the claims received and evaluate the proposed distribution according to the Plan of Allocation, and Co-Lead Counsel will move the Court for an order of distribution permitting checks to be mailed to eligible claimants. Attached as **Exhibit C** hereto is a document containing a summary of SCS's qualifications, the curriculum vitae of its President and founder, Paul Mulholland, and a brochure regarding its experience, staff, and the services it provides.

64.    The Postcard Notice, attached as Exhibit A-4 to the Stipulation, will provide potential Class Members with information about the terms of the Settlement and contains, among other things: (i) a description of the Action and the Settlement, including the Class Period; (ii) the

average recovery per eligible share before expenses and other Court-ordered deductions; (iii) an explanation of Settlement Class Members' rights to participate in the Settlement; (iv) an explanation of Settlement Class Members' rights to object to the Settlement, the Plan of Allocation, and/or the fee and expense motion, or exclude themselves from the Settlement Class; and (v) the manner for submitting a Claim Form in order to be eligible for a payment from the net proceeds of the Settlement. The Postcard Notice also informs Settlement Class Members of Co-Lead Counsel's intention to apply for an award of attorneys' fees in an amount not to exceed 33.4% of the Settlement Amount, plus accrued interest, and for payment of litigation expenses in an amount not to exceed $120,000, plus accrued interest.

65.    The Postcard Notice also directs Settlement Class Members to the Settlement website, where the "long-form" Notice and the Claim Form, attached as Exhibits A-1 and A-2 to the Stipulation, respectively, will be posted. The Notice contains all information required by Rule 23(c)(2) of the Federal Rules of Civil Procedure, as it states (i) the nature of the Action (Notice, Question 2); (ii) the definition of the Settlement Class (*id.*, Questions 5-6); (iii) the claims asserted on behalf of the Settlement Class (Notice, Question 2); (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires (*id.*, Question 16); (v) that the Court will exclude from the Settlement Class any member who requests exclusion (*id.*, Questions 6, 13); (vi) the time and manner for requesting exclusion (*id.*, Question 13); and (vii) the binding effect of a class judgment on members under Rule 23(c)(3) (*id.*, Question 14).

66.    The Notice also contains all information required by the PSLRA (15 U.S.C. § 78u-4(a)(7)), specifically: (i) the amount of the settlement proposed to be distributed to Settlement Class, determined in the aggregate and on an average per share basis (Notice at 1); (ii) a statement concerning the issue or issues on which the parties disagree, given that they do not

agree on the average amount of damages per share that would be recoverable if Plaintiffs prevailed on each of their claims (*id.* at 3 and Question 4); (iii) a statement indicating which parties or counsel intend to apply to the court for an award of attorneys' fees or costs, the amount of fees and costs that will be sought (including on an average per share basis), and a brief explanation supporting the fees and costs sought (*id.* at 2 and Question 17); (iv) identification of counsel for the Settlement Class who will be reasonably available to answer questions from Settlement Class Members concerning any matter contained in the Notice (*id.* at 4); and (v) a brief statement explaining the reasons why the parties are proposing the Settlement (*id.*, Question 4).

67.    If the [Proposed] Preliminary Approval Order (attached as Exhibit A to the Stipulation) is entered in the form submitted herewith, the Claims Administrator will commence mailing the Postcard Notice within ten (10) business days after entry of the [Proposed] Preliminary Approval Order (the "Notice Date") by first-class mail to all Settlement Class Members who can be identified with reasonable effort, and will cause the Notice and Claim Form, among other documents, to be posted on the Settlement website. In addition, not later than fourteen (14) calendar days after the Notice Date, the Claims Administrator shall cause the Summary Notice to be published once in *Investor's Business Daily* and once over a national newswire service.

68.    The [Proposed] Preliminary Approval Order also provides that, for the purposes of identifying and providing notice to the Settlement Class, within ten (10) business days of entry of the Preliminary Approval Order, GigaCloud will, at its own expense, provide or cause to be provided to Co-Lead Counsel a list (consisting of names, mailing addresses, and email addresses, if available) of the holders of GigaCloud Stock during the Class Period in electronic format, such as Excel.

