# EXHIBIT D

# Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.

United States District Court for the Eastern District of New York

April 17, 2015, Decided; April 17, 2015, Filed

No. 10-CV-864 (SLT) (RER)

**Reporter**

2015 U.S. Dist. LEXIS 73276 *

WATERFORD TOWNSHIP POLICE & FIRE RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, Plaintiffs, VERSUS SMITHTOWN BANCORP, INC., ET AL., Defendants.

**Subsequent History:** Adopted by, Settled by Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc., 2015 U.S. Dist. LEXIS 73025 (E.D.N.Y., June 3, 2015)

**Prior History:** Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc., 2011 U.S. Dist. LEXIS 88552 (E.D.N.Y., May 31, 2011)

**Counsel:** [*1] For Waterford Township Police & Fire Retirement System, individually and On behalf of all others similarly situated, Plaintiff: David A. Rosenfeld, Mario Alba, Jr., Samuel H. Rudman, Robbins Geller Rudman & Dowd, LLP, Melville, NY.

For Smithtown Bancorp, Inc., Bradley E. Rock, Anita M. Florek, Defendants: William M. Regan, LEAD ATTORNEY, Katten Muchin Rosenman LLP, New York, NY.

**Judges:** Ramon E. Reyes, Jr., United States Magistrate Judge. the Honorable Sandra L. Townes, United States District Judge.

**Opinion by:** Ramon E. Reyes, Jr.

## Opinion

**REPORT AND RECOMMENDATION**

**to the Honorable Sandra L. Townes, United States District Judge**

**Ramon E. Reyes, Jr., U.S.M.J.**:

**INTRODUCTION**

Waterford Township Police & Fire Retirement System ("Waterford") and Michael L. Cox ("Cox") (collectively, "Plaintiffs") brought this putative class action against Smithtown Bancorp, Inc. ("Smithtown"), People's United Financial, Inc. ("People's Financial") and People's United Bank ("People's Bank") (collectively, "People's United"),[1] Bradley E. Rock ("Rock"), and Anita M. Florek ("Florek") (collectively, "Defendants") alleging violations of the

---

[1] It should be noted that the Second Amended Complaint only lists People's Financial as a defendant and alleges that it is the holding company for People's Bank. (Compl. ¶ 10.) To further complicate matters, no proof of service nor waiver of same was ever filed for People's Financial or People's Bank. However, the motion papers, as well as the Settlement Agreement submitted to the Court lists both People's Financial and People's Bank as Defendants who are participating in the settlement of this matter. (Dkt. Nos. 79, 80.) Accordingly, I will treat all five parties as the settling Defendants.

Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and the rules promulgated thereunder by the Securities **[*2]** Exchange Commission, 17 C.F.R. § 240.10b-5. (Dkt. No. 40 ("Compl.").) Plaintiffs allege that Smithtown engaged in unsafe and unsound banking practices, which led to artificially inflated prices of Smithtown common stock, purchased by Plaintiffs and putative class members, and whose price subsequently declined following adverse disclosures. Plaintiffs seek compensatory damages, attorney's fees, and costs on behalf of themselves and the putative class. (Compl.)

As a result of significant motion practice and arms-length negotiations led by mediator Jed Melnick, Esq., the parties reached a settlement totaling $1,950,000.00, **[*3]** or approximately $0.18 per damaged share. (Dkt. Nos. 79, exh. A ("Pls.' Mem."); 80, exh. A-1 ("Proposed Notice") at 2.) Plaintiffs now seek the Court's preliminary approval of the Settlement Agreement and its accompanying notice, as well as class certification for settlement purposes. (Pls.' Mem.) On January 13, 2015 Your Honor referred Plaintiffs' unopposed motion for preliminary approval of the settlement to me for a report and recommendation. (Dkt. No. 81.) Based on the following reasons I respectfully recommend that Your Honor preliminarily approve the Settlement Agreement and accompanying notice, as well as certify the class for settlement purposes only.

