**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GIGACLOUD TECHNOLOGY INC SECURITIES LITIGATION | No. 1:23-cv-10645-JMF |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................. 1

II. SUMMARY OF THE LITIGATION AND SETTLEMENT ................................... 2

    A.         Factual and Procedural Background ................................................................ 2

    B.         Terms of the Settlement .................................................................................. 2

          1.    Cash Consideration and Release ................................................................ 2

          2.    Notice to the Class ..................................................................................... 3

          3.    Exclusions and Objections ......................................................................... 4

          4.    The Plan of Allocation ............................................................................... 4

III. ARGUMENT ........................................................................................................... 5

    A.         The Court Should Grant Final Approval of the Settlement .............................. 5

          1.    The Settlement Is Procedurally Fair .......................................................... 6

          2.    The Settlement Is Substantively Fair ......................................................... 8

                 a.    The Case is Complex and Continued Litigation Will be Protracted and Costly ............................................................................. 9

                b.    The Reaction of the Settlement Class Supports Final Approval .... 11

                c.    Plaintiffs and Co-Lead Counsel Were Sufficiently Informed During Settlement Negotiations ............................................................. 12

                d.    Plaintiffs Faced Risks to Establishing Liability and Damages ....... 13

                e.    The Risks of Maintaining Class Action Status Through Trial ....... 15

                f.    The Settlement Amount is Reasonable in Light of the Best Possible Recovery and Attendant Risks ....................................................... 16

          3.    The Settlement Satisfies the Remaining Rule 23(e) Factors ................... 19

    B.         The Court Should Approve the Plan of Allocation .......................................... 20

    C.         The Court Should Approve the Notice Disseminated to the Settlement Class as Satisfying the Requirements of Rule 23 and Due Process ................................. 23

     D.        The Court Should Certify The Settlement Class.................................................. 24

IV.  CONCLUSION ........................................................................................................... 25

Table of Authorities

**Cases** **Page(s)**

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)................................................................................25

*Arbuthnot v. Pierson,*
   607 F. App'x 73 (2d Cir. 2015) ......................................................9, 23

*Bellifemine v. Sanofi-Aventis U.S. LLC,*
   2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)........................................16

*Cagan v. Anchor Sav. Bank FSB,*
   1990 WL 73423 (E.D.N.Y. May 22, 1990) .........................................19

*Christine Asia Co. v. Yun Ma,*
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)............................. *passim*

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974)............................................... *passim*

*City of Providence v. Aeropostale,*
   2014 WL 1883494 (S.D.N.Y. May 9, 2014) .........................................9

*Doe #1 by Parent #1 v. New York City Dep't of Educ.,*
   2018 WL 3637962 (E.D.N.Y. July 31, 2018).......................................14

*Granada Invs., Inc. v. DWG Corp.,*
   962 F.2d 1203 (6th Cir. 1992) ............................................................18

*Hicks v. Stanley,*
   2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).......................................10

*Hunter v. Blue Ridge Bankshares, Inc.,*
   2025 WL 1649323 (E.D.N.Y. June 11, 2025) ....................................7, 8

*In re "Agent Orange" Prod. Liab. Litig.,*
   611 F. Supp. 1396 (E.D.N.Y. 1985) ...................................................19

*In re Alloy, Inc. Sec. Litig.,*
   2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) .......................................10

*In Re American Bank Note Holographics,*
   127 F. Supp. 2d 418 (S.D.N.Y, 2001)................................................14

*In re AOL Time Warner, Inc.,*
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...............................9, 12, 13

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)..................................................................12, 16

*In re China Sunergy Sec. Litig.*,
    2011 WL 1899715 (S.D.N.Y. May 13, 2011) ......................................................17, 18

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013).....................................................................9, 22

*In re Datatec Sys., Inc. Sec. Litig.*,
    2007 WL 4225828 (D.N.J. Nov. 28, 2007) .................................................................22

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*,
    822 F. App'x 40 (2d Cir. 2020).............................................................................15, 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...............................................................16

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................13, 20

*In re IMAX Securities Litigation*,
    283 F.R.D. 178 (S.D.N.Y., 2012) .....................................................................8, 12, 20

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ................................................................................11

*In re MINISO Grp. Holding Ltd. Sec. Litig.*,
    2024 WL 759246 (S.D.N.Y. Feb. 23, 2024), *reconsideration denied sub nom.*
    *In re Miniso Grp. Holding Ltd. Sec. Litig.,* 2025 WL 965688 (S.D.N.Y. Mar.
    30, 2025) .....................................................................................................................15

*In re OSG Sec. Litig.*,
    2015 WL 3466094 (S.D.N.Y. May 29, 2015) ............................................................15

*In re PPDAI Grp. Inc. Sec. Litig.*,
    2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ..............................................................20

*In re PaineWebber Ltd. Partnerships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)......................15

*In re Petrobras Sec. Litig.*
    No. 14-cv-09662 (S.D.N.Y. 2018)...............................................................................7

*In re Revolution Lighting Techs., Inc. Sec. Litig.*,
    2020 WL 4596811 (S.D.N.Y. Aug. 11, 2020).............................................................11

*In re Sony Corp. SXRD*,
　448 F. App'x 85 (2d Cir. 2011) ...........................................................................................8

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
　2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part*,
　699 F. App'x 8 (2d Cir. 2017) ...........................................................................................21

*In re Veeco Instruments Inc. Sec. Litig.*,
　2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)......................................................................11

*In re Warner Commc'ns Sec. Litig.*,
　618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ...................................12

*In re WorldCom, Inc. Sec. Litig.*,
　388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................................................20

