**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE GIGACLOUD TECHNOLOGY INC SECURITIES LITIGATION** | **No. 1:23-cv-10645-JMF** |
| **THIS DOCUMENT RELATES TO:**<br><br>**ALL ACTIONS** | <u>**CLASS ACTION**</u> |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES,**
**REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARDS TO PLAINTIFFS**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT..................................................................................................................... 3

      A.   The Common Fund Doctrine Entitles Class Counsel to Attorneys' Fees and
Reimbursement of Expenses from the Settlement Fund...................................... 3

      B.   The Court Should Award Class Counsel a Reasonable Percentage of the
Settlement Fund .................................................................................................. 4

      C.   The Requested Attorneys' Fees Are Reasonable................................................. 6

            1.   The Requested Attorneys' Fees are Reasonable Under the
Percentage-of-the-Fund Method ............................................................... 6

            2.   A Lodestar Cross-Check Strongly Supports the Reasonableness of the
Requested Attorneys' Fees ........................................................................ 7

      D.   The *Goldberger* Factors Confirm the Requested Fee is Fair and Reasonable..... 8

            1.   The Time and Effort Expended Support the Requested Fee....................... 9

            2.   General and Specific Litigation Risks Support the Requested Fee ......... 10

            3.   The Complexity of the Action Supports the Fee ..................................... 14

            4.   The Quality of Representation Supports the Requested Fee .................... 14

            5.   The Amount of Attorneys' Fees in Relation to the Settlement................. 17

            6.   Public Policy Considerations Support the Requested Fee ........................ 18

      E.   This Court Should Approve Reimbursement of Class Counsel's Expenses as
Reasonable and Necessary to the Benefit Obtained ......................................... 19

      F.   The Court Should Approve Compensatory Awards to Plaintiffs ...................... 20

III. CONCLUSION ............................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
    2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) ...........................................................................17

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) ...............................................................................................................4

*Becher v. Long Island Lighting Co.*,
    64 F. Supp. 2d 174 (E.D.N.Y. 1999) ....................................................................................18

*Blum v. Stenson*,
    465 U.S. 886 (1984) ...............................................................................................................4

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ...............................................................................................................3

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) ......................................................................................12

*Christine Asia Co. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...........................................................14, 15, 21, 22

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ................................................................................................11

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v.*
    *Pierson*, 607 F. App'x 73 (2d Cir. 2015) .....................................................................6, 14, 18

*Collins v. Olin Corp.*,
    2010 WL 1677764 (D. Conn. Apr. 21, 2010) ......................................................................18

*Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
    925 F.3d 63 (2d Cir. 2019), *cert. denied,* 140 S. Ct. 385 (2019) ..........................................3

*Gay v. Tri-Wire Eng'g Sols., Inc.*,
    2014 WL 28640 (E.D.N.Y. Jan. 2, 2014) ............................................................................17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ...............................................................................................13

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)............................................................................................ *passim*

*Guevoura Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ....................................................................8, 17

*Hicks v. Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..........................................................................19

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272 F. App'x 9 (2d Cir.
  2008) ........................................................................................................................................16

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)..............................................................................14

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA)
  Litig.*,
  772 F.3d 125 (2d Cir. 2014)....................................................................................................21

*In re BankAtlantic Bancorp, Inc.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd sub nom. Hubbard v.
  BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012)...................................................13

*In re Carlotz, Inc. Sec. Litig.*,
  2025 WL 1873442 (S.D.N.Y. July 7, 2025) ..............................................................................6

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)....................................................................................................12

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) .........................................................................19

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...............................................................7, 11, 17

*In re Deutsche Bank AG Sec. Litig.*,
  2020 WL 3162980 (S.D.N.Y. June 11, 2020) .......................................................................6, 21

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)........................................................................6, 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)..........................................................11, 18, 19, 20

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................................11

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................................11, 12, 20

iii

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................................................7

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................................11, 12

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003)...................................................................................19

*In re Interpublic Sec. Litig.*,
2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ........................................................................4

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..........................................................12, 21, 22

*In re Med. X-Ray Film Antitrust Litig.*,
1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)..........................................................................18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...........................................................................5, 17

*In re Petrobras Sec. Litig.*,
No. 14-cv-9662 (S.D.N.Y)...................................................................................................16

*In re Qudian Inc. Sec. Litig.*,
2021 WL 2328437 (S.D.N.Y. June 8, 2021) ........................................................................21

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)..................................................................................................5

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................................................21

*In re Top Tankers, Inc. Sec. Litig.*,
2008 WL 2944620 (S.D.N.Y. July 31, 2008) ........................................................................4

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)...................................................................8, 16

*Johnson v. Brennan*,
2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011).......................................................................5

*Khait v. Whirlpool Corp.*,
2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ......................................................................17

