**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GIGACLOUD TECHNOLOGY INC SECURITIES LITIGATION | **No. 1:23-cv-10645-JMF** |
| THIS DOCUMENT RELATES TO: | |
| **ALL ACTIONS** | |

**DECLARATION OF JONATHAN D. PARK**
**IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (I) FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT AND (II) FOR AN AWARD OF ATTORNEYS' FEES,**
**REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARDS TO PLAINTIFFS**

I, Jonathan D. Park, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a member of the Bar of the State of New York, and am admitted to appear before this Court. I am Of Counsel with the law firm of Pomerantz LLP ("Pomerantz"), counsel for Co-Lead Plaintiff Sashi Rajan ("Rajan") and Co-Lead Counsel for the proposed Settlement Class. Rajan and Co-Lead Plaintiff Meir Spear ("Spear", and collectively with Rajan, "Co-Lead Plaintiffs" or "Plaintiffs"), who is represented by Co-Lead Counsel The Rosen Law Firm, P.A. ("Rosen Law"), together assert claims on behalf of the proposed Settlement Class.[1] I have been

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings provided in the Stipulation and Agreement of Settlement, dated as of June 16, 2025 (ECF No. 137) ("Stipulation"), which was entered into by and between Plaintiffs, on the one hand, and GigaCloud Technology Inc ("GigaCloud" or the "Company"), Larry Lei Wu ("Wu"), Xin Wan ("Wan"), Kwok Hei David Lau ("Lau"), Zhiwu Chen ("Chen"), Thomas Liu ("Liu"), and Aegis Capital Corp. ("Aegis") (collectively, the "Settling Defendants"), on the other. Plaintiffs and Settling Defendants are referred to collectively as the "Parties". Plaintiffs were unable to effect service on Defendants Frank Lin ("Lin"), Xing Huang ("Huang"), Binghe Guo ("Guo"), but have agreed not to pursue any further action with respect to any of these individuals in connection with this Action. Stipulation ¶6.

actively involved in all aspects of the prosecution and resolution of the Action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein based upon my supervision and participation in all material aspects of the Action, and if called as a witness, could and would testify competently thereto.

2.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, I submit this declaration in support of Plaintiffs' Motions for (I) Final Approval of Class Action Settlement (the "Final Approval Motion"), and (II) for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Plaintiffs (the "Fee Motion").

3.    This Declaration and/or the accompanying memoranda of law discuss several documents, true and correct copies of which are attached as Exhibits hereto as follows:

**Exhibit A**: Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; And (C) Report on Requests for Exclusion and Objections ("Craig Decl."), which has four exhibits of its own (A-D) of its own.

**Exhibit B**: Declaration of Sashi Rajan.

**Exhibit C**: Declaration of Meir Spear.

**Exhibit D**: Declaration of Jonathan D. Park Regarding Attorneys' Fees and Litigation Expenses, which has two exhibits (A-C) of its own.

**Exhibit E**: Declaration of Brian B. Alexander Regarding Attorneys' Fees and Litigation Expenses, which has two exhibits (A-B) of its own.

**Exhibit F**: Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025).

## I.    PRELIMINARY STATEMENT

4.    The proposed Settlement now before the Court provides for the resolution of all claims in the Action in exchange for a cash payment of $2,750,000. As detailed herein, Plaintiffs and Co-Lead Counsel respectfully submit that the Settlement represents a very favorable result for the Settlement Class in light of the significant risks of continuing to litigate the Action.

5.    Plaintiffs and Co-Lead Counsel have vigorously litigated this case since they were appointed to represent the putative class on January 11, 2024. *See* ECF No. 42 (appointing co-lead plaintiffs and co-lead counsel). Even prior to that, on October 30, 2024, my firm filed the complaint in the *Villanueva* Action (defined below), which was later consolidated into this Action. *See id.* (consolidating actions). The Settlement was achieved only after Plaintiffs and Co-Lead Counsel, *inter alia,* as detailed herein:

(i)    conducted a thorough and wide-ranging investigation that included a review and analysis of publicly available information, as well as interviews with numerous former GigaCloud employees;

(ii)    consulted with experts regarding accounting, market efficiency, loss causation, and damages issues;

(iii)    prepared and filed a detailed Amended Class Action Complaint (the "Amended Complaint") (ECF No. 59) that identified numerous alleged misrepresentations by Defendants and contained allegations derived from four former GigaCloud employees;

(iv)    analyzed Defendants' motion to dismiss the Amended Complaint (ECF No. 82);

(v)    following the publication of a report by Grizzly Research LLC, conducted an additional investigation concerning matters raised therein;

(vi)    prepared and filed a detailed Second Amended Class Action Complaint (the "Second Amended Complaint") (ECF No. 88) that identified additional alleged misrepresentations by Defendants and contained allegations derived from five additional former GigaCloud employees;

(vii)    prepared and filed Plaintiffs' opposition (ECF Nos. 107-08) to Defendants GigaCloud, Wu, Lau, Wan, and Aegis's motion to dismiss the Second

3

Amended Complaint (ECF No. 95), which the Court granted in part and denied in part (ECF No. 117);

(viii)  prepared and filed Plaintiffs' opposition (ECF Nos. 109-10) to Defendant Chen's separate motion to dismiss the Second Amended Complaint (ECF No. 105), which the Court denied in full (ECF No. 117);

(ix)  undertook extensive efforts to serve pleadings on Defendants, several of whom are believed to reside in the People's Republic of China;

(x)  following the Court's order sustaining the Second Amended Complaint in part, engaged in discussions with Defendants' Counsel regarding the scope of discovery and a schedule for the Action; and

(xi)  engaged in discussions with Defendants' Counsel over a period of several weeks regarding a potential negotiated resolution of the Action, leading to the proposed Settlement.

6.    On June 16, 2025, Plaintiffs filed the Stipulation (ECF No. 137) and the Preliminary Approval Motion (ECF No. 134), seeking preliminary approval of the Settlement and approval of the form and method of notifying Settlement Class Members of the Settlement and their rights to exclude themselves from the Settlement Class, to file a claim for a portion of the Net Settlement Fund, and/or to object to the Settlement, the Plan of Allocation, and/or any request for attorneys' fees, costs, and expenses.

7.    On June 20, 2025, the Court granted the Preliminary Approval Motion, preliminarily finding that it would "likely be able to approve the Settlement as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)(2), subject to further consideration at the Settlement Hearing." (ECF No. 139) (the "Preliminary Approval Order").

8.    As Plaintiffs and Co-Lead Counsel stated in support of the Preliminary Approval Motion, they believe that the Settlement is in the best interests of the Settlement Class. Due to their efforts, Plaintiffs and Co-Lead Counsel are well-informed about the strengths and weaknesses of the claims and defenses in the Action. The Settlement was achieved in the face of vigorous opposition by Defendants who would have continued to raise numerous challenging defenses. For example,

Defendants raised significant arguments regarding the falsity of the alleged misstatements and regarding loss causation, and Defendants would surely raise these same issues at later stages of this Action if the Parties were to continue litigating. Indeed, there is a material risk that the Court or a jury would accept Defendants' "negative causation" argument that GigaCloud's stock price declined for reasons unrelated to their alleged misstatements. Were that to occur, Plaintiffs and Settlement Class Members would recover nothing. Relatedly, Defendants would likely argue that damages are not significant. Issues relating to loss causation and damages would likely have come down to an inherently unpredictable and hotly disputed "battle of the experts," with Defendants' experts opining, among other things, that Plaintiffs' expert(s) overstated damages and failed to account for other factors that may have caused the price of GigaCloud Stock to decline.

9.      Further, GigaCloud has significant operations in China and is incorporated in the Cayman Islands, and numerous of the Individual Defendants reside in, or are believed to reside in, China. These circumstances create an additional risk that all or some of the Defendants could cease participating in the Action, or that Plaintiffs would be unable to secure and collect on a judgment against Defendants. Indeed, despite extensive efforts, Plaintiffs were unable to effect service on Defendants Lin, Huang, Guo, and Liu (though counsel appeared on behalf of Liu, who reserved the right to contest the sufficiency of service of process, among other defenses). In the absence of a settlement, there is a very real risk that, after months or years of additional litigation, the Settlement Class could recover nothing or an amount less than the negotiated Settlement.

10.      The proposed Plan of Allocation of the Net Settlement Fund is fair and reasonable. As discussed below, the Plan of Allocation was developed with the assistance of Plaintiffs' damages expert and provides for the distribution of the Net Settlement Fund to Settlement Class

5

Members who submit Claim Forms that are approved for payment on a *pro rata* basis based on their losses attributable to the alleged securities law violations.