69.     Further, the [Proposed] Preliminary Approval Order provides that nominees who purchased or otherwise acquired GigaCloud Stock during the Class Period for beneficial owners shall send copies of the Postcard Notice to such beneficial owners or provide a list of such beneficial owners, with contact information, to the Claims Administrator, which will then send copies of the Postcard Notice to those persons or entities.

70.     Plaintiffs and Co-Lead Counsel believe that the proposed notice procedure, which is common in securities class actions, meets the requirements of Federal Rule of Civil Procedure 23 and due process, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons or entities entitled thereto.

## V.    RISKS FACED BY PLAINTIFFS IN THE ACTION

71.     The proposed Settlement eliminates significant risks posed by continuing litigation, including the potential risk that the Settlement Class would recover nothing or an amount significantly less than the $2.75 million negotiated here. Further, while Plaintiffs believe that the claims asserted against Defendants are meritorious, they recognize that there are significant hurdles to overcome to establish the falsity and materiality of the alleged misstatements and that Defendants acted with scienter. Plaintiffs are faced with considerable risks and obstacles to achieving a greater recovery, were the case to continue. Plaintiffs and Co-Lead Counsel carefully considered these challenges during the months leading up to mediation and were mindful of such risks during settlement discussions with Defendants. In addition, even if Plaintiffs were able to overcome the risks to establishing falsity and scienter, they faced very serious risks in proving loss causation and damages.

**A.      Risks Concerning Liability**

72.      Defendants would almost certainly argue at summary judgment and trial that the alleged misstatements or omissions concerning the Company's use of AI were not materially false and misleading.

73.      First, Defendants would likely argue that there is no single, authoritative definition of "AI" and thus that the Registration Statement could not have given investors a false or misleading understanding of the Company's technology. *See* ECF No. 83 at 10 n.9.

74.      Second, Defendants would likely argue, as they did at the pleading stage, that the Registration Statement represented that GigaCloud's "various business operations were supported by 'multiple' technology systems, of which AI and [machine learning] were only but one part," and thus that statements concerning AI were of limited scope and significance. ECF No. 96 at 9.

75.      Third, Defendants would likely contend, echoing their arguments for dismissal, that the Registration Statement "provided no detail about how sophisticated [GigaCloud's] technology was," and thus could not have misrepresented the sophistication of that technology. *Id.* at 11.

76.      Fourth, Defendants would likely argue that the Registration Statement's representations concerning AI were *true*, and that GigaCloud did use AI in its logistics operations. This dispute would likely lead to a "battle of the experts" wherein Defendants would proffer an expert to opine that the software used in GigaCloud's logistics operations constituted AI, and Plaintiffs would proffer an expert to opine that it did not. The outcome of this dispute would be inherently uncertain, posing an existential risk to Plaintiffs' claims.

77.      Fifth, Defendants would likely argue that the alleged misstatements were not material to investors, and Plaintiffs faced the risk that they would be unable to prove materiality.

78.      For these reasons, Plaintiffs faced a substantial risk that the Court or a jury would have concluded that the alleged misstatements were not materially false or misleading.

### B.    Risks Related to Loss Causation and Damages

79.    Even if Plaintiffs overcame the above risks and successfully established liability, Defendants would likely argue that there are no recoverable damages or that damages are minimal.

80.    Plaintiffs' consulting damages expert has estimated that maximum aggregate classwide damages are approximately $75 million. This figure encompasses all claims asserted in the Second Amended Complaint, which – as noted above – asserted a Class Period of August 18, 2022 to May 22, 2024, both dates inclusive, ending with the release of the Grizzly Report. With respect to the Exchange Act claims asserted therein, the Second Amended Complaint alleges that the false and misleading nature of Defendants' alleged misstatements was revealed on two dates: (1) September 28, 2023, when the Culper Report was published, and (2) May 22, 2024, when the Grizzly Report was published. Second Amended Complaint ¶¶402-11. The Second Amended Complaint alleged that the Grizzly Report revealed the falsity of Defendants' alleged misstatements concerning activity on GigaCloud Marketplace, but the Court dismissed those claims (which were the entirety of Plaintiffs' claims under the Exchange Act). Thus, the maximum damages estimate of $75 million reflects claims that were dismissed by the Court. Indeed, the large majority of this $75 million estimate relates to Plaintiffs'' Exchange Act claims, which the Court dismissed. Further, this estimate does not account for the effect of non-fraud-related company-specific information that may have been disclosed contemporaneously with the alleged corrective disclosures.