## DISCUSSION

### I. Settlement Class Certification

Rule 23 of the Federal Rules of Civil Procedure does not explicitly provide for certifying a class for purposes of settlement only, however Rule 23(d) authorizes the Court to "issue orders that . . . determine the course of proceedings . . . ." FED. R. CIV. P. 23(d)(1)(A). Courts in this Circuit have interpreted this to allow the certification of settlement-only classes. *See Bondon v. Domino's Pizza, LLC*, No. 09-CV-2941 (SLT) (RLM), 2014 U.S. Dist. LEXIS 99868, 2014 WL 3605507, at * 3 (E.D.N.Y. Jun. 25), *adopted by*, 2014 U.S. Dist. LEXIS 98026, 2014 WL 3566076 (E.D.N.Y. Jul. 18, 2014); *Chin v. RCN Corp.*, No. 08 Civ. 7349 (RJS) (KNF), 2010 U.S. Dist. LEXIS 31272, 2010 WL 1257586, at *2 (S.D.N.Y. Mar. 12), *adopted by*, 2010 U.S. Dist. LEXIS 31302, 2010 WL 1257594 (S.D.N.Y. Mar. 29, 2010). "Before certification is proper for any purpose—settlement, **[*4]** litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). "Rule 23(a) and (b) standards apply equally to certifying a class action for settlement or for trial, with one exception." MANUAL FOR COMPLEX LITIGATION § 21.132 (4th ed. 2004). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems [under Rule 23(b)(3)(D)]." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

Plaintiffs seek certification of the following settlement class: "[A]ll [p]ersons who purchased [Smithtown] common stock during the period from March 13, 2008, through and including February 1, 2010." (Dkt. No. 80 ("Settlement Agreement")). The Court finds, preliminarily and for purposes of settlement, that the prerequisites of Federal Rule of Civil Procedure 23(a) and (b)(3) have been satisfied. "[A] district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met . . . ." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41. (2d Cir. 2006). There is an "admonition of liberality toward demands for class suit status in securities litigation . . . ." *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972).

The first prerequisite under Rule 23 is that "the class is so numerous that joinder of all members is impracticable . . . ." FED. R. CIV. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members **[*5]** . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citations omitted). "Class certification is frequently appropriate in securities fraud cases involving a large number of shares traded publicly in an established market." *In re Deutsche Telekom Ag Sec. Litig.*, 229 F. Supp. 2d 277 (S.D.N.Y. 2002); *see also In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997) (finding numerosity met by "a showing that a large number of shares were outstanding and traded during the relevant period" (quoting *Garfinkel v. Memory Metals, Inc.*, 695 F. Supp. 1397, 1401 (D. Conn. 1988) (internal quotation marks omitted))). While the exact number of potential class members is unknown, Smithtown had more than fourteen million outstanding shares of common stock during the proposed

class period that were traded on the NASDAQ. (Compl. ¶ 16.) Plaintiffs, therefore, have established that joinder is impracticable and that this proposed class satisfies the numerosity requirement.

The next requirement under Rule 23 is that "there are questions of law or fact common to the class . . . ." FED. R. CIV. P. 23(a)(2). "[C]ommonality 'does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment.'" *Cutler v. Perales*, 128 F.R.D. 39, 44 (S.D.N.Y. 1989) (quoting *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986)). Plaintiffs have raised a number of common issues of law and fact, including, but not limited to:

• Whether Smithtown's public filings "overstated its **[*6]** operating results and fostered a materially misleading impression about the true state of [Smithtown]'s financial well-being." (Compl. ¶ 2.)

• Whether representations made by Defendants during the proposed class period were materially false and misleading. (*Id.* ¶ 62.)

• Whether Defendants knew or recklessly disregarded the falsity and misleading nature of the information they caused to be disseminated to the investing public. (*Id.* ¶ 165.)