*Kommer v. Ford Motor Co.*
　2020 WL 7356715 (N.D.N.Y. Dec. 15, 2020)....................................................................10

*Lea v. Tal Educ. Grp.*,
　2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021).....................................................................11

*Maley v. Del Glob. Techs. Corp.*,
　186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................................13

*Marsh & McLennan*,
　2009 WL 5178546 (S.D.N.Y. Dec 23, 2009) .....................................................................20

*Morris v. Affinity Health Plan, Inc.*,
　859 F. Supp. 2d 611 (S.D.N.Y. 2012)................................................................................19

*Moses v. New York Times Co.*,
　79 F.4th 235 (2d Cir. 2023) ...........................................................................................6, 8

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
　2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012)....................................................................10

*Rodriguez v. CPI Aerostructures, Inc.*,
　2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023).......................................................................5

*Rodriquez v. It's Just Lunch Int'l*,
　2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020*)* ......................................................................8

*Schutter v. Tarena Int'l, Inc.*,
　2024 WL 4118465 (E.D.N.Y. Sept. 9, 2024) .....................................................................6, 7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
　396 F.3d 96 (2d Cir. 2005)........................................................................................5, 13, 16

v

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)..........................................................................................25

**Statutes**

15 U.S.C. § 77k(e) .......................................................................................................14

15 U.S.C. §78u-4(a)(7) ................................................................................................23

**Rules**

Fed. R. Civ. P. 23 .................................................................................................. *passim*

Rule 23(a)......................................................................................................................25

Rule 23(b) .................................................................................................6, 19, 23, 25

Rule 23(c)................................................................................................................ *passim*

Rule 23(e)................................................................................................................ *passim*

**Other Authorities**

Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action
  Litigation: 2024 Full-Year Review* ...........................................................................17

## I.    PRELIMINARY STATEMENT

Co-Lead Plaintiffs Sashi Rajan ("Rajan") and Meir Spear ("Spear", and collectively with Rajan, "Co-Lead Plaintiffs" or "Plaintiffs"), individually and on behalf of the Settlement Class, respectfully submit this memorandum in support of their motion seeking for final approval of the proposed Settlement of this Action, releasing the Released Plaintiffs' Claims against Defendants and the other Released Defendant Parties in exchange for a cash payment of $2,750,000.

On June 20, 2025, the Court preliminarily approved the Settlement of this Action, finding that it would likely be able to finally approve the Settlement as fair, reasonable, and adequate.[1] ECF No. 139 ("Preliminary Approval Order"). As directed by the Preliminary Approval Order, Plaintiffs, through the Court-approved Claims Administrator, issued notice to the Settlement Class. To date, no Settlement Class Members have filed an objection to any aspect of the Settlement, and no Settlement Class Members have requested exclusion from the Settlement Class.

The Settlement resolves Plaintiffs' claims against Defendants GigaCloud Technology Inc ("GigaCloud" or the "Company"), Larry Lei Wu ("Wu"), Xin Wan ("Wan"), Kwok Hei David Lau ("Lau"), Zhiwu Chen ("Chen"), Thomas Liu ("Liu"), and Aegis Capital Corp. ("Aegis") (collectively, the "Settling Defendants"), as well as against Defendants Frank Lin ("Lin"), Xing Huang ("Huang"), and Binghe Guo ("Guo").[2]

Before agreeing to the Settlement, Plaintiffs thoroughly investigated their claims and filed multiple amended complaints with detailed factual allegations supporting their theories of

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement dated June 16, 2025 ("Stipulation"), which was previously submitted to the Court. ECF No. 137.

[2] Despite their efforts, Plaintiffs were unable to effect service of process on Lin, Huang, and Guo, but, in the Stipulation, Plaintiffs have agreed not to pursue further action against them in connection with this Action. Stipulation ¶6.

1

Defendants' liability. The Settlement was the product of arms'-length negotiations between the Parties, represented by experienced counsel, over the course of several weeks, after the Court granted in part and denied in part Defendants' motions to dismiss the Second Amended Complaint. These facts, along with the positive reaction of the Settlement Class, indicate that the Settlement is fair, reasonable, and adequate.

While Plaintiffs believe that they would be able to prove their claims at trial, they acknowledge that they would have faced significant challenges in obtaining a full judgment on their claims, including obtaining class certification, defeating Defendants' anticipated motion(s) for summary judgment, and subsequently prevailing at trial on complex securities claims, on the expected post-trial motions and appeal, and then, finally, enforcing the judgment. Even were Plaintiffs to prevail at trial, there is no guarantee the Settlement Class would have recovered as much, or anything at all.

For the following reasons, therefore, this Court should approve the Settlement as fair, reasonable, and adequate, and it should likewise approve the Plan of Allocation.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    Factual and Procedural Background

The procedural history of this Action is set forth in detail in the Declaration of Jonathan D. Park in Support of Plaintiffs' Motions for (I) Final Approval of Class Action Settlement and (II) an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Plaintiffs ("Park Declaration" or "Park Decl.") ¶¶13-67.

### B.    Terms of the Settlement

#### 1.    Cash Consideration and Release

The Settlement provides for a payment of $2,750,000 in cash for the benefit of the Settlement Class. Stipulation ¶¶1(kk), 7. If the Court grants final approval of the Settlement,

Plaintiffs and Settlement Class Members will forever release the Released Plaintiffs' Claims against the Released Defendant Parties. Stipulation ¶4. The "Released Plaintiffs' Claims" are limited to claims that Plaintiffs did or could have asserted in this Action, or any forum, that "arise out of, are based upon, or relate to *both* (i) the allegations, transactions, facts, activities, matters or occurrences, conduct, representations, or omissions involved, set forth, or referred to in the Action *and* (ii) the purchase or acquisition of GigaCloud Stock during the Class Period." Stipulation ¶1(gg) (emphases added). Defendants will release any and all claims that could have been brought against the Released Plaintiff Parties "that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants." Stipulation ¶¶1(ee), 5.