*Lea v. Tal Education Grp.*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021).......................................................................6

iv

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998).................................................................................................7

*Lowe v. NBT Bank, N.A.*,
   2022 WL 4621433 (N.D.N.Y. Sept. 30, 2022) .....................................................................7

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................................18

*McDaniel v. Cnty. of Schenectady*,
   595 F.3d 411 (2d Cir. 2010).................................................................................................4

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274 (1989).............................................................................................................7

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ....................................................................18

*Robles v. Luis Furniture #1 Inc.*,
   2021 WL 4974677 (S.D.N.Y. Oct. 26, 2021) (Abrams, J.) ...................................................7

*Rodriguez v. CPI Aerostructures, Inc.*,
   2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023)........................................................................5

*Rodriquez v. It's Just Lunch Int'l*,
   2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020) ......................................................................20

*Schutter v. Tarena Int'l, Inc.*,
   2024 WL 4118465 (E.D.N.Y. Sept. 9, 2024) ........................................................................6

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .....................................................................10

*Silverberg v. People's Bank*,
   23 F. App'x 46 (2d Cir. 2001) .............................................................................................18

*Stefaniak v. HSBC Bank USA, N.A.*,
   2008 WL 7630102 (W.D.N.Y. June 28, 2008).....................................................................18

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
   2004 WL 1087261 (S.D.N.Y. May 14, 2004) ......................................................................11

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007)............................................................................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)....................................................................................................5

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
   2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ........................................................................15

**Statutes**

15 U.S.C. § 77k(e) ...............................................................................................................15

15 U.S.C. §78u-4(a)(4) .....................................................................................................3, 21

15 U.S.C. §78u-4(a)(6) .........................................................................................................5

**Rules**

Federal Rule of Civil Procedure 23(h).................................................................................1

Federal Rule of Civil Procedure 54(d) ................................................................................1

Pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure, Co-Lead Counsel and Co-Lead Plaintiffs Sashi Rajan ("Rajan") and Co-Lead Plaintiff Meir Spear ("Spear," and collectively with Rajan, "Co-Lead Plaintiffs" or "Plaintiffs"), individually and on behalf of the Settlement Class, respectfully submit this memorandum in support of their motion seeking: (a) an attorneys' fee award to Co-Lead Counsel in the amount of 33.4% of the Settlement Fund, or $918,500 plus interest; (b) reimbursement of Co-Lead Counsel's Litigation Expenses in the amount of $101,195.16; and (c) a service award of $7,500 to each Plaintiff, totaling $15,000, for their time spent on the Action, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

## I.    INTRODUCTION

The proposed Settlement, providing for a cash payment of $2,750,000 in exchange for the resolution of Plaintiffs' claims, represents a fair, adequate, and reasonable outcome for the Settlement Class given the risks and expenses of continued litigation, including the risk of a smaller recovery years from now, or no recovery at all. Upon final approval of the Settlement and the processing of claims, Settlement Class Members will promptly receive cash payments, avoiding further delay, uncertainty, and risk.

Since the inception of the Action in 2023, Court-appointed Co-Lead Counsel The Rosen Law Firm, P.A. and Pomerantz LLP have litigated this case on a contingency basis as they represented Plaintiffs and the Settlement Class, receiving no compensation for their efforts or reimbursement of their out-of-pocket expenses. Co-Lead Counsel conducted a thorough investigation into Defendants' alleged misconduct (including identifying and obtaining

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement dated June 16, 2025 (ECF No. 137) ("Stipulation").

information from nine former GigaCloud employees), drafted two detailed amended complaints, and overcome Defendants' motions to dismiss the operative Second Amended Complaint. Co-Lead Counsel's investigation and research proved crucial in formulating the theory of liability presented in the Second Amended Complaint, which ultimately led to the proposed Settlement. During this time, Co-Lead Counsel confronted the material risk that they could not receive any payment for their efforts or reimbursement of their out-of-pocket costs. In compensation for their efforts that led to achieving the Settlement for class members, Co-Lead Counsel request that the Court award attorneys' fees in an amount equal to 33.4% of the Settlement Fund, or $918,500 (plus interest),[2] and reimbursement of $101,195.16 in Litigation Expenses, which were reasonably incurred in connection with the Action.

An attorneys' fee award of 33.4% of the Settlement Fund is consistent with awards regularly granted in this Circuit. Further, it represents a *negative*, or fractional, multiplier of Co-Lead Counsel's lodestar, meaning that the requested award will not fully compensate Co-Lead Counsel for the risk that they would receive no payment at all for the time they devoted to the Action. Thus, the requested fee is reasonable in light of Co-Lead Counsel's efforts and the significant recovery they achieved for Plaintiffs and the Settlement Class. To date, no Settlement Class Member has objected to the attorneys' fee request or the request for reimbursement of Litigation Expenses. Declaration of Jonathan D. Park in Support of Plaintiffs' Motions for (I) Final Approval of Class Action Settlement and (II) for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Plaintiffs ("Park Declaration" or "Park Decl.") ¶78.