11.    For the reasons set forth below and in the accompanying memoranda and declarations, Plaintiffs and Co-Lead Counsel respectfully submit that the Settlement is "fair, reasonable, and adequate" in all respects, and that the Court should grant final approval of the Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

12.    In addition, Co-Lead Counsel seeks an award of attorneys' fees to Plaintiffs' Counsel in the amount of 33.4% of the Settlement Amount (plus interest thereon), reimbursement of Litigation Expenses, and awards to Co-Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Co-Lead Plaintiffs and Co-Lead Counsel believe that the requested attorneys' fees, Litigation Expenses, and awards to Co-Lead Plaintiffs are fair and reasonable in light of the extent and quality of the work performed as well as the substantial result achieved.

## II.    PROCEDURAL HISTORY

### A.    Commencement of the Action, Transfer to this Court, and Appointment of Co-Lead Plaintiffs and Co-Lead Counsel

13.    On October 4, 2023, this Action commenced with the filing of a class action complaint by plaintiff Thomas J. Kinnally in the United States District Court for the Central District of California, styled *Kinnally v. GigaCloud Technology Inc.*, No. 2:23-cv-8381 (the "*Kinnally* Action"), ECF No. 1. The initial complaint in the *Kinnally* Action asserted claims (i) against GigaCloud, Wu, Lau, Wan, Lin, Huang, and Aegis under Section 11 of the Securities Act of 1933 (the "Securities Act"); (ii) against Wu, Lau, Wan, Lin, and Huang under Section 15 of the Securities Act; (iii) against GigaCloud, Wu, and Lau under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder; and (iv)

against Wu and Lau under Section 20(a) of the Exchange Act. In general, the complaint alleged misstatements and omissions in connection with GigaCloud's August 2022 initial public offering (the "IPO") and during the period from August 18, 2022 to September 27, 2023, both dates inclusive. The complaint asserted such claims on behalf of persons and entities that purchased or otherwise acquired (a) GigaCloud Stock pursuant and/or traceable to the registration statement and prospectus for the IPO, and/or (b) GigaCloud securities during the period from August 18, 2022 to September 27, 2023, both dates inclusive, and were damaged thereby.

14. On October 30, 2023, plaintiff Rock Villanueva filed a securities class action complaint in the United States District Court for the Central District of California styled *Villanueva v. GigaCloud Technology Inc.*, No. 2:23-cv-9134 (the "*Villanueva* Action"), ECF No. 1. The complaint alleged substantially the same allegations as the *Kinnally* Action.

15. On November 20, 2023, Kinnally and GigaCloud stipulated to the transfer of the *Kinnally* Action to the United States District Court for the Southern District of New York (the "Court"). *Kinnally* Action, ECF No. 11; *Villanueva* Action, ECF No. 12. In that stipulation, GigaCloud's counsel accepted service of the summons and complaint in the *Kinnally* Action on behalf of GigaCloud. *Kinnally* Action, ECF No. 11; *Villanueva* Action, ECF No. 12.

16. On November 22, 2023, the *Kinnally* Action was transferred to the United States District Court for the Southern District of New York (the "Court"). *Kinnally* Action, ECF No. 12. That same day, the *Villanueva* Action was also transferred to the Court. *Villanueva* Action, ECF No. 13. The *Kinnally* Action and the *Villanueva* Action were assigned case numbers 1:23-cv-10684 and 1:23-cv-10645, respectively, in this Court.

17. Pursuant to Section 21D(a)(3) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, on December 4, 2023, three purported members of the putative class

7

alleged in the *Kinnally* and *Villanueva* Actions filed motions for consolidation of the two cases, their respective appointments as lead plaintiffs, and appointment of their respective counsel as lead counsel. *Kinnally* Action, ECF Nos. 13-15, 17-22.

18. On December 15, 2023, the Court ordered that, in view of the transfer of the *Kinnally* and *Villanueva* Actions to the Southern District of New York, the deadline to seek appointment as lead plaintiff would be extended to December 22, 2023. ECF No. 23.

19. On January 10, 2024, Rajan and Spear filed a stipulation and [proposed] order to, *inter alia*, (1) consolidate the *Kinnally* and *Villanueva* Actions for all purposes, (2) appoint Rajan and Spear as Co-Lead Plaintiffs in the consolidated action, (3) approve Rajan and Spear's selections of Pomerantz and Rosen Law as Co-Lead Counsel, and (4) deny all other motions for Lead Plaintiff. ECF No. 41.

20. On January 11, 2024, the Court granted that stipulation and entered the [proposed] order. ECF No. 42.

21. On January 18, 2024, Co-Lead Plaintiffs, on the one hand, and Defendants GigaCloud, Wu, and Wan, on the other, filed a stipulation and proposed order (1) setting forth the duties and responsibilities of Co-Lead Plaintiffs and Co-Lead Counsel and (2) proposing a schedule for Co-Lead Plaintiffs to file any amended complaint or designate a previously filed complaint as operative, for Defendants GigaCloud, Wu, and Wan to respond to the operative complaint and, if Defendants GigaCloud, Wu, and Wan filed a motion to dismiss, for briefing thereon. ECF No. 46. Per that stipulation, GigaCloud, Wu, and Wan, through their counsel, agreed to waive service of the summons and complaint in this action. ECF No. 46. On January 22, 2024, the Court entered that order. ECF No. 54.

22.    On January 22, 2024, Aegis was served with a summons and complaint. ECF No. 55.

### B.    The Amended Complaint and Defendants' First Motion to Dismiss

23.    On March 18, 2024, Co-Lead Plaintiffs filed an Amended Class Action Complaint (the "Amended Complaint"). ECF No. 59. The Amended Complaint, on behalf of a proposed Class of all persons and entities that purchased or otherwise acquired Class A ordinary shares issued by GigaCloud pursuant and/or traceable to the Registration Statement issued in connection with GigaCloud's IPO,[2] and were damaged thereby, asserted claims (1) against GigaCloud, Wu, Lau, Wan, Lin, Huang, Chen, Guo, Liu, and Aegis under Section 11 of the Securities Act, and (2) against Wu, Lau, Wan, Lin, Huang, Chen, Guo, and Liu under Section 15 of the Securities Act. In addition, the Amended Complaint, on behalf of a proposed Class of all persons and entities that purchased or otherwise acquired GigaCloud Class A ordinary shares during the period August 18, 2022 to September 28, 2023, both dates inclusive, and were damaged thereby, asserted claims (1) against GigaCloud, Wu, Wan, and Iman Schrock ("Schrock") under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and (2) against Wu, Lau, Wan, and Schrock under Section 20(a) of the Exchange Act.

24.    The Amended Complaint alleged that the Registration Statement contained materially false and misleading statements regarding the Company's use of artificial intelligence ("AI") software. The Prospectus represented, *inter alia*, that one of GigaCloud's "Competitive

---

[2] On May 31, 2021, the Company confidentially filed a draft registration statement with the SEC for a planned initial public offering of its stock. Amended Complaint ¶39. The Company conducted the IPO the following year, announcing that the IPO was complete on August 22, 2022. *Id.* In the IPO, the Company sold 3,381,000 Class A ordinary shares at a price of $12.25 per share. *Id.* The Company received net proceeds of approximately $34.2 million from the IPO. *Id.*

Strengths" was "Data Intelligence Powered by AI," that "self-learning AI" improved the Company's "operating efficiency" by "automating and optimizing inventory globally based on historical data, rebalancing our merchandise across warehouses to maximize first mile collection and last mile delivery efficiency," and that "[o]ur AI-powered warehousing management system solves the many practical problems faced by sellers and buyers in connection with complex, cross-border transactions involving large parcel goods." Amended Complaint ¶¶72, 74.

25.     The Amended Complaint also alleged that Defendants made additional misstatements about GigaCloud's AI capabilities on GigaCloud's website, in SEC filings, and during earnings calls and other investor calls. *Id.* ¶¶149-90.

26.     The Amended Complaint alleged that these statements were false because GigaCloud did not have the AI capabilities touted by Defendants. The Amended Complaint contained allegations drawn from four former GigaCloud employees in support of Plaintiffs' claims. *Id.* ¶¶26-29.

27.     The Amended Complaint alleged that a short seller report from Culper Research (the "Culper Report") revealed the falsity of Defendants' misstatements on September 28, 2023. The Culper Report stated that "we couldn't find a single GCT employee on LinkedIn or otherwise who claimed to have developed any AI for the Company" and that GigaCloud "doesn't even disclose software development expenses or capitalized software costs in its financial statements." *Id.* ¶192. The price of GigaCloud Stock fell $1.78 from its $9.47 closing price on September 27, 2023, or more than 18%, to close at $7.69 per share on September 28, 2023. *Id.* ¶193.

28.     On March 20, 2024, Plaintiffs requested from the Court a summons as to Iman Schrock. ECF No. 60. The summons was issued the following day (ECF No. 61) and Plaintiffs effected service on Schrock (ECF No. 62).