81.    Plaintiffs' consulting damages expert has estimated that maximum aggregate classwide damages for the shorter class period alleged in the Amended Complaint (ending on September 28, 2023) range from $14.7 million to $23.8 million for the Exchange Act claims. This estimate also does not account for the effect of non-fraud-related company-specific information

that may have been disclosed contemporaneously with the alleged corrective disclosure. Further, as already noted, the Court dismissed all of Plaintiffs' Exchange Act claims.

82.     Plaintiffs' consulting damages expert has estimated that maximum aggregate classwide damages for Plaintiffs' Securities Act claims range from $20.81 million to $23.78 million, applying the statutory calculation set forth in 15 U.S.C. § 77k(e). It must be noted that the entirety of these damages estimates for the Exchange Act claims and for the Securities Act claims cannot be added together, as that would reflect double recovery for share purchases eligible under both statutes.

83.     Though loss causation is not an element of a Section 11 claim, and thus need not be affirmatively pleaded (*see* ECF No. 117 at 17), the Securities Act would permit Defendants to assert as an affirmative defense that declines in the price of GigaCloud Stock were unrelated, in whole or in part, to the alleged misstatements, and to that extent are not recoverable. 15 U.S.C. § 77k(e).

84.     Indeed, when moving to dismiss both the Amended Complaint and the Second Amended Complaint, Defendants argued that Plaintiffs' "alleged losses could not have been caused by the alleged misstatements." ECF No. 96 at 22; *see also* ECF No. 83 at 18 (same). In their motion to dismiss the Amended Complaint, Defendants argued that any price declines following publication of the Culper Report were unrelated to any alleged misstatements concerning AI because, inter alia, only "38 words in the 27-page short-seller report" related to AI, and that  "investors and analysts who commented on the short-seller report focused on the report's other unsubstantiated and now-disproven claims . . . rather than the report's few passing words about AI," which "severs any causal link between the alleged misstatements and the drop in stock prices." ECF No. 83 at 18, 20-21.

85.    Defendants also argued that both the Culper Report and the Grizzly Report merely "'expressed negative opinions about [the Company]' based on public information," and thus did not reveal anything new. ECF No. 96 at 22 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013)).

86.    Further, Defendants argued that because both the Culper Report and the Grizzly Report were published by short-sellers with a "disclosed financial interest in driving down GigaCloud's stock price and have expressly disclaimed 'as to the accuracy, timeliness, or completeness of any [representation] or with regard to the results to be obtained from its use,'" it is implausible "that investors viewed these short-seller reports as revealing the falsity of any prior statements." *Id.* at 23-24 (citing *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 540-42 (9th Cir. 2024); *In re LexinFintech Holdings Ltd. Sec. Litig.*, 2021 WL 5530949, at *16 (D. Or. Nov. 24, 2021)).

87.    Defendants would also likely contend that because GigaCloud's stock price declined below the $12.25 IPO price early in the Class Period, before either of the corrective disclosures that Plaintiffs pleaded with respect to their Exchange Act, the price decline was unrelated to the alleged false statements.

88.    In addition, Defendants argued that "[e]ven though the releases of the reports were each followed by a same-day drop in GigaCloud's stock price, the price quickly rebounded once investors saw that the headline was not supported by any reliable facts," and that this, also, "severs any causal link between the alleged misstatements and the drop in stock prices." ECF No. 96 at 24. This presented another risk to Plaintiffs' ability to prove loss causation and damages.

89.    Defendants would almost certainly repeat these and similar arguments at class certification, summary judgment, and/or trial, and would proffer expert evidence purporting to establish that declines in the price of GigaCloud Stock were unrelated to the alleged misstatements.

Plaintiffs would then be compelled to proffer their own expert evidence to rebut Defendants' evidence. The outcome of this "battle of the experts" would be inherently uncertain, posing a risk to Plaintiffs' ability to recover anything for the Settlement Class. At the very least, it could lead to a sharp reduction in damages.