• Whether these materially false and misleading statements and failures to disclose caused Smithtown common stock to be traded at artificially inflated prices during the class period whereby Plaintiffs and proposed class members acquired this stock relying on the integrity of the market price and information, and have been damaged thereby. (*Id.* ¶ 161.)

These questions concerning Defendants' liability and potential class members' entitlement to damages under the securities laws apply to all potential class members and satisfies the requirement of commonality under Rule 23. *See In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. at 40.

The third prerequisite under Rule 23 is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3). A claim is typical where "each **[*7]** class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). Here, the proposed class members have been allegedly harmed by the same course of Defendants' conduct as Plaintiffs. Namely, Plaintiffs and the proposed class members purchased Smithtown stock at a price that was artificially inflated by the distribution of false and misleading information by Defendants. Plaintiffs, therefore, have satisfied the typicality prong. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (finding typicality met where purported class members harmed by defendants' conduct that caused inflated stock prices).

The fourth requirement under Rule 23 is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000). With respect to the first prong of this requirement, Plaintiffs' claims arise from the same wrongful conduct as the proposed class members' claims arise and these claims are also based on the same **[*8]** legal theories. [p]laintiffs' interests, therefore, are not antagonistic to the interest of other members of the class, as they align. *See Darquea v. Jarden Corp.*, No. 06 Civ. 722 (CLB), 2008 U.S. Dist. LEXIS 17747, 2008 WL 622811, at *3 (S.D.N.Y. Mar. 6, 2008) ("All claims alleged arise from the same wrongful conduct, and thus, Plaintiff's interests, recouping money invested, are similar to those of the proposed class. As such, named [p]laintiffs will fairly and adequately protect the interests of the class.").

Plaintiffs' attorneys are from the firm of Robbins Geller, which, as the firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, served as sole lead counsel in *In re Enron Corp. Securities*, 529 F. Supp. 2d 644 (S.D. Tex. 2006). In that litigation "[t]he Court found counsel to be highly qualified, widely experienced in securities class actions, and competent to conduct litigation . . . ." *Id.* at 675. After a review of Plaintiffs counsel's firms' resume, it is evident that

Plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation in satisfaction of this prong. The fourth requirement under Rule 23 is thus met.

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc.*, 521 U.S. at 614. Plaintiffs request that the Court certify the settlement class pursuant to Rule 23(b)(3), which allows **[*9]** for a class action to be maintained if, along with Rule 23(a)

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

FED. R. CIV. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

Plaintiffs allege that Defendants distributed false information to the public that artificially inflated Smithtown stock prices, which proposed class members relied upon. (Compl. ¶¶ 161, 165.) The same legal and factual questions would be present in each potential class member's suit, and such questions could be achieved through generalized proof. *See Darquea*, 2008 U.S. Dist. LEXIS 17747, 2008 WL 622811, at *13 ("The Complaint alleges that [d]efendants engaged in a scheme to release material misrepresentations **[*10]** and omitting important investor information, resulting in artificially inflated prices. Such action constitutes a 'common course of conduct', and each class member, if they were to bring individual actions, would be required to prove the existence of the alleged activities of the [d]efendants in order to prove liability." (citing *In re Blech*, 187 F.R.D. 97, 107 (S.D.N.Y.1999))). Where, as here, "[securities] fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues." *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246, 1999 WL 1021819, at *10 (E.D.N.Y. Apr. 23, 1999) (citing *In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 171 (S.D.N.Y.1997)). It is clear that common issues regarding Defendants' conduct in this case predominate over any individual issues.

The second inquiry under Rule 23(b)(3) is whether a class action is the superior method for adjudicating the controversy. The rule specifically provides four factors to inform such a determination:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely **[*11]** difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3)(A)-(D).

Potential class members' interest in individually controlling the prosecution of separate actions appears to be relatively low. "Most violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible." *In re Blech Sec. Litig.*, 187 F.R.D. at 107. Although a large number of individuals may have been injured by Defendants, it does not appear that any one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf. The cost and expense of individual actions when compared to the potential individual recoveries appears to be prohibitive.