### 2. Notice to the Class

In the Preliminary Approval Order, the Court approved the retention of Strategic Claims Services ("SCS") as Claims Administrator. Preliminary Approval Order ¶8. As directed by the Preliminary Approval Order, SCS: (i) within ten business days after entry of the Preliminary Approval Order, mailed the Postcard Notice to all potential Settlement Class Members that could be identified with reasonable effort, and mailed or emailed nominees such as custodians and brokerage firms that hold stock on behalf of beneficial owners; (ii) within fourteen days thereafter, published the Summary Notice in *Investor's Business Daily* and over *GlobeNewswire*; (iii) established the Settlement Website at which Settlement Class Members could obtain important documents regarding the Settlement (including the Notice and the Stipulation) and file claims; and (iv) maintained a toll-free telephone number for Settlement Class Members to obtain information about the Settlement. *See* Declaration of Margery Craig on behalf of Strategic Claims Services ("Craig Decl.") ¶¶2-10; *see also* Craig Decl., Ex. D (proof of publication of Summary Notice).

The Notice advised potential Settlement Class Members: (1) of the terms of the Settlement and Plan of Allocation; and (2) that Plaintiffs and Co-Lead Counsel would seek: (a) a fee award to

Co-Lead Counsel not to exceed 33.4% of the Settlement Amount, plus interest, (b) recovery of actual Litigation Expenses, not to exceed $130,000, and (c) awards to Plaintiffs not to exceed $15,000 in total. Craig Decl., Ex. A (Notice and Claim Form); *see also* Craig Decl., Ex. C (Postcard Notice).

To date, SCS has sent notice to 147,496 potential Settlement Class Members, either by mailed Postcard Notice or emailed links to the Postcard Notice, Notice, and Proof of Claim. Craig Decl. ¶7.

### 3.    Exclusions and Objections

Pursuant to the Preliminary Approval Order, the Notice and Postcard Notice state that members of the Settlement Class may request exclusion from the Settlement Class no later than September 18, 2025, and explain how to do so. Craig Decl., Ex. A (Notice) at 7; Craig Decl., Ex. C (Postcard Notice). The Notice and Postcard Notice also state that Settlement Class Members may object to the Settlement, the Plan of Allocation, and the requests for fees and expenses, no later than September 18, 2025, and explain how to do so. Craig Decl., Ex. A (Notice) at 18-19; Ex. C (Postcard Notice). To date, no Settlement Class Member has requested exclusion from the Settlement Class or objected to the Settlement, the Plan of Allocation, or the requests for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs. Craig Decl. ¶¶11,12; Park Decl., ¶¶78-79. In Plaintiffs' reply papers in further support of final approval of the Settlement, to be filed by October 2, 2025, Plaintiffs will inform the Court of any requests for exclusion and will respond to any objections.

### 4.    The Plan of Allocation

The Notice provides a thorough explanation of the Plan of Allocation. *See* Craig Decl., Ex. A at 10-14. The Plan of Allocation fairly and reasonably distributes the Net Settlement Fund to Settlement Class Members consistent with the federal securities laws and principles of loss

4

causation. The Plan of Allocation establishes a formula that determines authorized claimants' recognized losses and calculates Settlement Class Members' *pro rata* share of the Net Settlement Fund (*i.e.*, the Settlement Fund less Notice and Administration Costs and any Court-approved attorneys' fees, expenses, awards to Plaintiffs). *Id*.

## III.    ARGUMENT

### A.    The Court Should Grant Final Approval of the Settlement

Rule 23(e) requires judicial approval of any class action settlement, which must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Public policy favors settlement, particularly in class actions. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context'"). Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of litigation. When evaluating a proposed settlement under Fed. R. Civ. P. 23(e), courts determine whether a settlement, taken as a whole, is fair, reasonable, and adequate, ensuring that it was not the product of collusion. *Id.*; *see also Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496, at *8 (E.D.N.Y. Feb. 16, 2023).

Rule 23(e)(2), as recently amended, identifies four factors for a court to consider in determining whether a class action settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's-length;
>
> (C) the relief provided for the class was adequate, taking into account: (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23 (e)(3); and

5

(D) the proposal treats class members equitably relative to each
other.

Fed. R. Civ. P. 23(e)(2).

The Second Circuit has held that "the revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement." *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462-63 (2d Cir. 1974)).

*Grinnell* directs courts to consider:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. at 244 n.4 (quoting *Grinnell*, 495 F.2d at 242 n.3).

### 1.    The Settlement Is Procedurally Fair

"To evaluate the procedural fairness of a proposed settlement, a court must expressly consider the two factors under Rules 23(e)(2)(A)–(B): whether 'the class representatives and class counsel have adequately represented the class' and whether 'the proposal was negotiated at arm's length.'" *Schutter v. Tarena Int'l, Inc.*, 2024 WL 4118465, at *7 (E.D.N.Y. Sept. 9, 2024) (quoting Fed. R. Civ. P. 23(e)(2)(A)-(B)).