The Second Circuit's *Goldberger* factors, which include the time and effort expended by

---

[2] The "Settlement Amount" is $2.75 million. Stipulation ¶1(kk). The "Settlement Fund" is "the Settlement Amount and any interest or income earned thereon." Stipulation ¶1(mm).

Co-Lead Counsel, the litigation risks they faced, and the quality of representation, also support the requested attorneys' fee award. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

Co-Lead Counsel also seek reimbursement of $101,195.16 in out-of-pocket Litigation Expenses they incurred in prosecuting this Action. These expenses were reasonable and necessary to prosecute and resolve Plaintiffs' claims, and are the types of expenses that courts regularly reimburse in similar cases, including expert fees, investigator fees, and process server fees.

Finally, during the course of the Action, Co-Lead Plaintiffs expended a substantial number of hours of effort leading the Action on behalf of the Settlement Class. Therefore, Co-Lead Counsel requests that the Court award each of the two Co-Lead Plaintiffs $7,500, for a total of $15,000, to compensate them for their costs, as authorized by the PSLRA. 15 U.S.C. §78u-4(a)(4). The requested awards are reasonable and in line with awards granted in similar cases, and no Settlement Class Member has objected to them.

## II.   ARGUMENT

### A.   The Common Fund Doctrine Entitles Co-Lead Counsel to Attorneys' Fees and Reimbursement of Expenses from the Settlement Fund

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger*, 209 F.3d at 47 (attorneys who create a "common fund" are entitled to "a reasonable fee—set by the court—to be taken from the fund"); *see also Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir. 2019), *cert. denied,* 140 S. Ct. 385 (2019).[3] This achieves equity, preventing "unjust

---

[3] Unless otherwise noted, citations and quotations are omitted, and emphasis is added.

3

enrichment of those benefitting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47. Moreover, awarding attorneys' fees from a common fund that counsel's efforts help create "encourage[s] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *Id.*

The Supreme Court has emphasized that private securities actions, such as this one, provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985). Thus, it "is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund." *See In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620, at *12 (S.D.N.Y. July 31, 2008). Moreover, the "[d]etermination of 'reasonableness' is within the discretion of the district court." *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004). Here, Co-Lead Counsel's request for 33.4% of the Settlement Fund is reasonable in light of the work provided and the result achieved.

**B.    The Court Should Award Co-Lead Counsel a Reasonable Percentage of the Settlement Fund**

The preferred method for awarding fees from a common fund is the percentage of the fund method. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' … a reasonable fee is based on a percentage of the fund bestowed on the class"). The Second Circuit, however, leaves to lower courts whether to award attorneys' fees "under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). District courts in this Circuit typically award attorneys' fees in class action common fund cases based on the percentage method because it "better aligns the incentives of

4

plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014); *see also Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496, at *13 (E.D.N.Y. Feb. 16, 2023) (percentage method "directly aligns interests of class and counsel"). The percentage method also comports with the PSLRA. 15 U.S.C. §78u-4(a)(6) ("[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class").

In contrast, the lodestar method "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.'" *Wal-Mart*, 396 F.3d at 121.

The Court may also evaluate the reasonableness of an attorneys' fees award by reference to counsel's lodestar. Courts often consider counsel's lodestar as a "cross-check" on the reasonableness of the percentage. *Wal-Mart*, 396 F.3d at 123. For this cross-check, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50 ("[T]he reasonableness of the claimed lodestar can be tested by the court's familiarity with the case."). As a cross-check, this Court "may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306–07 (3d Cir. 2005); *see also Johnson v. Brennan*, 2011 WL 4357376, at *14–15 (S.D.N.Y. Sept. 16, 2011) (courts need not scrutinize time and rate records when using lodestar as a cross-check). Here, a lodestar cross-check confirms that the attorneys' fees requested by Co-Lead Counsel are reasonable.

5

C.     **The Requested Attorneys' Fees Are Reasonable**

1.  **The Requested Attorneys' Fees are Reasonable Under the Percentage-of-the-Fund Method**

Co-Lead Counsel's efforts, beginning in 2023, led to this fair, reasonable, and adequate Settlement. Co-Lead Counsel successfully moved for appointment of Co-Lead Plaintiffs, investigated potential claims, filed multiple amended complaints based on exhaustive investigations into Defendants' business and public statements, and overcome Defendants' motions to dismiss the Second Amended Complaint. Park Decl. ¶¶13-56.