29.     On April 5, 2024, after researching addresses for Defendants Lau, Lin, Huang, Chen, Guo, and Liu, Plaintiffs requested summonses from the Court as to these Defendants. *See* ECF Nos. 63-68. Plaintiffs attempted to serve these Defendants at GigaCloud's Hong Kong executive office pursuant to the requirements of the Hague Service Convention. After sending the necessary materials to the Hong Kong authorities, Plaintiffs were eventually advised by those authorities that service could not be effected on Defendants Lau, Lin, Huang, Guo, and Liu. No explanation for this failure was provided.

30.     On May 17, 2024, Defendants GigaCloud, Wu, Wan, Schrock, and Aegis (the "Moving Defendants") filed a motion to dismiss the Amended Complaint, supported by a memorandum of law, attorney declaration, and exhibits thereto. ECF Nos. 82-84. In support of the motion, these Moving Defendants argued that Plaintiffs (i) failed to allege any material misstatements or omissions; (ii) failed to allege, as required for Plaintiffs' Exchange Act claims, a strong inference that any Defendant acted with scienter; (iii) failed to allege loss causation, which is a required element of Plaintiffs' Exchange Act claims, and that this failure also required dismissal of the Securities Act claims; and (iv) failed to plead control person liability. ECF No. 83.

31.     On May 20, 2024, the Court ordered that, notwithstanding the briefing schedule adopted on January 19, 2024, Plaintiffs shall file any second amended complaint by June 7, 2024. ECF No. 85. The Court stated that "Plaintiffs will not be given any further opportunity to amend to address issues raised by the motion to dismiss." *Id.*

### C.     The Second Amended Complaint

32.     On May 22, 2024, five days after the Moving Defendants filed their motion to dismiss the Amended Complaint, Grizzly Research LLC ("Grizzly Research") published a report entitled "GigaCloud Technology Inc – Another China Hustle Inflating Key Metrics Using

Undisclosed Related Party Shell Companies" (the "Grizzly Report"). Second Amended Complaint ¶91.

33.    In order to investigate the Grizzly Report and determine whether to address it in a second amended complaint, on May 28, 2024, Plaintiffs requested a twenty-one day extension, until June 28, 2024, to file a second amended complaint. ECF No. 86. Defendants did not object to this request. *Id.* On May 29, 2024, the Court granted the request. ECF No. 87.

34.    After conducting an additional investigation, Plaintiffs filed the Second Amended Complaint on June 28, 2024. ECF No. 88. The Second Amended Complaint, on behalf of a proposed Class of all persons and entities that purchased or otherwise acquired Class A ordinary shares issued by GigaCloud pursuant and/or traceable to the Registration Statement issued in connection with GigaCloud's August 2022 IPO, asserted claims (1) against GigaCloud, Wu, Lau, Wan, Lin, Huang, Chen, Guo, Liu, and Aegis under Section 11 of the Securities Act, and (2) against Wu, Lau, Wan, Lin, Huang, Chen, Guo, and Liu under Section 15 of the Securities Act. In addition, the Second Amended Complaint, on behalf of a proposed Class of all persons and entities that purchased or otherwise acquired GigaCloud Class A ordinary shares during the period August 18, 2022 to May 22, 2024, both dates inclusive (the "Class Period"), asserted claims (1) against GigaCloud, Wu, Lau, and Wan under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and (2) against Wu, Lau, and Wan under Section 20(a) of the Exchange Act.

35.    The Second Amended Complaint differed from the Amended Complaint in several key respects, including the following.

36.    *First*, it added allegations that Defendants made material misstatements and omissions concerning activity on GigaCloud Marketplace. The Second Amended Complaint

alleged that misstatements regarding this topic were made in the Registration Statement for the IPO and during the Class Period.

37.     *Second*, the Second Amended Complaint alleged that the falsity of Defendants' misstatements was revealed on two dates: September 28, 2023 and May 22, 2024. Second Amended Complaint ¶¶402-11. Accordingly, the Second Amended Complaint alleged that Defendants made misstatements during a Class Period beginning on August 18, 2022 (as in the Amended Complaint) and ending on May 22, 2024 (approximately eight months after the September 28, 2023 conclusion of the Class Period alleged in the Amended Complaint). *Compare* Second Amended Complaint ¶3, *with* Amended Complaint ¶3.

38.     *Third*, the Second Amended Complaint alleged that certain Defendants participated in a fraudulent scheme to mislead the public regarding GigaCloud Marketplace activity. Second Amended Complaint ¶¶397-401, 435-44.

39.     *Fourth*, the Second Amended Complaint alleged that Defendants made material misstatements concerning GigaCloud's AI capabilities only in the Registration Statement and only for purposes of Plaintiffs' Securities Act claims. Unlike the Amended Complaint, it did not allege AI-related misstatements at any other time or in any other context and did not assert any Exchange Act claims based on AI-related misstatements. As a result, it did not include Schrock, who Plaintiffs alleged in the Amended Complaint had made misstatements concerning GigaCloud's AI capabilities during earnings and investor calls, as a defendant.

40.     *Fifth*, the Second Amended Complaint contained additional allegations based on information from a total of nine GigaCloud employees, including the four former employees cited in the Amended Complaint. Second Amended Complaint ¶¶33-41. It also set forth additional allegations from certain of the former employees cited in the Amended Complaint. *E.g.*, Second

13

Amended Complaint ¶¶ 97, 110, 376. It also extensively cited other records and sources in support of the claims. *E.g.*, Second Amended Complaint ¶¶102-03, 105, 107-08, 112, 114-15, 117-18, 120-24, and Ex. B thereto).

**D.    Defendants' Motions to Dismiss the Second Amended Complaint**

41.    On August 9, 2024, Defendants GigaCloud, Wu, Lau, Wan, and Aegis filed a motion to dismiss the Second Amended Complaint, supported by a memorandum of law, attorney declaration, and exhibits thereto. ECF Nos. 95-97. In support of their motion, these Defendants argued that the Second Amended Complaint (i) failed to allege any material misstatements or omissions; (ii) failed to allege, as required for Plaintiffs' Exchange Act claims, a strong inference that any Defendant acted with scienter; (iii) failed to allege loss causation, which is a required element of Plaintiffs' Exchange Act claims, and that this failure also required dismissal of the Securities Act claims; (iv) failed to allege a fraudulent scheme, and (iv) failed to plead control person liability. ECF No. 96.

42.    On August 13, 2024, Defendants' Counsel advised Co-Lead Counsel that the Bailiff Section of the Hong Kong Judiciary had attempted to effect service of process on Defendant Chen, that Chen did not contest service, that Chen would appear through counsel to respond the Second Amended Complaint, and that Chen anticipated submitting a short joinder adopting the motion to dismiss the Second Amended Complaint filed by GigaCloud, Wu, Lau, Wan, and Aegis, and making an additional personal jurisdiction argument that is uniquely applicable to him. ECF No. 99 at 1.

43.    On August 21, 2024, Defendant Chen filed a notice of joinder with the motion to dismiss the Second Amended Complaint filed by Defendants GigaCloud, Wu, Lau, Wan, and Aegis, and a motion to dismiss the Second Amended Complaint for lack of personal jurisdiction, supported by a memorandum of law. ECF Nos. 105-06.

44.     On October 8, 2024, Co-Lead Plaintiffs filed memoranda of law, attorney declarations, and exhibits thereto in opposition to the motions to dismiss the Second Amended Complaint. ECF Nos. 107-10.

45.     On November 7, 2024, Defendants GigaCloud, Wu, Lau, Wan, Aegis, and Chen filed replies in support of their motions to dismiss the Second Amended Complaint. ECF Nos. 115-16.

### E.      Plaintiffs Continue to Attempt to Serve the Remaining Defendants

46.     As indicated above, by the time the briefing was complete regarding Defendants' motions to dismiss the Second Amended Complaint, the following Defendants had not been served with a summons and complaint or waived service thereof: Lin, Huang, Guo, and Liu. Plaintiffs, through counsel and investigators, conducted a substantial amount of research to identify addresses at which to serve these Defendants, and to attempt such service.

47.     After their attempt to serve these Defendants at GigaCloud's principal executive office in Hong Kong was unsuccessful, Plaintiffs investigated further and identified addresses in the United States for Defendants Lin and Liu. Plaintiffs were unable to identify additional addresses at which they believed they could effect service on Defendants Guo and Huang.