90.     Of course, even a reduced damages amount assumes that Plaintiffs could prove liability, which, as explained above, is far from certain. Indeed, to recover any damages at trial, Plaintiffs would have to prevail at many stages in the litigation—namely, at class certification, summary judgment, and trial—and, even if Plaintiffs prevailed at those stages, appeals would likely follow. At each of these stages, there would be significant risks attendant to the continued prosecution of the Action, and there is no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

## VI.    THE PLAN OF ALLOCATION

91.     Pursuant to the [Proposed] Preliminary Approval Order, and as set forth in the Notice (attached to the Stipulation as Exhibit A-1), all Class Members who wish to participate in the distribution of the Net Settlement Fund must submit a valid Claim Form, including all required information, that is postmarked no later than 90 days after the Notice Date. As provided in the Notice, after deduction of Court-awarded attorneys' fees and expenses, Notice and Administration Costs, and Taxes and Tax Expenses, the balance of the Settlement Fund will be distributed according to the Plan of Allocation, if approved by the Court.

92.     The proposed Plan of Allocation, which is set forth in full in the Notice (Stipulation, Exhibit A-1), was designed to achieve an equitable and rational distribution of the Net Settlement Fund, but it is not a damages analysis that would be submitted at trial. Co-Lead Counsel developed the Plan of Allocation in close consultation with Plaintiffs' consulting damages expert and believes

that the plan provides a fair and reasonable method for equitably distributing the Net Settlement Fund among Authorized Claimants.

93.    In developing the Plan of Allocation, Plaintiffs' consulting damages expert calculated the estimated amounts by which the price of GigaCloud Stock declined in response to the alleged corrective disclosures. In calculating these amounts, Plaintiffs' expert considered the amount by which the price of GigaCloud Stock declined relative to the broader market and GigaCloud's industry.

94.    Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase of GigaCloud Stock during the Class Period consistent with the measure of damages under the Securities Act. Co-Lead Counsel determined that applying the statutory measure of damages under the Securities Act was appropriate because only Plaintiffs' Securities Act claims survived the motions to dismiss the Second Amended Complaint.

95.    The Claims Administrator, under Co-Lead Counsel's direction, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's total Recognized Claim compared to the aggregate Recognized Claims of all Authorized Claimants. Calculation of Recognized Claims will depend upon several factors, including when the Authorized Claimant purchased GigaCloud Stock during the Class Period, whether the securities were sold and, if so, when.

96.    Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will distribute the Net Settlement Fund. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund after six (6) months from the date of initial distribution, Co-Lead Counsel will, if cost effective, re-distribute

the balance among Authorized Claimants who have cashed their checks. These re-distributions will be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute. Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not cost effective to reallocate, after payment of any outstanding Notice and Administration Costs or Taxes and Tax Expenses, will be contributed to a 501(c)(3) non-profit organization(s) unaffiliated with the Parties or their counsel, and approved by the Court.

97.    In sum, the proposed Plan of Allocation, developed in consultation with Plaintiffs' consulting damages expert, is designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants. Accordingly, Plaintiffs and Co-Lead Counsel believe the proposed Plan of Allocation is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

## VII.    CO-LEAD COUNSEL

98.    Pomerantz and The Rosen Law Firm are nationally recognized securities litigation firms. Their attorneys are highly experienced in this area of the law and have proven themselves time and again to be successful investor advocates. Their knowledge and experience benefited Plaintiffs and the Settlement Class in this case, as evidenced by the recovery they achieved.

99.    Additional information about each firm's experience is contained within the attached firm resumes:

> **Exhibit A** – Attached hereto as Exhibit A is a true and correct copy of Pomerantz's resume; and
>
> **Exhibit B** – Attached hereto as Exhibit B is a true and correct copy of The Rosen Law Firm's resume.

## VIII.    ADDITIONAL EXHIBIT

100.    Pursuant to Paragraph 4(D) of the Court's Individual Rules and Practices in Civil Cases, attached as **Exhibit D** hereto is a true and correct copy of *Waterford Twp. Police & Fire*

*Ret. Sys. v. Smithtown Bancorp, Inc.*, 2015 U.S. Dist. LEXIS 73276 (E.D.N.Y. Apr. 17, 2015), which is cited in the memoranda of law filed herewith.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of June, 2025.

*/s/ Jonathan D. Park*
Jonathan D. Park