Regarding the second factor, Plaintiffs are not aware of any similar lawsuits concerning this controversy that are pending. (Pls.' Mem. at 21.) The third factor of the desirability or undesirability of concentrating the litigation of the claims in the particular forum appears to be neutral in this matter. While Smithtown primarily served the Eastern

District of New York with its banking services, **[\*12]** *see* compl. ¶ 2, the effect of the alleged violations of federal securities law has national and widespread impact; especially because the stock was nationally traded. It is not evident from the complaint, nor Plaintiffs' motion papers that this forum would be more or less desirable than any other forum.

Finally, this action appears to be typical of other actions pursuing federal securities law violations within this Circuit. As such, the likely difficulties in managing a class action such as the one proposed here seem fairly minimal. In sum, given the predominance of common issues and the impracticability of addressing potential class action members' claims in individual actions, Plaintiffs have satisfied the superiority requirement of Rule 23(b)(3). Accordingly, I respectfully recommend that the settlement class be certified.

## II. Appointment of Class Counsel

Rule 23(g)(1) requires that "a court that certifies a class must appoint class counsel." Rule 23(g) requires courts to consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge **[\*13]** of the applicable law; and

(iv) the resources that counsel will commit to representing the class;

FED. R. CIV. P. 23(g)(1)(A).

To date, Plaintiffs' counsel has done substantial work in prosecuting this matter, including defending against two motions to dismiss by Defendants. (*See* Dkt. Nos. 27, 4.) As explained above, Plaintiffs' counsel is experienced in handling class actions, specifically those involving securities fraud. (*See* Dkt. No. 79, exh A.) After reviewing the attorneys' biographies, I am satisfied that they have knowledge of the applicable law. For example, Ellen Gusikoff Stewart is a partner who works on the firms' complex securities actions. (*Id.*) The work Plaintiffs' counsel has performed in litigating and settling this case demonstrates their commitment to representing the class. Accordingly, I respectfully recommend that Ellen Gusikoff Stewart, Esq., Evan Jay Kaufman, Esq., and Samuel H. Rudman, Esq. of Robbins Geller Rudman & Dowd, LLP be appointed as Settlement Class Counsel as they satisfy the requirements of Rule 23(g).

## III. Preliminary Approval of Settlement

Plaintiffs seek the preliminary approval of the Stipulation and Agreement of Settlement ("Settlement"). The Settlement provides **[\*14]** that Defendants will establish a fund (the "Settlement Fund") totaling $1,950,000.00. (Dkt. No. 80 ("Settlement") ¶ 1.23.) From the Settlement Fund attorneys' fees and expenses, class notice and administration costs, taxes and tax expenses, and any other Court-approved fee or expense will be deducted to yield the Net Settlement Fund.[2] (*Id.* ¶¶ 1.13, 6.4.) The Net Settlement Fund will be divided on a *pro rata* basis among class members who are deemed "Authorized Claimants," meaning that they submit a timely and valid Proof of Claim and Release form to the Claims Administrator,[3] who, in accordance with the Plan of Distribution, determines their allocation. (*Id.* ¶¶ 1.1, 6.6, 6.8.) Authorized Claimants who would receive a distribution of less than $10.00 will not receive a distribution. (*Id.* ¶ 6.8.)

---

[2] Prior to final approval of the Settlement, Lead Counsel seeks, as part of the Settlement, to be authorized to pay from the Settlement Fund up to $200,000.00 in notice and administration costs and fees. (Settlement ¶ 3.6.)