"'Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Id*. (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019)). "Here, there

are no fundamental conflicts between the class representatives and the class members." *Id*. Plaintiffs, like all Settlement Class Members, purchased GigaCloud Stock and were "damaged in the same or similar ways that the [Settlement] Class Members were damaged," and "are seeking to recover from Defendants' alleged misconduct." *Id*. "Therefore, their interests are aligned with those of other Settlement Class Members as they share the common objective of maximizing their recovery from [Defendants] for the same alleged misconduct." *Id*.

Further, Co-Lead Counsel are qualified, experienced, and able to conduct the litigation. Both Pomerantz and Rosen Law have successfully litigated dozens of securities class actions, including many in this District. *See* Park Decl., Ex. G (Pomerantz resume) and Ex. E(Rosen Law resume). Indeed, each firm has achieved historic settlements in this District. *See, e.g., In re Petrobras Sec. Litig.*, No. 14-cv-09662 (S.D.N.Y. 2018) (Pomerantz, as Lead Counsel, recovered $3 billion for class members); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (in considering approval of $250 million securities settlement against Chinese company Alibaba, the Court stated that "[t]he quality of representation by [Rosen Law] and Defendants' counsel was high"). Thus, Co-Lead Counsel is adequate.

In addition, "[c]ourts reviewing proposed settlements must also scrutinize the negotiating process, to ensure they resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *Hunter v. Blue Ridge Bankshares, Inc.*, 2025 WL 1649323, at *14 (E.D.N.Y. June 11, 2025) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). Here, "[t]he record is clear that this Settlement was the product of arm's-length negotiations by informed, experienced counsel." *Id.* at *15. Following the Court's order granting in part and denying in part Defendants' motions to dismiss the Second Amended Complaint, the

7

Parties discussed the possibility of settlement for several weeks before reaching a settlement-in-principle to resolve the Action for the Settlement Amount of $2.75 million. Park Decl., ¶¶59-61. These were arm's-length negotiations between highly experienced counsel. "While the Second Circuit held in *Moses* that arm's-length-negotiated settlements are no longer entitled to a presumption of fairness, such circumstances support approval of settlements." *See Hunter v. Blue Ridge Bankshares, Inc*., 2025 WL 1649323, at \*15 (E.D.N.Y. June 11, 2025) (citing *Moses*, 79 F.4th at 243). Thus, this factor supports granting final approval to the Settlement.

Rule 23(e)(2)'s two factors concerning the procedural fairness of a class action settlement are both satisfied here.

### 2.    The Settlement Is Substantively Fair

With respect to the evaluating the substantive fairness of a class action settlement, "the factors outlined in *Grinnell* and the revised Rule 23(e)(2) largely overlap." *Moses*, 79 F.4th at 244; *see also Christine Asia Co.*2019 WL 5257534, at \*10 ("Rule 23(e)(2)(C)(i) incorporates the factors set out in *[Grinnell]*, and courts in this Circuit have long utilized the *Grinnell* nine-factor test in determining whether a settlement is substantively fair, reasonable, and adequate.")

While courts consider each *Grinnell* factor, "not every factor must weigh in favor of settlement, rather [a] court should consider the totality of these factors in light of the particular circumstances." *In re IMAX Securities Litigation*, 283 F.R.D. 178, 189 (S.D.N.Y., 2012). "[W]hen evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement into a trial or a rehearsal of the trial." *In re Sony Corp. SXRD*, 448 F. App'x 85, 87 (2d Cir. 2011). Indeed, because counsel are "most closely acquainted with the facts of the underlying litigation," courts give "great weight" to counsel's settlement recommendations, especially when negotiations are arm's length. *IMAX*, 283 F.R.D. at 189;*see also Rodriquez v. It's Just Lunch Int'l,* 2020 WL 1030983, at \*3 (S.D.N.Y. Mar.

8

2, 2020*)* ("where counsel for plaintiffs is able and experienced, particularly in the specific area with which these actions are concerned," counsel's judgment is entitled to great weight") (citations omitted and cleaned up).

Plaintiffs submit that the proposed Settlement is fair, reasonable and adequate and should be finally approved.

### a.    The Case is Complex and Continued Litigation Will be Protracted and Costly

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381–82 (S.D.N.Y. 2013). This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *City of Providence v. Aeropostale*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (quoting *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). This Action is no exception. While Plaintiffs believe that their claims are meritorious, it is highly uncertain whether they would be able t overcome all obstacles to proving their claims, establishing Defendants' liability, and enforcing a judgment. Further litigation would have required substantial additional expenditures of time and resources, with a material risk of a lower recovery, if any. *See In re AOL Time Warner, Inc.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages").

In the absence of the Settlement, Plaintiffs would have to survive dispositive motion practice, and then prepare for and prevail at trial, and then prevail *again* on the inevitable post-trial motions and appeals. At each additional step of litigation, Plaintiffs would continue to face a robust defense from experienced and capable counsel. *See In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues are "likely to be litigated aggressively, at substantial expense to all parties"); *see also* Park Decl. ¶121.

Even if Plaintiffs prevailed in securing a larger judgment after a trial, the additional delay through post-trial motions and the appellate process could deny the Settlement Class any recovery for years, reducing its value in comparison to the present proposed recovery. *See Kommer v. Ford Motor Co.* 2020 WL 7356715, at *4 (N.D.N.Y. Dec. 15, 2020) ("even if a shareholder or class member was willing to assume all the risks of pursuing . . . further litigation [.]. . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery"). Accordingly, a material risk exists that further litigation might yield a smaller recovery, years in the future—or no recovery at all. *See*, *e.g.*, *Hicks v. Stanley*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

Further, Plaintiffs would still face the prospect of obtaining discovery from witnesses and documents located in the People's Republic of China, as GigaCloud states that its software development is conducted in China, and many of the Individual Defendants are located or believed to be located in China. "Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish*

10

*Banks, P.L.C.,* 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012) (collecting cases). The unique complexity, expense, and duration of such discovery strongly favor approval of the Settlement. Moreover, Plaintiffs face a substantial risk that those Defendants located in China may not continue to engage in the litigation and thus there could ultimately be no feasible source of recovery for a successful class. Park Decl. ¶¶101-104. The expense, duration, and difficulties of the Action were it to proceed through discovery, trial, and appeals weigh in favor of final approval of the Settlement.