The requested fee of 33.4% of the Settlement Fund is consistent with fee awards that district courts in the Second Circuit have awarded in similar or larger common fund cases. *See, e.g., In re Carlotz, Inc. Sec. Litig.*, 2025 WL 1873442, at *3 (S.D.N.Y. July 7, 2025) (finding that awarding one-third of settlement as attorneys' fees was "reasonable"); *Schutter v. Tarena Int'l, Inc.*, 2024 WL 4118465, at *13 (E.D.N.Y. Sept. 9, 2024) (awarding one-third of a $3,500,000 settlement in attorneys' fees); *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (awarding attorneys' fees of one-third of $18.5 million settlement); *Lea v. Tal Education Grp.,* 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (awarding one-third of $7.5 million settlement and collecting cases, stating that "one-third … is a percent that has been approved as reasonable in this Circuit"); *City of Providence v. Aeropostale, Inc.,* 2014 WL 1883494, at *12 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (awarding 33% of $15 million); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *12 (S.D.N.Y. Nov. 9, 2015) (awarding one-third of attorneys' fees of $26,500,000 settlement). Applying the percentage-of-the-fund method, this Court should award one-third of the Settlement Amount as attorneys' fees to Co-Lead Counsel, which is reasonable under the circumstances.

### 2. A Lodestar Cross-Check Strongly Supports the Reasonableness of the Requested Attorneys' Fees

Cross-checking the requested fee award against Co-Lead Counsel's lodestar confirms that the fee request is reasonable. *See Goldberger*, 209 F.3d at 50. Co-Lead Counsel calculated its lodestar by reviewing the time billed to this Action by attorneys and paralegals,[4] multiplying each timekeeper's hours by their current hourly rate,[5] and then totaling the resulting amounts. Co-Lead Counsel devoted a total of 1,666.99 hours to the prosecution of this Action, resulting in a lodestar of $1,743,054.60. *See* Declaration of Jonathan D. Park Regarding Attorneys' Fees and Expenses, ("Park Fee Decl.") ¶6 and Ex. A thereto; Declaration of Brian B. Alexander Regarding Attorneys' Fees and Expenses ("Alexander Fee Decl.") ¶6.

Additionally, "[u]nder the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Lowe v. NBT Bank, N.A.*, 2022 WL 4621433, at *12 (N.D.N.Y. Sept. 30, 2022), *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where … counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar").

"Courts in this district routinely approve lodestar multipliers above 1.5." *Robles v. Luis Furniture #1 Inc.*, 2021 WL 4974677, at *2 (S.D.N.Y. Oct. 26, 2021) (Abrams, J.) (citing *Johnson*,

---

[4] Time spent on this motion for attorneys' fees has been excluded.

[5] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014); *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

2011 WL 4357376, at *20 ("Courts regularly award lodestar multipliers from two to six times lodestar.") and *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District.")).

Here, the requested 33.4% fee represents a fractional, or *negative*, multiplier on Co-Lead Counsel's lodestar of approximately 0.53x. Thus, "[n]ot only is Plaintiffs' Counsel not receiving a premium on their lodestar to compensate them for the contingent risk factor, their fee request amounts to a deep discount from their lodestar." *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007).

"Courts have repeatedly recognized that the reasonableness of the fee request under the percentage method is reinforced where, as here, 'the percentage fee would represent a negative multiplier of the lodestar.'" *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) (citing cases). "Indeed, 'the fact that any reasonable fee would necessarily represent a negative multiplier of the lodestar supports an award at the higher end of the spectrum.'" *Id*. (citing cases). "Thus, the lodestar 'cross-check' unquestionably supports" granting the requested fee award of 33.4% of the Settlement Fund. *Veeco*, 2007 WL 4115808, at *10.

### D.    The *Goldberger* Factors Confirm the Requested Fee is Fair and Reasonable

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, demonstrates that the requested fee is reasonable.

### 1.   The Time and Effort Expended Support the Requested Fee

The time and effort that Co-Lead Counsel expended in prosecuting this Action and achieving the Settlement supports the fee request. Among other things, Co-Lead Counsel (i) conducted a thorough and wide-ranging investigation that included a review and analysis of publicly available information as well as interviews with numerous former GigaCloud employees; (ii) consulted with experts regarding accounting, market efficiency, loss causation, and damages issues; (iii) prepared and filed a detailed Amended Class Action Complaint (the "Amended Complaint") (ECF No. 59) that identified numerous alleged misrepresentations by Defendants and contained allegations derived from four former GigaCloud employees; (iv) analyzed Defendants' motion to dismiss the Amended Complaint (ECF No. 82); (v) following the publication of a report by Grizzly Research LLC, conducted an additional investigation concerning matters raised therein; (vi) prepared and filed a detailed Second Amended Class Action Complaint (the "Second Amended Complaint") (ECF No. 88) that identified additional alleged misrepresentations by Defendants and contained allegations derived from five additional former GigaCloud employees; (vii) prepared and filed Plaintiffs' opposition (ECF Nos. 107-08) to Defendants GigaCloud, Wu, Lau, Wan, and Aegis's motion to dismiss the Second Amended Complaint (ECF No. 95), which the Court granted in part and denied in part (ECF No. 117); (viii) prepared and filed Plaintiffs' opposition (ECF Nos. 109-10) to Defendant Chen's separate motion to dismiss the Second Amended Complaint (ECF No. 105), which the Court denied in full (ECF No. 117); (ix) undertook extensive efforts to serve pleadings on Defendants, several of whom are believed to reside in the People's Republic of China; (x) following the Court's order sustaining the Second Amended Complaint in part, engaged in discussions with Defendants' Counsel regarding the scope of discovery and a schedule for the Action; (xi) engaged in discussions with Defendants' Counsel