48.     As to Defendant Lin, Plaintiffs' process server attempted on November 1, 2024 to effect service at a United States business address that Plaintiffs identified for Lin, but the server was told by an individual who claimed to be an executive assistant that, though Lin was employed at that address, he was in China for an extended amount of time. Plaintiffs then considered moving the Court to permit alternative service on Lin through GigaCloud in light of his membership on

GigaCloud's board of directors. However, according to a report GigaCloud filed with the SEC, Lin resigned from GigaCloud's board of directors on November 6, 2024, effective immediately.[3]

49. As to Defendant Liu, Plaintiffs' process server reported that their three attempts to serve process at the United States address identified by Plaintiffs were unsuccessful. Plaintiffs then sent to Liu two copies of a waiver of service form, one copy of each of the Amended Complaint, amended summons issued October 25, 2024 (ECF No. 113), and a request to waive service, as well as a prepaid return envelope; these materials were delivered on November 21, 2024. As this yielded no response from Liu, Plaintiffs continued to attempt to effect personal service on Liu at that address. On January 25, 2025, Defendants' Counsel contacted Co-Lead Counsel by email, stating that they did not represent Liu and did not have authority to accept service for him and that Liu is a non-US resident and did not live or work at the address in question.

### F.     The Court Upholds the Second Amended Complaint in Part

50. On January 27, 2025, the Court issued an Opinion and Order (1) granting in part and denying in part GigaCloud, Wu, Lau, Wan, and Aegis's motion to dismiss the Second Amended Complaint, and (2) denying Chen's motion to dismiss the Second Amended Complaint. ECF No. 117.

51. The Court held that Plaintiffs plausibly alleged that the Registration Statement contained materially misleading statements about GigaCloud's use of AI in violation of Section 11 of the Securities Act. *Id.* at 14-18. The Court found that the former GigaCloud employees anonymously cited in the Second Amended Complaint were described with sufficient particularity to support the probability that they possessed the information attributed to them, and that such

---

[3] *See* GigaCloud Technology, Inc., Current Report (Form 8-K) (Nov. 13, 2024), available at https://www.sec.gov/Archives/edgar/data/1857816/000185781624000216/gct-20241113.htm.

information was "sufficient to support an inference that GigaCloud did not use AI in its logistics operations as claimed in the Offering Materials." *Id.* at 16-17.

52.    The Court also rejected Defendants' argument for dismissal of these claims for failure to sufficiently allege loss causation, reasoning that Section 11 does not require Plaintiffs to plead loss causation and that it is not "apparent from the face of the complaint that the plaintiff[s] cannot recover [their] alleged losses." *Id.* at 17 (alterations in original) (quoting *Boluka Garment Co., Ltd. v. Canaan Inc.*, 547 F. Supp. 3d 439, 447 (S.D.N.Y. 2021)). Defendants argued that GigaCloud's stock price rebounded following the alleged corrective disclosures, negating loss causation. The Court rejected this argument, holding that the fact "'that the price [of the stock] rebounded does not, at the pleading stage, negate the plaintiff's showing of loss causation' because when 'drawing all reasonable inferences in favor of [plaintiff], [we] assume that the price rose for reasons unrelated to its initial drop.'" *Id.* at 18 n.5 (alterations in original) (quoting *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 39-40 (2d Cir. 2012)).

53.    The Court also denied Chen's motion to dismiss for lack of personal jurisdiction, holding that allegations that Chen signed a written consent to be named in the Registration Statement as being or about to become a director of GigaCloud provided a sufficient basis for the Court to exercise personal jurisdiction over Chen. *Id.* at 18-19.

54.    However, the Court dismissed Plaintiffs' claims that Defendants made material misstatements concerning activity on GigaCloud Marketplace, finding that Defendants accurately represented activity on GigaCloud Marketplace and were not obligated to disclose the allegedly concealed and misrepresented information. *Id.* at 11-12. The Court also dismissed Plaintiffs' scheme-liability claims on the basis that "they are premised on the same misstatements." *Id.* at 13.

17

55. The Court also denied Plaintiffs leave to amend their allegations, reasoning that "the problems with Plaintiffs' dismissed claims are substantive, so amendment would be futile." *Id.* at 21 (citing *Roundtree v. City of New York*, 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021)).

56. Thus, the Court upheld Plaintiffs' claims regarding GigaCloud's AI capabilities, which were brought under the Securities Act only, but dismissed Plaintiffs' claims regarding GigaCloud Marketplace, which were brought under both the Securities Act and the Exchange Act. Therefore, Plaintiffs' Exchange Act claims were dismissed in their entirety.

### G. Defendants' Answers

57. On March 4, 2025, Defendant Aegis filed its answer to the Second Amended Complaint. ECF No. 124. In its answer, Aegis denied liability and asserted thirty-three purported affirmative defenses.

58. On March 11, 2025, Defendants GigaCloud, Wu, Wan, Lau, Chen, and Liu filed their answer to the Second Amended Complaint. ECF No. 125. In their answer, these Defendants denied liability and asserted forty-six purported defenses including, as to Defendant Liu, insufficient service of process. *Id.* at 181.

## III. SETTLEMENT NEGOTIATIONS AND THE SETTLEMENT'S PRELIMNARY APPROVAL

### A. The Parties Negotiate the Settlement

59. The Court's Opinion and Order scheduled an initial pretrial conference for March 26, 2025, and established a deadline of March 20, 2025, for the Parties to submit a joint status letter and proposed Case Management Plan. ECF No. 117 at 21-22.

60. Accordingly, the Parties began discussing the scope of discovery and schedule for the Action. In the course of those discussions, the Parties broached the subject of a potential

negotiated resolution to the Action. As these discussions were productive, on March 17, 2025, the Parties jointly requested that the Court adjourn the pretrial conference and related deadlines by thirty days to permit the Parties to continue discussing the possibility of a resolution. ECF No. 127. The Court granted that request, rescheduling the initial conference to April 30, 2025. ECF No. 128.

61.     On April 23, 2025, the Parties reached a settlement-in-principle to resolve the Action for $2,750,000 and began negotiating a term sheet. The following day, the Parties advised the Court that they had had constructive discussions about a potential resolution of the Action, requested a second thirty-day extension to permit those discussions to continue, and stated that they intended to inform the Court of the status of these discussions by May 2, 2025. ECF No. 130. That same day, the Court granted the adjournment, rescheduling the initial conference to May 28, 2025, and ordered the Parties to file a joint status letter no later than May 2, 2025. ECF No. 131.

62.     Following additional negotiations, on May 2, 2025, the Parties, through their counsel, executed a confidential term sheet setting forth the material terms associated with the resolution of the Action, subject to the execution of a customary "long form" stipulation and agreement of settlement and related papers. That same day, the Parties wrote jointly to notify the Court that they had reached a settlement-in-principle and that Plaintiffs intended to file a motion for preliminary approval of the settlement within forty-five days thereafter. ECF No. 132. In light of the settlement in principle, the Parties jointly requested an adjournment of the initial pretrial conference, then scheduled for May 28, 2025, and all other deadlines in this case, pending the submission of Plaintiffs' preliminary approval motion. *Id.*

63.    The Court granted that request the same day, adjourning the pretrial conference and all existing deadlines *sine die* pending the filing of a motion for class certification and preliminary approval of the Settlement, for which the Court set a deadline of June 16, 2025. ECF No. 133.

64.    The Parties then negotiated the terms of the Stipulation and Supplemental Agreement, which the Parties executed on June 16, 2025.

65.    As provided for in the Stipulation, in exchange for payment of the Settlement Amount, the Action will be dismissed with prejudice and Plaintiffs and the Settlement Class will forever release all Released Plaintiffs' Claims against the Released Defendant Parties. Released Plaintiffs' Claims are any and all claims and causes of action of every nature and description, whether known claims or Unknown Claims, contingent or absolute, mature or not mature, liquidated or unliquidated, accrued or not accrued, concealed or hidden, regardless of legal or equitable theory and whether arising under federal, state, common, or foreign law, that Co-Lead Plaintiffs or any other member of the Settlement Class: (a) asserted in the Action, including, for the avoidance of doubt, all claims already dismissed by the Court's order dated January 27, 2025, granting in part and denying in part Defendants GigaCloud, Wu, Lau, Wan, and Aegis's motion to dismiss the Second Amended Complaint (ECF Nos. 95-97); or (b) could have asserted in the Action or any forum that arise out of, are based upon, or relate to both (i) the allegations, transactions, facts, activities, matters or occurrences, conduct, representations, or omissions involved, set forth, or referred to in the Action and (ii) the purchase or acquisition of GigaCloud Stock during the Class Period. Released Plaintiffs' Claims shall not include claims to enforce the Settlement. *See* Stipulation ¶1(gg). Also, upon the Effective Date of the Settlement, Defendants will forever release all Released Defendants' Claims against the Released Plaintiff Parties.

Released Defendants' Claims are all claims related to the institution, prosecution, or settlement of the claims against Defendants. *See* Stipulation ¶1(ee).

### B. The Court Preliminarily Approves the Settlement.

66.     On June 16, 2025, Plaintiffs filed the Stipulation (including the exhibits thereto) (ECF No. 137) as well as the Preliminary Approval Motion, supported by a memorandum of law and declaration (ECF Nos. 134-136).