[3] The Settlement provides that Gilardi & Co. LLC shall serve as Claims Administrator and shall assist in the Notice and Settlement claims administration process. (Settlement ¶ 1.2.) **[\*15]**

Defendants do not have a reversionary interest in the Net Settlement Fund. (*Id.* ¶ 6.9). If there is a balance remaining in the Net Settlement Fund at least six months after the date of the initial distribution, the balance will be distributed on a *pro rata* basis among Authorized Claimants who negotiated the initial distribution. (*Id.*) These distributions will continue until "the Net Settlement Fund is *de minimis* and such remaining balance shall then be donated to an appropriate nonprofit organization designated by Lead Counsel." (*Id.*)

Attorney's fees are to be paid out of the Settlement Fund. (*Id.* ¶¶ 1.13, 6.4.) Lead Counsel will make one or more applications to the Court for the award of attorney's fees, as well as costs, charges, and expenses related to prosecuting this lawsuit. (*Id.* ¶ 7.1.)

Plaintiffs represent "that there were approximately 10.5 million shares of [Smithtown] common stock which may have been damaged during the Class Period," such that the average recovery would be approximately $0.18 per damaged share prior to the various taxes, fees, and expenses being withdrawn from the Settlement Fund. (Proposed Notice at 2.) They further represent that "Lead Counsel will apply to the Court **[*16]** for an award of attorneys' fees not to exceed thirty percent (30%) of the Settlement Fund, plus costs and expenses not to exceed $55,000.00, plus interest earned on both amounts at the same rate as earned by the Settlement Fund."[4] (*Id.*)

Preliminary approval is the first step in the settlement process, through which the district court determines "whether notice of the proposed settlement pursuant to Rule 23(e) should be given to class members . . . and an evidentiary hearing scheduled to determine the fairness and adequacy of the settlement." 4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.27 (4th ed. 2002). Notwithstanding the general policy favoring settlements, a court may approve a class action settlement only if it is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).

In determining a settlement's fairness, a court must look at both the settlement's terms and the negotiating **[*17]** process leading to settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). "Preliminary approval of settlements should be given if the settlement is the result of serious, informed and non-collusive negotiations and the proposed settlement has no obvious deficiencies, such as giving preferential treatment to class representatives, or granting excessive attorneys fees." *In re Medical X-Ray Film Antitrust Litig.*, No. 93-CV-5904, 1997 U.S. Dist. LEXIS 21936, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997) (citing *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997)).

"In the context of a motion for preliminary approval of a class settlement, the standards are not so stringent as those applied when the parties seek final approval." *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). Preliminary approval may be granted if the court finds that there is "probable cause to submit the [proposed settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980). Preliminary approval of a settlement agreement requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. 4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.25 (4th ed. 2002). If, after a preliminary evaluation of the proposed settlement, the court finds that it "appears to fall within the range of possible approval," the court should order that the class members **[*18]** receive notice of the settlement. *Id.* "In exercising this discretion [to approve a proposed class action settlement], courts should give proper deference to the private consensual decision of the parties," and should bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Clark v. Ecolab, Inc.*, Nos. 04-CV-4488, 06-CV-5672, 07-CV-8623, 2009 U.S. Dist. LEXIS 108736, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted).

In assessing procedural fairness, there is a "presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement is reached in arm's-length negotiations between experienced, capable counsel

---

[4] The Settlement does not explicitly state that Lead Counsel will not seek attorney's fees greater than 30% of the Settlement Fund, however such information is contained within the Proposed Notice, which the parties incorporated by reference as an attachment to the Settlement. (*See* Settlement ¶ 9.5.)

after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (alteration omitted) (internal quotation marks omitted). Here the class settlement in principle was the result of an in-person mediation with Jed Melnick, Esq. on October 23, 2014. (Pls.' Mem. at 2.) Despite Plaintiffs' representation to the Court that "[d]iscovery had yet to start . . . [and] a great deal of discovery had to occur prior to summary judgment . . . ." it is clear from the litigation that counsel involved in the settlement is knowledgeable about the facts and the law involved in this case. (*Id.* at 6.)