### b.      The Reaction of the Settlement Class Supports Final Approval

"It is well-settled that the reaction of the class to a settlement is considered perhaps the most significant factor to be weighed in considering its adequacy." *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007) (internal citations and quotations omitted). "Lack of objection is strong evidence of the settlement's fairness." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 311 (E.D.N.Y. 2006); *see also Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *2 (S.D.N.Y. Nov. 30, 2021) (approving the settlement where there were no objectors and only three requests for exclusion); *In re Revolution Lighting Techs., Inc. Sec. Litig.*, 2020 WL 4596811, at *1 (S.D.N.Y. Aug. 11, 2020) (finding a settlement fair and granting final approval where there were no objections from the class).

To date, no Settlement Class Members have requested exclusion from the Settlement Class or objected to any aspect of the Settlement. Craig Decl. ¶¶11-12; Park Decl. ¶¶78-79. The absence of objections and exclusion requests supports final approval of the Settlement. Plaintiffs will address any subsequent requests for exclusion or objections in their reply papers.

### c.    Plaintiffs and Co-Lead Counsel Were Sufficiently Informed During Settlement Negotiations

Courts also evaluate whether Plaintiffs and Co-Lead Counsel were sufficiently informed about the merits of the claims and defenses and the value thereof when they entered into the Settlement. *Bear Stearns*, 909 F. Supp. 2d at 267. The parties need not have engaged in extensive discovery, or any discovery at all, so long as "they have engaged in sufficient investigation of the facts to enable the Court to intelligently make … an appraisal of the settlement." *AOL Time Warner*, 2006 WL 903236, at \*10; *see also IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). "Courts have approved settlements at all stages of the proceedings." *AOL Time Warner*, 2006 WL 903236, at \*10.

Plaintiffs achieved this Settlement only after thoroughly investigating the alleged claims and consulting with experts regarding both liability and damages. Plaintiffs, through Co-Lead Counsel, conducted a thorough investigation of the claims, including obtaining information from nine former GigaCloud employees as set forth in the Amended Complaint and operative Second Amended Complaint, and then responded to two motions to dismiss the Second Amended Complaint. In addition, Co-Lead Counsel consulted with experts regarding accounting, market efficiency, loss causation, and damages issues. Following the Court's order sustaining the Second Amended Complaint in part, Co-Lead Counsel engaged in discussions with defense counsel regarding the scope of discovery and a schedule for the Action, before Plaintiffs agreed to settle the Action. Park Decl. at. ¶¶5, 113; *see also In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (settlement approved where the parties "have a clear view of the strengths and weaknesses of their cases"). Therefore, Plaintiffs and Co-

12

Lead Counsel had a thorough understanding of the strengths and weaknesses of their claims, further supporting final approval.

### d.    Plaintiffs Faced Risks to Establishing Liability and Damages

In evaluating fairness, courts consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Courts should not "adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

"The difficulty of establishing liability is a common risk of securities litigation." *AOL Time Warner*, 2006 WL 903236, at *11. *See also Christine Asia Co.*, 2019 WL 5257534, at *10. Here, Defendants vigorously challenged Plaintiffs' theory of liability, arguing that their statements concerning GigaCloud's use of AI were not materially false or misleading; that their statements were, in fact, true; that there is no authoritative definition of "AI" and thus that their statements could not have misled investors; and that their statements were not material to investors. Park Decl. ¶¶81-88. Defendants would surely continue to press these arguments if the Action continued, and their answer indicated their belief that they would be able to prove that their alleged misstatements were true and thus not false or misleading. *See* ECF No. 125 (Answer of Defendants GigaCloud, Wu, Wan, Lau, Chen, and Liu) at 1-4. Further, proving falsity would be complex and would likely

13

involve competing testimony from technology experts as to whether the software used by GigaCloud met the definition of AI.

The elements of "loss causation" and "damages" also presented very significant obstacles for Plaintiffs. While loss causation is not an element of Plaintiffs' claim under Section 11 of the Securities Act, the statute permits Defendants to assert, as an affirmative defense, that declines in the price of GigaCloud Class A ordinary shares were unrelated, in whole or in part, to the alleged misstatements, and thus not recoverable. 15 U.S.C. § 77k(e). Defendants previously argued, at the pleading stage, that "Plaintiffs do not (and cannot) claim that the short-seller reports 'revealed' anything about GigaCloud's use of AI." ECF No. 115 at 4-5. Defendants contended that "[t]he Culper Report merely reviewed public data and mused that two (unchallenged) statements about AI were 'empty platitudes[,]'" while "[t]he Grizzly Report did nothing more than 'wonder[ing] how little money is truly going into the . . . proprietary 'AI' technology.'" *Id*. at 5. Defendants would surely continue to press this "negative causation" argument at summary judgment and at trial. In connection with this argument, Defendants would likely emphasize that GigaCloud's stock price declined below the $12.25 IPO price early in the Class Period, before either of the corrective disclosures that Plaintiffs pleaded with respect to their Exchange Act claims, and that the price soon rebounded following each disclosure.