over a period of several weeks regarding a potential negotiated resolution of the Action, leading to the proposed Settlement; (xii) drafted the preliminary approval motion, Notice, Summary Notice, Postcard Notice, Claim Form, and all other supporting documents and declarations; (xiii) oversaw the implementation of the judicially approved notice process to Settlement Class Members; and (xiv) drafted the Final Approval Motion, with a memorandum of law and exhibits in support. Park Decl. ¶¶5, 13-79.

Moreover, Co-Lead Counsel's work for the Settlement Class's benefit will not end with the Court's approval of the Settlement. Co-Lead Counsel will devote additional hours and resources to overseeing the claims administration process, responding to Settlement Class Member inquiries, and, when the Claims Administrator has completed processing all claims, filing a motion seeking the Court's approval to distribute the Net Settlement Fund to Settlement Class Members. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (awarding 33% as attorneys' fees, considering time and effort expended thus far and remaining work to oversee claims process and distribution), *aff'd,* 674 F. App'x 37 (2d Cir. 2016).

The time and effort that Co-Lead Counsel devoted to the Action was critical to securing the Settlement, supporting the reasonableness of the fee request.

### 2.    General and Specific Litigation Risks Support the Requested Fee

"[T]he risk of success [is] 'perhaps the foremost' factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro*, 2014 WL 1224666, at *21 ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."). "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.

10

Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). In applying this factor, "'[l]itigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (quoting *Goldberger*, 209 F.3d at 55).

Courts have recognized that "class actions confront even more substantial risks than other forms of litigation," *Comverse*, 2010 WL 2653354, at *5, and that "in evaluating the settlement of a securities class action, federal courts, including this court, have long noted that such litigation is notably difficult and notoriously uncertain." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)).[6] This case was no exception. From the outset of the Action, Co-Lead Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever receiving compensation for the substantial investment of time and money the case would require. In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case … ." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011). Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Co-Lead Counsel] have not been compensated for any time or expenses since this case began …" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010). Co-Lead Counsel's commitments of time and expenses were significant

---

[6] *See also Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

and would have gone unrewarded and unreimbursed had Co-Lead Counsel failed to obtain a recovery.

While Co-Lead Counsel believe that Plaintiffs' claims are meritorious and remain confident in their ability to prevail at trial, there remain substantial risks in the litigation. Despite these claims surviving the Motion to Dismiss, Defendants would almost certainly argue at summary judgment and trial that the alleged misstatements or omissions concerning the Company's use of AI were not materially false and misleading. Defendants, among other things, claim that AI is an undefined term and that the alleged AI-related misstatements were limited in scope, not material to investors, and/or were true and were not false or misleading. Without the Settlement, Plaintiffs' ability to succeed at trial and to obtain and collect a substantial judgment is far from certain. Park Decl. ¶¶80-104. Indeed, the Court already dismissed a portion of the claims asserted in the Second Amended Complaint. ECF No. 117 at ("In short, Plaintiffs fail to plausibly allege that Defendants made misstatements relating to revenues from 1P and GMV"); s*ee also IMAX*, 283 F.R.D. at 189 (securities class actions are "notably difficult and notoriously uncertain").

Further, proving damages presents a significant risk in securities class actions. "Calculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion....'" *Global Crossing*, 225 F.R.D. at 459; *see also Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) (in securities class actions, the "complexities of calculating damages increase geometrically"). "There is the undeniable risk that a 'jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses.'" *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at

12

trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."). The risk is especially acute in this case because Defendants are arguing that negative causation eliminates *all* of the damages for Plaintiffs' surviving claims. *See* Park Decl. ¶¶90-100.