67.     On June 20, 2025, the Court, finding that it would likely be able to approve the Settlement, entered the Preliminary Approval Order, and approved Strategic Claims Services ("SCS" or the "Claims Administrator") as the claims administrator. The Court further approved the form, substance and requirements of the Notice, Claim Form, Summary Notice, and Postcard Notice as well as the Parties' proposed plan for providing notice to the Settlement Class. The Court found the proposed notice plan as: (a) constituting the best notice to Settlement Class Members practicable under the circumstances; (b) as reasonably calculated, under the circumstances, to describe the terms and effect of the Settlement and to apprise Settlement Class Members of their right to object to the proposed Settlement or to exclude themselves from the Settlement Class. Preliminary Approval Order.

### IV.     PLAINTIFFS' ISSUE NOTICE TO THE SETTLEMENT CLASS PURSUANT TO THE PRELIMINARY APPROVAL ORDER

68.     The Preliminary Approval Order directed SCS, under Co-Lead Counsel's direction, to: (i) post Notice and Claim Form on the website for the Settlement; (ii) mail the Postcard Notice to Settlement Class Members who can be identified with reasonable effort; and (iii) publish the Summary Notice once in Investor's Business Daily and once over a national newswire service. Preliminary Approval Order ¶¶8, 11.

69.     The Court also set a deadline of September 18, 2025 (21 calendar days prior to the Settlement Hearing) for Settlement Class Members to submit objections to the Settlement, the Plan of Allocation, and/or the Fee Motion or to request exclusion from the Settlement Class, and scheduled the Settlement Hearing for October 9, 2025, at 3:30 p.m. *Id.* ¶¶18, 15, 5.

70.     The Court-approved Notice disclosed, among other things, the following information to Settlement Class Members: (a) a summary of the Settlement, including the two million seven hundred and fifty thousand dollars ($2,750,000), Settlement Amount; (b) that Co-Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 33.4% of the Settlement Amount plus interest, reimbursement of actual expenses of $130,000, and compensatory awards to Plaintiffs of up to $15,000; (c) the details of the Plan of Allocation; (d) that any Settlement Class Member could object to the requested attorneys' fees, reimbursement of the litigation expenses and Award to Plaintiffs; (e) an explanation of the reasons for the Settlement; (f) that requests for exclusion from the Settlement must be submitted to the Claims Administrator no later than September 18, 2025; (g) that objections to the Settlement, the Plan of Allocation, and/or the Fee Motion must be filed with the Court and served on counsel no later than September 18, 2025; and (h) that the deadline for submitting a Claim Form is October 6, 2025. The Notice is attached as Exhibit A to the Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; And (C) Report on Requests for Exclusion and Objections ("Craig Decl."), which is itself attached as Exhibit A hereto.

71.     To disseminate notice, by July 7, 2025, SCS mailed a copy of the Postcard Notice to the organizations identified in the transfer agent records provided to Claims Administrator by Defendants. *See* Craig Decl. ¶5. On July 7, 2025, SCS also sent the Notice and Claim Form to the Depository Trust Company ("DTC") to publish on its Legal Notice System ("LENS"). *Id*. ¶3.

LENS provides DTC participants the ability to search and download legal notices as well as receive e-mail alerts based on particular notices or particular CUSIPs once a legal notice is posted. *Id.*

72.    On July 7, 2025, SCS also mailed or emailed a letter to the 2,464 nominees in a proprietary list that it maintains of banks, brokerage companies, mutual funds, insurance companies, pension funds, and money managers. *Id.* ¶4. Nominees were requested to, within ten (10) calendar days, either: (a) request from SCS sufficient copies of the Postcard Notice to send to each of their customers who may be beneficial purchasers/owners, and within ten (10) calendar days after receipt of the copies of the Postcard Notice, mail them to such beneficial owners; or (b) provide SCS with a list of the names, mailing addresses, and e-mail addresses, to the extent e-mail addresses were available, of such beneficial purchasers/owners so that SCS could promptly either mail the Postcard Notice or e-mail the links to the Postcard Notice and the Notice and Claim Form on the Settlement Website directly to them. *Id.*

73.    SCS received additional names and addresses of potential Settlement Class Members, additional names and email addresses of potential Settlement Class Members, requests to send Postcard notices to additional potential Settlement Class Members, and notification from other nominees that they had mailed Postcard Notices to their clients who were potential Settlement Class Members. *Id.* ¶¶5, 6.

74.    To date, SCS and nominees have mailed or emailed 147,496 copies of the Postcard Notice to potential Settlement Class Members. *Id.* ¶7.

75.    On July 21, 2025 in accordance with the Preliminary Approval Order, SCS caused the Summary Notice to be published once in *Investor's Business Daily* and to be transmitted over *Globe Newswire*. *Id.* ¶8; *see also id.*, Ex. D (confirmations of publication).

76.    Co-Lead Counsel also caused SCS to establish the dedicated Settlement Website, which became operational on July 7, 2025, to provide potential Settlement Class Members with information concerning the Settlement, including exclusion, objection, and claim-filing deadlines for the case; the online claim filing link; the date and time of the Settlement Hearing; and downloadable versions of the Notice and Claim Form, as well as copies of the Stipulation and Preliminary Approval Order. *Id.* ¶10.

77.    SCS also maintains a toll-free telephone number for potential Settlement Class Members to call and obtain information about the Settlement and/or request a Notice and Claim Form. SCS promptly responds to each telephone inquiry and will continue to address potential Settlement Class Members' inquiries. *Id*. ¶9.

78.    As set forth above, the Notice informed potential Settlement Class Members that the deadline to file objections to the Settlement, the proposed Plan of Allocation and/or the Fee Motion, or to request exclusion from the Settlement Class, is September 18, 2025. To date, no requests for exclusion have been received. *Id*. ¶11. Plaintiffs will file a supplemental affidavit from SCS after the September 18, 2025 deadline addressing whether any requests for exclusion have been received.

79.    In addition, to date, no objections to the Settlement, the Plan of Allocation, and/or the Fee Motion have been entered on this Court's docket or received by Co-Lead Counsel or SCS. *Id*. ¶12. Plaintiffs' reply papers in support of the Final Approval Motion and the Fee Motion, which are due on October 2, 2025, will address any objections that may be received.

## V.    RISKS FACED BY PLAINTIFFS IN THE ACTION

80.    The proposed Settlement eliminates significant risks posed by continuing litigation, including the potential risk that the Settlement Class would recover nothing or an amount significantly less than the $2.75 million negotiated here. Further, while Plaintiffs believe that the

24

claims asserted against Defendants are meritorious, they recognize that there are significant hurdles to overcome to establish the falsity and materiality of the alleged misstatements. Plaintiffs are faced with considerable risks and obstacles to achieving a greater recovery, were the case to continue. Plaintiffs and Co-Lead Counsel carefully considered these challenges during the months leading up to mediation and were mindful of such risks during settlement discussions with Defendants. In addition, even if Plaintiffs were able to overcome the risks to establishing falsity and scienter, they faced very serious risks in proving loss causation and damages. Finally, the risk of being unable to collect on any judgment is heightened in this case because a substantial portion of GigaCloud's operations is in China (where several of the Individual Defendants reside or are believed to reside), and GigaCloud is incorporated in the Cayman Islands rather than the United States.

A.    **Risks Concerning Liability**

81.    In order to establish Defendants' liability at trial, Plaintiffs would need to prove that Defendants made material misstatements or omitted material facts necessary to make their statements not misleading. Defendants would almost certainly argue at summary judgment and trial that the alleged misstatements or omissions concerning the Company's use of AI (which were the only alleged statements that survived Defendants' motions to dismiss) were not materially false and misleading.

82.    *First*, Defendants would likely argue that there is no single, authoritative definition of "AI" and thus that the Registration Statement, which distinguished between general data analytics and AI technology, could not have given investors a false or misleading understanding of the Company's technology. *See* ECF No. 83 at 10 n.9.

83.    *Second*, and relatedly, Defendants would likely contend, echoing their arguments for dismissal, that the Registration Statement "provided no detail about how sophisticated

25

[GigaCloud's] technology was," and thus could not have misrepresented the sophistication of that technology. They would contend that the extent any discussion of the sophistication of the technology was made it was mere puffery which is inactionable as a matter of law. *Id.* at 11, 15.