The mediation **[*19]** occurred after four and one-half years of litigation, including two motions to dismiss, one motion to strike, two amended complaints, as well as one pending motion for interlocutory appeal. (*See generally* Dkt.) I am satisfied that Plaintiffs' counsel possessed the experience and ability to satisfactorily represent the class' interest. *See Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 69 (S.D.N.Y. 2014). Accordingly, the Settlement is entitled to a presumption of fairness, reasonableness, and adequacy. *See In re Initial Pub. Offering Litig.*, 260 F.R.D. 81, 117 (S.D.N.Y. 2009) (granting preliminary approval of settlement where "a vast amount of additional factual and expert discovery remains" because "parties ha[d] a 'thorough understanding of their case' prior to settlement").

Further, the Second Circuit has noted that a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato*, 236 F.3d at 85. Plaintiffs and Defendants assert that the settlement was "negotiated in good faith at arm's length by the Parties . . . ." (Settlement ¶ 9.2.) There is no indication that the settlement was the product of collusion. The assistance of an experienced mediator, Jed Melnick, Esq. of JAMS, reinforces that the Settlement is non-collusive. *See Hernandez v. Anjost Corp.*, No. 11-CV-1531 (AT), 2013 U.S. Dist. LEXIS 116048, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013). A settlement like **[*20]** this one, reached with the help of a third-party neutral, enjoys a "presumption that the settlement achieved meets the requirements of due process." *See Johnson v. Brennan*, 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011) (citations omitted).

Turning to the terms of the Settlement, it should be noted that "[a]t preliminary approval, it is not necessary to exhaustively consider the [*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d. Cir. 1974)] factors applicable to final approval." *In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2014 U.S. Dist. LEXIS 96457, 2014 WL 3500655, at *12 (S.D.N.Y. Jul. 15, 2014); *see also Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y. 2006) ("Little is gained, however, in applying *Grinnell* at such an early stage since the proposed settlement has yet to be tested in a fairness hearing, after which the court would still be required to 'make[ ] a final determination as to whether the proposed settlement is "fair, reasonable and adequate."" (quoting *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005)). Instead, I will examine whether the Settlement falls within a reasonable range of approval and contains obvious deficiencies.

A reasonable range of approval for a settlement is "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). As Plaintiffs represented, if this case proceeded with the litigation, a motion for interlocutory appeal, full discovery, both **[*21]** expert and fact, a motion for summary judgment, and jury trial with favorable verdict would have to occur before Plaintiffs could potentially recover. (Pls.' Mem. at 6.) Plaintiffs also claim that "possible recovery was zero." (*Id.* at 10.) "The benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery . . . ." especially when Plaintiffs were also facing the possibility of no recovery. *In re AOL Time Warner, Inc.*, No. MDL 1500, 02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS 17588, 2006 WL 903236, at*13 (S.D.N.Y. Apr. 6, 2006). "The concrete benefits of this Settlement outweigh the possibility of a higher recovery after trial." *Id.* Therefore, at this preliminary stage, the Settlement appears to be within "the reasonable range of approval." *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457, 2014 WL 3500655, at *11 (quoting *In re Nasdaq Antitrust Litig.*, 176 F.R.D. at 102).

Furthermore, in my review of the Settlement, I have not found any "obvious deficiencies" warranting denial of preliminary approval status. No evidence exists that the proposed settlement affords the class representative or any portion of the class "improper[ ] . . . preferential treatment." *Id.* In fact, the Settlement does not afford Plaintiffs any additional compensation or benefits over and above what they would receive as class members.