These issues would certainly become fodder for expert testimony, likely leading to an expensive (and always unpredictable) "battle of the experts." Before verdict, neither the Parties nor a court can predict which expert's testimony or methodology the jury would adopt, and thus courts recognize the need for compromise. *See generally Doe #1 by Parent #1 v. New York City Dep't of Educ.,* 2018 WL 3637962, at \*11 (E.D.N.Y. July 31, 2018) (saying that the prospect of an expensive battle of the experts supports settlement); *In Re American Bank Note Holographics*,

14

127 F. Supp. 2d 418, 426-27 (S.D.N.Y, 2001) (approving settlement based, in part, on counsel's recognizing that a jury might accept defendants' expert and eliminate or reduce damages materially); *see also In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

As a result, Plaintiffs would face a material risk that the Court or a jury would find that all or a portion of the declines in GigaCloud's stock price following the IPO were not related to Defendants' alleged AI-related misstatements, which would reduce or even eliminate classwide damages. Park Decl. ¶¶90-100; *see also In re OSG Sec. Litig.*, 2015 WL 3466094, at *4 (S.D.N.Y. May 29, 2015) (granting defense motion for summary judgment dismissing Section 11 claims on basis that plaintiffs could not prove loss causation); *In re MINISO Grp. Holding Ltd. Sec. Litig.*, 2024 WL 759246, at *20 (S.D.N.Y. Feb. 23, 2024), *reconsideration denied sub nom. In re Miniso Grp. Holding Ltd. Sec. Litig.*, 2025 WL 965688 (S.D.N.Y. Mar. 30, 2025) (dismissing Securities Act claims because the short seller report "did not disclose any new facts about MINISO's business practices, store closures, declining revenues, or other financial information"); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 412 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (approving settlement of claims facing negative causation defense).

Accordingly, the material risks of Plaintiffs failing to establish liability, loss causation, and damages could lead to the Settlement Class recovering less than the Settlement Amount or even nothing at all. This strongly favors final approval of the Settlement, which eliminates these risks entirely.

            **e.**        **The Risks of Maintaining Class Action Status Through Trial**

The Court has not yet certified the Settlement Class. Thus, there was a risk of the Court denying class certification. Even if the Court certified a class over Defendants' opposition,

15

Defendants could later move to decertify the class before trial or on appeal, as class certification "may be altered or amended before the final judgment" under Rule 23(c)(1)(C). *Christine Asia Co.*, 2019 WL 5257534, at *13; *see also Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010). The risks of obtaining and maintaining the class action status support final approval of the Settlement.

### f. The Settlement Amount is Reasonable in Light of the Best Possible Recovery and Attendant Risks

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Here, under the best-case scenario—assuming Plaintiffs overcome all the obstacles noted above at and beyond trial, and Defendants do not prevail on any of their current arguments—Plaintiffs' expert's estimate of the maximum, potentially recoverable Settlement Class-wide damages is approximately $75 million. Park Decl. ¶91. That estimate encompasses all claims asserted in the Second Amended Complaint, which asserted a Class Period of August 18, 2022 to May 22, 2024, both dates inclusive, ending with the release of the Grizzly Report. Notably, the

Second Amended Complaint alleged that the Grizzly Report revealed the falsity of Defendants' alleged misstatements concerning activity on GigaCloud Marketplace—however, those claims were dismissed. Thus, the maximum damages estimate of $75 million reflects claims that were dismissed by the Court. Indeed, the large majority of this $75 million estimate relates to Plaintiffs' Exchange Act claims, which the Court dismissed entirely. Further, damages could be further reduced by a shortening of the Class Period in light of the dismissal of the Exchange Act claims or a ruling that shares purchased after the expiration of a "lock-up" of insider shares could not be "traced" to the Registration Statement and thus could not recover under Section 11 of the Securities Act.

Moreover, this $75 million estimate does not account for the effect of non-fraud-related company-specific information that may have been disclosed contemporaneously with the alleged corrective disclosures. Despite these many conditions, which reveal that $75 million is merely a best-case scenario, the $2.75 million Settlement represents a recovery of 3.67% of damages, which is in line with the average settlement amount in securities fraud class actions. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("[T]he average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses"); *see also* Park Decl., Ex. G (Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* at 26 (Fig. 23) (NERA Jan. 22, 2025) ("NERA Report")) (reporting that cases with "NERA-Defined Investor Losses" between $50 and $99 million settled for an average of 3.8% of such losses from 2015 through 2024).

Further, the Settlement Amount represents approximately 11.56% of the maximum estimated damages of $23.78 million for the Securities Act claims sustained by the Court. Park

17

Decl. ¶93. This is significantly above recovery percentages that have been approved by courts in this District. *China Sunergy*, 2011 WL 1899715, at *5. Further, it is more than double the median settlement amount reported by NERA for cases with similar losses. *See* NERA Report at 26 (Fig. 23) (reporting that cases with "NERA-Defined Investor Losses" between $20 and $49 million settled for an average of 5.2% of such losses from 2015 through 2024).

Were Plaintiffs to proceed to trial on the Securities Act claims, which are the only claims sustained by the Court, Plaintiffs would recover the maximum $23.78 million in damages estimated for those claims only if: (1) Plaintiffs established Defendants' liability on the alleged misrepresentations and omissions, (2) a jury credited Plaintiffs' expert's calculation of the full amount of per-share damages, and (3) every potential Settlement Class Member that Plaintiffs' damages expert estimates purchased GigaCloud Class A ordinary shares during the Class Period submitted a valid claim. Should Plaintiffs fail to establish liability or the full amount of per share damages, or if significantly fewer Settlement Class Members file claims than Plaintiffs' expert estimates, recoverable damages could be materially less than that maximum amount, or none at all. *See Facebook,* 343 F. Supp. 3d at 414 ("Because Plaintiffs face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery").