Thus, it was far from certain that Plaintiffs could prove that Defendants made material misstatements and that those misstatements caused damages to the Settlement, as the jury might accept Defendants' attempts to discredit Plaintiffs' experts, Defendants' definition of AI or even arguments that part of the stock price decline caused by alternative factors not related to Defendants' misrepresentations and omissions. Even if Plaintiffs overcame these risks and a jury awarded the full measure of damages, they would still face the risk of an adverse decision on post-trial motions, or reversal on appeal.[7]

Furthermore, this Action presented additional complications arising from the fact that many of GigaCloud's operations, and thus relevant documents and witnesses, are located in China. These complications include the cost and difficulty of translating Chinese-language documents, conducting depositions through translators, and arranging depositions of witnesses located far from the United States, as well as the existence of Chinese laws limiting the export of information from China and the collecting of evidence for use in foreign judicial proceedings. Further, the fact that many of GigaCloud's operations are located in China, that GigaCloud is a foreign entity formed in the Cayman Islands, and that many of the Individual Defendants are located in China, presented risks to Plaintiffs' ability to secure and enforce a judgment. Park Decl. ¶¶101-104.

---

[7] *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict of $2.46 billion on loss causation and damages grounds, remanding for a new trial on these issues); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (granting motion for judgment as a matter of law following jury verdict in plaintiffs' favor), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

13

### 3.  The Complexity of the Action Supports the Fee

Courts recognize that securities class actions are "notorious[ly] complex[]." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006), a factor that further supports an award of attorneys' fees.

This case was no exception. In addition to raising complex questions regarding loss causation and damages, the case required, and would continue to require, extensive attention to issues concerning logistics operations and AI technology, as well as GigaCloud's technological capabilities specifically. *See* Park Decl. ¶¶84, 118. As such, the complexity of the litigation supports the requested fee. *See Aeropostale*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4.  The Quality of Representation Supports the Requested Fee

Furthermore, "[t]he quality of [Co-]Lead Counsel's representation is evidenced by the recovery obtained for the [Settlement] Class." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (quoting *Global Crossing*, 225 F.R.D. at 467).

Here, the $2.75 million Settlement is a fair, reasonable, and adequate result in the face of numerous substantial risks. Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on their claims after a jury trial, if the Court and jury accepted Plaintiffs' per share damages calculation, and if beneficial owners of all shares that Plaintiffs' expert estimates were damaged made claims—*i.e.*, Plaintiffs' best-case scenario—the total maximum damages potentially available to the Settlement Class would be approximately $75 million. Park Decl. ¶91. As further addressed in Plaintiffs' memorandum of law in support of their motion for final approval of the Settlement, filed simultaneously herewith, that the Settlement obtained 3.6% of this best-

14

case scenario is a very positive result.

Furthermore the best case scenario has limited relevance here, as only a portion of Plaintiffs' claims under the Securities Act of 1933 ("Securities Act"), and none of their claims under the Securities Exchange Act of 1934—which account for the majority of that $75 million damages estimate—survived Defendants' motions to dismiss the Second Amended Complaint. Park Decl. ¶¶50-56, 91.

Plaintiffs' consulting damages expert estimated that maximum aggregate classwide damages for Plaintiffs' Securities Act claims range from $20.81 million to $23.78 million, applying the statutory calculation set forth in 15 U.S.C. § 77k(e). Park Decl. ¶93. The Settlement represents a recovery of 11.56% of the maximum estimated damages of $23.78 million for the surviving Securities Act claims.

Thus, the Settlement is well within the range of reasonableness and is favorable considering the significant hurdles that Co-Lead Counsel faced. *See Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *4 (S.D.N.Y. Aug. 18, 2017) (requested fee award warranted where counsel prevailed against a motion to dismiss and prosecuted case through a contested discovery process against a well-represented opponent).

The quality of Co-Lead Counsel's efforts and commitment to providing Plaintiffs and the Settlement Class with the best possible representation, together with their substantial experience in securities class actions, provided the leverage necessary to negotiate the Settlement. As reflected in its Firm Resume, The Rosen Law Firm is highly experienced in the field of securities class action litigation, including in cases against Chinese-based defendants. The firm has obtained significant settlements in federal courts around the country and currently serves as lead counsel in numerous securities class actions. *See, e.g.*, *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at

15

*19 (S.D.N.Y. Oct. 16, 2019) (in considering approval of $250 million securities settlement against Chinese company Alibaba, the Court stated that "[t]he quality of representation by [The Rosen Law Firm] and Defendants' counsel was high in this case . . ."); *see also* Park Decl. ¶¶119-120; Park Decl., Ex. B to Ex. E (The Rosen Law Firm resume). Similarly, Pomerantz LLP is exceptionally experienced and has recovered billions of dollars for its clients in some of the largest and most complex securities class actions, including the largest securities class action settlement in a decade and the fifth-largest securities class action settlement achieved in the United States—obtaining $3 billion in the historic Petrobras securities class action (*In re Petrobras Sec. Litig.*, No. 14-cv-9662 (S.D.N.Y)); *see also* Park Decl. ¶¶119-121; Park Decl., Ex. C to Ex. D (Pomerantz LLP resume). Co-Lead Counsel's experience and reputation contributed to the successful resolution of this Action.