84.    *Third*, Defendants would almost certainly argue that the Registration Statement's representations concerning AI were *true*, and that GigaCloud did use AI in its logistics operations. Indeed, Defendants GigaCloud, Wu, Wan, Lau, Chen, and Liu, in their Answer to the Second Amended Complaint, pleaded that "[o]ver the last several years, GigaCloud has developed and deployed an AI infrastructure to support various aspects of the Company's business operations, including but not limited to managing inventory, optimizing routing, and analyzing transaction patterns." ECF No. 125 at 2. They further pleaded that GigaCloud's development of its "proprietary IT software" was led by a data engineer named Yuan Wen, whom GigaCloud hired in 2016 and promoted to Chief Data Scientist in 2019. *Id*. According to these Defendants, Mr. Yuan "has led the Company's efforts to develop various AI functionality to support its operations along with a small data science and analytical team consisting of five employees based in Suzhou, China." *Id.* at 2-3. Thus, Plaintiffs could be in a position where the most authoritative witness regarding the falsity of Defendants' alleged misstatements was an employee of GigaCloud itself. If Defendants produced discovery and/or adduced testimony that, in the Court's view, disproved Plaintiffs' allegations of falsity, the Settlement Class would receive nothing. In addition to fact discovery, a dispute as to whether GigaCloud's software constituted "AI" would likely lead to a "battle of the experts," the outcome of which would be inherently uncertain, posing an existential risk to Plaintiffs' claims.

85.    *Fourth*, Defendants, would continue to attack the credibility of the former GigaCloud employees identified in the Second Amended Complaint, contending that they were

26

not in a position to be aware of the Company's AI use, and "would have no insight into the Company's AI use in the first place." *Id.* at 12. Indeed, Defendants GigaCloud, Wu, Wan, Lau, Chen, and Liu alleged in their Answer that "because th[e] AI work" performed by "Mr. Yuan and his small team" is "both important and cutting-edge, the Company takes proactive steps to safeguard this work, including by limiting the number of personnel who know the exact back-end processes supporting the systems used by other GigaCloud employees." *Id.* at 2-3. "In other words, aside from the few individuals charged with developing and overseeing its AI programs, most GigaCloud personnel, including the types of employees described as 'former employees' in the SAC, would not be privy to the existence, let alone any details, of those programs." *Id.* Indeed, if discovery from "Mr. Yuan and his small team," including deposition and trial testimony, undermined Plaintiffs' allegations, Plaintiffs could find it difficult to prove their claims to the factfinder.

86.    *Fifth*, Defendants would likely argue, as they did at the pleading stage, that the Registration Statement represented that GigaCloud's "various business operations were supported by '*multiple*' technology systems, of which AI and [machine learning] were only but one part," and thus that statements concerning AI were of limited scope and significance. ECF No. 96 at 9.

87.    *Sixth*, and relatedly, Defendants would likely argue that the alleged misstatements were not material to investors, and Plaintiffs faced the risk that they would be unable to prove materiality.

88.    The risk posed by these arguments is substantial, and the Court has already accepted these, or variations of these, arguments to dismiss a significant portion of Plaintiffs' Second Amended Complaint. Specifically, the Court dismissed the claims relating to GigaCloud Marketplace, finding that Defendants accurately represented activity on GigaCloud Marketplace

27

and were not obligated to disclose the allegedly concealed and misrepresented information, effectively severing all Exchange Act claims. ECF No. 117 at 11-12.

89.    For these reasons, Plaintiffs faced a substantial risk that the Court or a jury would have concluded that the alleged misstatements were not materially false or misleading.

### B.    Risks Related to Loss Causation and Damages

90.    Even if Plaintiffs overcame the above risks and successfully established liability, Defendants would likely argue that there are no recoverable damages or that damages are minimal.

91.    Plaintiffs' consulting damages expert has estimated that maximum aggregate class-wide damages are approximately $75 million. This figure encompasses all claims asserted in the Second Amended Complaint, which – as noted above – asserted a Class Period of August 18, 2022 to May 22, 2024, both dates inclusive, ending with the release of the Grizzly Report. With respect to the Exchange Act claims asserted therein, the Second Amended Complaint alleges that the false and misleading nature of Defendants' alleged misstatements was revealed on two dates: (1) September 28, 2023, when the Culper Report was published, and (2) May 22, 2024, when the Grizzly Report was published. Second Amended Complaint ¶¶402-11. The Second Amended Complaint alleged that the Grizzly Report revealed the falsity of Defendants' alleged misstatements concerning activity on GigaCloud Marketplace, but the Court dismissed those claims (which were the entirety of Plaintiffs' claims under the Exchange Act). Thus, the maximum damages estimate of $75 million reflects claims that were dismissed by the Court. Indeed, the large majority of this $75 million estimate relates to Plaintiffs' Exchange Act claims, which the Court dismissed. Further, this estimate does not account for the effect of non-fraud-related company-specific information that may have been disclosed contemporaneously with the alleged corrective disclosures.

92.     Plaintiffs' consulting damages expert has estimated that maximum aggregate class-wide damages for the shorter class period alleged in the Amended Complaint (ending on September 28, 2023) range from $14.7 million to $23.8 million for the Exchange Act claims. This estimate also does not account for the effect of non-fraud-related company-specific information that may have been disclosed contemporaneously with the alleged corrective disclosure. Further, as already noted, the Court dismissed all of Plaintiffs' Exchange Act claims.

93.     Plaintiffs' consulting damages expert has estimated that maximum aggregate class-wide damages for Plaintiffs' Securities Act claims range from $20.81 million to $23.78 million, applying the statutory calculation set forth in 15 U.S.C. § 77k(e). It must be noted that the entirety of these damages estimates for the Exchange Act claims and for the Securities Act claims cannot be added together, as that would reflect double recovery for share purchases eligible under both statutes.

94.     Though loss causation is not an element of a Section 11 claim, and thus need not be affirmatively pleaded (*see* ECF No. 117 at 17), the Securities Act would permit Defendants to assert as an affirmative defense that declines in the price of GigaCloud Stock were unrelated, in whole or in part, to the alleged misstatements, and to that extent are not recoverable. 15 U.S.C. § 77k(e). If accepted by the Court or a jury, this "negative causation" defense could entirely eliminate damages for the Settlement Class.

95.     Indeed, when moving to dismiss both the Amended Complaint and the Second Amended Complaint, Defendants argued that Plaintiffs' "alleged losses could not have been caused by the alleged misstatements." ECF No. 96 at 22; *see also* ECF No. 83 at 18 (same). In their motion to dismiss the Amended Complaint, Defendants argued that any price declines following publication of the Culper Report were unrelated to any alleged misstatements

concerning AI because, inter alia, only "38 words in the 27-page short-seller report" related to AI, and that "investors and analysts who commented on the short-seller report focused on the report's other unsubstantiated and now-disproven claims . . . rather than the report's few passing words about AI," which "severs any causal link between the alleged misstatements and the drop in stock prices." ECF No. 83 at 18, 20-21.

96.    Defendants also argued that both the Culper Report and the Grizzly Report merely "'expressed negative opinions about [the Company]' based on public information," and thus did not reveal anything *new*. ECF No. 96 at 22 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013)).

97.    Further, Defendants argued that because both the Culper Report and the Grizzly Report were published by short-sellers with a "disclosed financial interest in driving down GigaCloud's stock price and have expressly disclaimed 'as to the accuracy, timeliness, or completeness of any [representation] or with regard to the results to be obtained from its use,'" it is implausible "that investors viewed these short-seller reports as revealing the falsity of any prior statements." *Id.* at 23-24 (citing *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 540-42 (9th Cir. 2024); *In re LexinFintech Holdings Ltd. Sec. Litig.*, 2021 WL 5530949, at *16 (D. Or. Nov. 24, 2021)).

98.    Defendants would also likely contend that because GigaCloud's stock price declined below the $12.25 IPO price early in the Class Period, before either of the corrective disclosures that Plaintiffs pleaded (either in the Amended Complaint or the Second Amended Complaint) with respect to their Exchange Act claims (including the Culper Report, which addressed GigaCloud's purported AI capabilities), the price decline was unrelated to the alleged false statements.

99.     In addition, Defendants argued that "[e]ven though the releases of the reports were each followed by a same-day drop in GigaCloud's stock price, the price quickly rebounded once investors saw that the headline was not supported by any reliable facts," and that this, also, "severs any causal link between the alleged misstatements and the drop in stock prices." ECF No. 96 at 24. This presented another risk concerning loss causation and damages.

100.    Defendants would almost certainly repeat these and similar arguments at class certification, summary judgment, and/or trial, and would proffer expert evidence purporting to establish that declines in the price of GigaCloud Stock were unrelated to the alleged misstatements. Plaintiffs would then be compelled to proffer their own expert evidence to rebut Defendants' evidence. The inherently uncertain outcome of this "battle of the experts" would pose a risk to Plaintiffs' ability to recover *anything* for the Settlement Class, even if Plaintiffs were able to prove that Defendants made material misstatements.

### C.      Other Risks, Including Trial and Appeals, and Ability to Collect a Judgment

101.    Even if Plaintiffs succeeded in proving all elements of their case at trial and obtained a jury verdict, Defendants would almost certainly have appealed. An appeal not only would have renewed all the risks Plaintiffs faced—as Defendants would have reasserted all their arguments summarized above—but also would have resulted in significant additional delay. Given these significant litigation risks, Plaintiffs and Co-Lead Counsel believe that the Settlement represents a highly favorable result for the Settlement Class.