The Settlement does not provide for a specific **[\*22]** amount of attorney's fees, but notes that counsel will apply to the Court for an award of attorney's fees. (Settlement ¶¶ 1.13, 6.4, 7.1.) The Proposed Notice indicates that the "award of attorneys' fees [is] not to exceed thirty percent (30%) of the Settlement Fund, plus costs and expenses not to exceed $55,000.00, plus interest earned on both amounts at the same rate as earned by the Settlement Fund." (Proposed Notice at 2) "District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 9194 (CM), 2010 U.S. Dist. LEXIS 125945, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010); *see also Karvaly*, 245 F.R.D. at 86 ("A maximum fee of one-third of the Settlement Fund is a bit on the high side of a reasonable fee in the class action context . . . ."); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 n.33 (E.D.N.Y. 2003) (citing seven cases awarding attorney's fees from 22.6% to 34% of recovery to class counsel). The Settlement does not, therefore, grant excessive attorney's fees, but rather caps them and leaves the exact amount to be determined by the Court upon later application. Accordingly, I respectfully recommend that the proposed Settlement be preliminarily approved.[5]

## IV. **Proposed Notice**

Federal Rule of Civil Procedure 23(c)(2)(B) requires that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified **[\*24]** through reasonable effort." The rule further requires that the notice include:

 (i) the nature of the action;
 (ii) the definition of the class certified;
 (iii) the class claims, issues, or defenses;
 (iv) that a class member may enter an appearance through an attorney if the member so desires;
 (v) that the court will exclude from the class any member who requests exclusion;
 (vi) the time and manner for requesting exclusion; and
 (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

In addition to these requirements, the Exchange Act requires that the following additional information be contained in the notice to the class:

• The amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis.

• If the parties do not agree on the average amount of damages per share that would be recoverable by plaintiffs if they prevailed at trial, a statement from each party concerning the issues on which the parties disagree.

• If attorney's fees or costs will be sought from the fund, a statement of who intends to apply for same and the amount that will be sought, including the amount of fees and costs on an average per share **[\*25]** basis, as well as a brief explanation supporting the fees and costs sought.

---

[5] I would, however, like to bring to the attention of the Court that the Plan of Distribution presented along with the Settlement provides that "[n]o distributions will be made **[\*23]** to Authorized Claimants who would otherwise receive a distribution of less than $10.00." (Settlement ¶ 6.8.) Plaintiffs have failed to provide the Court with any explanation as to how this minimum amount was arrived at and what rights these class members may have to pursue litigation on their own. *See In re Gilat Satellite Networks, Ltd.*, No. 02-CV-1510, 2007 U.S. Dist. LEXIS 29062, 2007 WL 1191048, at *9 (E.D.N.Y. Apr. 19, 2007) (approving amended plan of allocation only after parties justified basis for *de minimis* threshold on payable claims). Such minimum claim amount is not an obvious deficiency because a ten dollar minimum claim amount in a securities class action is reasonable. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) (approving $10.00 threshold). "Class counsel are entitled to use their discretion to conclude that, at some point, the need to avoid excessive expense to the class as a whole outweighs the minimal loss to the claimants who are not receiving their *de minimis* amounts of relief." *Id.* That being said, Plaintiffs should substantiate this minimum claim amount in connection with final approval of the Settlement.

• Contact information for one or more of counsel for the plaintiffs who would be available to answer questions from class members.

• A brief explanation as to the reason for settlement.

• Other information as required by the Court.

15 U.S.C. §78u-4(a)(7)(A)-(F).

Plaintiffs submit for approval a Proposed Notice, Proof of Claim and Release (dkt. no. 80, exh. A-2), and Summary Notice (dkt. no. 80, exh. A-3). These documents contain all of the necessary information required by both the Federal Rules of Civil Procedure and the statute. *See Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) ("[T]he notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings'" (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S. Ct. 124, 46 L. Ed. 2d 93 (1975))).

It is not required by law that the Proposed Notice outline the Plan of Allocation. *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. at 119. However, in light of the minimum claim amount included in the Plan of Distribution, I respectfully recommend that Plaintiffs augment the fourth full paragraph on page 15 of the Proposed Notice to include the following language: "As is customary in plans of allocation for securities class action settlements, a *de minimis* **[*26]** threshold is set in order to preserve the overall Settlement Fund from the costs of claims that are likely to exceed the value of those claims. It has been determined by counsel for the parties that $10.00 is a reasonable *de minimis* threshold. An Authorized Claimant that falls into this category may request to be excluded from this action as described in paragraphs 13 through 15 of the Notice or otherwise be bound by the Settlement despite receiving no payment." This language will help to explain to class members the minimum claim amount, as well as its consequences on their rights under the Settlement. *See Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 338 (2d Cir. 2006) (stating notice under Rule 23(c)(2) "need only contain 'information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class.'" (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir.1977))).