In factually and legally complex securities class actions, responsible counsel cannot be certain that they will be able to obtain a judgment at or near the full amount of the class-wide damages that they will seek to prove at trial. The possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992). Money in Settlement Class Members' pockets now is more valuable than a speculative recovery that Settlement Class Members might obtain

after a complex trial, undertaking the substantial risk that the Settlement Class may end up with nothing given the challenges that Plaintiffs face in establishing liability and damages. *See In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.").

In light of the aforementioned material risks that Plaintiffs and the Settlement Class might recover less, or nothing, without the Settlement, this Settlement is well within the range of reasonableness. *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason … why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (granting final approval which amounted to 2% of potential recovery); *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (granting final approval amounting to approximately 1.9% of best possible recovery).

For the foregoing reasons, the proposed Settlement is both procedurally and substantively fair, reasonable, and adequate, and in the Settlement Class's best interests. These *Grinnell* factors weigh in favor of granting final approval of the Settlement.

### 3.    The Settlement Satisfies the Remaining Rule 23(e) Factors

The factors set forth in Rule 23(e)(2)(A), (B), and (C)(i-ii) are addressed above. The proposed fee award (to be considered pursuant to Rule 23(e)(2)(C)(iii)) is discussed in the memorandum of law in support of the motion for attorneys' fees and expenses, which demonstrates that Co-Lead Counsel's request for attorneys' fees in the amount 33.4% of the Settlement Fund, and reimbursement of expenses, is fair and reasonable.

With respect to identifying agreements pursuant to Rule 23(e)(3)(C)(iv), the Parties have entered into a Supplemental Agreement, as previously disclosed to the Court. Stipulation ¶41. The Supplemental Agreement provides Defendants with the option to terminate the Settlement if the

19

number of Settlement Class Members requesting exclusion from the Settlement Class exceeds a certain threshold. *Id.* To protect the Settlement Class, the precise terms of the Supplemental Agreement are kept confidential to avoid creating incentives for a small group of Settlement Class Members to opt out solely to leverage larger individual settlements for themselves to the detriment of the rest of the Settlement Class. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co.*, 2019 WL 5257534, at \*15; *see also In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at \*13 (E.D.N.Y. Jan. 21, 2022) (finding that the supplemental agreement does not pose an impediment to final approval). Finally, the Plan of Allocation treats all Settlement Class Members equitably, as discussed below.

In sum, the Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and the *Grinnell* factors, and should be finally approved.

## B.  The Court Should Approve the Plan of Allocation

The Court must also evaluate whether the Settlement treats Settlement Class Members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Plan of Allocation "must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *see also Christine Asia,* 2019 WL 5257534, at 15-16. A fair and rational plan may take into account "the relative strength and values of different categories of claims." *Global Crossing*, 225 F.R.D. at 462; *see also Marsh & McLennan*, 2009 WL 5178546, at \*13 (S.D.N.Y. Dec 23, 2009) ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel").

20

The Plan of Allocation is fair, reasonable, and adequate, and does not treat Plaintiffs or any other Settlement Class Member preferentially. *In re Tremont Sec. Law, State Law & Ins. Litig.*, 2015 WL 5333494, at \*6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part*, 699 F. App'x 8 (2d Cir. 2017).

The Notice sets forth the proposed Plan of Allocation, Craig Decl., Ex. A (Notice and Claim Form) at 10-14. Shares purchased in the IPO and during the period from August 18, 2022 through February 14, 2023, inclusive (when a lock-up of insider shares expired), are considered purchases pursuant to or traceable to the Registration Statement and thus eligible for a recovery under the Securities Act. *Id.* at 15; Park Decl. ¶107. For such shares, Recognized Losses are generally calculated in accordance with the statutory damages provision of the Securities Act. Craig Decl., Ex. A at 10; Park Decl. ¶107. This calculation does not account for any potential negative causation defense that could reduce losses.

Under the Plan of Allocation, all shares, including shares purchased in the IPO and during the aforementioned period, are also eligible for recovery under the Exchange Act. When calculating Recognized Losses for purposes of the Exchange Act, the Plan of Allocation's "computation of the estimated alleged artificial inflation is based on the misrepresentations alleged by Co-Lead Plaintiffs and the decline in the price of the stock, net of market- and industry-wide factors, on the Corrective Disclosure Dates," as is standard. Craig Decl., Ex. A at 10. For shares of GigaCloud Stock eligible for a recovery under both the Securities Act and the Exchange Act, the Recognized Loss shall be the greater of: (i) the Recognized Loss under the Securities Act; or (ii) the Recognized Loss under the Exchange Act. *Id.*

Co-Lead Counsel developed the Plan of Allocation with the Claims Administrator and Plaintiffs' damages expert. Park Decl. ¶106. The Plan of Allocation distributes the Net Settlement

Fund equitably among Settlement Class Members who were injured by Defendants' alleged misconduct and who submit valid Claim Forms. *Id*. Each eligible Settlement Class Member who submits a valid Proof of Claim form will receive a *pro rata* distribution pursuant to the Plan of Allocation. The Plan of Allocation calculates a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold GigaCloud Class A ordinary shares.

The Plan of Allocation closely tracks the form of plans of allocation commonly approved in similar securities class action settlements, and is consistent with Plaintiffs' allegations. In securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Biolase, Inc. Sec. Litig.*, WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) (finding a plan that awarded a *pro rata* share of the net settlement fund to be "a fair and reasonable method of distributing settlement proceeds").