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the counsel's performance. *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) (fee award supported by the fact that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were represented by accomplished attorneys from Latham and Watkins LLP and Sichenzia Ross Ference Carmel LLP—highly skilled securities litigators who vigorously represented their clients.

The positive reaction by Settlement Class Members confirms the quality of Co-Lead Counsel's representation. The Claims Administrator provided notice to 147,496 potential Settlement Class Members. Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; And (C) Report on Requests for Exclusion and Objections ("Craig Decl.") ¶7. To date, no Settlement Class Members have objected to the Settlement or the fee request. Craig Decl. ¶12; Park Decl. ¶78; s*ee also Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at \*22 (S.D.N.Y. Dec. 18, 2019) ("To date, no object to the fee request has been received. The lack of objections, in this day and age, is not only remarkable, but militates in favor of approval of the Fees as requested.")

### 5.   The Amount of Attorneys' Fees in Relation to the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse,* 2010 WL 2653354, at \*3; *see also Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2018 WL 6250657, at \*2 (S.D.N.Y. Nov. 29, 2018). Here, Co-Lead Counsel's fee request of 33.4% of the Settlement Fund is fair, reasonable and consistent with the range of percentages that courts in this Circuit have awarded in similar securities class action and other class action settlements of this size. *See* Section II(C)(1), *supra*; *see also Khait v. Whirlpool Corp.*, 2010 WL 2025106, at \*8 (E.D.N.Y. Jan. 20, 2010) (awarding attorneys' fees equal to 33% of $3 million settlement); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) (awarding 33.3% fee for the first $10 million of settlement, and noting it is "very common" to see 33% contingency fees in settlements less than $10 million); *Gay v. Tri-Wire Eng'g Sols., Inc.*, 2014 WL 28640, at \*12 (E.D.N.Y. Jan. 2, 2014) (awarding 35.3% of $183,123.60 settlement fund where the total fees equaled a reasonable lodestar

17

amount); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *1, 5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,625,000 settlement).[8] Here, Co-Lead Counsel's request is in line with awards in similar securities class action settlements, and should be granted.

### 6.    Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002). This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29.

As a practical matter, "[l]awsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *Aeropostale*, 2014 WL

---

[8] *See also Silverberg v. People's Bank*, 23 F. App'x 46, 48 (2d Cir. 2001) (affirming award of attorneys' fees and expenses of nearly one-third of settlement fund); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding one-third fee of $7.8 million, which was "well within the range accepted by courts in this circuit"); *Stefaniak v. HSBC Bank USA, N.A.*, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of fund, finding it "typical in class action settlements in the Second Circuit"); *Collins v. Olin Corp.*, 2010 WL 1677764, at *6–7 (D. Conn. Apr. 21, 2010) (awarding one-third of settlement fund); *In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (awarding 33 1/3% of a settlement fund as "well within the range accepted by courts in this circuit").

1883494, at *18; *see also Hicks v. Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (private securities actions promote securities laws' objectives, but "could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class.").

The integrity of the markets depends on companies and their executives complying with the federal securities laws. Courts must ensure that competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner is available to the markets. Public policy thus supports the award of the attorneys' fees requested here. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) ("public policy supports granting attorneys' fees 'that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC'").

### E.    This Court Should Approve Reimbursement of Co-Lead Counsel's Expenses as Reasonable and Necessary to the Benefit Obtained

Co-Lead Counsel also requests reimbursement of $101,195.16 in expenses incurred while prosecuting the Action. *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.").

Co-Lead Counsel incurred total Litigation Expenses of $101,195.16 in this Action. *See* Park Fee Decl., ¶8 and Ex. B thereto; Alexander Fee Decl., ¶8. The amount requested is within the $130,000 maximum amount disclosed in the Notice to Settlement Class Members. *See* Craig Decl., Ex. A (Postcard Notice) and Ex. B (Notice). No Settlement Class Member has objected to the

requested reimbursement. *Id.* ¶12; Park Decl. ¶79; s*ee also Rodriquez v. It's Just Lunch Int'l*, 2020 WL 1030983, at *11 (S.D.N.Y. Mar. 2, 2020) (awarding the requested 31.5% in attorneys' fees and expenses over two objections, noting that "the relatively low number of objections weighs in favor of approving the attorneys' requested fees as reasonable").