102.    Furthermore, litigating against foreign defendants creates additional risk as the defendants may not continue to engage in litigation and thus there would be no source of recovery for investors. Co-Lead Counsel Rosen Law faced this issue in another securities class action, *Vanderhoef v. China Auto Logistics, Inc., et al.*, No. 2:18-cv-10174-CCC-ESK (D.N.J.), where the

defendant company China Auto Logistics, Inc. ("CALI"), a Nevada corporation headquartered in China, as well as individual defendants based in China, stopped participating in the action after the court denied the defendants' motions to dismiss. Eventually, because these defendants effectively disappeared from the action, the plaintiffs were forced to voluntarily dismiss their claims against them without prejudice. *Vanderhoef*, ECF No. 141.

103.    Similarly, in *In re ChinaCast Education Corporation Securities Litigation,* 2:12-cv-04621-JFW-PLA (C.D. Cal.), after years of litigation, including plaintiffs' successful appeal of a motion to dismiss ruling to the Ninth Circuit, ChinaCast's counsel withdrew from the action after the company's insurers refused to cover litigation costs. *ChinaCast*, ECF Nos. 68, 72. The plaintiffs secured a default judgment of $65.8 million for the class, but ChinaCast filed for bankruptcy. *ChinaCast*, ECF No. 79. In an attempt to recover the default judgment, plaintiffs pursued another lawsuit against ChinaCast's insurers. *See Jayhawk Private Equity Fund II LP v. Liberty Insurance Underwriters*, 2:17-cv-05523-GW-RAO (C.D. Cal.). Ultimately, however, these claims were dismissed due to expansive exclusion provisions in the insurance policies. *ChinaCast*, ECF No. 78. Therefore, despite more than seven years of litigation, investors received nothing from the China-based defendants.

104.    Here, GigaCloud is a Cayman Islands corporation with a large portion of its operations and assets in China. Furthermore, several of the Individual Defendants are also believed to be located in China, including Defendants Lin, Huang, Guo, and Liu, on whom Plaintiffs were unable to serve process. This creates a heightened risk with respect to collecting any judgment.

## VI.    THE PLAN OF ALLOCATION

105.    Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Settlement Class Members who wish to participate in the distribution of the Net Settlement Fund must submit a valid Claim Form, including all required information, that is postmarked no later

than October 6, 2025. Craig Decl., Ex. A (Notice and Claim Form) at 1, 2, 5. As provided in the Notice, after deduction of Court-awarded attorneys' fees and expenses, Notice and Administration Costs, and Taxes and Tax Expenses, the balance of the Settlement Fund will be distributed according to the Plan of Allocation, if approved by the Court. *Id*. at 4-5.

106.    The proposed Plan of Allocation, which is set forth in full in the Notice (*id*. at 10-14), was designed to achieve an equitable and rational distribution of the Net Settlement Fund, but it is not a damages analysis that would be submitted at trial. Co-Lead Counsel developed the Plan of Allocation in close consultation with Plaintiffs' consulting damages expert and Claims Administrator, and believe that the plan provides a fair and reasonable method for equitably distributing the Net Settlement Fund among Authorized Claimants.

107.    Under the Plan of Allocation, a "Recognized Loss" is calculated for each purchase of GigaCloud Stock during the Class Period. *Id*. at 10. Shares purchased in GigaCloud's August 2022 IPO and during the period from August 18, 2022 through February 14, 2023, inclusive (when a lock-up of insider shares expired), are considered purchases pursuant to or traceable to the Registration Statement and thus eligible for a recovery under the Securities Act. *Id*. For such shares, Recognized Losses are generally calculated in accordance with the statutory damages provision of the Securities Act. *Id*. at 10, 12. This calculation does not reduce losses to account for any potential negative causation defense that Defendants could assert.

108.    All shares, including shares purchased in the IPO and during the aforementioned period, are also eligible under the Exchange Act. When calculating Recognized Losses for purposes of the Exchange Act, the Plan of Allocation's "computation of the estimated alleged artificial inflation is based on the misrepresentations alleged by Co-Lead Plaintiffs and the decline in the price of the stock, net of market- and industry-wide factors, on the Corrective Disclosure

33

Dates," as is standard. *Id*. at 10. For shares of GigaCloud Stock eligible for a recovery under both the Securities Act and the Exchange Act, the Recognized Loss shall be the greater of: (i) the Recognized Loss under the Securities Act; or (ii) the Recognized Loss under the Exchange Act. *Id*.

109.    The Claims Administrator, under Co-Lead Counsel's direction, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's total Recognized Claim compared to the aggregate Recognized Claims of all Authorized Claimants. Calculation of Recognized Claims will depend upon several factors, including when the Authorized Claimant purchased GigaCloud Stock during the Class Period, whether the securities were sold and, if so, when.

110.    Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will distribute the Net Settlement Fund. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund after six (6) months from the date of initial distribution, Co-Lead Counsel will, if cost effective, re-distribute the balance among Authorized Claimants who have cashed their checks. These re-distributions will be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute. Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not cost effective to reallocate, after payment of any outstanding Notice and Administration Costs or Taxes and Tax Expenses, will be contributed to a 501(c)(3) non-profit organization(s) unaffiliated with the Parties or their counsel, and approved by the Court. Stipulation ¶28.

111.    In sum, the proposed Plan of Allocation, developed in consultation with Plaintiffs' consulting damages expert, is designed to fairly and rationally allocate the Net Settlement Fund

among Authorized Claimants. Accordingly, Plaintiffs and Co-Lead Counsel believe the proposed

Plan of Allocation is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

## VII. CO-LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

112.    In addition to seeking final approval of the Settlement and Plan of Allocation, Co-

Lead Counsel is applying for a fee award of 33.4% of the Settlement Amount, plus interest at the

same rate earned by the Settlement Fund). Co-Lead Counsel also request reimbursement of

Litigation Expenses from the Settlement Fund in the amount of $101,195.16. The requested

Litigation Expenses are well below the maximum amount of $130,000 in set forth in the Notice.

The legal authorities supporting these requests are set forth in the memorandum of law in support

of the Fee Motion filed contemporaneously herewith. The primary factual bases for the requested

fee and reimbursement of Litigation Expenses are summarized below and in the Exhibits discussed

below.

### A.    The Favorable Outcome Achieved is the Result of the Significant Time and Labor That Lead Counsel Devoted to the Action

113.    Co-Lead Counsel spent considerable time prosecuting the Action on behalf of

Settlement Class. Among other things, Co-Lead Counsel:

(i)    conducted a thorough and wide-ranging investigation that included a review and analysis of publicly available information, as well as interviews with numerous former GigaCloud employees;

(ii)    consulted with experts regarding accounting, market efficiency, loss causation, and damages issues;

(iii)    prepared and filed a detailed Amended Class Action Complaint (the "Amended Complaint") (ECF No. 59) that identified numerous alleged misrepresentations by Defendants and contained allegations derived from four former GigaCloud employees;

(iv)    analyzed Defendants' motion to dismiss the Amended Complaint (ECF No. 82);

35

(v)     following the publication of a report by Grizzly Research LLC, conducted an additional investigation concerning matters raised therein;

(vi)     prepared and filed a detailed Second Amended Class Action Complaint (the "Second Amended Complaint") (ECF No. 88) that identified additional alleged misrepresentations by Defendants and contained allegations derived from five additional former GigaCloud employees;

(vii)     prepared and filed Plaintiffs' opposition (ECF Nos. 107-08) to Defendants GigaCloud, Wu, Lau, Wan, and Aegis's motion to dismiss the Second Amended Complaint (ECF No. 95), which the Court granted in part and denied in part (ECF No. 117);

(viii)     prepared and filed Plaintiffs' opposition (ECF Nos. 109-10) to Defendant Chen's separate motion to dismiss the Second Amended Complaint (ECF No. 105), which the Court denied in full (ECF No. 117);

(ix)     undertook extensive efforts to serve pleadings on Defendants, several of whom are believed to reside in the People's Republic of China;

(x)     following the Court's order sustaining the Second Amended Complaint in part, engaged in discussions with Defendants' Counsel regarding the scope of discovery and a schedule for the Action;

(xi)     engaged in discussions with Defendants' Counsel over a period of several weeks regarding a potential negotiated resolution of the Action, leading to the proposed Settlement;

(xii)     drafted the Preliminary Approval Motion, Notice, Summary Notice, Postcard Notice, Claim Form, and all other supporting documents and declarations;

(xiii)     oversaw the implementation of the judicially approved notice process to Settlement Class Members, and continues to oversee claims process; and

(xiv)     prepared the Final Approval Motion and the Fee Motion, along with all supporting documents and declarations.