Plaintiffs' "[Proposed] Order Preliminarily Approving Settlement and Providing for Notice," as well as the Settlement, sets forth a proposed plan for notification of prospective class members as follows:

• Not later than fourteen (14) calendar days after the execution of the Stipulation, People's United shall provide the Claims Administrator with a list of names **[*27]** and addresses of record holders of Smithtown common stock during the Class Period on the transfer agent's books, in an electronic format acceptable to the Claims Administrator.
• Not later than ten (10) business days after the Court signs and enters this Order (the "Notice Date"), the Claims Administrator shall cause a copy of the Notice and Proof of Claim and Release form, substantially in the forms annexed hereto, to be mailed by First-Class Mail to all Class Members who can be identified with reasonable effort and to be posted on the Settlement website.[6]

• Not later than fourteen (14) calendar days after the Notice Date, the Claims Administrator shall cause the Summary Notice to be published once in the national edition of *Investor's Business Daily* and once over a national newswire service.

• Not later than thirty-five (35) calendar days prior to the Settlement Hearing, Lead Counsel shall serve on Defendants' counsel and file with the Court proof, by affidavit or declaration, of such mailing and publishing. • Nominees who purchased [Smithtown] common stock for the benefit of another Person during the Class Period shall be requested to send the Notice and Proof of Claim and Release form **[*28]** to such beneficial owners of [Smithtown] common stock within ten (10) calendar days after receipt thereof, or send a list of the names and addresses of such beneficial owners to t he Claims Administrator within ten (10) calendar days of receipt

---

[6] The Settlement website is www.smithtownbancorpsecuritieslitigation.com.

thereof, in which event the Claims Administrator shall promptly mail the Notice and Proof of Claim and Release form to such beneficial owners.

(Settlement, exh. A ("Proposed Order") ¶¶ 8, 9; *see also* Settlement ¶ 6.3.)

Rule 23(c)(2)(B) requires that "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" must be directed. Here, the proposed plan is similar to other plans approved in the district. *See In re Gilat Satellite Networks, Ltd.*, 2007 U.S. Dist. LEXIS 29062, 2007 WL 1191048, at *11 (approving mailing notice to shareholders of record as provided by transfer agent, as well as publication in newspaper and on dedicated website); *see also In re Luxottica Grp. S.p.A. Sec. Litig.*, No. 01-CV-3285 (JBW) (MDG), 2005 U.S. Dist. LEXIS 27765, 2005 WL 3046686, at *2 (E.D.N.Y. Nov. 15, 2005) (approving mailing notice and publication in two newspapers). Accordingly, I respectfully recommend that the Court approve the Proposed Notice as amended above ("Amended Proposed Notice"), **[*29]** as well as the Proof of Claim and Release and Summary Notice and direct the Amended Proposed Notice be distributed in the manner set forth above.

## RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the Court:

(1) certify the class for settlement purposes;

(2) appoint Robbins Geller Rudman & David, LLP as Settlement Class Counsel;

(3) preliminarily approve the Settlement;

(4) approve the Proposed Notice as amended above, as well as the Proof of Claim and Release and Summary Notice;

(5) direct the Amended Proposed Notice be distributed in the manner set forth above and within the "[Proposed] Order Preliminarily Approving Settlement and Providing for Notice"; and

(6) schedule a hearing for final approval of the Settlement.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Sandra L. Townes within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

Dated: April 17, 2015

Brooklyn, New York

**SO ORDERED**.

/s/ Ramon E. Reyes, Jr.

Ramon E. Reyes, Jr.

U.S. Magistrate Judge

End of Document