If any funds remain after the initial distribution from the Net Settlement Fund to Authorized Claimants, SCS will conduct a second distribution to Authorized Claimants as long as the second distribution is cost effective. Craig Decl., Ex. A at 13. Accordingly, it is likely that only a small amount of funds will remain in the Net Settlement Fund after such distribution(s). Any residual funds will be distributed to a non-profit charitable organization selected by Co-Lead Counsel and approved by the Court. *Id.* at 13-4; *see also* Stipulation ¶28.

To date, no Settlement Class Member has objected to the Plan of Allocation. Craig Decl. ¶12, Park Decl. ¶79. Accordingly, the Court should approve the proposed Plan of Allocation.

**C.      The Court Should Approve the Notice Disseminated to the Settlement Class as Satisfying the Requirements of Rule 23 and Due Process**

The notice program, alerting the Settlement Class to their rights to file a claim or request exclusion, the right to object, and the consequences of any particular choice, complies with this Court's Preliminary Approval Order and satisfies Fed. R. Civ. P. 23(c)(2) and Rule 23(e)(1), the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(7), and due process.

Courts evaluate a notice program's compliance with Rule 23 and due process in terms of its reasonableness. Fed. R. Civ. P. 23(e)(1); *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). Notice is reasonable where it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* at 73-74. Notice need not be perfect but only "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) and 23(e)(2)(C)(ii). In its Preliminary Approval Order, the Court approved the notice program and its substance, and approved the retention of SCS as Claims Administrator. Preliminary Approval Order ¶¶7, 8, 11, 12.

The Notice provided to the Settlement Class also provided all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The notice "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Arbuthnot*, 607 F. App'x at 73-74. The Notice gave Settlement Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and

23

expenses that Co-Lead Counsel would seek; (5) Co-Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. *See* PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely claim forms under the Plan of Allocation as described in the Notice.

Under Co-Lead Counsel's direction, SCS executed the notice program as the Court directed. SCS sent more than 97,808 copies of the Court-approved Postcard Notice to potential Settlement Class Members and their nominees who could be identified with reasonable effort, and emailed the Postcard Notice, Notice, and Claim Form to 49,688 potential Settlement Class Members in response to requests from individuals or nominees. Craig Decl. ¶¶5-6. In total, 147,496 notices (either via mailed Postcard Notice or e-mailed links to the Postcard Notice and the Notice and Claim Form) were sent to potential Settlement Class Members by SCS or nominees. *Id.* ¶7. SCS also published the Court-approved Summary Notice via *GlobeNewswire* and in *Investor's Business Daily*. *Id.* ¶8. SCS also established and maintains a toll-free telephone number for Settlement Class Members to call and obtain information about the Settlement, and published information regarding the Settlement on the Settlement website. *Id.* ¶¶9-10.

In sum, the Notice fairly apprised Settlement Class Members of their rights, was the best notice practicable under the circumstances, and complied with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process.

### D.    The Court Should Certify The Settlement Class

In connection with approving a proposed class action settlement, the Court must determine whether the action may be maintained as a class action under Rule 23 of the Federal Rules of Civil

Procedure. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

Rule 23(a) sets four prerequisites to class certification, specifically: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. The class must also meet one of the three requirements of Rule 23(b). *See* Fed. R. Civ. P. 23. The proposed Settlement Class is defined in the Stipulation as follows: all persons and entities who or that purchased or otherwise acquired GigaCloud Stock during the period from August 18, 2022 to May 22, 2024, both dates inclusive, and were damaged thereby. Stipulation ¶1(ll).

On June 20, 2025, this Court certified the Settlement Class preliminarily for settlement purposes. Preliminary Approval Order ¶¶2-3. No circumstances have changed that would militate against final certification of the Settlement Class for settlement purposes. Thus, the Court should finally certify the Settlement Class for settlement purposes, appoint Plaintiffs as Class Representatives for the Settlement Class, and approve their selection of Pomerantz LLP and The Rosen Law Firm, P.A. as Class Counsel for the Settlement Class.

## IV.    CONCLUSION

For the forgoing reasons, the Court should grant final approval of the proposed Settlement and Plan of Allocation, approve the notice program as executed, and enter final judgment. With their reply papers in support of this motion, Plaintiffs will submit a proposed Final Judgment (in the form previously filed as Exhibit B to the Stipulation) to reflect any valid requests for exclusion from the Settlement Class.

DATED: September 4, 2025

Respectfully submitted,

*/s/ Jonathan D. Park*

**POMERANTZ LLP**
Jeremy A. Lieberman
Jonathan D. Park
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
jpark@pomlaw.com

*Counsel for Co-Lead Plaintiff Sashi Rajan and Co-Lead Counsel for the Class*

26

**PORTNOY LAW FIRM**
Lesley F. Portnoy
1100 Glendon Ave, 14th Floor
Los Angeles, California 90024
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Co-Lead Plaintiff Sashi Rajan*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Phillip Kim
Brian B. Alexander
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
lrosen@rosenlegal.com
philkim@rosenlegal.com
balexander@rosenlegal.com

*Counsel for Co-Lead Plaintiff Meir Spear and Co-Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall
(*pro hac vice* application forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Co-Lead Plaintiff Meir Spear*

27

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1(c)

The undersigned certificates that this memorandum of law contains 7,853 words and complies with the word-count limitations set forth in Local Civil Rule 7.1(c).

*/s/ Jonathan D. Park*
Jonathan D. Park