Most—$71,205, or 70% of the total—of the Litigation Expenses for which Co-Lead Counsel seeks reimbursement were for professional services rendered by Plaintiffs' investigators and experts. Here, Plaintiffs, through Co-Lead Counsel, conducted a thorough investigation of the claims, including extensive attempts to identify and contact former GigaCloud employees in the United States and China, as well as to identify locations to serve Defendants that reside, or are believed to reside, in China. Co-Lead Counsel also incurred significant expenses in connection with attempting to serve process on foreign-domiciled individual Defendants pursuant to the Hague Convention. *Id*. In addition, Co-Lead Counsel worked closely with consulting experts concerning issues of damages of loss causation, and to develop the Plan of Allocation for the Settlement. These expenses were reasonable and necessary to the prosecution of the Action and are reasonable in amount. As such, the Court should approve their reimbursement. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund.").

**F.     The Court Should Approve Compensatory Awards to Plaintiffs**

Plaintiffs also request awards of $7,500 each ($15,000 in total) to Plaintiffs for their time spent prosecuting the Action. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be

made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Courts in this Circuit "routinely award such costs and expenses to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages…." *Christine Asia*, 2019 WL 5257534, at *20 (approving request for award to lead plaintiffs) (quoting *Hicks*, 2005 WL 2757792, at *10; *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expenses and costs to lead plaintiffs totaling $453,000). *See also Marsh & McLennan*, 2009 WL 5178546, at *21 (approving $215,000 total award to two lead plaintiffs); *Deutsche Bank.*, 2020 WL 3162980, at *2 (awarding $10,000 to each class representative); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $25,000, and class representative $12,500, for "reasonable costs and expenses directly related to [their] representation of the Class"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *24 (S.D.N.Y. July 21, 2020) (collecting cases and awarding $25,410 to lead plaintiff).

As laid out in greater detail in their Declarations, Co-Lead Plaintiffs Sashi Rajan and Meir Spear were actively involved throughout the Action, and each of them devoted over twenty-five hours to the Action. *See* Park Decl., Ex. B (Declaration of Sashi Rajan) ¶9; Park Decl., Ex. C (Declaration of Meir Spear) ¶9. Co-Lead Plaintiffs oversaw Co-Lead Counsel during the Action, communicating with Co-Lead Counsel regarding the progress of and strategy for the case, reviewing and discussing with Co-Lead Counsel all of the significant pleadings filed in the Action, and consulting with Co-Lead Counsel in assessing and approving the Settlement. Co-Lead Plaintiffs also executed declarations in connection with their motions to be appointed to lead the Action and collected discovery related to their transactions in GigaCloud Stock. These are "precisely the types of activities that support awarding reimbursement of expenses to class

21

representatives." *Marsh & McLennan*, 2009 WL 5178546, at *21, *see also Christine Asia*, 2019 WL 5257534, at *20 (approving award to lead plaintiffs where plaintiffs reviewed pleadings and briefs, assisted with discovery responses, and evaluated and approved settlement). Co-Lead Plaintiffs devoted this time to the Action even though there was no guarantee of any recovery for themselves or other Settlement Class Members, and even though they would have otherwise devoted that time to their employment.

Co-Lead Counsel submit that the modest requested awards of $7,500 to each Co-Lead Plaintiff, totaling $15,000, to compensate them for their time and service to the Settlement Class are reasonable and should be granted.

## III.　CONCLUSION

For the foregoing reasons, Plaintiffs and Co-Lead Counsel respectfully request that the Court: (a) award Co-Lead Counsel attorneys' fees in the total amount of 33.4% of the Settlement Amount, or $918,500 plus interest; (b) reimburse Co-Lead Counsel's Litigation Expenses in the amount of $101,195.16; and (c) award Co-Lead Plaintiff Sashi Rajan $7,500 and Co-Lead Plaintiff Meir Spear $7,500 for their efforts on behalf of the Settlement Class, pursuant to the PSLRA.

DATED: September 4, 2025　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Jonathan D. Park*

**POMERANTZ LLP**
Jeremy A. Lieberman
Jonathan D. Park
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
jpark@pomlaw.com

*Counsel for Co-Lead Plaintiff Sashi Rajan and Co-Lead Counsel for the Class*

22

**PORTNOY LAW FIRM**
Lesley F. Portnoy
1100 Glendon Ave, 14th Floor
Los Angeles, California 90024
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Co-Lead Plaintiff Sashi Rajan*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Phillip Kim
Brian B. Alexander
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
lrosen@rosenlegal.com
philkim@rosenlegal.com
balexander@rosenlegal.com

*Counsel for Co-Lead Plaintiff Meir Spear and Co-Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall
(*pro hac vice* application forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Co-Lead Plaintiff Meir Spear*

23

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1(c)</u>

The undersigned certificates that this memorandum of law contains 6,909 words and complies with the word-count limitations set forth in Local Civil Rule 7.1(c).

*/s/ Jonathan D. Park*
Jonathan D. Park