114.     Pomerantz expended a total of 830.49 hours in the investigation and prosecution of this Action, resulting in a lodestar of $644,589.00. *See* Exhibit D (Declaration of Jonathan Park Regarding Attorneys' Fees and Litigation Expenses) ("Park Fee Decl.") ¶6 and Ex. A thereto. Rosen Law expended a total of 836.5 hours in the investigation and prosecution of this Action, resulting in a lodestar of $1,098,465.60. Exhibit E (Declaration of Brian B. Alexander Regarding

Attorneys' Fees and Litigation Expenses ("Alexander Fee Decl.") ¶6. Jointly, Pomerantz and Rosen Law expended 1,666.99 hours in the investigation and prosecution of the Action, resulting in a lodestar of $1,743,054.60. These figures exclude time spent on the request for attorneys' fees and expenses. The requested fee amount is 33.4% of the Settlement Fund. A 33.4% fee would amount to $918,500, plus interest, and therefore represents a total lodestar multiplier of approximately 0.53x.

### B.    Co-Lead Counsel Bore Significant Risks Prosecuting the Action

115.    This prosecution was undertaken by Co-Lead Counsel on an entirely contingent-fee basis. From the outset, there was no guarantee that Co-Lead Counsel would ever be compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Co-Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, that funds were available to compensate attorneys and staff, and that the considerable litigation costs required by a litigation like this one were covered. Upon Co-Lead Counsel's involvement in the Action, it was unknown how long litigation would last. With an average lag time of many years for complex cases like this to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Pomerantz and Rosen Law received no compensation during the course of the Action and incurred $101,195.16 in out-of-pocket litigation-related expenses. Park Fee Decl. ¶8 and Ex. B thereto; Alexander Fee Decl. ¶8.

### C.    The Magnitude and Complexity of the Action

116.    As detailed in the Fee Motion, securities class action cases are known for their complexity. This case was no different.

117.    As discussed above, the Action involved two amended complaints, two motions to dismiss the operative Second Amended Complaint, claims under both the Securities Act and the

Exchange Act, alleged misstatements concerning both GigaCloud's ecommerce platform and GigaCloud's use of AI, multiple short-seller reports, an investigation to obtain information from former GigaCloud employees in both the US and China, and service (and attempted service) on Defendants in both the US and China.

118.    This case would only grow more complex were it to continue, with the prospect of discovery and expert testimony regarding AI, and vigorous disputes regarding damages and loss causation, and the need to translate both documents and testimony. Cross-border discovery would present particular challenges, as Plaintiffs would need to obtain discovery from witnesses and documents located in China, where laws on state secrecy, personal information protection, and data security could create significant obstacles.

### D.    The Quality of the Representation

119.    Pomerantz and Rosen Law are nationally recognized securities litigation firms. Their attorneys are highly experienced in this area of the law and have proven themselves time and again to be successful investor advocates. Indeed, both firms have substantial experience in litigating securities class actions and have negotiated numerous other class settlements, which have been approved by courts in the Second Circuit and throughout the country. Their knowledge and experience benefited Plaintiffs and the Settlement Class in this case, as evidenced by the recovery they achieved.

120.    Additional information about each firm's experience is contained within the firm resumes, which are attached to the respective declarations concerning attorneys' fees and expenses. Ex. C to Ex. D (Pomerantz resume); Ex. A to Ex. E (Rosen Law resume).

121.    The quality of the work performed by Co-Lead Counsel in obtaining the Settlement should also be evaluated in light of the quality of the opposition. Here, Defendants were represented by Latham and Watkins LLP and Sichenzia Ross Ference Carmel LLP, well-known

law firms that vigorously represented the interests of their clients throughout the Action. Indeed, from past experience, Co-Lead Counsel knows firsthand that Defendants' Counsel will zealously advocate for their clients through class certification, summary judgment, trial, and appeals. In the face of this experienced and formidable opposition, Co-Lead Counsel was nonetheless able to persuade Defendants to settle the case on terms favorable to the Settlement Class.

### E.    The Requested Fee in Relation to the Settlement

122.    The amount of the fee requested, 33.4% of the Settlement Amount, plus interest thereon at the same rate earned by the Settlement Fund, is fair and reasonable. As discussed in the Fee Motion, courts routinely award fees of 33.4% in securities class action settlements of this magnitude, and a lodestar "cross-check" confirms the reasonableness of the attorneys' fees requested by Co-Lead Counsel here.

### F.    Interest of Public Policy, Including the Need to Ensure the Availability of Experienced Counsel in High-Risk Contingent Securities Case

123.    Courts have consistently recognized that it is in the public interest to have vigorous private enforcement of the federal securities laws. If this important public policy is to be carried out, the courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action. Relatedly, it is long-recognized public policy that settlement is to be encouraged, including the resolution of fee applications that fairly and adequately compensate the counsel who bear the risks and dedicate the time, financial investment, and expertise necessary to achieve those settlements.

### G.    The Reaction of the Settlement Class Supports Co-Lead Counsel's Fee Request

124.    As noted above, as of September 4, 2025, 147,496 potential Settlement Class Members have been notified about the Settlement by mailed or emailed Postcard Notice. Craig

Decl. ¶7. In addition, the Court-approved Summary Notice was published in *Investor's Business Daily* and transmitted over *GlobeNewswire*. *Id.* ¶8. To date, no requests for exclusion and no objections to the Settlement, Plan of Allocation, or attorneys' fees have been received. *Id.* ¶¶11-12. To date, no objections to the maximum potential attorneys' fees request set forth in the Notice have been entered on this Court's docket or received by SCS or Co-Lead Counsel. Any objections received after the date of this filing will be addressed in Co-Lead Plaintiffs' reply papers, which are due by October 2, 2025. Furthermore, any persons who have validly requested exclusion from the Settlement Class will be identified in a [Proposed] Final Judgment, the form of which was previously submitted as Exhibit B to the Stipulation.

### H.    Co-Lead Plaintiffs Support Co-Lead Counsel's Fee Request

125.    As set forth in their declarations submitted herewith, Co-Lead Plaintiffs Sashi Rajan and Meir Spear support Co-Lead Counsel's requested fee as fair and reasonable based on the work performed and the recovery obtained for the Settlement Class. *See* Ex. B (Declaration of Sashi Rajan) ("Rajan Decl.") ¶6; Ex. C (Declaration of Meir Spear) ("Spear Decl.") ¶6. Co-Lead Plaintiffs have been intimately involved in the prosecution and resolution of this Action, and their endorsement of Co-Lead Counsel's fee request supports the reasonableness of the request.

### I.    Reimbursement of the Requested Litigation Expenses is Fair and Reasonable

126.    The Notice, Summary Notice, and Postcard Notice informed potential Settlement Class Members that Co-Lead Counsel would be seeking reimbursement of Litigation Expenses in an amount not to exceed $130,000. As set forth in the Park Fee Decl. (Ex. D hereto) and the Alexander Fee Decl. (Ex. E hereto), Pomerantz and Rosen Law incurred $57,568.63 and $43,626.53 in Litigation Expenses, respectively, for a total of $101,195.16.

127.    This amount, for which Co-Lead Counsel seeks reimbursement from the Settlement Fund, is well below the $130,000 maximum amount set forth in the Notice to Settlement Class Members. To date, no Settlement Class Members have objected to the maximum amount set forth in the Notice. If any objection to the request for reimbursement of Litigation Expenses is made after the date of this filing, it will be addressed in Co-Lead Plaintiffs' reply papers, which are due by October 2, 2025.

128.    From the beginning of the Action, Co-Lead Counsel understood that, even assuming the case was ultimately successful, eventual reimbursement for expenses would not compensate them for inability to use those funds for other purposes in the interim. Accordingly, Co-Lead Counsel were motivated to, and did, take steps to ensure that all expenses were reasonable and necessary to prosecute the case.

### J.    Awards to Plaintiffs Pursuant to the PSLRA

129.    Co-Lead Counsel request awards to Plaintiffs, pursuant to the PLSRA, 15 U.S.C. § 78u-4(a)(4), for the time they devoted to the representation of the Settlement Class, in the amount of $7,500 per Plaintiff, for a total of $15,000. Plaintiffs lost a significant amount of money on their investments in GigaCloud Stock and were highly motivated to, and did, work closely with Co-Lead Counsel throughout the Action to secure the highest possible recovery for themselves and the Settlement Class. Instead of devoting their time to their professional endeavors, Plaintiffs (i) regularly communicated with Co-Lead Counsel regarding the posture and progress of the case, as well as strategy; (ii) reviewed all significant pleadings and briefs filed in the Action; (iii) consulted with Co-Lead Counsel regarding the settlement negotiations; and (iv) evaluated and approved the proposed Settlement. Ex. B (Rajan Decl.); Ex. C. (Spear Decl.).

42

I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of September, 2025.

/s/ *Jonathan D. Park*
Jonathan D. Park